# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

District of Columbia,

                    *Plaintiff*,

    v.

**Proud Boys International, LLC**, *et al.*

                    *Defendants*.

Case No. **1:21-cv-03267**

**Argument Requested**

**Defendant Christopher Kuehne's Motion to Dismiss for Failure to State a Claim**

Defendant Christopher Kuehne moves the Court, under Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff District of Columbia's complaint. In support of his motion, Defendant Kuehne submits the statement of points and authorities in his brief filed with this motion.

Respectfully Submitted,

/s/ Amy L. Bradley
_____

Amy L. Bradley (Bar No. VA048)
William T. DeVinney (Bar No. 488539)
Briglia Hundley, P.C.
1921 Gallows Road, Ste 750
Tysons Corner, VA 22182
Phone: (703) 883-0880
Fax: (703) 942-8092
Email:  abradley@brigliahundley.com
Email:  wdevinney@brigliahundley.com

*Attorneys for Defendant Christopher Kuehne*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **District of Columbia**, | |
| *Plaintiff*, | Case No. **1:21-cv-03267** |
| v. | |
| **Proud Boys International, LLC**, *et al.* | |
| *Defendants*. | |

### Defendant Christopher Kuehne's Brief
### In Support of Its Motion to Dismiss for Failure to State a Claim

Amy L. Bradley (Bar No. VA048)
William T. DeVinney (Bar No. 488539)
Briglia Hundley, P.C.
1921 Gallows Road, Ste 750
Tysons Corner, VA 22182
Phone: (703) 883-0880
Fax: (703) 942-8092
Email: abradley@brigliahundley.com
Email: wdevinney@brigliahundley.com

*Attorneys for Defendant Christopher Kuehne*

# TABLE OF CONTENTS

Facts .................................................................................................................1

Argument ..........................................................................................................3

    I.   The District's Complaint fails to plead that Kuehne engaged in
       any conspiracy.......................................................................................3

         A.  The District must plead a plausible theory of conspiracy........................3

         B.  The Complaint alleges only that Kuehne, along with thousands of
             others, breached a police barricade at the Capitol on January 6, 2021,
             which is insufficient to support any conspiracy claim..............................3

    II.  The District lacks standing to bring its claims. ....................................5

         A.  The District lacks standing to assert its civil rights claims. ...................5

            1.  The District does not have standing under Section 1985(1) because
               it provides a claim only to federal officials. .......................................5

            2.  The District lacks Article III standing under Section 1985(1) because
               its alleged injuries are not traceable to the Defendants.....................6

         B.  The District cannot bring a claim under Section 1986 because its claim
             under Section 1985 fails. ..........................................................8

         C.  The District lacks standing to bring civil claims for intentional torts
             committed against others. .........................................................8

Conclusion .......................................................................................................9

# **TABLE OF AUTHORITIES**

## **Cases**

*\*Arias v. DynCorp*, 752 F.3d 1011 (2014) ................................................................ 6, 7, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................3

*Baron v. Carson*, 410 F. Supp. 299 (N.D. Ill. 1976) ......................................................6

*BMO Harris Bank N.A. v. Bullet Trans Co.*, No. 19 C 4557,
  2020 U.S. Dist. LEXIS 110580 (N.D. Ill. June 24, 2020) ............................................9

*Burnett v. Sharma*, 511 F. Supp. 2d 136 (D.D.C. 2007).................................................8

*Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711 (9th Cir. 1981) .................6

*Graves v. United States*, 961 F. Supp. 320 (D.D.C. 1997)...........................................3, 4

*\*Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37 (D.D.C. 2019) ......................................4

*\*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...............................................5, 8

*Microthin.Com, Inc. v. Siliconezone USA*, LLC, No. 06 C 1522,
  2006 U.S. Dist. LEXIS 82976 (N.D. Ill. Nov. 14, 2006) ............................................8

*Ntron International Sales Co. v. Carroll*, 714 F. Supp. 335 (N.D. Ill. 1989) .....................8

*Pennsylvania ex rel. Shapp v. Kleppe*, 533 F.2d 668 (D.C.Cir. 1976)................................7

*Rossy v. P.R. Police Dep't*, No. 08-2167 (GAG)(CVR),
  2009 U.S. Dist. LEXIS 35553 (D.P.R. Apr. 24, 2009)....................................................6

