**UNITED STATES DISTRICT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DISTRICT OF COLUMBIA,**<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>**PROUD BOYS INTERNATIONAL, LLC,**<br>**ET AL,**<br><br>        **Defendants.** | **Case No. 21-cv-03267** |

**DEFENDANTS JONATHAN PETER KLEIN, ROBERTO MINUTA, WILLIAM**
**JOSEPH PEPE MOTION TO STAY PROCEEDING AND MOTION TO DISMISS FOR**
<u>**FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)**</u>

<u>John M. Pierce</u>
<u>21550 Oxnard Street</u>
<u>3d Floor, PMB#172</u>
<u>Woodland Hills, CA 91367</u>
<u>Tel: (213) 279-7846</u>
<u>Email: jpierce@johnpiercelaw.com</u>

<u>Attorney for Defendants Jonathan Peter Klein,</u>
<u>Roberto Minuta and Joseph Pepe</u>

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

In re Minuta: ........................................................................................................................1

In re Pepe: ............................................................................................................................2

In re: Klein ..........................................................................................................................3

SUMMARY OF THE ARGUMENT ..................................................................................4

STANDARD OF REVIEW ..................................................................................................5

ARGUMENT ......................................................................................................................6

I.      This Court Should Dismiss the Complaint As Plaintiff Has Failed To State A Claim For Which Relief Can Be Granted .................................................................................6

      A.      42 U.S.C. § 1985(1) (CONSPIRACY) ..................................................... 6

      B.      42 U.S.C. § 1986 (CONSPIRACY)........................................................... 9

      C.      ASSAULT (CONSPIRACY)..................................................................... 10

      D.      BATTERY (CONSPIRACY) ..................................................................... 11

      E.      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (CONSPIRACY) ................................................................................... 12

II.     Should the Court Not Dismiss, The Court Should Stay the Proceeding While Concurrent Criminal Proceeding is Pending.................................................................13

A.      *Relationship Between Two Actions* .................................................................14

      1.      Similarity of the Issues ............................................................... 15

      2.      Stage of a Parallel Proceeding ................................................... 15

B.      *Burden on the Court*.........................................................................................16

C.      *Balance of Interests*.........................................................................................17

D.      *Duration of Stay* ..............................................................................................18

III.    Staying This Matter Would Not Cause Harm to the Public Interest..................................18

CONCLUSION..................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................5

*Baxter v. Palmigiano,*
    425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)............................17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................5, 11, 12, 13

*Brock v. Tolkow,*
    109 F.R.D. 116 (E.D.N.Y. 1985)......................................................17, 18

*Est. of Gaither ex rel. Gaither v. Dist. of Columbia,*
    2005 WL 3272130 (D.D.C. Dec. 2, 2005).............................................16

*Horn v. Dist. of Columbia,*
    210 F.R.D. 13 (D.D.C. 2002)..................................................................14

*Kan. City S. Ry. Co. v. United States,*
    282 U.S. 760 (1931)................................................................................18

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936)..........................................................................14, 18

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1991)..................................................................................5

Milton Pollack, *Parallel Civil & Crim. Proceedings,* 129 F.R.D. 201 (1989).....................15, 16

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.,*
    628 F.2d 1368 (D.C.Cir. 1980)..........................................................13, 18

*United States v. Kordel,*
    397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).....................................18

*Volmar Distribs., Inc. v. N.Y. Post Co.,*
    152 F.R.D. 36 (S.D.N.Y. 1993).............................................................15

*Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.,*
    7 F. Supp. 2d 523 (D.N.J. 1998)..................................................14, 17, 18

*U.S. ex rel. Westrick v. Second Chance*,
  No. 04–280, 2007 WL 1020808 (D.D.C. Mar. 31, 2007) ...................................................14

*Wultz v. Islamic Republic of Iran*,
  864 F. Supp.2d 24 (D.D.C. 2012) .........................................................................13

**Statutes**

42 U.S.C. § 1985 ........................................................................................5, 6, 7

42 U.S.C. § 1986 .................................................................................. *passim*

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................... *passim*

## INTRODUCTION

NOW come defendants, Jonathan Peter Klein, Roberto Minuta, and William Pepe, by and through their counsel requesting this Honorable Court to dismiss the above cited action for failure to state a claim pursuant to the Federal Rules of Civil Procedure 12(b)(6).  Further, Defendants request this Honorable Court to STAY all further proceedings in the above citied matter as a concurrent criminal matter is unresolved.

