IN THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DISTRICT OF COLUMBIA. | |
| Plaintiff(s), | 1:21-CV-03267-APM |
| v. | |
| PROUD BOYS INTERNATIONAL, LLC | |
| Defendants. | |

### DEFENDANTS' CONNIE MEGGS AND KELLY MEGGS MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, Connie and Kelly Meggs, by and through undersigned counsel, respectfully jointly move the Honorable Court to dismiss the Plaintiff's five causes of action of the Complaint of the Plaintiff, pursuant to (a) Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") with respect to the causes of action which seek declaratory and injunctive relief, and further with respect to the lack of direct injury in tort; (b) FRCP Rule 12(b)(6) with respect to all of the claims for lacking foundation, and additionally because the state-based causes of action which implausibly seek to make all Defendants in this case responsible for the intervening, independent, criminal acts of others who allegedly committed treacherous acts whether intentionally or negligently, whereas Plaintiff fails to plead that these individual Defendants caused any of these acts or committed any injuries.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................... 5

Correspondence from Muriel Bowser, dated January 5, 2021, to The Honorable
Jeffrey Rosen, Acting United States Attorney General, and the Honorable
Ryan D. McCarthy, Secretary of the Army, and the Honorable Chris Miller,
Acting Secretary of Defense ........................................................................... 8

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................. 12

III.    LEGAL ARGUMENT ........................................................................... 16

    A)  Standard for Defendants' Rule 12(b)(6) Motion to Dismiss ............................... 16
    B)  Plaintiff Has Not Demonstrated Claim for Declaratory Judgment .................. 19
    C)  Plaintiff Has Not Demonstrated Irreparable Injury ................................... 20
    D)  Plaintiff Has Not Demonstrated Claim for Conspiracy ................................... 21
    E)  Plaintiff Lacks Constitutional Standing to Seek Injunctive Relief ........................ 22
    F)  Plaintiff' Claims Are Meritless as to Likelihood of Success ……............... 23
    G)  42 U.S.C. § 1985 and 1986 Fail as a Matter of Law ........................................ 23
        1)  Conflict with First Amendment Bars Claims ............................... 23
        2)  If 42 U.S.C. §1985 Claim Fails, then a Claim for
            42 U.S.C. §1986 Fails ........................................................ 28

   H)  The Remaining Counts Fail to State a Claim as
           Matter of Law, specifically Count III -V, Assault ....................... 28
   I)  Plaintiff Fails to Adequately Plead Assault Battery and
           Battery and Intentional Infliction of Emotional Distress ............................... 30
   J)  Punitive Damages Claim Fails ……….................................................. 33

IV.    CONCLUSION ........................................................................... 33

## TABLE OF AUTHORITIES

**Cases**

*Von Drake v. St Paul Travelers Ins. Co.*, 353 Fed. Appx. 901, 905, (5th Cir. 2009) .................. 30

*Agomo v. Williams*, 2003 D.C. Super. LEXIS 31 (D.C. Super. Ct. 2003).................................. 17

*Aktieselskabet v. Fame Jeans Inc.*, 525 F.3d 8, 13 (D.C. Cir. 2008).......................................... 17

*Alexis v. District of Columbia*, 44 F. Supp.2d 331, 336-37 (D.D.C. 1999) .............................. 17

*Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) ................................................................ 23

*Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009) ........................................................................ 19

*Baker v. Carr*, 369 U.S. 186, 204 (1962)................................................................................... 22

*Bates v. City of Little Rock*, 361 U.S. 516, 523, 4 L. Ed. 2d 480, 80 S. Ct. 412 (1960).............. 25

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)........................................ 17, 18

*Bond v. United States*, 572 U.S. 844, 134 S. Ct. 2077, 189 L. Ed. 2d 1, (2014) ........................ 28

*Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) .................................................... 23

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993) ................................ 25, 27

*Bray*, 506 U.S. at 286.................................................................................................................. 28

*Chambers v. Omaha Girls Club*, 629 F. Supp. 925, 941–42 (D. Neb. 1986)............................. 28

*Chen v. District of Columbia*, 808 F. Supp. 2d 252, (D.D.C. 2011)........................................... 34

*Collier v. District of Columbia*, 46 F. Supp. 3d 6, 15, (D.D.C. 2014)....................................... 33

*Davey v. Tomlinson*, 627 F. Supp. 1458, 1462 (E.D. Mich. 1986)............................................. 22

*EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 246 F. Supp. 3d 52, (D.D.C. 2017) ..... 18

*Estate of Phillips v. District of Columbia*, 257 F. Supp.2d 69, 83 (D.D.C. 2003) ...................... 22

*Exxon Co., U. S. A. v. Sofec*, Inc., 517 U. S. 830, 837 (1996) ....................................................... 31

*Farah v. Esquire Magazine*, 736 F.3d 528, 535-536, 407 U.S. App. D.C. 208, 215-216, (D.C. Cir. 2013). ................................................................................................................................ 26

*Flythe v. District of Columbia*, 2016 U.S. Dist. LEXIS 115033, \*33 ......................................... 35

*Friends of the Earth, Inc. v. Laidlaw Env 't Servs. (TOC), Inc*., 528 U.S. 167, 180-81 (2000).... 21

*Frye v. Anadarko Petroleum Corp.*, 9553 F.3d 285, 293-94 (5th Cir. 2019) .............................. 20

*FW/PBS, Inc. v. Dallas*, 493 U. S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990)............. 21

Good News Club v Milford Central School, 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001) ............................................................................................................................................. 10

*Graves v. United States,* 961 F. Supp. 314, 321 (D.D.C. 1997) ................................................. 22

*Griffin v. Breckenridge*, 403 U.S. 88, 101-102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338, 348, (1971). ...................................................................................................................................... 25, 27

*Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019)........................ 21

*Gubala v. Time Warner Cable, Inc., 846 F. 3d 909, 912 (CA7 2017)*........................................ 22

*Halberstam v. Welch*, 705 F.2d at 481 ...................................................................................... 34

*In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) ................................. 18

*Jews for Jesus, Inc.* v. *Jewish Cmty. Relations  Council  of NY., Inc.,* 968 F.2d  286,292  (2d Cir. 1992).......................................................................................................................................... 28

*Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. 1995) ......................................... 35

*Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 121, (D.D.C. 2012) .................................. 29

*Kowal, et al v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) .................... 17

*Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 51-52, (D.D.C. 2019) ..................................... 23

*LA v. Lyons*, 461 U.S. 95, 101, 103. S. Ct. 1660, 1665, 75 L.Ed. 2nd 675, 684, (1983)........ 22, 23

Lamb's Chapel v. Center Moriches Union Free School Dist., 508 U.S. 384 (1993) ................... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ..................................................... 21

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ........................................................ 20

*MedImmunte, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)................................... 20

*NAACP v. Claiborne Hardware Co. 458 U.S. 886, 908 (1982*................................... 34

*New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964) ..... 27

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ...................................................................... 23

*Powers v. Ohio*, 499 U.S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411, 1991 **U.S.** LEXIS 1857.
................................................................................................................................. 6

*Prisology, Inc. v. Fed. Bureau of Prisons,* 852 F.3d 1114, 1116 (D.C. Cir. 2017) .................... 23

*Rawlings v. District of Columbia*, 820 F. Supp. 2d 92, 107, (D.D.C. 2011) ................................ 34