*Thompson v. Trump*, No. 21-cv-00400 (APM),
  2022 U.S. Dist. LEXIS 30049 (D.D.C. Feb. 18, 2022)....................................................5

*White v. United States*, 791 F. Supp. 2d 156 (D.D.C. 2011)............................................3

## **Statutes**

42 U.S.C. § 1985 ............................................................................................................8

42 U.S.C. § 1986 ........................................................................................................... 2, 8

Defendant Christopher Kuehne asks the Court, under Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint against him for two reasons:

- **Failure to allege Kuehne joined any conspiracy.** To allege a conspiracy, the District must plead concrete facts, like events, documents, or communications that make a conspiracy plausible. The District's eighty-four page Complaint alleges only that Kuehne is a "member or affiliate" of the Proud Boys, Compl. ¶ 25, and that on January 6, 2021, he and five other Defendants—along with thousands of others—breached the barricades surrounding the Capitol at about the same time. Compl. ¶ 187. Those two allegations cannot support the District's claims that Kuehne joined the alleged conspiracy.

- **The District lacks standing to bring its claims.** The District, like any plaintiff, must suffer some injury-in-fact to have standing to bring a civil claim. But the District brings two claims under a civil rights statute that expressly limits standing to injured federal officials or officers, not a governmental entity. And the District brings intentional tort claims for physical or psychological injuries suffered by disparate, unnamed natural persons. None of these alleged injuries belong to the District nor inflict any other injury-in-fact on the District that would confer standing.

Because of these defects, Kuehne asks the Court to dismiss the Complaint.

### Facts

The District asserts five claims arising from the 2020 Presidential election controversy that ended with the protests at the United States Capitol on January 6, 2021. The Complaint alleges that Defendants' conspiracy began in November 2020 when President Trump and his most ardent supporters argued that the Presidential election had been stolen. Compl. ¶¶ 89-99. The Proud Boys, the Oath Keepers, and some of their leaders, used that controversy to recruit members and to incite violence leading up to January 6, 2021. *Id.* ¶¶ 100-05.

Then, according to the Complaint, the Proud Boys and Oath Keepers encouraged their members to attend the January 6, 2021, Stop the Steal rally, intending to storm the

Capitol building, engage in violence, and disrupt Congress's certifying Joe Biden as the President-elect. The Complaint alleges several communications between or among different Defendants that formed or aided the following alleged conspiracy:

- Count 1 - Conspiracy to prevent U.S. officials from discharging their duties in certifying the 2020 Presidential election, violating 42 U.S.C. § 1985(1);

- Count 2 - Conspiracy to not prevent the wrongful acts act the Capitol, violating 42 U.S.C. § 1986;

- Count 3 - Conspiracy to assault;

- Count 4 - Conspiracy to commit battery; and

- Count 5 - Conspiracy to intentionally inflict emotional distress.

The District includes Kuehne as a Defendant in each count alleged. The District's Complaint alleges that Kuehne has been charged criminally for his actions on January 6, 2021, but contains only two allegations specifically about Kuehne. First, the District alleges that Kuehne "is a member or affiliate of the Proud Boys." Compl. ¶ 25. Second, the District alleges that "[b]y 12:53 p.m., the Defendants, including Proud Boys Individual Defendants Biggs, Chrestman, Colon, Kuehne, Bru, and other currently unidentified John and Jane Doe Defendants, overwhelmed the police and breached the outermost barricade that had been erected to protect the Capitol." Compl. ¶ 188. The Complaint does not allege that, when breaching the outermost barricade, Kuehne spoke, communicated, or coordinated with any other Defendant. *Id.*

## Argument

I.   **The District's Complaint fails to plead that Kuehne engaged in any conspiracy.**

   A.   **The District must plead a plausible theory of conspiracy.**

To allege a conspiracy, the District must set forth sufficient facts that, when accepted as true, state a claim that is plausible on its face. *See White v. United States*, 791 F. Supp. 2d 156, 160 (D.D.C. 2011) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). To be plausible, the District must allege specific facts, such as "events, conversations, or documents" that show an agreement. *Id.* at 162. Allegations that, although consistent with a conspiracy, could just as well stem from independent action, cannot state a claim. *Id.*

   B.   **The Complaint alleges only that Kuehne, along with thousands of others, breached a police barricade at the Capitol on January 6, 2021, which is insufficient to support any conspiracy claim.**

The Complaint fails to allege that Kuehne joined the alleged conspiracy. The Complaint alleges that Kuehne is either a Proud Boys "member or affiliate," Compl. ¶ 25, and that Kuhne and five other named Defendants "overwhelmed the police and breached the outermost barricade … protect[ing] the Capitol" at about the same time. Compl. ¶ 88.