## BACKGROUND

**In re Minuta:**

The 2020 United States Presidential Election ("Presidential Election") occurred on November 3, 2020. As of November 7, 2020, the incumbent President Donald J. Trump was projected to have lost the Presidential Election. After the Presidential Election, on January 6th, 2021, Roberto Minuta, with his co-defendants, both known and unknown to the Grand Jury peacefully assembled in protest of the election results.

Minuta, a current resident of Hackettstown, New Jersey, was/is a member of the *Oath Keepers*, a large but loosely organized collection of American patriots and philanthropists. During his peaceful assemblage in Washington D.C., Roberto Minuta entered the Capitol grounds, moving from the west side to the east side of the Capitol building and up the east stairs. At around 3:15 p.m., Minuta entered the Rotunda Doors which had been previously utilized by numerous other protestors/demonstrators. Once inside, Minuta traveled past law enforcement officers assigned to guard the Rotunda. At this time, Minuta was reported to have been chanting and repeating demonstrative phrases, such as "this is our Capitol!" ("our" refers to the American citizens).

Additionally, it was at this same time that Minuta has been accused of assaulting (both physically and verbally) D.C police officers. These accusations, however, are baseless and

1

defamatory, as Minuta has not been charged with any criminal assault and maintains that no assault was committed.  In furtherance, Minuta has been charged with multiple offenses including but not limited to: multiple counts of Conspiracy, Obstruction of an Official Proceeding and Aiding & Abetting. These charges, as with the aforementioned claim(s) are baseless and defamatory. Finally, these charges are an egregious waste of resources for the Federal Court system and its affiliates.

**In re Pepe:**

The United States Electoral College is a group required by the Constitution to form every four years for the sole purpose of electing the president and vice president. On December 14, 2020, the presidential electors of the Electoral College met in the nation's capital to formalize the result of the 2020 U.S. Presidential Election. During this session, Joseph R. Biden, Jr. and Kamala D. Harris were declared to the next President and Vice President of the United States.

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened in the United States Capitol to certify the vote of the Electoral College of the 2020 Presidential Election. It was on this day that tens of thousands of demonstrators arrived at the capital to protest the results of the 2020 U.S Presidential Election. Among these demonstrators was William Pepe.

Pepe, a U.S. citizen residing in Beacon, New York, arrived in Washington D.C. on January 5/6 with several other friends and acquaintances. On January 6, 2021, at approximately 12:45 p.m., a large crowd gathered outside the Capitol perimeter, including near a pedestrian entrance to the Capitol grounds on First Street, Northwest, near the Peace Monument. Among those present was Pepe. The pedestrian entrance was guarded by Capitol Police. Signs posted on metal barriers at the pedestrian entrance and other locations read, "AREA CLOSED By order of the United States Capitol Police Board."

At approximately 12:53 p.m., a group of demonstrators utilized the pedestrian entrance. A large crowd, which included Pepe, followed. Several minutes later, at 1:00 p.m., the Joint Session convened in the Capitol to certify the Electoral College vote. During this time, however, between 12:53 and 2:00 p.m., law enforcement continued to control the growing crowd. By 2:13 p.m., crowd members, including Pepe, had begun to enter the capitol building through open doors. Unbeknownst to them, the crowd was not lawfully authorized to enter or remain inside the Capitol building.

Because of his presence at the demonstration, William Pepe has been charged with numerous offenses including but not limited to: multiple counts of Conspiracy, Obstruction of an Official Proceeding, Aiding & Abetting, Obstruction of Law Enforcement During Civil Disorder, Destruction of Government Property, Entering and Remaining in a Restricted Building or Grounds, as well as Disorderly Conduct in a Restricted Building or Grounds. As with Roberto Minuta, the claims against William Pepe are entirely baseless and defamatory, as well as an egregious waste of federal court resources. As a single individual amongst a throng of demonstrators, Pepe had no knowledge of crimes committed by other individuals within that same crowd, nor was he involved in any illegal or immoral misconduct.