Roberts vs. Haragan, 346 F.Supp.2d 853 (N.D. Tex. 2004)............................................... 10

*Rosenblatt v. Baer*, 383 U.S. 75, 85, 15 L. Ed. 2d 597, 86 S. Ct. 669 (1966) .............................. 26

*Shelley v. Kraemer*, 334 U.S. 1, 13, 92 L. Ed. 1161, 68 S. Ct. 836............................................. 28

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 578 U.S. 330, 338, 194 L. Ed. 2d 635, 643, (2016)
................................................................................................................................. 21

S*tern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342-1343, (1977) ....................... 25, 26, 27

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211-2212, 210 L. Ed. 2d 568, 590-591, (2021)21,
22

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 831-832, 103 S. Ct.
3352, 3357-3358, 77 L. Ed. 2d 1049, 1056, (1983)* .......................................... 25, 27

*United States Gypsum, Inc.*, 547 F.2d at.................................................................... 25

*United States v. Gaskins*, 402 U.S. App. D.C. 262, 273 (D.C. Cir., 2012).................................. 22

*United States v. Morrison*, 529 U.S. 598, 620-621, 120 S. Ct. 1740, 1755-1756, 146 L. Ed. 2d
658, 678, (2000) ................................................................................................... 25, 28

*Wash. Med. Ctr. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990) ....................................... 35

*Zagami v. Natural Health Trends Corp.*, 540 F. Supp. 2d 705, 709 (N.D. Tex. 2008)............... 18

## Statutes

42 U.S.C. § 1985................................................................................................ passim

42 U.S.C. § 1986................................................................................. 17, 20, 30, 35

42 U.S.C. § 1988................................................................................................ 17

Article III ............................................................................................. 21, 22, 23

## Rules

12(b)(1) ................................................................................................................ 1

FRCP Rule 12(b)(6) ................................................................................. 16, 18, 22

## Treatises

1 T. Schoenbaum, Admiralty and Maritime Law § 5-3, pp. 165-166 (2d ed. 1994) .................. 31

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d
ed. 1995)............................................................................................................ 20

57A Am. Jur. 2d, Negligence § 790, p. 701 (1989)........................................................ 31

## Other Authorities

Correspondence from Muriel Bowser, dated January 5, 2021, to The Honorable Jeffrey Rosen,
Acting United States Attorney General, and the Honorable Ryan D. McCarthy, Secretary of
the Army, and the Honorable Chris Miller, Acting Secretary of Defense. ................................ 7

## I.     INTRODUCTION

"There is no greater tyranny than that which is perpetrated under the shield of law and in the name of justice." Charles de Montesquieu.   The Complaint weaves an extended and complex theory which at its core seeks to sue those not responsible for the injuries to the Plaintiff and not to sue those who are actually responsible for assaulting MPD Officers, which is, in part, why it fails as a tort based claim – in addition to failing as a federal civil rights conspiracy claim seeking relief for alleged past injuries.

And the claims are that rest in tort, similarly, lack a foundation because they rest on an attenuated theory that the District of Columbia has standing to recover for damages related to federal property, and for injuries sustained by its employees, who are alleged to have been performing jobs, clearly controlled and directed by Employer, District of Columbia.  Plaintiff District of Columbia lacks third-party standing to vindicate the injuries of nonparties, such as MPD police officers.   Plaintiff has not shown any "hindrance to the third part[ies'] ability to protect [their] own interest[s]." *Powers v. Ohio*, 499 U.S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

By way of background, on January 5, 2021, Mayor Muriel Bowser set forth parameters for January 6th and the week, stating, in part that:

> …*The Metropolitan Police Department is prepared for this week's First Amendment Activities…*
>
> *To be clear, the District of Columbia is not requesting other federal law enforcement personnel and discourages any additional deployment without immediate notification to, and consultation with, Metropolitan Police Department if such plans are underway.  The Metropolitan Police Department is well trained and prepared to lead the law enforcement coordination and response to allow for*

*the peaceful demonstration of First Amendment rights in the District of Columbia.*
*See* Correspondence from Muriel Bowser, dated January 5, 2021, to The Honorable Jeffrey Rosen, Acting United States Attorney General, and the Honorable Ryan D. McCarthy, Secretary of the Army, and the Honorable Chris Miller, Acting Secretary of Defense. [1]

---

[1] Exh. 1 (Copy of Letter dated January 5, 2021 from Mayor Muriel Bowser to The Honorable Jeffery Rosen, et al).



**MURIEL BOWSER**
MAYOR

January 5, 2021

The Honorable Jeffery Rosen
Acting United States Attorney General
950 Pennsylvania Ave, NW
Washington, DC 20530

The Honorable Ryan D. McCarthy
Secretary of the Army
101 Army Pentagon
Washington, DC 20310

The Honorable Chris Miller
Acting Secretary of Defense
1000 Defense Pentagon
Washington, DC 20301

Dear Acting Attorney General Rosen, Secretary McCarthy, and Acting Secretary Miller:

As the law enforcement agency charged with protecting residents and visitors throughout the District of Columbia, the Metropolitan Police Department (MPD) is prepared for this week's First Amendment activities. MPD has coordinated with its federal partners, namely the US Park Police, US Capitol Police and the US Secret Service—all of whom regularly have uniformed personnel protecting federal assets in the District of Columbia. This week, MPD has additional logistical support of unarmed members of the DC National Guard, who will work under the direction of, and in coordination with, MPD.

The District of Columbia Government has not requested personnel from any other federal law enforcement agencies. To avoid confusion, we ask that any request for additional assistance be coordinated using the same process and procedures.

We are mindful that in 2020, MPD was expected to perform the demanding tasks of policing large crowds while working around unidentifiable personnel deployed in the District of Columbia without proper coordination. Unidentifiable personnel—in many cases, armed—caused confusion among residents and visitors and could become a national security threat with no way for MPD and federal law enforcement to decipher armed groups.

To be clear, the District of Columbia is not requesting other federal law enforcement personnel and discourages any additional deployment without immediate notification to, and consultation with, MPD if such plans are underway. The protection of persons and property is our utmost concern and responsibility. MPD is well trained and prepared to lead the law enforcement, coordination and response to allow for the peaceful demonstration of First Amendment rights in the District of Columbia.

Sincerely,

Muriel Bowser
Mayor

Cc: Congresswoman Eleanor Holmes Norton

The application of the First Amendment and the need for particularity can be juxtaposed against the history in front of Congress and protestors[2]: [3]

> …**But in Washington, the Capitol complex and committee hearings are by law and democratic tradition open to the public unless secret intelligence matters are being discussed.  The police who guard the Capitol complex will not ban serial disrupters from the premises unless a judge deems extraordinary circumstances warrant it.**

> "The US Capitol Police respects and protects the right of people to peaceably assemble and exercise their rights under the First Amendment" to the US constitution, spokeswoman Lt Kimberly Schneider said in a statement.  "We balance providing security with maintaining a safe and open campus that is accessible to the general public."[4]

Of course the time, place, and manner of exercising free speech may be regulated, and of course the violence committed by a very few is never acceptable.  The U.S. Capitol is "secured" -- but not closed -- 24 hours a day.  However, the Capitol complex is designed and

---

[2] In 2012, birthday-suit-clad protesters rushed House Speaker John Boehner's office when Seven naked protesters swarmed the office of Speaker John Boehner (R-OH) on Tuesday for some 20 minutes of loud chanting against cuts to AIDS funding.   *After police showed up and repeatedly threatened to arrest the protesters for indecent exposure, they eventually put on their clothes and walked out of the Speaker's office.* The three female protesters stuck around in the hallway to speak to reporters and were arrested anyway; the four male protesters appeared to get away, the organizers said.