The District's allegations fall far short of showing that Kuehne agreed to participate in any conspiracy. The "essential element of a conspiracy claim" is that the parties reach an agreement. *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997). The Complaint contains about 63 different statements or other communications that allegedly formed or furthered the conspiracy. *See* Compl., *passim*. Not one of those came from, or was conveyed to, Kuehne. Nor does the District allege a single fact to suggest that Kuehne heard any of these statements or communications on his own. *Id.* Thus, those statements and communications cannot show that Kuehne agreed with any Defendant to join the alleged conspiracy. *See Graves*, 961 F. Supp. at 320.

With no incriminating documents or statements, or other evidence of an agreement, the District's claims rest on Kuehne breaking through the Capitol's barricades at the same time as five other Defendants. Those allegations cannot support a conspiracy claim. *See Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 52 (D.D.C. 2019). In *Kurd*, the plaintiffs gathered outside the Turkish Ambassador's residence to protest Turkish President Erdogan's visit to the United States. *Id.* at 42-43. The plaintiffs brought claims, including conspiracy to commit battery, against five pro-Erdogan counter-protesters who attacked the plaintiffs during the protest.

To support their conspiracy to commit battery claim, the *Kurd* plaintiffs alleged only "the Defendants broke through the police cordon in a 'coordinated' fashion . . . and that Defendants had the same goal in attacking the protesters." *Id.* at 52. The court found the plaintiffs "fail[ed] to establish the existence of an agreement" because the defendants' alleged acts were "merely … 'parallel conduct that could just as well be independent action.'" *Id.* at 52 (*quoting Twombly*, 550 U.S. at 557). Thus, the court dismissed the conspiracy to commit battery claim. *Id.*

Kuehne's alleged conduct, like the defendants' conduct in *Kurd*, is just as likely as not to be independent action. Kuehne—assuming the Complaint allegations to be true—only pushed past a police barricade at about the same time as other Defendants. And the Complaint alleges that thousands of other people, not alleged to be co-conspirators, also breached the barricades around the Capitol and entered the building. Compl. ¶ 232. The Complaint itself alleges that the President spoke at the Stop the Steal rally, urged the crowd to march on the Capitol to protest the certification vote, and used language that suggested using force or violence. ¶¶ 170-77. Thousands, each with their own reasons or motives, listened to the President and marched to the Capitol, clashed with police, and forced their way into the Capitol building. Compl. ¶¶ 170-77, 232. Under the Complaint's allegations,

Kuehne is just as likely as not to be one of those thousands of protesters who were not part of the alleged conspiracy.

## II.     The District lacks standing to bring its claims.

### A.     The District lacks standing to assert its civil rights claims.

Article III requires that a plaintiff bring an actual case or controversy to be heard by the Court. To have Article III standing, the plaintiff must allege an injury in fact 1) that is "concrete and particularized;" 2) that is "fairly traceable to the challenged action of the defendant;" and 3) that can be redressed by a favorable decision of the Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To assert a claim under 42 U.S.C. § 1985(1), the District must show both Article III standing and statutory standing. *See Thompson v. Trump*, No. 21-cv-00400 (APM), 2022 U.S. Dist. LEXIS 30049, at *79-80 (D.D.C. Feb. 18, 2022). The District lacks both.

### 1.     *The District does not have standing under Section 1985(1) because it provides a claim only for federal officials.*

The plain language of Section 1985(1) bars Count 1 because only federal officers and officer holders have standing to assert a claim under that section. Under Section 1985, if a party interferes with or injures a federal officer or office holder, then "***the party so injured or deprived may have an action*** for the recovery of damages." 42 U.S.C. § 1985(1), (3); *see also Thompson*, 2022 U.S. Dist. LEXIS 30049, at *79-88. In *Thompson*, this Court found that eleven members of the House of Representatives and two Capitol police officers had statutory standing to bring claims under 1985(1) for the events on January 6, 2021. *Id.* In analyzing the standing requirement, the Court found that Section 1985 had a broad reach, but only for ***federal***—not state or municipal—officers or office holders. State, municipal, or other non-federal officers lack standing under Section 1985(1):

- *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 718 (9th Cir. 1981). County sheriff's department officers lack standing to bring a claim under Section 1985(1).