**In re: Klein**

Finally, Jonathan Peter Klein (Klein), a 21-year-old resident of Oregon, was also present at these same demonstrations at the U.S Capitol. Like Pepe and Minuta, J. Klein also arrived in Washington D.C. to protest the certification of the 2020 U.S Presidential Election and joined in the large crowds gathering outside of the Capitol perimeter.  All pedestrian entrances to the Capitol grounds were guarded by Capitol Police, and prominent signs posted on metal barriers read, "AREA CLOSED By order of the United States Capitol Police Board." Unbeknownst to Klein, at

approximately 12:53 p.m., a group of people had forcibly breached the barriers on the west side of the Capitol. After these barriers had been removed, members of the crowd freely rushed past the downed signs/barriers entirely ignorant of their true purpose or warning.  Some crowd members, including Klein, eventually made their way past additional signs/barricades and advanced to the building's exterior facade.

At approximately 2:13 p.m., disgruntled members of this demonstration (not including Klein) began shattering windows and ramming down the doors to the Capitol building.  Klein did not/does not condone the actions of these singular individuals and should therefore be afforded the liberties of an innocent and nonviolent spectator. Additionally, at no point was any prohibitive signage restricting entry visible to Klein or any member of his party, as they had been removed prior to his arrival. Furthermore, Klein entered the Capitol building not through a breached window or side passage, but from a door which was open and seemingly inviting to the demonstrators.

Because of his presence at the U.S. Capitol on January 6, 2021, Klein is being subjugated and alienated by the U.S. Government and its legal system. Klein has been charged with multiple offenses including but not limited to: Conspiracy, Obstruction of an Official Proceeding, Aiding & Abetting, Obstruction of Law Enforcement During Civil Disorder, Destruction of Government Property, Entering and Remaining in a Restricted Building or Grounds and Disorderly Conduct in a Restricted Building or Grounds. As with the other two aforementioned January 6th defendants, the accusations and charges against Jonathan Peter Klein are baseless, defamatory, and an egregious waste of federal court resources.

## SUMMARY OF THE ARGUMENT

The Complaint alleges five causes of action. All five causes of action are based on the District of Columbia's ("Plaintiff") claim that Defendants conspired to interfere with the 2020

election certification by forming part of the group of Americans that entered the Capitol building on January 6, 2021. Plaintiff claims that it suffered damages as a result of Defendants' conspiracy to violate and alleged violations of 42 U.S.C. § 1985(1) and 42 U.S.C. § 1986, as well as Defendants' alleged conspiracy to indirectly cause others to commit assault, battery, and the intentional infliction of emotional distress. Defendants now ask this Court to dismiss all five of Plaintiff's counts under Fed. R. Civ. P. 12(b)(1), and if not, under Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil procedure moves a court to examine and evaluate the legal sufficiency of a complaint. In order for a complaint to survive a motion to dismiss, a plaintiff must allege more than conclusions; recitation of the elements of the cause of action does not give rise to the requisite level for survival of the action(s). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Only Complaints that plead with particularity and state a plausible claim for relief will survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In order for a complaint to withstand a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing standing to confer subject matter jurisdiction, and the Court must confirm that authority. Fed. R. Civ. P. 12(b)(1). Alas, whether the motion for dismissal is based on Rule 12(b)(1) or Rule 12(b)(6), or both, the plaintiff bears the burden of establishing the elements of a cause of action and must support them with the degree of evidence required at the later stages of litigation. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1991). A complaint must state factual matter, that if the Court accepts it as true, states a claim to relief that is plausible on its face.

## ARGUMENT

The Plaintiff has no standing to bring the claims that it tries to set before this Court. Even if this Court were to decide that the Plaintiff has standing, the complaint does not plead its claims with legal sufficiency and is therefore invalid.

The District of Columbia has no standing to bring tort claims against Defendants for individuals for allegations of assault, battery, and the intentional infliction of emotional distress.

The Plaintiff is not a person that can feel the fear of imminent and harmful physical conduct, offensive physical conduct, or severe emotional distress. The individual officers must bring those claims to this Court.

Furthermore, the District of Columbia does not have standing to bring claims against the Defendants under 42 U.S.C. § 1985(1) and 42 U.S.C. § 1986 because the Plaintiff is not a federal official whose job obligations worsened or halted as a result of Defendants' alleged conduct. Also, under 42 U.S.C. § 1986, Defendants did not have a duty to, nor were they in a position to, stop any of the acts of the third-party individuals who allegedly caused damages to the Plaintiff.