*Nude Protesters Arrested After Storming Speaker Boehner's Office, By Sahil Kapur, Talking Points Memo, TPM, November 27, 2012,* https://talkingpointsmemo.com/dc/nude-protesters-arrested-after-storming-speaker-boehner-s-office

[3] *Why Protesters Code Pink Stay Out Of Jail*, By Daniel Nasaw, BBC News Magazine, 19 September 2014, https://www.bbc.com/news/magazine-29280937

[4] *See Id. (emphasis added).*

intended for visitation by the public, with public viewing galleries built into each Chamber, with no separation between the public and their elected representatives.  *See*, *Good News Club v Milford Central School*, 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001); *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384 (1993) (limited public forums).

That is, restrictions must still allow the speaker's speech somewhere and in a way that he or she may reasonably be heard.  In September 2004, a limited free speech zone at Texas Tech University was struck down in *Roberts vs. Haragan*, 346 F.Supp.2d 853 (N.D. Tex. 2004).  Judge Sam R. Cummings ruled "that a university policy requiring students to get prior permission before engaging in even casual free expression was not sufficiently 'narrowly tailored' to be enforced against students at this public university."  Judge Cumming forced Texas Tech to open up more areas for free speech.  Therefore, a protestor in and around the U.S. Capitol building and grounds retains at least some First Amendment rights, particularly where the federal property is established in part for elected officials to interact with their constituents and the public.  Reasonable restrictions are obviously allowable but not tantamount to a complete prohibition.

Moreover, Plaintiff cannot establish Article III standing to seek declaratory and injunctive relief, much less clear the high bar to obtaining preliminary declaratory relief.  And Plaintiff cannot meet its burden of demonstrating a "clear" or "substantial" likelihood of success on the merits, because the claims are legally defective.  Nor can Plaintiff claim a violation of 42 § 1985 or § 1986, as alleged in Count I or Count II, for reasons to include that Connie Meggs or Kelly Meggs, or even the Oath Keepers, (Plaintiff indirectly alleges Mr. or

Mrs. Meggs to be an agent of the Oath Keepers), are not State Actors.  Assuming arguendo, Mr. or Mrs. Meggs, or even the Oath Keepers, could be remain as defendants, Plaintiff does not allege with particularity or any specificity that either Mr. Meggs or the Oath Keepers, deprived Plaintiff of any constitutional rights.

And Plaintiff's alleged injuries  allegedly derive from the District's Metropolitan Police Departments' Employees' injuries.  These injuries were alleged to have occurred during the scope and performance of various MPD's employment with the District's Metropolitan Police Department -- but are not "fairly traceable" to Defendant Connie or Kelly Meggs.   The claims also must be analyzed as to the predicate that attempts to put tortious liability for third party criminal conduct on Connie or Kelly Meggs because of, at best, political affiliations and a loose organization of which unknown people, alleged to be affiliated or members in a loose organization, made various hearsay statements, political rhetoric protected by the First Amendment and other speech, not alleged to have been re-published by Connie or Kelly Meggs. Moreover, neither Connie or Kelly Meggs are alleged individually to have attacked, battered, brawled with or injured or even touched any law enforcement officers – much less Metropolitan Police Officers, nor are they alleged to have called for injury to any law enforcement, much less to the Metropolitan Police Department.

By way of background, Connie and Kelly Meggs, have not been alleged to have committed any act of violence.   Further, neither is alleged to have brought any weapons much less firearms to the District of Columbia, or to the Capitol.[5]

Instead, on January 6, 2021, a 100% perfectly-peaceful rally was held at and near an area of the Washington Mall and South Lawn of the White House between the Washington

---

[5] (See Seventh Indictment, 21cr00028; and U.S. v. Rhodes, 21cr00015.)

Monument and the Ellipse area of the White House grounds because a Candidate for President, the Incumbent President, had had a rally.  As anticipated by Mayor Bowser, there were expected First Amendment activities on January 6, 2021 and planned for that week.

In the Complaint, Plaintiff District of Columbia spends an inordinate amount of time on general allegations related to the acts, some criminal, that took place inside the Capitol on January 6, 2021.  However, the Capitol belongs to Congress, so it is not alleged to be the District's property, and as such the District lacks standing to recovery any claimed damages. And similarly, the MPD employees and as such any claim of tort fails because of the lack of third-party standing.[6]

And finally, while all facts are anticipated to be assumed as true for a Motion to Dismiss, one could submit in relation to Connie or Kelly Meggs, that not one fact is alleged that would be inconsistent with these Defendants alleged to have sought to protect and provide security as volunteers for others - not to attack Congress or stop any alleged proceedings.  And any other allegation in relation to Connie or Kelly Meggs relates to political rhetoric under the First Amendment.

---

[6] 'We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute,[]; the litigant must have a close relation to the third party, []; and there must exist some hindrance to the third party's ability to protect his or her own interests.'[]

*Powers v. Ohio*, 499 U.S. 400, 410-411, 111 S. Ct. 1364, 1370-1371, 113 L. Ed. 2d 411, 425, (1991) (*citing Department of Labor v. Triplett*, 494 U.S. 715, 720 (1990); *Singleton v. Wulff*, 428 U.S. 106 (1976), *Craig v. Boren*, 429 U.S. 190 (1976)(internal citations omitted).

## I.   STATEMENT OF MATERIAL AND UNDISPUTED FACTS

For purposes of this Motion only, based on the allegations in the Complaint, demonstrate that the Undisputed Material Facts (SMF), relevant for the purposes, Undisputed for the Motion to Dismiss, as follows:  LCvR 7(a).

1. Oath Keepers and its members present themselves Oath Keepers and its members **present themselves as a bulwark** against threats.  (ECF 1, Compl. at ¶ 66.)

2. The rules and procedures governing Oath Keepers are set forth in the group's Bylaws. (ECF 1, Compl. at ¶ 67).

3. The mission of the organization is to follow the law and the request of those who have the authority to make those requests.  Volunteer activity will be to serve as security.

   …Such individuals will form a pool of trained, organized **volunteers** who will be able to serve as the local militia **under the command of a patriotic governor loyal to the constitution**, **or if called upon by President Trump to serve the nation**. Short of being called upon by the President, governor, local Sheriff, or to provide disaster relief, members will be trained **to serve as volunteer security for local events**, churches and effective neighborhood watches for their communities.
   (ECF 1, Compl. at ¶ 77).

4. Oath Keepers pledged to have "**volunteer security teams**" at Trump rallies and on Election Day to "**protect" Trump voters**.  (ECF 1, Compl. at ¶ 86).

5. Rhodes further called upon his followers to go to the Distric**t to let President Trump know "that the people are behind him."** He continued, "I do want **some Oath Keepers to stay on the outside**, and to stay fully armed and prepared to go in armed, if they have to .... So our posture's gonna be that we're **posted outside of DC**, um, awaiting the President's orders .... We hope he will give us the orders. **We want him to declare an insurrection, and to call us up as the militia.**" (ECF 1, Compl. at ¶ 93).