- *Rossy v. P.R. Police Dep't*, No. 08-2167 (GAG)(CVR), 2009 U.S. Dist. LEXIS 35553 (D.P.R. Apr. 24, 2009). Puerto Rico police officers lack standing to bring a claim under Section 1985(1).

- *Baron v. Carson*, 410 F. Supp. 299, 300 (N.D. Ill. 1976). County health board members lacked standing to bring a claim under Section 1985(1).

The District is not a federal officer or office holder, and thus lacks standing. *See id*.

### 2.     *The District lacks Article III standing under Section 1985(1) because its alleged injuries are not traceable to the Defendants.*

Even if the District had statutory standing, the District lacks Article III standing to bring a claim under Section 1985(1) because it suffered no injury-in-fact.

The District alleges Kuehne and other Defendants conspired to prevent Congress and other United States officials from certifying the 2020 Presidential election results, and conspired to injure Mike Pence. Compl. ¶¶ 281-83. But any injury to a federal official or office holder—Congress, Mike Pence, or a Capitol police officer—lacks any relation to the District, and the Complaint does not identify the purported injury to the District. *See* Compl. ¶¶ 279-87.

The District's alleged damages—the costs of deploying D.C. police officers, the costs to treat injured officers, and the costs for paid leave for injured officers—do not confer Article III standing. *See Arias v. DynCorp*, 752 F.3d 1011 (2014). Even if these damages were an "injury" for standing analysis, they are not fairly traceable to Defendants' conduct. The District alleges that, at most, 82 individuals—32 named and 50 unnamed John and Jane Does—participated in the conspiracy. Compl. ¶¶ 10-43. But thousands of people descended on the Capitol, overwhelmed the police, and entered the Capitol by using violence.

*See* Compl. ¶ 232. The District would have incurred most or all of these costs regardless of Defendants' conduct, and the Complaint does not segregate the injuries specifically caused by Defendants from those caused by the thousands of other rioters at the Capitol. Thus, the District cannot fairly trace any injury to the Defendants' conduct.

The D.C. Circuit addressed a similar issue in *Arias v. DynCorp*, 752 F.3d 1011 (2014). In *DynCorp*, several Ecuadorian provinces and Ecuadorian individuals brought tort claims against a company that, as part of a plan to combat Columbian drug cartels, sprayed glyphosate on illegal cocoa crops in Columbia. The plaintiffs alleged that the glyphosate crossed the border into Ecuador, damaged crops, and caused physical injuries.

The Ecuadorian provinces argued that they had Article III standing because "their budgets had been harmed by reduced tax revenue and by necessary health expenditures to address a public health crisis supposedly caused by the . . . spraying." *Id.* at 1014. The D.C. Court of Appeals disagreed. The court found that lost revenue generally cannot confer Article III standing on a governmental entity. *Id.* at 1015 (*citing Pennsylvania ex rel. Shapp v. Kleppe*, 533 F.2d 668, 672 (D.C.Cir. 1976)). Even if the Ecuadorian provinces' costs "could theoretically constitute an injury-in-fact for standing purposes," those costs were not fairly traceable to the defendants' conduct because the court found several other potential causes of the crop damage and health issues. *Id.* at 1015. Thus, the court affirmed the dismissal of the Ecuadorian provinces' claims for lack of Article III standing.

Here, like the Ecuadorian provinces' costs in *DynCorp*, the District's costs to deploy its officers, to treat their injuries, and for their lost time, are not an "injury-in-fact" for standing purposes. And those costs are not fairly traceable to Defendants' conduct. The District has identified no particular injury that can be traced to any Defendant. Thus, the District, like the Ecuadorian provinces in *DynCorp*, lacks Article III standing.