I.    **This Court Should Dismiss the Complaint As Plaintiff Has Failed To State A Claim For Which Relief Can Be Granted**

   A.    **42 U.S.C. § 1985(1) (CONSPIRACY)**

The Plaintiff fails in its argument that the Defendants are liable to Plaintiff under 42 U.S.C. § 1985(1) because the District of Columbia is not an official or person who suffered damages as a result of Defendants' failure to help stop a conspiracy.

42 U.S.C. § 1985(1) opens the possibility of liability against persons who have knowledge of certain wrongs conspired, and that have power to prevent or aid in preventing the effectuation of the conspiracy, and neglect or refuse to, with reasonable diligence, prevent the conspiracy from

manifesting. The conspiracies that § 1985(1) aims to stop are the following: obstruction of justice; preventing officer from performing duties; or depriving persons of rights or privileges.

According to the Plaintiff, the Defendants actively participated in the furtherance of the conspiracy to stop the officials' certification of the election results and the conspiracy resulted in Plaintiff's damages. Next, the Plaintiff tries to create a duty out of thin air and superimposes it on the Defendants. The Plaintiff complains that the Defendants had the "power to prevent or aid in preventing" the conspiracy. According to the Plaintiff, Defendants spread "misinformation" and "fanned the flames of conspiracy," thereby making them participants in the January 6 Capitol protests. The Plaintiff argues that due to the Defendants' alleged refusal and neglect to help prevent the "conspiracy," Defendants are liable to Plaintiff under 42 U.S.C. § 1986 for damages the Plaintiff sustained.

However, the Plaintiff does not have standing under 12(b)(1) to bring this claim against Defendants because the Plaintiff is not the federal government officials whose duty it was to certify the election. Moreover, the election was certified. The Plaintiff also failed to allege facts in cause of action that explains how Defendants' acts prevented or aided in preventing an official from performing his or her duties. The Plaintiff failed to state, with particularity or even broadly, how it is that Defendants had the power to, through reasonable diligence, prevent or aid in preventing the January 6 protests. The Plaintiff mentioned in its complaint that over 500 police officers at the Capitol building could not stop the protests. What then could Defendants possibly have done to help stop the protests, even if they knew what was going to happen? The Plaintiff fails to allege facts which, if taken as true, would prove that Defendants knew of the conspiracy or could have stopped its manifestation. As such, Plaintiff's 42 U.S.C. § 1986 is legally insufficient and this Court should dismiss it under Fed. R. Civ. P. 12(b)(6).

The Plaintiff claims that the Defendants agreed to enter into a conspiracy amongst themselves, and with others, to storm the Capitol building "violently" and "unlawfully" on January 6, 2021. Plaintiff further contends that the Defendants' objective was to "prevent, interrupt, and hinder, through force, intimidation, and threat," officials from counting and certifying the electoral votes for the 2020 Presidential Election and declaring a winner. Moreover, the Plaintiff assumed and concluded that that the Defendants also intended to stop President Biden and the Vice-President from accepting or holding their respective offices and discharging their duties.

With disregard of logic, Plaintiff moves this Court to believe that the Defendants also conspired to physically injure Vice President Pence and his property in direct retaliation of him discharging his duties as Vice President of the United States and President of the Senate.

Finally, the Plaintiff seeks to convince this Court that the Defendants unlawfully obstructed federal officials, trespassed on federal property, physically threatened "or attempted" acts of physical violence upon federal, state, and municipal police officers that were protecting the Capitol, and that they engaged in "harmful" bodily contact with these officers, all of which allegedly resulted in the Plaintiff's "extraordinary damages and costs." The Plaintiff concludes the claim by asking this Court to find that Defendants are jointly and severally liable for the dispatch costs, overtime expenses, medical services, and MPD officers' paid leave that the Plaintiff associated with January 6, 2021. Plaintiff's basis for its claim extends into the other claims' faulty foundation.

In conclusion, this Court should dismiss Plaintiff's 42 U.S.C. § 1986 cause of action under Fed. R. Civ. P. 12(b)(1), and if not, under 12(b)(6).

**B.      42 U.S.C. § 1986 (CONSPIRACY)**

The Plaintiff fails in its argument that the Defendants are liable to Plaintiff under 42 U.S.C. § 1986 because the District of Columbia is not an official or person who suffered damages as a result of Defendants' failure to help stop a conspiracy.