6. Neither Connie or Kelly Meggs are alleged to have been "posted outside of DC" on January 6, 2021. (ECF 1, Compl. generally).

7.  Nor is there an allegation that "the President Declared an Insurrection on January 6, 2021."  (ECF 1, Compl. generally).

8.  There is no allegation that Connie or Kelly Meggs brought or attempted to bring any weapons, such as firearms, illegally into the District of Columbia.  Plaintiff alleges that "[a]fter Rhodes finished speaking, Watkins and **K. Meggs asked questions and made comments about the types of weapons that were legal in the District of Columbia.**  (ECF 1, Compl. at ¶ 94).

9.  A political rally was announced by the Campaigning Incumbent President, who had not yet conceded the Election, "On December 19, 2020, at 1:42 a.m., President Trump announced a January 6, 2021, rally in the District, tweeting: "Big protest in D.C. on January 6th. Be there, will be wild!" (ECF 1, Compl. at ¶ 107).

10. On December 19, 2020, Kelly Meggs made clear in a post on his Facebook that at the anticipated political rally, **"we" [the alliance[7]] are ready for "rioters."** (ECF 1, Compl. at ¶ 110, Figure 2).

11. Meggs further acknowledged that his group **had a plan** regarding how to position itself in relation to the "main group" of Proud Boys in order to maximize their impact. (ECF 1, Compl. at ¶ 113 and ¶ 115 (had a "plan.")).

12. On the same day, K. Meggs further stated that he would be going to the Capitol to "make it WILD" and encouraged other members to join him, saying "Gentlemen we are heading to DC pack your shit!!"  (Compl. at ¶ 114).

13. Kelly Meggs discussed legal options for protective gear, "**DC is no guns.**"(Compl. at ¶ 115, Figure 4; at ¶ 130, ¶ 182 (Members and affiliates of

---

[7]     A term undefined in K. Meggs' Facebook message.

Oath Keepers donned helmets, reinforced vests, and clothing with Oath Keepers paraphernalia.)

14. There is no allegation in the Complaint of any statement of *a plan* by Kelly Meggs in DC, other than as to *"rioters"* or *"other protestors, consistent with* *""*volunteer security teams" to "protect Trump supporters." (Compl. at ¶ 86, 110, Figure 2; and Compl.  at ¶ 116).

15. Between December 12, 2020 and January 3, 2021, Oath Keepers member Defendant K. Meggs organized approximately 10 online meetings on GoToMeeting, titled "leaders de 1/6/21 op call," "DC planning call," and "florida DC Op planning chat." K. Meggs used the code name "Gator 1" in these meetings.  (Compl. at ¶ 119).

16.  One of the few facts alleged specific to Connie Meggs is admitted *only arguendo* that, "Defendants **K. Meggs, and C. Meggs coordinated their travel** [with each other]**, and [sometime earlier] Defendant C. Meggs attended a firearms class with Defendant K. Meggs**."  (Compl. ¶ ¶ 137, 144).

17.  On January 6, 2021, the Proud Boys, Oath Keepers, and their members and affiliates-including the Individual Defendants-attended President Trump's rally. (Compl.¶ 167.)

18. Making clear that First Amendment applies to the planned activity that day, Plaintiff alleges that, '[a]t 12:17 p.m., President Trump directed his supporters to the Capitol. "We're going to walk down to the Capitol-and we're going to cheer on our brave senators and congressmen and women, and we're probably not going to be cheering so much for some of them," President Trump said [in part].' (Compl.¶ 170).

19.  It is alleged that at approximately 2:40 p.m., Oath Keepers members K. Meggs, and C. Meggs, entered the Capitol through the Rotunda door in the center of the east side of the building.  The Complaint does not allege that Connie or Kelly

Meggs remained in the Capitol, or dispute that they left the Capitol within minutes after their entry.  (Compl. ¶ 210).

20. [O]n January 5, 2021, the Federal Bureau of Investigation ("FBI") issued a warning that it had intelligence that extremists from several states would be traveling to the District to commit violence and "war" on January 6, 2021.  (Compl. ¶ 158). Despite this warning,  Mayor Muriel Bowser on January 5, 2021, Mayor Muriel Bowser set forth parameters for January 6th and the week, stating, in part that:

…*The Metropolitan Police Department is prepared for this week's First Amendment Activities…*

*To be clear, the District of Columbia is not requesting other federal law enforcement personnel **and discourages any additional deployment without immediate notification to, and consultation with, Metropolitan Police Department if such plans are underway.  The Metropolitan Police Department is well trained and prepared** to lead the law enforcement coordination and response to allow for the peaceful demonstration of First Amendment rights in the District of Columbia.*

*See*   Ex. 1, Correspondence from Muriel Bowser, dated January 5, 2021, to The Honorable Jeffrey Rosen, Acting United States Attorney General, and the Honorable Ryan D. McCarthy, Secretary of the Army, and the Honorable Chris Miller, Acting Secretary of Defense.

## II.   LEGAL ARGUMENT

In the Complaint, Plaintiff requests relief as follows:

> A. A declaratory judgment that the actions described herein constitute a violation
> of 42 U.S.C. § 1985 (1 ); 42 U.S.C. § 1986; and the torts of assault, battery, and
> intentional infliction of emotional distress.
> B. Injunctive relief enjoining Defendants from engaging in future violations of
> 42 U.S.C. § 1985(1); 42 U.S.C. § 1986;
> and the torts of assault, battery, and intentional infliction of emotional distress.
> C. Compensatory and statutory damages in an amount to be determined at trial as
> to damages incurred by the District resulting from the events alleged above.
> D. Punitive damages at an amount to be determined at trial.
> E. Attorneys' fees and court costs under 42 U.S.C. § 1988.
> F. Such other relief as the Court deems just and proper.

(ECF 1, Compl. at p. 82).

## A)  Standard for Defendants' Rule 12(b)(6) Motion to Dismiss

In deciding a FRCP Rule 12(b)(6) motion, a court "constru[es] the complaint liberally in the Plaintiff's favor, accept[ing] as true all of the factual allegations contained in the complaint, with the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet v. Fame Jeans Inc.*, 525 F.3d 8, 13 (D.C. Cir. 2008) (internal quotations and citations omitted). However, a Rule 12(b)(6) motion to dismiss permits the defendant to test whether the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b) (6) (2008).  "The court need not accept inferences drawn by Plaintiff if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal, et al v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Agomo v. Williams*, 2003 D.C. Super. LEXIS 31 (D.C. Super. Ct. 2003); *Alexis v. District of Columbia*, 44 F. Supp.2d 331, 336-37 (D.D.C. 1999).  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("a plaintiff's obligation [is] to provide the grounds of

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do").

Under either standard, however, Plaintiff failed to meet the requirements for preliminary injunctive relief and there is the obvious lack of irreparable injury, as well as the lack of any articulable claim under R.12(b)(6).

Dismissal is appropriate when a complaint, construed with all well-pleaded facts viewed in the light most favorable to Plaintiff, *see In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007); *Zagami v. Natural Health Trends Corp*., 540 F. Supp. 2d 705, 709 (N.D. Tex. 2008), fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Given the many attenuated steps between events involving the Plaintiff and the obscure, alleged actions against the Defendants, the totality of the allegations and claims are not credible or plausible under *Bell Atl. Corp. v. Twombly*.