**B.      The District cannot bring a claim under Section 1986 because
its claim under Section 1985 fails.**

Section 1986 holds civilly accountable anyone who knows of a conspiracy prohibited by Section 1985 and fails to prevent that conspiracy. *Burnett v. Sharma*, 511 F. Supp. 2d 136, 145 (D.D.C. 2007). Thus, Section 1986's language "establishes unambiguously that a colorable claim under Section 1985 is a prerequisite" to a claim for neglecting to prevent a conspiracy under Section 1986. *Id.* Without a viable claim under Section 1985, as described above, the District cannot bring its claim under Section 1986.

**C.      The District lacks standing to bring civil claims for intentional
torts committed against others.**

The District seeks to recover damages from Defendants for intentional torts allegedly inflicted on "individuals in and around the Capitol, including MPD officers." Compl. ¶¶ 298, 303. The District does not explain how an assault, a battery, or an intentional infliction of emotional distress inflicts any injury-in-fact on the District itself, as required for Article III standing. *See Lujan*, 504 U.S. at 560.

To Kuehne's knowledge, no authority allows a governmental entity to recover damages for an intentional tort committed against an employee. But courts have rejected claims by a private entity, such as a corporation, trying to recover for intentional torts against its employee. For example, a corporation cannot recover for an assault on its employees: "this court rules as a matter of law that there can be no tort of assault against a corporation." *Ntron International Sales Co. v. Carroll*, 714 F. Supp. 335, 339 (N.D. Ill. 1989). *See also Microthin.Com, Inc. v. Siliconezone USA*, LLC, No. 06 C 1522, 2006 U.S. Dist. LEXIS 82976, at *5 (N.D. Ill. Nov. 14, 2006) (holding the corporation lacked standing to assert claims of assault and battery on behalf of its employees).

Similarly, a corporation cannot suffer a physical injury in its own right. *See BMO Harris Bank N.A. v. Bullet Trans Co.*, No. 19 C 4557, 2020 U.S. Dist. LEXIS 110580 (N.D.

Ill. June 24, 2020). In *BMO Harris Bank*, the court held that a corporation cannot bring a false imprisonment claim because it has no physical form: "Bullet Trans, as a corporate entity, has no physical form and cannot physically be confined." *Id.* at *6. Likewise, the District cannot suffer an assault, a battery, or experience emotional distress because it lacks physical form.

The District's intentional tort claims belong to those physically injured, not to the District itself.

### Conclusion

The Court should dismiss the Complaint against Kuehne. First, the District alleges only that Kuehne might be part of the Proud Boys and that he acted in concert with five other Defendants in crossing a police barricade. That cannot establish the broad conspiracy alleged. The thousands of people who marched upon, surrounded, approached, or entered the Capitol no doubt harbored many different reasons for doing so—a genuine conviction the election was stolen, loyalty to President Trump, a hatred of authority, a desire to engage in mischief or hooliganism, or some form of mental imbalance. Under the allegations in the Complaint, it is just as likely that Kuehne was one of those thousands of others—non-conspirators—at the Capitol on January 6, 2021.

Second, the District lacks standing to bring any of its claims. The District claims that it brought this action "to hold the Defendants accountable … [in order] to make clear that it will not countenance the use of violence against the against the District, including its police officers." Compl. ¶ 8. Although an admirable sentiment, it does not justify the District filing civil claims on behalf of third parties. No statute, court decision, or other authority permits the District to assert civil claims for which others, and not the District, suffered injury.

Dated:  March 11, 2022

Respectfully Submitted,

/s/ Amy L. Bradley

Amy L. Bradley (Bar No. VA048)
William T. DeVinney (Bar No. 488539)
Briglia Hundley, P.C.
1921 Gallows Road, Ste 750
Tysons Corner, VA 22182
Phone: (703) 883-0880
Fax: (703) 942-8092
Email:  abradley@brigliahundley.com
Email:  wdevinney@brigliahundley.com

*Attorneys for Defendant Christopher Kuehne*

DEFENDANT CHRISTOPHER KUEHNE'S MOTION TO DISMISS

**Certificate of Service**

I certify that on March 11, 2022, I caused this Defendant Christopher Kuehne's Motion to Dismiss for Failure to State a Claim to be served by the Court's electronic filing system to all parties of record.

/s/ William DeVinney
—————————————————
William DeVinney