42 U.S.C. § 1986 opens the possibility of liability against persons who have knowledge of certain wrongs conspired, and that have power to prevent or aid in preventing the effectuation of the conspiracy, and neglect or refuse to, with reasonable diligence, prevent the conspiracy from manifesting. The conspiracies that § 1986 aims to stop are the following: obstruction of justice; preventing officer from performing duties; or depriving persons of rights or privileges.

According to the Plaintiff, the Defendants actively participated in the furtherance of the conspiracy to stop the officials' certification of the election results and the conspiracy resulted in Plaintiff's damages. Next, the Plaintiff tries to create a duty out of thin air and superimposes it on the Defendants. The Plaintiff complains that the Defendants had the "power to prevent or aid in preventing" the conspiracy. According to the Plaintiff, Defendants spread "misinformation" and "fanned the flames of conspiracy," thereby making them participants in the January 6 Capitol protests. The Plaintiff argues that due to the Defendants' alleged refusal and neglect to help prevent the "conspiracy," Defendants are liable to Plaintiff under 42 U.S.C. § 1986 for damages the Plaintiff sustained.

However, the Plaintiff does not have standing under 12(b)(1) to bring this claim against Defendants because the Plaintiff is not the federal government officials whose duty it was to certify the election. Moreover, the election was certified. The Plaintiff also failed to allege facts in cause of action that explains how Defendants' acts prevented or aided in preventing an official from performing his or her duties. The Plaintiff failed to state, with particularity or even broadly, how

it is that Defendants had the power to, through reasonable diligence, prevent or aid in preventing

the January 6 protests. The plaintiff mentioned in its complaint that over 500 police officers at the

Capitol building could not stop the protests. What then could Defendants possibly have done to

help stop the protests, even if they knew what was going to happen? The Plaintiff fails to allege

facts which, if taken as true, would prove that Defendants knew of the conspiracy or could have

stopped its manifestation. As such, Plaintiff's 42 U.S.C. § 1986 is legally insufficient and this

Court should dismiss it under Fed. R. Civ. P. 12(b)(6).

In conclusion, this Court should dismiss plaintiff's 42 U.S.C. § 1986 cause of action under

Fed. R. Civ. P. 12(b)(1), and if not, under 12(b)(6).

### C.     ASSAULT (CONSPIRACY)

The Plaintiff alleges that Defendants conspired to commit the common law tort of

assault against the Plaintiff. However, a government entity or organization cannot state a claim for

a common law personal tort. Plaintiff asks this Court to order that Defendants be liable to Plaintiff

because random people that Defendants did not know allegedly placed MPD officers in

apprehension of offensive bodily contact to their persons.

This cause of action is premised on the theory that due to Defendants' alleged plan to

participate in the scheme of attending the protests at the Capitol building on January 6, 2021,

Defendants probably also conspired to be part of a large group of people that would incite a riot

that would cause the officers to be intimidated and fear violence. The Plaintiff goes further and

suggests that such knowledge and actions helped fuel a riot that indirectly led to random actors'

assault on officers. However, the Plaintiff does not allege facts that satisfy the elements of assault,

much less facts showing that the Defendants had a plan to conspire so that eventually protestors

would assault officers. To be clear, Plaintiff incorrectly and improperly pled alleged facts in trying

to claim that Defendants' alleged support of the January 6 protests at the Capitol building somehow makes them liable to Plaintiff for unrelated third-party actors' alleged assault on MPD officers.

A legally sufficient claim for Assault requires that the defendants intentionally threaten plaintiff with imminent force or verbal threats and that the plaintiff be in reasonable apprehension of receiving a battery. Plaintiff is not a person, and so it did not and cannot be in apprehension of receiving a battery. The Plaintiff is a societal construct that wants money, not a human being. Accordingly, this claim does not survive a 12(b)(1) motion for dismissal because the Plaintiff has no standing.

Assault is an intentional tort that requires the defendants' conduct to be directly traceable to the plaintiff's damages. Plaintiff offers no facts linking the Defendants' alleged conduct directly to the Plaintiff's damages. To be clear, the Plaintiff admitted, in the complaint, that the acts of third-party actors directly caused the damages it alleges. Thus, this claim is legally insufficient under Fed. R. Civ. P. 12(b)(6) and the sound principles of *Iqbal* and *Twombly*.