In a general argument on "conspiracy," *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A*., 246 F. Supp. 3d 52, (D.D.C. 2017), this court held that,

> "[t]he plaintiff bears the burden of invoking the court's subject matter jurisdiction. *Arpaio v. Obama*, 797 F.3d 11, 19, 418 U.S. App. D.C. 163 (D.C. Cir. 2015).   When ruling on a Rule 12(b)(1) motion, in which the defendant challenges the plaintiff's standing to assert a claim, a federal court must presume that it "lack[s] jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006) (*quoting Renne v. Geary*, 501 U.S. 312, 316, 111 S. Ct. 2331, 115 L. Ed. 2d 288 (1991)). The burden of establishing the elements of standing "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). A plaintiff must establish standing "for each claim" and "for each form of relief sought," *DaimlerChrysler*, 547 U.S. at 352 (internal quotation marks omitted), "with the manner and degree of evidence required at the successive stages of litigation," *Lujan*, 504 U.S. at 561.

*Id.*

The Plaintiff sues on assumptions about the Defendants remote and many steps removed from any injuries suffered by the Plaintiff. There are too many "hops" and too many open-ended "maybes," passive voice claims that somebody did something or somebody said something, which may or may not have been heard by any of the Defendants much less agreed to by any of the Defendants.

Similarly, *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009) requires that allegations must be more than just "consistent with" liability. A plaintiff must allege facts that show that a defendant *actually* *is* liable, not that he could *possibly* be liable. *Ashcroft v. Iqbal* teaches that if, after allegations are proven at trial, it could still be uncertain if liability does attach, then the allegations are insufficient. The *Iqbal* test is in effect that if the allegations from the Complaint – not adding other evidence not in the Complaint – would leave a fair, unbiased, careful jury unsure at the close of the trial if defendants are liable or not, then the Complaint as filed, at the opening of the lawsuit, is subject to a motion to dismiss for failure to state a claim under FRCP Rule 12(b)(6). If the allegations in the four corners of the Complaint were all proven at trial as pled, but the liability of the defendants would remain unclear without resort to additional facts, then the Complaint fails to state a claim and is subject to dismissal.

Allegations in the passive voice, such as statements by unidentified people, and assumptions (such as that one person made a statement therefore others must have agreed with the statement, even though they might never have heard the statement made) fail to cross the line between possible liability to plausible liability. Allegations that some of the Defendants attended a demonstration and *someone* – unidentified – initiated violence fails to satisfy *Twombly* or *Iqbal* to survive a Rule 12(b)(6) motion to dismiss. Allegations that some unidentified person committed violence, or said something, or did something fail the *Twombly* and *Iqbal* standards.

### B)  Plaintiff Has Not Demonstrated Claim for Declaratory Judgment

Plaintiff seeks declaratory judgment and one or more injunctions, which appear

undefined, but derived from of 42 U.S.C. §§ 1985 (1) and 1986.    To the extent any of these

Metropolitan Police Department employees of the Plaintiff would have a judicially cognizable

claim for a declaratory action, at most it would be against the District of Columbia. After all, the

Metropolitan Police were providing law enforcement services per directives for the House and

the Senate.

"When considering a declaratory judgment action, a district court must engage in a three-

step inquiry. The court must ask:

> (1) whether an actual controversy [of legal interests] exists between the parties in the case;
>
> (2) whether it has authority to grant declaratory relief;
>
> (3) whether to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Frye v. Anadarko Petroleum Corp.*, 9553 F.3d 285, 293-94 (5th Cir. 2019) (internal citations and quotation marks omitted).
>
> With respect to the first inquiry, the Supreme Court has required that a dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts."

*MedImmunte, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and

alteration omitted).

And the standard for Injunctive Relief includes, "[a] preliminary injunction is an

extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)

(*citing* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130

(2d ed. 1995).

## C.      Plaintiff Has Not Demonstrated Irreparable Injury.

Plaintiff generally claims injunctive relief and Declaratory Relief, but fails to state any actual injury they seek to enjoin.   (*See Compl*.)  As a threshold matter, Plaintiff does not plead "concrete future injury" with particularity or otherwise, anywhere in the Amended Complaint: (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." F*riends of the Earth, Inc. v. Laidlaw Env 't Servs. (TOC), Inc*., 528 U.S. 167, 180-81 (2000); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).'

Plaintiff nevertheless omits any facts in the Complaint or any argument on this requirement, that the declaratory relief that Plaintiff requests would redress their injuries enough for Article III.  *Id*.  The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U. S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990).  Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 578 U.S. 330, 338, 194 L. Ed. 2d 635, 643, (2016).

" [A] plaintiff has standing to sue for injunctive relief when there is a 'real or immediate threat' that the party will suffer an injury in the future." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (citation omitted).  ""Even apart from that fundamental problem with their argument based on the risk of future harm, the Plaintiff did not factually establish a sufficient risk of future harm to support Article III standing." *TransUnion LLC,* 141 S. Ct. at 2211-2212 (emphasis added).  Further, Plaintiff must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness

which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions.' *LA v. Lyons*, 461 U.S. 95, 101, 103. S. Ct. 1660, 1665, 75 L.Ed. 2nd 675, 684, (1983) (*citing Baker v. Carr*, 369 U.S. 186, 204 (1962) (emphasis added)).

Nonetheless, the fundamental threshold question of Standing under Article III is lacking. "Even apart from that fundamental problem with their argument based on the risk of future harm, the Plaintiff did not factually establish a sufficient risk of future harm to support Article III standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211-2212, 210 L. Ed. 2d 568, 590-591, (2021) (*citing Clapper v. Amnesty Int'l USA, 568 U. S. 398,* at 414, n. 5, *133 S. Ct. 1138, 185 L. Ed. 2d 264*; *see also Gubala v. Time Warner Cable, Inc., 846 F. 3d 909, 912 (CA7 2017).*

### D.      Plaintiff Has Not Demonstrated Claim for Conspiracy

In criminal conspiracy, of note, "mere association, standing alone, is inadequate; an individual does not become a member of a conspiracy merely associating with conspirators known to be involved in crime." *United States v. Gaskins*, 402 U.S. App. D.C. 262, 273 (D.C. Cir., 2012) (quoting *Wardell*, 591 F.3d at 1288).

To establish the existence of an agreement, the "plaintiff must set forth more than just conclusory allegations of [the] agreement." A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss. " *Graves v. United States,* 961 F. Supp. 314, 321 (D.D.C. 1997) (dismissing conspiracy claim, holding that "plaintiff has failed to allege any facts showing the existence or establishment of an agreement" other than a "conclusory allegation" that defendants "colluded" together). *see also Estate of Phillips v. District of Columbia*, 257 F. Supp.2d 69, 83 (D.D.C. 2003) (dismissing claim where Plaintiff failed to specify that defendants how the defendants "acted in concert"); *Davey v. Tomlinson*, 627 F. Supp. 1458, 1462 (E.D. Mich. 1986) (dismissing claim where

plaintiff made no allegations of specific acts or the means by which defendants were alleged to have conspired, other than arguing "in conclusory fashion that defendants conspired to deprive him of his constitutional rights").  *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004).

### E.  Plaintiff Lacks Constitutional Standing to Seek Injunctive Relief.

Article III standing concerns subject matter jurisdiction. *Prisology, Inc. v. Fed. Bureau of Prisons,* 852 F.3d 1114, 1116 (D.C. Cir. 2017).  Similar to Rule 12(b)(6) motions the Court can draw all reasonable inferences from Plaintiff's allegations, but it may not "accept interferences that are unsupported by facts," or assume the truth of legal conclusions or give weight to "threadbare recitals of the elements of standing." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citation omitted).