Accordingly, this Court should dismiss Count III of the Plaintiff's complaint against Defendants.

### D.     BATTERY (CONSPIRACY)

The Plaintiff alleges that Defendants conspired to commit the common law tort of battery against the Plaintiff. However, a government entity or organization cannot state a claim for a common law personal tort. Moreover, Plaintiff's claim does not plead facts which are legally sufficient to state a claim upon which relief is plausible or recognized.

A legally sufficient claim for battery requires that the defendants intentionally make harmful or offensive physical contact with the person of the plaintiff without consent. Plaintiff is not a person, and so there cannot be physical conduct that is harmful on the part of the Defendants.

Accordingly, this claim does not survive a 12(b)(1) motion for dismissal because the Plaintiff has no standing.

Plaintiff is not a person who can be a victim of battery as defined by the common law tort. Therefore, Plaintiff does not have standing to bring this claim, based on Fed. R. Civ. P. 12(b)(1). Plaintiff contends that Defendants conspired to verbally motivate others to enter the Capitol building and that they "fanned the flames." However, Plaintiff did not specify, describe, or allege what physical harm it has suffered as a result of the Defendants' alleged conduct. Moreover, the Plaintiff failed to describe what intentional conduct these Defendants displayed that caused direct offensive or harmful physical conduct with the Plaintiff. Battery is an intentional tort that requires the defendants' conduct to be directly traceable to the plaintiff's damages. Plaintiff offers no facts linking the Ddefendants' alleged conduct directly to the Plaintiff's damages. To be clear, the Plaintiff actually admitted, in the complaint, that the acts of third party actors caused the damages it alleges. Thus, this claim is legally insufficient under Fed. R. Civ. P. 12(b)(6) and the sound principles of *Iqbal* and *Twombly*.

Consequently, this Court should dismiss Count IV of the Plaintiff's complaint against Defendants.

### E.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (CONSPIRACY)

The Plaintiff alleges that Defendants conspired to commit the common law tort of intentional infliction of emotional distress against the Plaintiff. However, a government entity or organization cannot state a claim for a common law personal tort.

Intentional infliction of emotional distress requires that the defendants, by extreme and outrageous conduct, intentionally or recklessly cause the plaintiff severe emotional distress and

that, if bodily harm results from the severe emotional distress, the defendants be liable to the plaintiff for such damages. *Wultz v. Islamic Republic of Iran,* 864 F. Supp.2d 24, 36 (D.D.C. 2012).

Plaintiff is not a person who can suffer emotional distress or physical harm as defined by the common law tort of intentional infliction of emotional distress. Therefore, Plaintiff does not have standing to bring this claim, based on Fed. R. Civ. P. 12(b)(1). Plaintiff contends that Defendants exhibited extreme and outrageous conduct that went beyond all possible bounds of decency. Then, in an attempt for a catch-all phrase, Plaintiff argues that such conduct intentionally or recklessly caused MPD officers to suffer from severe emotional distress. However, Plaintiff did not specify, describe, or allege what physical harm it has suffered because of the Defendants' alleged conduct. Moreover, the Plaintiff failed to describe what conduct these Defendants displayed that caused the Plaintiff's damages. The intentional infliction of emotional distress is an intentional tort that requires the Defendants' conduct to be directly traceable to the Plaintiff's damages. Plaintiff offers no facts linking the Defendants' alleged conduct directly to the Plaintiff's damages. To be clear, the Plaintiff actually admitted, in the complaint, that the acts of third-party actors caused the damages it alleges. Thus, this claim is legally insufficient under Fed. R. Civ. P. 12(b)(6) and the sound principles of *Iqbal* and *Twombly*.

Consequently, this Court should dismiss Count V of the Plaintiff's complaint against Defendants.

## II.     Should the Court Not Dismiss, The Court Should Stay the Proceeding While Concurrent Criminal Proceeding is Pending

The Court has the discretion to stay civil proceedings in the interest of justice and "in the light of the particular circumstances of the case." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C.Cir. 1980).  Further in *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936),

"the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket."