In *LA v. Lyons,* the Court held that one cannot rely on past injuries for standing, *O'Shea v. Littleton*, 414 U.S. 488 (1974), in which the Court addressed "a case brought by a class of plaintiffs claiming that they had been subjected to discriminatory enforcement of the criminal law." *Los Angeles v. Lyons*, 461 U. S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)*.*

> Past wrongs were evidence bearing on "whether there is a real and immediate threat of repeated injury." But the prospect of future injury rested "on the likelihood that [Plaintiff] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners." … We could not find a case or controversy in those circumstances: the threat to the Plaintiff was not "sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses. . . .

*Lyons*, 461 U . S . at 102-103 (*internal citations omitted.*)

In *Lyons,* the Supreme Court held that the plaintiff, who alleged that a police officer

placed him in an illegal chokehold in violation of his substantive due process rights under the Fourteenth Amendment, did not have standing to seek an injunction preventing police officers from using chokeholds in the future because he did not allege facts showing "any real or immediate threat" that he would be subjected to an illegal chokehold again and, thus, no likelihood of "irreparable injury." 461 U.S. at 111.

Plaintiff's allegations rest on action by unidentified JOHN DOES who physically attacked Plaintiff's Metropolitan Police Department's employees, during the scope of employment pursuant to the training and parameters issued to them. Plaintiff's conclusory allegations of past harm fails as a matter of law to support its conclusory demand for declaratory and injunctive relief. Without a showing of irreparable harm, Plaintiff's request for a preliminary injunction should be denied as a matter of law. Absent a connection between the physical injuries Plaintiff received and Connie or Kelly's action, Plaintiff has no standing to sue. *See id.*

### F.  Plaintiff' Claims Are Meritless as to Likelihood of Success.

Even if Plaintiff had standing under irreparable injury to pursue its claims (which it does not), or had sufficiently pled the irreparable injury required to support a preliminary injunction (which it has not), the Complaint fails because Plaintiff plainly cannot demonstrate a "clear" or "substantial" likelihood of success on the merits of their claims for injunctive relief, and fails to state a tort claim. Indeed, its claims are clearly deficient in all respects.

### G.  42 U.S.C. § 1985 and 1986 Fail as a Matter of Law

### 1)  Conflict with First Amendment Bars Claims

Plaintiff brought a claim under the first clause of § 1985, which, as a preliminary matter is limited to constitutional violations by state actors.  42 USCS § 1985 (1).  Plaintiff has not

plead, and cannot show that Defendants Connie or Kelly Meggs are State Actors.  The Supreme Court in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993), as in *Carpenters*[8], as in *Morrison*[9], repeatedly held that the federal tort actions against private individuals fail, *"[a]s we have consistently held 'The Fourteenth Amendment protects the individual against state action, not against wrongs done by individuals,*[10]*"* which was the holding in *Stern v. United States Gypsum*.

'Private actors cannot violate, and thus cannot conspire to violate, another person's First, Fourth, or Fourteenth Amendment rights.'[11] [12]

Plaintiff pleads violations under 42 U.S.C. §1985 (1), but addresses claims resting in criminal law, common law and other federal statutes to argue elements or criminal or common law conspiracy – but not the requirements of §1985(1), or even the statutory requirements of the state law claims (addressed below) and otherwise appear to be making claims resting in

---

[8] *United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 831-832, 103 S. Ct. 3352, 3357-3358, 77 L. Ed. 2d 1049, 1056, (1983).*

[9] *United States v. Morrison*, 529 U.S. 598, 620-621, 120 S. Ct. 1740, 1755-1756, 146 L. Ed. 2d 658, 678, (2000).

[10] *United Bhd. of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 831-832, 103 S. Ct. 3352, 3357-3358, 77 L. Ed. 2d 1049, 1056, (1983). *("As we have consistently held 'The Fourteenth Amendment protects the individual against state action, not against wrongs done by individuals.' Williams I,* 341 U.S., at 92 (opinion of Douglas, J.)" *United States v. Price,* 383 U.S. 787, 799 (1966)).

[11] "Construction of § 1985(1) to apply a federal damage remedy to such facts would raise grave constitutional questions, because "laws which actually affect the exercise of these vital [First Amendment] rights" need not do so directly and overtly to be adjudged constitutionally offensive. *United States Gypsum, Inc.*, 547 F.2d at 1343 *(citing United Mine Workers, supra*, at 222; *Bates v. City of Little Rock*, 361 U.S. 516, 523, 4 L. Ed. 2d 480, 80 S. Ct. 412 (1960)).

12 'Under 42 U.S.C. § 1985, only the third clause (3) has been recognized as protecting the constitutional rights of "equal protection of the laws" and "equal privileges and immunities under the laws" against private conspiracies in limited contexts. *Griffin v. Breckenridge*, 403 U.S. at 101-102.  (See ECF 110 at p. 26).

negligence based on agency principles.  (Compl., ¶ 281 - ¶ 285).

The undisputed material facts show simply that neither Connie Meggs nor Kelly Meggs made one statement or action of violence, or race-based, or as against any law enforcement, much less regarding the Metropolitan Police Department.  But even assuming *arguendo*, the Supreme Court explained § 1985(1) in *Stern v. United States Gypsum, Inc.* that,

> "Construction of § 1985(1) to apply a federal damage remedy to such facts would raise grave constitutional questions, because "laws which actually affect the exercise of these vital [First Amendment] rights" need not do so directly and overtly to be adjudged constitutionally offensive.

*Id. at* 134.

The *Stern* Court explained clause (1) of 42 U.S.C. §1985, and stated, that the First Amendment cannot be avoided[13]. 'The public criticism of governmental policy and those responsible for government operations is at the very core of the constitutionally protected free speech area.'  S*tern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342-1343, (1977) (*citing*

---

[13] The Supreme Court has repeatedly extended First Amendment protection to statements that, in context, do not reasonably state or imply defamatory falsehoods in the requisite sense. In *Greenbelt*, 398 U.S. at 13-15, the Court concluded that use of the word "blackmail" to describe the plaintiff's hard-nosed negotiating tactics could not reasonably be understood to mean the plaintiff had committed a criminal offense…

> And in *Hustler Magazine*, 485 U.S. at 50, the Court held that an ad parody depicting the Rev. Jerry Falwell in an incestuous relationship with his mother could not support an emotional distress claim because the offending speech "could not reasonably have been interpreted as stating actual facts about the public figure involved." So instructed, this court held in *Weyrich*, 235 F.3d at 624-25, that a political magazine's statement that a conservative leader "began to suffer bouts of pessimism and paranoia" following his successful rise to power was not actionable because, in context, the description was merely "rhetorical sophistry, not a verifiably false attribution in fact of a 'debilitating   mental condition'" as the plaintiff had contended.

*Farah v. Esquire Magazine*, 736 F.3d 528, 535-536, 407 U.S. App. D.C. 208, 215-216, (D.C. Cir. 2013).

*Rosenblatt v. Baer*, 383 U.S. 75, 85, 15 L. Ed. 2d 597, 86 S. Ct. 669 (1966); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964)).