To prevail on a motion to stay, the movant needs to satisfy a high burden. *Id.* at 255, 57 S.Ct. 163. Another court in this District recently outlined the factors that are commonly weighed when a party moves to stay civil proceedings considering parallel criminal proceedings. These are: 1) the relationship between the civil and criminal actions; 2) the burden on the court; 3) the hardships or inequalities the parties would face if a stay was granted; and 4) the duration of the requested stay. *See U.S. ex rel. Westrick v. Second Chance,* No. 04–280, 2007 WL 1020808, at *2 (D.D.C. Mar. 31, 2007); *see also Horn v. Dist. of Columbia,* 210 F.R.D. 13, 15 (D.D.C. 2002) (laying out similar factors)

Turning to the four (4) factors this Court should review in its consideration:

### A.   *Relationship Between Two Actions*

Defendant would be forced to choose between waiving his Fifth Amendment right to defend himself in the civil suit or "asserting the privilege and probably losing the civil case." *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.,* 7 F. Supp. 2d 523, 528 (D.N.J. 1998). A close relationship between the two actions, furthermore, is often viewed as the most significant factor in the balancing test. *See id.* at 527.

It is not possible for an argument to be made when/if the two actions are not related. To further support this statement, the Government, in a frenzied haste, added the following lines into its civil complaint: The Indictment (Dkt. 1) filed against Klein is a publicly available document that is hereby incorporated into the Complaint by reference. The Criminal Complaint (Dkt. 1), Affidavit in Support (Dkt. 1-1), and Caldwell, et al. Fifth Superseding Indictment (Dkt. 328) filed against Minuta are publicly available documents that are hereby incorporated into the Complaint

by reference. The Criminal Complaint (Dkt. 1), accompanying Statement of Facts (Dkt. 1-1), and Superseding Indictment (Dkt. 34) filed against Pepe are publicly available documents that are hereby incorporated into the Complaint by reference.

## 1.  Similarity of the Issues

The criminal cases against Klein, Minuta, and Pepe are all being asserted by different facts (such cases are relying on those same assertions of fact by the Government). Emphasizing the *same* facts, as the Government has not even bothered to take the time and lay out the assertions from the criminal complaint into the civil complaint; rather, *incorporates by reference*.  The similarity of issues has been termed "the most important issue at the threshold" in determining whether to grant a stay. Milton Pollack, *Parallel Civil & Crim. Proceedings,* 129 F.R.D. 201, 203 (1989).

According to the complaint, the identical facts are being used, again emphasizing the incorporation by reference; therefore, there is no dispute that the criminal and civil cases many, if not identical, issues—the events of January 6, 2021.

As the allegations are the same, this factor weighs in favor of stay being granted.

## 2.  Stage of a Parallel Proceeding

The stage of the parallel criminal proceeding may also substantially affect the determination of whether a stay is warranted:  The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned. The potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of a reasonably rapid resolution of the criminal case under the Speedy Trial Act. *Parallel Proceedings,* 129 F.R.D. at 203.  Further, each case must be evaluated individually. *Volmar Distribs., Inc. v. N.Y. Post Co.,* 152 F.R.D. 36, 38 (S.D.N.Y. 1993).

If the Government is conducting an active parallel criminal investigation, it is "still possible" to obtain a stay, even IF an indictment/information has not yet been returned. *Parallel Proceedings,* 129 F.R.D. at 204.

Indictments have been returned for Klein, Minuta, and Pepe. *See* [insert indictment locations] Further, Mr. Minuta has already had a trial date set—said date is upcoming on [insert]. Should Klein, Minuta, and/or Pepe be subject to a civil case their ability to defend themselves in such case is reason for courts to be wary for allowing simultaneous proceedings to run. Moreover, this concern cuts both ways—Klein, Minuta, and/or Pepe would be subject to interrogatories that could jeopardize both their criminal defense strategy and impose on their Constitutional right against self-incrimination. As for the Government, discovery and depositions on the civil case could lead to harm in other criminal investigations that are still ongoing.

Given the nature and status of the criminal proceedings, this factor weighs in favor of the stay being granted.

### B.    *Burden on the Court*

Granting the Motion has the "potential" to facilitate the civil case, whereby the burden on the Court would be eased. Def. Mem. at 9; *see also Est. of Gaither ex rel. Gaither v. Dist. of Columbia,* 2005 WL 3272130, at *4 (D.D.C. Dec. 2, 2005) (stay in civil case until resolution of criminal case may later "streamline discovery" in the civil action).