The Court in *St* held, "Because the count of [Plaintiff]'s complaint drawn under § 1985(1) states no actionable federal claim and no other basis for federal jurisdiction exists, the order of the district court is reversed, and this case is remanded to the district court with direction to dismiss the complaint."  547 F.2d 1329, 1346, (7th Cir. 1977) (further citations omitted).

Further, in addressing such conspiracies under 1985(3), the Supreme Court explained, "[t]he Court of Appeals accordingly erred in holding that § 1985(3) prohibits wholly private conspiracies to abridge the right of association guaranteed by the First Amendment.  *United Bhd. of Carpenters & Joiners, Local 610, 463 U.S. 831-832.*

> *"It is a commonplace that rights under the Equal Protection Clause itself arise only where there has been involvement of the State or of one acting under the color of its authority. The Equal Protection Clause 'does not . . . add anything to the rights which one citizen has under the Constitution against another.'* United States v. Cruikshank*, 92 U.S. 542, 554-555.*
> *Id.* [14]

In *Bray*, the Supreme Court held that Fourth and Fourteenth Amendment rights cannot be privately impaired.  And "[a]s JUSTICE BLACKMUN has cogently put it, the class "cannot be defined simply as the group of victims of the tortious action." 506 U.S. 263, 278 (1993).  The *Bray* Court further held and explained the fundamental predicate to its holding,  "[t]respassing upon private property is unlawful in all States, as is, in many States and localities, intentionally obstructing the entrance to private premises. These offenses may be prosecuted criminally under

---

[14] Under 42 U.S.C. § 1985, only the third clause (3) has been recognized as protecting the constitutional rights of "equal protection of the laws" and "equal privileges and immunities under the laws" ***against private conspiracies* in limited contexts.**  *Griffin v. Breckenridge*, 403 U.S. 88, 101-102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338, 348, (1971).

state law, and may also be the basis for state civil damages. They do not, however, give rise to a federal cause of action simply because their objective is to prevent the performance of abortions, any more than they do so (as we have held) when their objective is to stifle free speech." *Bray*, 506 U.S. at 286.

> "…Foremost among these limitations is the time-honored principle that the Fourteenth Amendment, by its very terms, prohibits only state action."

*Id.* *(see also United States v. Morrison*, 529 U.S. 598, 620-621, 120 S. Ct. 1740, 1755-1756, 146 L. Ed. 2d 658, 678, (2000) (*citing Shelley v. Kraemer*, 334 U.S. 1, 13, 92 L. Ed. 1161, 68 S. Ct. 836, and n. 12 (1948)))[15].

Nowhere in the Complaint does it suggest that Connie Meggs or even Kelly Meggs, or anyone he is alleged to be "close to," are State Actors.  And Plaintiff makes no allegation that either of these Defendants made any race based comments. *See Chambers v. Omaha Girls Club*, 629 F. Supp. 925, 941–42 (D. Neb. 1986) ("[T]here is a requirement that there be a *mens rea* present, i.e., that the conspirators have a particular hatred of the protected group. . . . Evidence of adverse impact, if any, simply does not fulfill the *mens rea* requirement necessary to show irrational or invidious class discrimination.").[16]  … In the absence of pleading this essential element, the Plaintiff's allegations are insufficient to state a valid Section 1985 claim.  *Kelley v.*

---

[15] Similarly, the Supreme Court further upheld the unconstitutional infringement of intruding upon a state's criminal jurisdiction when it found that the federal act, *the Chemical Weapons Convention Implementation Act* could not apply to a local crime.  *See Bond v. United States*, 572 U.S. 844, 134 S. Ct. 2077, 189 L. Ed. 2d 1, (2014) (emphasis added).

[16] Furthermore, the fact that some individuals within the employees of the District may have protected characteristics, such as race, does not transform the group itself into a protected class. *See Jews for Jesus, Inc.* v. *Jewish Cmty. Relations Council of NY., Inc.,* 968 F.2d 286,292 (2d Cir. 1992)(a "racially diverse society ... cannot, by definition, constitute a racial class").  "The plaintiffs do not allege that the defendants were motivated by a class-based, invidiously discriminatory animus."

*District of Columbia*, 893 F. Supp. 2d 115, 121, (D.D.C. 2012) (internal citations omitted).

### 2) If 42 U.S.C. §1985 claim fails, then a claim for 42 U.S.C. §1986 Fails.

Plaintiff claims generally that Defendants each [knew] that the wrongs conspired to be done and mentioned in section 1985 are about to be committed, has the power to prevent or aid in preventing these wrongs, and yet neglects or refuses to help them.

With regard to Connie or Kelly Meggs, however, as private individuals, there are no allegations that Meggs would have any control to prevent others from committing wrongs.  First, the wrongs at issue are unclear but appear to be limited only to a small number of individuals brawling with police officers and damaging property, allegedly encouraged by comments sometimes controversial and rough but still protected by the First Amendment.

Even conclusory allegations without facts that Meggs could have prevented others still unknown to Connie or Kelly Meggs (except for two court cases where two people he had never known pled guilty) fail the requirements of plausibility and credibility of *Twombly* and *Iqbal.* While perhaps other Defendants might have had the ability to prevent the "wrong" – which is still doubtful – the Meggs are not alleged to have had such power or knowledge.[17]

However, it is "[b]ecause [Plaintiff] does not have a valid § 1985 claim, he does not have a valid § 1986 claim.  This court has held that a valid § 1985 claim is a prerequisite to a § 1986 claim." *Von Drake v. St Paul Travelers Ins. Co.*, 353 Fed. Appx. 901, 905, (5th Cir. 2009) (citing *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000).

### H. The Remaining Counts Fail to State a Claim as Matter of Law, specifically Count III -V, Assault, Battery and Intentional Infliction of Emotional Distress.

The Complaint alleges: In the weeks leading up to the 2020 Presidential Election, the

---

[17] In fact Plaintiff alleges that it was Kelly Meggs, according to the Complaint who anticipated lawful conduct saying, "DC is no guns." (SMF 12).

Proud Boys, Oath Keepers, their leadership, and certain members and affiliates of both groups openly advertised their willingness to use violence to support their political agenda, including their efforts to reelect then-President Trump."  This also strains *Twombly* credibility, given the lack of specifics, legal foundation instead general innuendo – and the First Amendment protections over political speech.

On September 17, 2021, a new Chief of the USCP, Thomas Manger, as one of the government entities admitted and confessed among other things, at time stamp 00:18:10:

> **"In terms of how we engage, we handle multiple demonstrations at the Capitol and Supreme Court every day. Every day. Multiple demonstrations."[18]**

And again at time stamp 00:20:09 -- **"We have multiple demonstrations every day."** Therefore, the mere presence of demonstrators or the existence of a demonstrator cannot be a credible proximate cause.  Demonstrations at and around the U.S. Capitol – admits the then Chief of USCP – are routine and do not by themselves result in any violence or disruption. Although currently, all facts as alleged by Plaintiff for purposes of the motion are assumed arguendo, by way of background Mr. Meggs and other Oath Keepers, inserted themselves as a buffer between the opposing points of force to protect a Capitol Police Officer.  (Notice the line, and notice their backs to Officer Dunn).[42]

---

[18] "USCP News Conference on "Justice for J6" Rally" was recorded and broadcast live by C-SPAN, and is permanently recorded for viewing at:  https://www.c-span.org/video/?514736-1/us-capitol-police-prepare-threats-violence-justice-j6-rally



### I. Plaintiff Fail to Adequately Plead Assault, Battery and Intentional Infliction of Emotional Distress

Plaintiff alleges Assault on the grounds that:

297. As set forth above, **Defendants agreed to participate together in a common scheme to commit unlawful acts**, or to commit lawful acts by unlawful means, including, but not limited to, unlawfully obstructing federal officials in the performance of their constitutional duties, unlawfully inciting and carrying out a riot, unlawfully trespassing on federal property, and committing numerous acts of intimidation, threats of violence, and violence.