"[T]he Court also has an interest in resolving individual cases efficiently. Without a stay, interrogatory and deposition discovery would likely cause inefficiency, because several defendants will be forced to assert Fifth Amendment privileges. Not only would this burden the Magistrate Judge and this Court with deciding a constant stream of privilege issues, but if some defendants were forced to assert the privilege while others were not, it would be difficult or impossible to

fairly apportion liability because of the differing factual record among defendants." *See Walsh Sec., Inc.*, 7 F. Supp. 2d at 523.  Although it is not unconstitutional to force defendants into this choice, the Court finds that the strong potential for an unjust result outweighs the efficiencies gained by allowing the case to proceed.  *Id*.

Given there would be no burden on the court, this factor weighs in favor of the stay being granted.

### C.    *Balance of Interests*

The individual Defendants in this action must choose between waiving their Fifth Amendment rights and defending themselves in the civil lawsuit or asserting the privilege and likely losing the civil case. Although the Supreme Court has held that it is not unconstitutional to force a defendant into this choice, *see Baxter v. Palmigiano,* 425 U.S. 308, 318–19, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), a court may nevertheless exercise its discretion to stay the civil case in the interests of justice. *Brock v. Tolkow,* 109 F.R.D. 116, 119 (E.D.N.Y. 1985).

The Court must balance the interested between the Plaintiff and the Defendants—in doing so it must concern itself with the harm possible to arise to each party.  In this case, staying all answers, interrogatory, and deposition discovery until the outcome of the criminal cases are resolved avoids placing the Defendants in this position.

The Plaintiffs cannot express any harm done other than the stay could push back the resolution of the civil case by several months or even years; however, again as noted in *Walsh* delays in civil cases are reasonably common.

Therefore, because of the absence of prejudice to the Plaintiff from a delay of the case, and the prejudice that could come to the Defendants, this factor weighs in favor of granting the stay.

### D.    *Duration of Stay*

A stay with a limited duration is more likely to be granted than an indefinite one. *See Landis,* 299 U.S. at 254–55, 57 S.Ct. 163 (abuse of court's discretion to grant indefinite stay without pressing need).   However, a stay for an indefinite amount of time, "pending the final outcome of another [legal action]," shall be granted and proper when "an earlier suit for the same purpose, to the end that there may not be a multiplicity of suits without substantial reason." *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760 (1931).   Furthermore, the *Hakim* court's concern about an indefinite stay may be alleviated by allowing the parties to petition the Court to lift or modify the stay if there is a change in circumstances warranting it. *See Brock,* 109 F.R.D. at 121.

Since there is another legal action pending final outcome for the same purpose, this factor weighs in favor of the stay being granted.

### III.    **Staying This Matter Would Not Cause Harm to the Public Interest**

There is no harm to the public interest in granting a stay of the civil case. Courts have denied stays where the civil case, brought by a government agency, was intended to protect the public by halting the distribution of mislabeled drugs, *see United States v. Kordel,* 397 U.S. 1, 11, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), or the dissemination of misleading information to the investing public, *see Dresser Indus.,* 628 F.2d at 1377.

As the Court stated in *Walsh,* in fact, a stay in this case would benefit the public by allowing the Government to conduct a complete, unimpeded investigation into potential criminal activity. In this case, there is no tangible harm to the public from these alleged frauds that could not be remedied by the criminal investigation.

Therefore, the public interest weighs in favor of the stay being granted.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Plaintiff's complaint has it fails to state a claim. Further, should this Court not dismiss the complaint, it should stay the proceeding until the concurrent criminal proceeding is resolved.

Date: March 12, 2022                    Respectfully Submitted,

<u>John M. Pierce</u>
<u>21550 Oxnard Street</u>
<u>3d Floor, PMB#172</u>
<u>Woodland Hills, CA 91367</u>
Tel: (213) 279-7846
Email: jpierce@johnpiercelaw.com

<u>Attorney for Defendants Jonathan PeterKlein,</u>
<u>Roberto Minuta and Joseph Pepe</u>

19

## **CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, March 12, 2022, I caused a copy of the

foregoing document to be served on all counsel through the Court's CM/ECF case filing system.


/s/ John M. Pierce
John M. Pierce