298. **Pursuant to and in furtherance of that common scheme, the Defendants' intentional acts caused individuals in and around the Capitol, including MPD officers, to suffer immediate apprehension of harmful or offensive bodily contact.**

(Compl. at ¶ ¶ 297, 298).

A defendant may be held liable for assault against another if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent

apprehension." A defendant may be held liable for battery if the above "requirements of (a) are

met and (b) an offensive contact with the person of the other directly or indirectly results." *Rude*

*v. Adeboyeku*, 552 F. Supp. 2d 32, 35, (D.D.C. 2008)(*citing Rogers v. Loews L'Enfant Plaza*

*Hotel*, 526 F. Supp. 523, 529 (D.D.C. 1981) (*quoting* Restatement (Second) of Torts § 21 (1979))

(*interpreting* District of Columbia law)(*quoting* Restatement (Second) of Torts § 18 (1979))

(*interpreting* District of Columbia law).

 This court dismissed the plaintiff's assault claim in a case because the plaintiff had not

alleged that the defendant "intentionally threatened him or attempted to cause him harm." *Collier*

*v. District of Columbia*, 46 F. Supp. 3d 6, 15, (D.D.C. 2014).  Similarly, 'the court explained

that, even if the defendant had proximately caused the plaintiff's harm through his negligence,

negligence was insufficient to sustain a claim of assault, which requires an intentional action.[19]

*Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 47, (D.D.C.2019)(Plaintiff has not adequately

pled a claim for assault and battery against Connie or Kelly Meggs, as there is no allegation that

Connie or Kelly Meggs ever touched any of the employees of Plaintiff, or "ever attempted or

threatened to harm any of the [employees of] Plaintiff.  See Compl. generally.  "In order to be

liable for aiding and abetting, Plaintiffs must have alleged that (1) the party or parties Defendants

aided committed [assault or] battery, (2) Defendants were generally aware of their role in the

tortious activity, and (3) Defendants knowingly and substantially assisted in the battery.").

 In *Rawlings v. District of Columbia*, 820 F. Supp. 2d 92, 107, (D.D.C. 2011) (*citing Chen*

*v. District of Columbia*, 808 F. Supp. 2d 252, (D.D.C. 2011), the court granted summary

judgment for defendant on assault and battery claim because "there is no evidence in the record

---

[19] Even if Mr. Collier were to allege negligence, such an allegation of causation could not stand in the face of the other facts alleged—that Mr. Collier was harmed due to the intentional act of a third person, Officer McRae. A chain of causation can be broken by the action of a subsequent tortfeasor or criminal, who is a "superseding cause" of harm, i.e. a cause that relieves the first tortfeasor of liability to the injured party. *See Convit*, 980 A.2d at 1126.

*Collier v. District of Columbia*, 46 F. Supp. 3d 6, 15, (D.D.C. 2014).

before the Court that [the defendant] ever touched [the plaintiff] or caused her to be touched" nor that the defendant "ever attempted or threatened to harm [the plaintiff] physically. *(Halberstam v. Welch*, 705 F.2d at 481).

"The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *NAACP v. Claiborne Hardware Co. 458 U.S. 886, 908 (1982) (upholding* the following under the First Amendment: "*If we catch any of you going in any of them racist stores, we're gonna break your damn neck.*").

The intentional torts claimed herein, whether assault or battery, or intentional infliction of emotional distress, each rest on unspecific claims of conspiracy, without setting forth facts that are direct or intentional to any specific individual; and fully lacking in particularity –the who what where when and how but rather are based on generalized claims of association – seemingly a claim of negligence, rather than intentional conduct, based on memberships in a loosely held together organization known as the Oath Keepers, or belonging to the same chat group.

The Complaint does not come close to properly alleging that Connie, much less Kelly Meggs, intentionally aided and abetted assault and battery on the MPD's employees.  It does not even allege who injured them, much less any "affirmative act" the Meggs allegedly took "in furtherance" of the assault or battery.

And the claim for

Nevertheless, the facts Plaintiff relies on are based in principles in negligence including "agency" and "vicarious liability" as the predicate action where Kelly Meggs or Connie Meggs is actually referenced – which fails to meet the standard:  "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of

such a contact, and (b) the other is thereby put in such imminent apprehension." A defendant may be held liable for battery if the above "requirements of (a) are met and (b) an offensive contact with the person of the other directly or indirectly results." *Id.*

### J. Punitive Damages Claim Fails

Plaintiff also makes a claim for punitive damages, which in DC, are available based on intentional torts, but Plaintiff has not plead anywhere close to the factual predicate necessary as to Mr. or Mrs. Meggs' alleged conduct for punitive damages.  (See ECF 1, generally). In the District of Columbia, '…Such malice is shown by commission of a tortious act "accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's right[s], or other circumstances tending to aggravate the injury."' *Flythe v. District of Columbia*, 2016 U.S. Dist. LEXIS 115033, *33 (*citing Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. 1995). (*quoting Wash. Med. Ctr. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990)) (internal quotation mark omitted).  As such, the unfounded claim for punitive damages should also be dismissed for failure to state a claim.

### III. CONCLUSION

The case fails to show irreparable injury, or a likelihood of success, and Plaintiff certainly does not allege its claims with particularity, or that Mr. or Mrs. Meggs are state actors, or that they deprived Plaintiff of any constitutional rights recognized under 42 § 1985.  The application of the First Amendment and the requisite need for particularity can be juxtaposed against the history in front of Congress and protestors, 'The men and women of peace activist group Code Pink are well known in Washington DC for loudly disrupting congressional committee hearings

and heckling politicians mid-speech. And that is just fine with the authorities."[20]

Nowhere is there any specificity as to any Plan involving Connie or even Kelly to do anything but to attend and potentially protect others at a political rally, and especially missing is the recognition of the facts pled by Plaintiff despite its own recitation of these facts in the figures provided.  (See Figure 2 and 4).  But there are no specific, particularized facts related laying a foundation or predicate to a claim for Assault, or Battery, Intentional Infliction of Emotional Distress or Punitive Damages, much less elements of any statutory authority for attorneys' fees.

Dated: March 11, 2022

Respectfully Submitted,

_____/s/ Juli Z. Haller_____
Juli Z. Haller
D.C. Bar No.466921
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W.,
S. Building, Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

*Counsel for Defendant Connie Meggs*

Respectfully Submitted,
 /s/ Jonathon A. Moseley_____
USDCDC Bar No. VA005
Virginia State Bar No. 41058
Mailing address only:
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:  (703) 656-1230
Contact@JonMoseley.com
Moseley391@gmail.com

---

[20] Id. (*Why Protesters Code Pink Stay Out Of Jail*, By Daniel Nasaw, BBC News Magazine, 19 September 2014, https://www.bbc.com/news/magazine-29280937).

*Counsel for Defendant Kelly Meggs*