# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **NO. 1:21-CV-03267-APM** |
| | ) | |
| **PROUD BOYS INTERNATIONAL, L.L.C.,** | ) | Oral Hearing Requested |
| **et al.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## DEFENDANT LAURA STEELE'S MEMORANDUM IN SUPPORT OF MOTION TO

## <u>DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

George R.A. Doumar, D.C. Bar 415446
Raj H. Patel, D.C. Bar 240973
Doumar Martin, PLLC
11350 Random Hills Road, Suite 700
Fairfax, VA 22030
Tel: 703-352-1300
Fax: 703-352-1301
gdoumar@doumarmartin.com
rpatel@doumarmartin.com

*Counsel for Laura Steele*

## **TABLE OF CONTENTS**

Table of Authorities ............................................................................................ iii

Introduction ......................................................................................................... 1

Standard of Review ............................................................................................. 4

Summary of Argument ........................................................................................ 5

Argument ............................................................................................................. 8

I.   The District Lacks Standing for the Common Law Torts Alleging Personal Injury ...... 8

    A.   The District is an Entity and Cannot be Injured in Fact by Assault or Battery ........ 8
    B.   The District is an Entity and Cannot be Injured in Fact by Emotional Distress ...... 9
    C.   The District Cannot Recover for the Injuries Suffered by Its Employees ................ 9

II.   The District Lacks Standing for the § 1985(1) Claim ..................................................... 9

    A.   The District is Not a Federal Officer or Federal Official Protected by § 1985 ........ 10
    B.   The Costs of Operating a Police Force Were Not Proximately Caused by Laura Steele .................................................................................................................. 13
    C.   The District Cannot Rely on Rights and Interests of Third Parties ......................... 15

III.   The District Cannot Recover the Costs of Health Care or Paid Leave for MPD Officers .................................................................................................................. 16

IV.   The District Fails to State a Claim in Counts I, III, IV, and V Against Laura Steele Because It Makes No Allegations That Laura Steele Agreed to the Conspiracy .......... 17

V.   The District Fails to State a Claim in Count II Because it Makes No Allegations That Ms. Steele Had the Power to Prevent the Alleged Harms By Reasonable Diligence .... 20

VI.   Plaintiff's Request for Injunctive Relief Should be Dismissed for Failure to Allege Any Real or Immediate Threat of Future Harm ............................................................ 21

Conclusion .......................................................................................................... 22

Certificate of Service .......................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

### <u>Statutes</u>

42 U.S.C. § 1985.................................................................................1, 3, 6, 9, 11, 12, 17, 20-22

42 U.S.C. § 1986.................................................................................................1, 3, 6, 20, 21

D.C. Code § 4-602 ...........................................................................................................16

D.C. Code § 5-602 ...........................................................................................................16

### <u>Rules</u>

Federal Rule of Civil Procedure 12(b)(1). ................................................................... 1, 4, 5

Federal Rule of Civil Procedure 12(b)(6). ...............................................................1, 4, 5, 18

### <u>Cases</u>

Ashcroft v. Iqbal, 556 U.S. 662 (2009)..........................................................................4

Barr v. Clinton, 370 F.3d 1196 (D.D.C. 2004) ...............................................................17

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ...........................................................4

Black Lives Matter D.C. v. Trump, 544 F. Supp. 3d (D.D.C. 2021)....................................17

Blassingame et al. v. Trump et al., 1:21-cv-008858 (D.D.C.) .................................................3

Brainerd v. Potraz, 421 F. Supp. 836 (N.D. Ill. 1976)..........................................................12

Canlis v. San Joaquin Sheriff's Posse Comitatus, 641 F.2d 711 (9th Cir. 1981) ............11, 12

Cannon v. Univ. of Chicago, 441 U.S. 677 (1979)...........................................................10

Citizens League for Civil Rights, Inc. v. Baker, 464 F. Supp. 1389 (W.D. Wis. 1978)........12

Coggins v. McQueen, 447 F. Supp. 960 (E.D.Pa.1978) ..........................................................12

Cox v. Dep't of Treasury, 2021 U.S. Dist. LEXIS 66140 (D.D.C. 2021) .............................5

Curran v. Portland Superintending School Committee, 435 F. Supp. 1063 (D. Me. 1977) ..12

DesVergnes v. Seekonk Water District, 448 F. Supp. 1256 (D. Mass. 1978) .......................12

District of Columbia v. Beretta, U.S.A., Corp., 872 A.2d 633 (D.C. 2005)..........................16

Edwards v. Aurora Loan Servs., LLC, 791 F. Supp. 2d 144 (D.D.C. 2011) ........................4

EIG Energy Fund XIV, L.P. v. Perolero Brasilerio S.A., 246 F. Supp. 3d 52 (D.D.C. 2017) ..................................................................................................................................5

Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9 (D.D.C. 2001) ...4

Griffin v. Dep't of Labor Federal Credit Union, 912 F.3d 649 (4th Cir. 2019) ...................22

Hermes v. Hein, 479 F. Supp. 820 (N.D. Ill. 1979)...............................................................12

Holmes v. Sec. Investor Protection Corp., 503 U.S. 258 (1992)...........................................15

Kedra v. City of Philadelphia, 454 F. Supp. 652 (F.D. Pa. 1978) .........................................12

Kenyatta v. Moore, 623 F. Supp. 224 (S.D. Miss. 1985) ......................................................10

Kowal, et al. v. MCI Communications Corp., 16 F.3d 1271 (D.C. Cir. 1994)......................4

Kurd v. Republic of Turkey, 374 F. Supp. 3d 37 (D.D.C. 2019) ..........................................19

Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014)............... 8, 13

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1991) .................................................. 5, 8, 15

Martin Hodas, East Coast Cinematics, Inc. v. Lindsay, 431 F. Supp. 637 (S.D.N.Y.1977) .12

Mazloum v. D.C. Metro. Police. Dep't, 522 F. Supp. 2d 24 (D.D.C. 2007) ........................9

Microthin.com, Inc. v. Siliconezone USA, LLC, No. 06C1522, 2006 U.S. Dist. LEXIS 82976 (N.D. Ill. Nov. 14, 2006)..............................................................................................9

Moore v. Trump, 1:22-cv-00010 (D.D.C.) .............................................................................3

Neely v. Blumenthal, 458 F. Supp. 945, 951 (D.D.C. 1978)..................................................12

Ntron Int'l Sales Co. v. Carroll, 714 F. Supp. 335 (N.D. Ill. 1989) .....................................9

Sierra Club v. Kempthorne, 589 F. Supp. 2d. 720 (W.D. Va. 2008)....................................4

Sines v. Kessler, 324 F. Supp. 3d 765 (W.D. Va. 2018) .......................................................19

Smith et al v. Trump et al., 1:21-cv-02265 (D.D.C.)..............................................................3

Thompson et al. v. Trump et al., 1:21-cv-0400 (D.D.C.) ........................................... 3, 15, 16

United Bhd. Of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 462 U.S. 825 (1983)......................................................................................................................................10

United States ex rel. Hoss v. Cuyler, 452 F. Supp. 256 (E.D. Pa.1978)...............................12

<u>Wagar v. Hasenkrug</u>, 486 F. Supp. 47 (D. Mont. 1980)...........................................................12

<u>Wright v. United States</u>, 993 F. Supp. 7 (D.D.C. 1997) ...........................................................9

<u>Wultz v. Islamic Republic of Iran</u>, 864 F. Supp. 2d 24 (D.D.C. 2012) ................................9

Defendant Laura Steele ("Ms. Steele") moves to dismiss all counts against her in the Amended Complaint ("Amended Complaint" or "Am. Compl.") filed by Plaintiff, the District of Columbia, (the "District") in this matter, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See generally Amended Complaint (ECF 94). There are five Counts: 42 U.S.C. §1985(1); 42 U.S.C. §1986; assault, battery, and intentional infliction of emotional distress (each of the last three counts is sub-labeled conspiracy). These are the same Counts as in the original Complaint; in its Amended Complaint, the District primarily added defendants and detailed communications among various planners leading up to January 6.

In sum, the District has no standing to bring its tort and other claims.  In addition, Ms. Steele's alleged participation does not amount to her agreement to engage in an unlawful conspiracy to obstruct the vote or commit other unlawful acts.

## **INTRODUCTION**

The Amended Complaint filed by the District covers a wide variety of pre-January 6 activities by many groups and individuals. The allegations include statements, postings, and actions that all allegedly occurred over a span of several months leading up to January 6. According to the Amended Complaint, Ms. Steele entered the picture only — at most — three days before January 6. There is no allegation or reasonable inference that Ms. Steele agreed to any of the various detailed plans and communications that the District has included in its Amended Complaint or engaged in any activity relevant to the Amended Complaint before January 3 or 4, 2021, the Sunday or Monday before the rally on Wednesday, January 6. See Am.Compl., ¶ 43; see generally affidavit and documents cited at ¶ 38 from the Meggs et al criminal complaint ("Aff.") ¶ 46, 47, 74. On or after January 3, Ms. Steele by e-mail communicated her interest in attending the rally to assist with event security but received no response from the Oath Keepers. On January

5, Ms. Steele drove from her mother's house in North Carolina to the northern Virginia area. On January 6, Ms. Steele attended the rally as one in a crowd of perhaps thousands. See Am. Compl., ¶ 43, Aff. ¶ 44-47, 74.

There are no allegations of any agreement to engage in any wrongful acts, no reciprocal communications, no plans discussed, and no goals or other conspiratorial actions by Ms. Steele. The Amended Complaint adds dozens of paragraphs detailing communications among various purported conspirators through November and December 2020, and continuing into the first days of January, allegedly discussing plans, but none of those communications are from or to Ms. Steele. For example, while the Amended Complaint details specific messages between organizers in dozens of paragraphs, Ms. Steele was not alleged to be included in any messaging groups used for planning such as those titled "Leadership intel sharing secured," Am. Compl. ¶104, "OKFL [Oath Keepers Florida] Hangout," Am. Compl. ¶113, "Dec 12 DC Security/Leadership," Am. Compl. ¶128, "Oath Keepers of Georgia," Am. Compl. ¶151, "DC OP: Jan 6 21," Am. Compl. ¶167, "OK FL DC OP Jan 6," Am. Comp. ¶ 167, or "DC Op Intel team," Am. Compl. ¶327. There is no allegation in any case that Ms. Steele had any awareness of any plans that were made in November, December, or even in the first few days of January.[1] See generally Am. Compl, ¶¶140-230.

The ongoing hearings by the U.S. House Select Committee to Investigate the January 6th attack on the United States Capitol have brought into stark relief that plans to alter the vote were hatched and rehatched by Donald Trump and a circle of people around him. The Amended

---

[1] There is a new allegation that "Steele and others brought firearms," which were left in a car in northern Virginia when Ms. Steele and others went into Washington, D.C. on January 6, 2021. See Am. Compl., ¶200. At most, that allegation suggests as to Ms. Steele that she decided not to bring a firearm into the District of Columbia and in particular that she chose not to bring a firearm to the rally that day – decisions consistent with compliance with the law in Washington, D.C, and inconsistent with any unlawful intent at the January 6 rally.

Complaint alleges in great detail that certain specific leaders of the Proud Boys and Oath Keepers and other more involved participants planned for months to take steps to overturn the legal results of the election and initiate a second term of Donald Trump's presidency. Ms. Steele is not a part of that circle of people who made plans with Donald Trump. Ms. Steele is also not among the active participants who actually planned to try to overturn the election on January 6 and communicated about such plans. The Amended Complaint does not suggest otherwise.

The District casts its net far too wide in an attempt to capture people not privy to or involved in a conspiracy to commit unlawful acts. It also asserts claims on its own behalf for harm allegedly suffered by others. Other similar cases relating to January 6 involving Section 1985(1) claims have been brought by *individuals* such as Congresspersons and Capitol police officers. See, e.g., Thompson et al. v. Trump et al., 1:21-cv-0400 (D.D.C.); Smith et al. v Trump et al., 1:21-cv-02265 (D.D.C); Blassingame et al. v. Trump, 1:21-cv-00858 (D.D.C); Moore v. Trump, 1:22-cv-00010 (D.D.C). In contrast, this case is brought by the District as a *governmental entity*.  As an *entity* plaintiff, the District attempts to plead claims under 42 U.S.C. §§ 1985 and 1986 as well as common-law torts claims committed in furtherance of a conspiracy. Also unlike the other civil cases, here Plaintiff has not sued Donald Trump. The Moore and Blassingame plaintiffs above sued only Trump. The Smith plaintiffs sued Mr. Trump and apparent ringleaders involved in months of communications and planning. [2]

The District does not have standing to bring these claims and in particular cannot state a claim against Ms. Steele.  Ms. Steele respectfully requests that all claims against her be dismissed.

---

[2] For example, the Smith plaintiffs sued Ali Alexander, the "national organizer and leader" of the Stop the Steal movement; Roger Stone, a well-known political operative and friend of Trump and promoter of false election claims; Brandon Straka, another "promoter" of stopping the vote count; and Russell Taylor, director of something called the American Phoenix Project. None of these individuals have been named as defendants in this case.

## **STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Sierra Club v. Kempthorne, 589 F.Supp.2d 720, 727 (W.D. Va. 2008). To survive a motion to dismiss, a complaint must allege more than "labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "The court need not accept inferences drawn by Plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions case in the form of factual allegations." Kowal, et al. v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The District's Amended Complaint here does not state plausible causes of action against Ms. Steele.

A motion to dismiss for lack of standing is generally considered under Rule 12(b)(1); the plaintiff bears the burden of establishing standing to confer subject matter jurisdiction, and the court has an affirmative obligation to confirm its authority. Factual allegations regarding standing thus bear closer scrutiny than under a Rule 12(b)(6) motion. Edwards v. Aurora Loan Servs., LLC, 791 F. Supp. 2d 144, 149 (D.D.C. 2011); Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001). Summarizing District of Columbia caselaw regarding standing in a civil-conspiracy context, this Court has stated:

> When ruling on a Rule 12(b)(1) motion, in which the defendant challenges the plaintiff's standing to assert a claim, a federal court must presume that it lacks jurisdiction unless the contrary appears affirmatively from the record. The burden of establishing the elements of standing rests upon the party asserting jurisdiction. A plaintiff must establish standing for each claim and for each form of relief sought[.]

EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A., 246 F. Supp. 3d 52, 66 (D.D.C.

2017) (internal citations omitted).

Whether under Rule 12(b)(1) or Rule 12(b)(6), the party invoking federal jurisdiction bears the burden of establishing the elements of a cause of action and must support them with the manner and degree of evidence required at the successive stages of the litigation. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1991). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cox v. Dep't of the Treasury, 2021 U.S. Dist. LEXIS 66140, *4 (D.D.C. 2021). The District's factual allegations are not sufficient to establish standing or to state a plausible claim for relief against Ms. Steele.

## SUMMARY OF ARGUMENT

In filing this action, the District attempts to supplement its criminal enforcement by improperly anointing itself as a civil law enforcement body pursuing extensive civil damages. A government can prosecute individuals criminally (and Ms. Steele is being criminally prosecuted), but when personal torts are involved, individual persons – not the government – must bring suit.

The District of Columbia has no standing to bring statutory or common-law tort claims on behalf of a non-particularized group of an unknown number of police officers. The statutes upon which the District relies provide standing for *individuals* to bring suits in their own names, but do not provide standing for the District as a governmental *entity* to bring suit on the individuals' behalf. The tort claims brought in this matter are not only improper, but also impractical for a government to pursue on a mass-tort-type basis.

As to standing for the Section 1985 and 1986 claims in Counts I and II, the District is not a protected "federal official." Neither can the District qualify under § 1985 as "another [who was] injured in his person or property" or under § 1986 as "the party injured." Similarly, the District's

common-law tort claims in Counts III, IV, and V fail because those claims belong to the tortiously-injured individuals, not to the governmental entity that employs those individuals.

Even if the District had standing to pursue its statutory and common-law claims, the District's Amended Complaint would still fail to state any claim against Ms. Steele. Counts I, III, IV, and V (as applied to Ms. Steele) all rely upon the conclusion that she was a member of a civil conspiracy to overturn violently the results of the presidential election. The Amended Complaint lacks any allegation that Ms. Steele herself assaulted or conspired to assault anyone.  Instead, Counts I, III, IV, and V attempt an expansive theory of *vicarious* liability whereby Ms. Steele is punished for the tortious acts of other persons who engaged in extensive pre-planning and then attacked District officers on January 6.

The Amended Complaint's sparse allegations regarding Ms. Steele's actions are insufficient to show that she entered the alleged conspiracy. Although the Amended Complaint details months of allegedly conspiratorial activities conducted by certain ringleaders, Ms. Steele's alleged participation began only a few days before January 6 and does not constitute an agreement to overturn violently (or otherwise) the election results. See Am. Compl., ¶ 43, Aff. ¶ 46, 47, 71.

Furthermore, the Amended Complaint fails to state a claim under Count II for violation of 42 U.S.C. § 1986. Count II can survive this motion to dismiss only if Count I under § 1985 survives and the District of Columbia plausibly alleges that (1) Ms. Steele had "power to prevent or aid in preventing" the conspirators' assault on the Capitol, *and* (2) Ms. Steele "could have prevented" the harms to police officers "by reasonable diligence."

According to the District's allegations in the Amended Complaint, the conspiracy was a network of perhaps a dozen or more leaders who had been communicating with each other and working in tandem for approximately two months prior to January 6.  Ms. Steele was not a member

of this network and had no power to prevent their unlawful acts. The person who had the power to prevent any unlawful action was Donald Trump, who could have concluded his rally on January 6 and told rallygoers to go home. Ms. Steele, however, had no such power. The Amended Complaint's scarce mentions of Ms. Steele's minor participation in the final three days of the supposed conspiracy fail to plead plausibly that she could have, by "reasonable diligence," "prevented" the mob of conspirators from harming MPD officers.

Various Capitol police officers and federal officials, specifically members of Congress, have already brought claims to vindicate the types of rights that the District here seeks, in part, to vindicate. Not surprisingly, these other civil suits involve individual plaintiffs and a much more targeted group of defendants, either Donald Trump alone or the active participants who actually made and agreed to plans to overturn the election results. These are the proper defendants for a civil action, not rallygoers like Ms. Steele and John and Jane Does 1-50 and hundreds if not thousands of others in the crowd.

The District's Amended Complaint is effectively a creative, novel form of mass-tort class action lawsuit (which would not qualify as a class action); however, instead of suing one large defendant, the District has sued dozens of defendants with quite different roles and levels of participation. Ms. Steele's actions, as they are alleged in the Amended Complaint, are insufficient to subject her to civil liability to the District of Columbia.

## ARGUMENT

The District's Amended Complaint should be dismissed as to Ms. Steele because it fails to establish the District's standing and fails to allege that Ms. Steele joined the conspiracy or had the power to prevent the harms allegedly caused by the true conspirators.

## I.  THE DISTRICT LACKS STANDING FOR THE COMMON LAW TORTS ALLEGING PERSONAL INJURY

A plaintiff in federal court has the burden of showing that there is proper standing, which requires (1) "injury in fact," (2) a causal connection between the injury and the conduct complained of, and (3) that the injury would be redressed by a favorable decision. Lujan 504 U.S. at 561. There also exist prudential limitations of standing; for example, a plaintiff cannot rest his claim to standing on the rights and interests of third parties. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 129 (2014).

### A.  The District is an Entity and Cannot be Injured in Fact by Assault or Battery

The first element of standing is that there must be an "injury in fact" to the party bringing suit, in this case, the District. Lujan, 504 U.S. at 561 (1991). By alleging common law torts in the Amended Complaint, the District attempts to argue that it was injured when it was assaulted, battered, and suffered emotional distress. The District, as a governmental entity, can have no injury in fact from a battery, assault, or intentional infliction of emotional distress.

The District's claims that it was the victim of assault and battery should also be dismissed as a physical impossibility. Assault is defined as "an intentional and unlawful attempt or threat, either by words or by acts, to do **physical harm** to the victim." Mazloum v. D.C. Metro. Police Dep't, 522 F. Supp. 2d 24, 41 (D.D.C. 2007). A battery is "an intentional act that causes a harmful or offensive **bodily contact**." The District, as an entity without a body, has no way to be physically harmed or receive harmful or offensive bodily contact.

8

**B.      The District is an Entity and Cannot be Injured in Fact by Emotional Distress**

The District, as an **entity** and not an individual, could never be a proper plaintiff in a claim for emotional distress. The law of intentional infliction of emotional distress states that "one who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Wultz v. Islamic Republic of Iran, 864 F. Supp. 2d 24, 36 (D.D.C. 2012). The harm suffered from the alleged emotional distress must be "serious and verifiable." Wright v United States, 963 F. Supp. 7 (D.D.C. 1997). The Amended Complaint fails to allege how Ms. Steele or any conspirator caused the District, as an entity, to suffer emotional distress. This is because the entity, of course, is incapable of experiencing emotion.

**C.      The District Cannot Recover for Injuries Suffered by Its Employees**

To the extent that the District is pursuing these tort claims for harm suffered by the police officers it employs, the District still has no standing. Courts reject claims by entities trying to recover for intentional torts against their employees. See, e.g., Ntron Int'l Sales Co. v. Carroll, 714 F. Supp. 335, 339 (N.D. Ill. 1989) ("this court rules as a matter of law that there can be no tort of assault against a corporation"); Microthin.com, Inc. v. Siliconezone USA, LLC, No. 06C1522, 2006 U.S. Dist. LEXIS 82976, at *5 (N.D. Ill. Nov. 14, 2006) (holding that a corporate entity lacked standing to assert claims of assault and battery on behalf of its employees).

**II.      THE DISTRICT LACKS STANDING FOR THE § 1985(1) CLAIM.**

Section 1985 claims are brought by individuals, not by governmental entities. The doctrine of standing is the only thing preventing those accused of crimes from having to defend against civil lawsuits from the government in perpetuity. The District fails to demonstrate standing for its § 1985 claim because the claim is entirely dependent on the rights and interests of third parties

other than the District.  The District is not a federal officer protected by § 1985 and cannot qualify as "another [who was] injured in his person or property[.]"

A.    <u>**The District is Not a Federal Officer or Federal Official Protected by § 1985**</u>.

When it was first codified in 1871, the principal purpose of § 1985 was to grant, through private remedy, some protection for federal officers/officials, who were often targeted by conspiracies of former Confederates and/or KKK members in the Reconstruction South. <u>See Kenyatta v. Moore</u>, 623 F. Supp. 224 (S.D. Miss. 1985); <u>see also United Bhd. Of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott</u>, 462 U.S. 825, 836 (1983).  The modern iteration of § 1985 is comprised of three subsections, each identifying a different class of conspiracy-targeted people. Subsection (1) identifies federal officers and officials. Subsection (2) identifies litigation parties, witnesses, and jurors. Subsection (3) identifies private citizens. The three subsections state that these three classes are protected from injury and from deprivation of rights/privileges. The statute then concludes with a single clause that provides a cause of action to the three classes enumerated above. This clause reads:

> [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The phrases "another injured in his person or property or deprived of having and exercising any right or privilege of a citizen" and "the party so injured or deprived" both refer to the above-enumerated three classes which are expressly protected from injury and deprivation. Accordingly, only members of those three classes have statutory standing to bring suit.

The District here brings suit under subsection (1) of the statute. Am. Compl. ¶ 461. That

subsection reads:

> (1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, **any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States** to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties; . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. (emphasis added).

The phrase "the party so injured or deprived" means the federal officer or official targeted by the conspiracy. Thus, the only plaintiffs with standing under § 1985(1) are federal officers and officials. Accordingly, Congresspersons are suing to vindicate rights under § 1985(1) arising out of the events of January 6. The mere "fact that a federal statute has been violated and some person is harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. Univ. of Chicago, 441 U.S. 677, 688 (1979).

The history of Section 1985 actions strongly militates against the District's expansive reading of the statute. The prototypical § 1985(1) case is a suit brought by federal officials who were prevented from discharging their duty and were injured. State officials, instead of federal officials, have tried to bring claims asserting a cause of action under the statute. Overwhelming authority confirms that even state officials are not protected by § 1985(1). Canlis v. San Joaquin Sheriff's Posse Comitatus, 641 F.2d 711, 718 (9th Cir. 1981). In Canlis, state law enforcement officers were attacked by a group of vigilantes claiming to be a "posse comitatus" while serving an arrest warrant. Id. The so-called "posse comitatus" had formed to prevent labor union representatives from legally entering a farm's private property to organize farmworkers. Id. The court held that because the plaintiffs were *state* officials, they were not protected by § 1985. Id.

(emphasis added). Those courts that have dealt with the question of proper plaintiffs have done so in passing, confirming "the obvious limitation of the statute's applicability," and cited eleven cases in a survey of the subject. Id. at 718, n. 13.[3]

The District of Columbia, as a governmental entity, does not qualify as a federal officer or official and so lacks standing to bring a claim under § 1985(1). Whether the District *employs* federal officers and officials is beside the point. The District entity *itself*, the only plaintiff in this suit, is not a federal official or officer. Congresspersons and *individual* federal policemen, for example, are federal officers who have standing, and such persons have sued Donald Trump and others under §1985(1) for injuries they sustained on January 6. The District, as a third-party entity not proximately harmed by any of the alleged actions, is not protected by § 1985(1). The statute provides a cause of action only for a plaintiff who is capable of being "injured in ***his person*** or property or deprived of having and exercising any right or privilege of a ***citizen*** of the United States." (emphasis added). The District is not a "his," it has no "person," and it is not a "citizen." If the District could sue here, seemingly every person resisting arrest or otherwise taking unlawful action could become a defendant in a civil case brought by the District separate from the criminal prosecution. The District will always lack standing for a suit under § 1985(1), so Count I must be dismissed with prejudice.

---

[3] Cases limiting plaintiffs to federal officials include the following: Wagar v. Hasenkrug, 486 F. Supp. 47, 50 (D.Mont.1980); Hermes v. Hein, 479 F. Supp. 820, 825 (N.D.Ill.1979); Citizens League for Civil Rights, Inc. v. Baker, 464 F. Supp. 1389, 1391 (W.D.Wis.1978); Neely v. Blumenthal, 458 F. Supp. 945, 951 (D.D.C.1978); Kedra v. City of Philadelphia, 454 F. Supp. 652, 662 (F.D.Pa.1978); United States ex rel. Hoss v. Cuyler, 452 F. Supp. 256, 279 (E.D.Pa.1978); DesVergnes v. Seekonk Water District, 448 F. Supp. 1256, 1260 (D.Mass.1978), modified on other grounds, 601 F.2d 9 (1st Cir. 1979); Coggins v. McQueen, 447 F. Supp. 960, 966 n.6 (E.D.Pa.1978); Curran v. Portland Superintending School Committee, 435 F. Supp. 1063, 1079 n.9 (D.Me.1977); Martin Hodas, East Coast Cinematics, Inc. v. Lindsay, 431 F. Supp. 637, 645 n.11 (S.D.N.Y.1977); Brainerd v. Potratz, 421 F. Supp. 836, 839 n.2 (N.D.Ill.1976), aff'd, 566 F.2d 1177 (7th Cir. 1977).

**B.     The Costs of Operating a Police Force Were Not Proximately Caused by Laura Steele**

The costs to dispatch MPD officers and then give some of them paid leave are the normal costs of operating a police force and are not compensable here. They are not proximately caused by any of the alleged actions of Ms. Steele. Whether an injury is proximately caused "is controlled by the nature of the statutory cause of action." Lexmark, 572 U.S. at 133. The harm must have a "sufficiently close connection to the conduct the statute prohibits." Id.

The Court in Lexmark gives the example that a competitor unlawfully forced out of business "will be able to sue for its losses, [but] same is not true of the competitor's landlord, its electric company, and other commercial parties who suffer merely as a result of the competitors' inability to meet its financial obligations." Id. The paid leave the District is suing for is the same as the landlord suing for its rent when someone else is targeted. If a federal official was hurt in discharging their duty, the official's employer has no right to be reimbursed for the paid leave given to the official. A tort for conspiracy to commit a crime proximately causing police to expend resources in preventing crime would be a circular tautological exercise. Our *criminal* justice system provides the proper avenue for governmental entities to seek punishment and levy fines and costs for the government.

Allowing recovery here would set an absurd and impractical precedent. The District's theory is: because the District feared the rally would become violent, the District dispatched extra police officers and therefore incurred damages in the form of extra "transportation, coordination, and overtime expenses." Am. Compl. ¶ 467. A letter from Mayor Muriel Bowser to the acting U.S. Attorney General, acting Secretary of Defense, and Secretary of the Army, dated the day before the January 6 rally, makes clear that the District's ramp-up of MPD police presence was decided and implemented before the events of January 6. *See* Letter from Mayor Muriel Bowser to Acting

Attorney General Rosen, et al. (January 5, 2021) ("Bowser Letter"), attached as Exhibit 1. Under the District's theory in the Amended Complaint, the District would be entitled to sue the rallygoers for the costs of dispatching the officers even if the rally had remained completely peaceful. Paragraph 459 of the District's Amended Complaint is telling in this regard, noting that the police department's costs <u>during the week of January 6</u> total millions of dollars and are still being tallied.

The District of Columbia also notes that many police officers are still being treated for mental health concerns, which will continue into the future – a claim that creates tremendous issues of proximate cause if the District could bring it, as officers face stress and trauma every day. Am. Compl., ¶459.

It cannot be that the District can sue for extensive governmental-related expenses such as police protection, or for items such as the mental health treatment of perhaps hundreds of officers, or more than a thousand, into the future. If this were the case, a Sword of Damocles, in the form of potentially millions of dollars of damages, would hang over the heads of every rallygoer based on other people's engagement in violent acts. This would represent a tremendous chilling effect on anyone attending rallies in the District of Columbia.

In Washington, D.C., where mass rallies requiring increased police presence are a common occurrence and sometimes result in vandalism or other criminal acts, it would be absurd and impractical to create a system of civil liability whereby the attendees at such rallies find themselves being sued to reimburse MPD for the cost of deploying officers for damage caused by other rallygoers. If some of the rallygoers engage in criminal activity necessitating police intervention, the District has the power to prosecute wrongdoers *criminally* and seek fines and costs. The District can point to no previous *civil* case where it has been awarded reimbursement for rally-related "transportation, coordination, and overtime expenses."

Furthermore, the Bowser Letter makes clear that the District made a discretionary decision to refuse federal assistance and to undertake the burdensome expenses that it now wants to be paid for. Accepting greater assistance from military personnel would have reduced the "transportation, coordination, and overtime" burden shouldered by MPD. However, as the Bowser Letter stated the day before the rally, "The District of Columbia Government has not requested personnel from any other federal law enforcement agencies. . .. To be clear, the District of Columbia is not requesting other federal law enforcement personnel and discourages any additional deployment[.]" See Exhibit 1. The District declined to seek additional federal assistance and now attempts to bill Ms. Steele for the extra work it chose to perform alone. There is no basis to make civil defendants monetarily liable for costs resulting from a governmental decision involving public safety at rallies.

## C.   The District Cannot Rely on Rights and Interests of Third Parties

The Amended Complaint lists three categories of damages the District seeks to recover in the lawsuit: (1) the "costs to dispatch…MPD officers…including transportation, coordination, and overtime expenses," (2) the "costs for…medical treatment for injured MPD officers," and (3) the "costs for paid leave for MPD officers who could not work as a result of their injuries." Am. Compl. ¶ 467. The District has no right to any of these categories of damages.

The District's claim for medical treatment is contingent on the harm suffered by third parties, the MPD officers. Claims completely contingent on the harm suffered by third parties have no standing. See Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 271 (1992); see also Lujan, 504 U.S. at 562. A proper claim for damages resulting from January 6 would be brought by those *individuals* that actually suffered harm.

For example, in <u>Thompson v. Trump</u>, 21-CV-00400 (APM), 2022 WL 503384 (D.D.C. Feb. 18, 2022), members of the House of Representatives and two police officers brought claims against then President Trump and other leaders and organizers of the January 6 rally. There, the court found standing because the Plaintiffs' allegation of physical and emotional injuries to *themselves* was "sufficiently concrete." <u>Id.</u> at 29-34. Here, the District improperly attempts to co-opt the injuries of its officers as its own physical and emotional injury. Alleging that the District's employees suffered harm does not give rise to any standing on behalf of the District, as the proper plaintiffs are the MPD officers themselves.

## III.  THE DISTRICT CANNOT RECOVER THE COSTS OF HEALTH CARE OR PAID LEAVE FOR MPD OFFICERS

The District has no right to recover under D.C. Code § 4-602 of the Health-Care Assistance Reimbursement Act of 1984 (HCARA) or § 5-602 of the Medical Care Recovery Act (MCRA). The HCARA grants the District "an independent, direct cause of action against [a] third party for the unreimbursed value or cost of . . . health-care assistance," whenever the District has "provide[d] health-care assistance to a beneficiary who has suffered an injury or illness under circumstances creating liability in [that] third party." The MCRA gives the district a similar right to recover health-care, funeral, and paid leave expenses from third-parties whose tortious conduct resulted in injuries to police officer and firefighters.

While the District has rights of "legal subrogation" under the § 5-602, that right is limited to "*named* individual plaintiffs for whom it has incurred medical expenses." <u>See</u> <u>District of Columbia v. Beretta, U.S.A., Corp.</u>, 872 A.2d 633, 637 (D.C. 2005) (emphasis added). There are no named Plaintiffs in this case under whom the District has subrogated rights, so no claim for damages can be made under this statute.

**IV.    THE DISTRICT FAILS TO STATE A CLAIM IN COUNTS I, III, IV, AND V
AGAINST LAURA STEELE BECAUSE IT MAKES NO ALLEGATIONS THAT
<u>LAURA STEELE AGREED TO THE CONSPIRACY</u>.**

The Amended Complaint does not allege that Ms. Steele herself caused harm to anyone;
rather, Counts I, III, IV, and V attempt a theory of *vicarious* liability whereby she is punished for
the tortious acts of others because they and she were supposedly members of the same conspiracy.
Plaintiffs in § 1985 cases must allege "the elements of civil conspiracy, including: an agreement
to take part in an unlawful action or a lawful action in an unlawful manner." <u>Barr v. Clinton</u>, 370
F.3d 1196, 1200 (D.D.C. 2004). Plaintiffs must do more than merely allege that a defendant
communicated; they must allege details "that suggest an unlawful agreement." <u>Black Lives Matter
D.C. v. Trump</u>, 544 F.Supp. 3d 15, 39 (D.D.C. 2021). To hold her liable, the District must allege
facts sufficient to show that she agreed to become a member of the conspiracy.

So what, exactly, was "the conspiracy?" In the Amended Complaint's own words, "the
Section 1985 Conspiracy was to prevent, interrupt, hinder, and impede, through force,
intimidation, and threat:" (1) election officials from counting and certifying electoral votes, (2)
President Biden and Vice President Harris from accepting office, (3) Biden and Harris from
performing the duties of President and Vice President, and also "to injure Vice President Pence's
person and property." Am. Compl. at ¶¶ 463-464. Nowhere does the Amended Complaint allege
that Ms. Steele entered into an agreement with another person to achieve any of these goals.

The only specific allegations concerning Ms. Steele, including those in the Amended
Complaint, the criminal complaint, the affidavit in support, and all other material filed against Ms.
Steele in the criminal and civil cases and allegedly incorporated in the Amended Complaint, are
that Ms. Steele: on or after January 3, sent an email communicating her interest in attending the
rally to assist with event security but received no response from the Oath Keepers, traveled to

Washington for the rally, donned protective equipment on January 6, stood in a circle on Capitol grounds, entered the Capitol and moved within for what may have been less than twenty minutes, left, and later burned the clothing she had worn inside the Capitol.[4] See Am. Compl. ¶ 43, Aff. ¶¶ 44-46, 70-73.

These individual, unilateral actions are insufficient to show that Ms. Steele ever entered into an agreement with another person to achieve the conspiracy's goals. Even if Ms. Steele associated with the alleged conspirators and was sympathetic to the conspiracy's goals, that would not mean that she was a member of the conspiracy because her association with that group would not itself be an unlawful agreement. See United States v. Gaskins, 690 F.3rd 569, 580 and n. 5 (D.C. Cir. 2012) ("mere association, standing alone, is inadequate; an individual does not become a member of a conspiracy merely by associating with conspirators known to be involved in crime."). Even participating in a violent event without an agreement to an actual conspiracy to commit wrongful acts is not a conspiracy. See Kurd v. Republic of Turkey, 374 F. Supp. 3d 37, 52 (D.D.C. 2019).

In Kurd v. Republic of Turkey, this Court has confirmed that even coordinated actions are insufficient to constitute an agreement for conspiracy purposes:

> As support for the existence of an agreement, Plaintiffs point to the fact that the Defendants broke through the police cordon in a "coordinated" fashion, that Defendants stood together shouting similar slurs, that Defendant Narin called on [the other defendants] to line up in the street, and that Defendants had the same goal in attacking [Plaintiffs]. The Court concludes that these factual allegations fail to establish the existence of an agreement. Instead, Plaintiffs merely pled "parallel conduct that could just as well be independent action." Twombly, 550 US. at 557.

---

[4] Most of these facts are gleaned from statements in the criminal case dockets. Parties in civil litigation routinely incorporate by reference individual documents like contracts, but it is extraordinary to purport to incorporate, by mere reference, entire files from other cases. A Plaintiff should provide notice of claims through factual allegations relating to the defendant in the complaint. Here, rather than allege specific allegations against specific Defendants in each count, the Plaintiff draws with an improperly broad brush to taint potentially everybody who went to the rally that day, and many who posted supporting information online, but somehow not Donald Trump.

> While Courts can infer a conspiracy from indirect evidence, Plaintiffs have not pled
> facts that would reasonably allow the court to make such an inference.

Kurd v. Republic of Turkey, 374 F. Supp. at 52 (D.D.C. 2019). Like the Defendants in Kurd, Ms. Steele's alleged "coordinated" actions with other rallygoers marching to the Capitol and entering the Capitol grounds may constitute "parallel" conduct but do not constitute a conspiratorial agreement.

Another useful comparison can be found in Sines v. Kessler, which concerned the violent "Unite the Right" rally that took place in Charlottesville in 2017. In that case, the complaint was dismissed against one of the defendants, Peinovich, despite allegations that he hosted a racist podcast, previously associated with co-defendants who were conspirators, was featured on a poster for the rally and promoted it, arrived at the rally with a "security team," and tweeted that white business owners that voiced support for equality and diversity did not mean "they will be spared somehow." Sines v. Kessler, 324 F. Supp. 3d 765, 794-95 (W.D. Va. 2018). Alleged co-conspirators, including organizations and their leaders, undertook extensive planning for months. The court held that because there were no allegations that Peinovich communicated with alleged co-conspirators to organize the event, the plaintiffs had failed to plead that he entered into an agreement to join the conspiracy. Similarly, Ms. Steele is not alleged to have participated in organizing any of the January 6th events. Her mere associations with alleged conspirators, and her presence in the Capitol, are not sufficient to establish that she entered into an agreement to join the conspiracy.

The Amended Complaint sets forth detailed allegations of plotting communications among others in the months-long conspiracy but makes only barebones allegations against Ms. Steele. The scarce allegations of Ms. Steele's communications and conduct, even if all true, do not

sufficiently support an inference that she entered into an agreement with anyone to join the conspiracy to hinder or harm election officials.

## V.     THE DISTRICT FAILS TO STATE A CLAIM IN COUNT II BECAUSE IT MAKES NO ALLEGATIONS THAT MS. STEELE HAD THE POWER TO PREVENT THE ALLEGED HARMS BY REASONABLE DILIGENCE.

To state a claim for violation of § 1986, the District must first state a claim under § 1985 and then must plausibly allege that (1) Ms. Steele had "power to prevent or aid in preventing" the conspirators' attempt to achieve their goals and (2) Ms. Steele "could have prevented" the damages "by reasonable diligence." The statute does not impose liability upon anyone who had the power to aid in preventing any aspect of the damages and failed to do so.

The statute begins by identifying the class of potential defendants as: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same[.]" Accordingly, in order for Ms. Steele to be within the class of defendants eligible for potential liability under § 1986, she must have had "power to prevent or aid in preventing" the conspirators from attempting to hinder/harm the targets of the conspiracy. The District has not alleged that Ms. Steele had any special nonpublic knowledge of the conspirators' plots that she could have disclosed to the police. Neither has the District alleged that she had any control over the alleged co-conspirators. As one woman in a rushing crowd of hundreds or even thousands, she had no power to prevent the mob from attempting to achieve its goals. She does not fall within the class of defendants eligible for potential liability.

The statute continues by stating that a defendant will be liable only to "the party injured, or his legal representatives." For the reasons discussed *supra*, the District as a governmental entity was not injured by the conspirators' alleged § 1985(1) actions. Indeed, the only party that *can* be

20

injured by the wrongs listed in that subsection is a federal official or officer, and the District is

neither. Even if this suit were being brought by a federal official or officer instead of by the District

entity, Ms. Steele still would have no liability under § 1986 because the statutory text specifies

that a defendant shall be liable only for damages "which such person by reasonable diligence could

have prevented." The statute does not require defendants to engage in Herculean efforts — only

"reasonable diligence" Further, the plaintiff must show not merely that such diligence could have

reduced the likelihood of damage, but that it would have actually "prevented" the damage.

Ms. Steele, a minor actor uninvolved in the rally's planning and lacking any position of

authority or influence over the alleged co-conspirators, could not possibly have changed the course

of January 6th and actually prevented its damage by exercising mere "reasonable diligence." The

§1986 claim against her should be dismissed.

To the extent motions filed by other Defendants address the District's standing, Defendant

Laure Steele incorporates the standing arguments made in those motions as well, including

specifically the motion to dismiss of Christopher Kuehne, Dkt., No. 97, and the motion to dismiss

of Brian Ulrich, Dkt., No. 108.

## VI.   PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED FOR FAILURE TO ALLEGE ANY REAL OR IMMEDIATE THREAT OF FUTURE HARM

The District's Prayer for Relief demands "Injunctive relief enjoining Defendants from

engaging in future violations of 42 U.S.C. § 1985(1); 42 U.S.C. § 1986; and the torts of assault,

battery, and intentional infliction of emotional distress."  However, the District's Amended

Complaint fails to plead facts that would establish standing and entitle it to injunctive relief. "A

plaintiff has standing to sue for injunctive relief when there is real or immediate threat that the

party will suffer an injury in the future. Such an injury must be imminent. . .. In short, an injury

should be 'certainly impending' to serve as the basis for standing in a suit for injunctive relief."

Griffin v. Department of Labor Federal Credit Union, 912 F.3d 649, 655 (4th Cir. 2019) (internal citations omitted). The Amended Complaint alleges *past* torts and statutory violations, but it lacks any allegation that a recurrence of these is "imminent" or "certainly impending." This is particularly true in regard to Ms. Steele, as there is no indication that she would have any intent or inclination to return to the District of Columbia to engage in such actions. Because the Amended Complaint does not allege that there is a "real or immediate threat" that she will join another conspiracy or commit a tort, the District's prayer for injunctive relief against her falls flat.

## CONCLUSION

The District lacks standing to bring the claims in its Amended Complaint. The damages alleged are not personal to the District. The District is also not a "federal official" protected under § 1985. The District has cast far too wide a net for standing purposes. In seeking to sue dozens, or possibly a hundred or more defendants, and alleging that as many as a thousand or more police officers may have suffered some January 6-related injury for which the District seeks compensation, the District's Amended Complaint makes clear why governmental entities do not have standing to bring mass-tort type claims, and why the scope of a civil conspiracy claim has reasonable limits. Prudential limits on standing exist to constrain situations just like this.

Furthermore, Ms. Steele's limited participation – and complete absence from any pre-planning in November and December in particular -- is not sufficient for any agreement or conspiracy to overthrow the government, illegally stop any vote counting, or engage in other violent, unlawful acts. The Amended Complaint fails to state a claim in Counts I, III, IV, and V against Ms. Steele because she was not part of the planning to enter into a conspiracy sufficient to that would subject her to liability. Neither does the Amended Complaint adequately allege in Count II that Ms. Steele had the power to prevent the damages flowing from the January 6 events.

Accordingly, the Court should dismiss with prejudice the District's claims against Ms. Steele.

Dated: June 17, 2022.

Respectfully submitted,

/s/ George R.A. Doumar_____
George R.A. Doumar, D.C. Bar 415446
Raj H. Patel, D.C. Bar 240973
Doumar Martin, PLLC
11350 Random Hills Road, Suite 700
Fairfax, VA 22030
Tel: 703-352-1300
Fax: 703-352-1301
gdoumar@doumarmartin.com
rpatel@doumarmartin.com

*Counsel for Laura Steele*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2022, a copy of the foregoing was sent, by ECF, to all counsel of record and registered parties.

/s/ George R.A. Doumar
George R.A. Doumar, D.C. Bar 415446
Raj H. Patel, D.C. Bar 240973
Doumar Martin, PLLC
11350 Random Hills Road, Suite 700
Fairfax, VA 22030
Tel: 703-352-1300
Fax: 703-352-1301
gdoumar@doumarmartin.com
rpatel@doumarmartin.com

*Counsel for Laura Steele*

24

# EXHIBIT 1



**MURIEL BOWSER**
MAYOR

January 5, 2021

The Honorable Jeffery Rosen
Acting United States Attorney General
950 Pennsylvania Ave, NW
Washington, DC 20530

The Honorable Ryan D. McCarthy
Secretary of the Army
101 Army Pentagon
Washington, DC 20310

The Honorable Chris Miller
Acting Secretary of Defense
1000 Defense Pentagon
Washington, DC 20301

Dear Acting Attorney General Rosen, Secretary McCarthy, and Acting Secretary Miller:

As the law enforcement agency charged with protecting residents and visitors throughout the District of Columbia, the Metropolitan Police Department (MPD) is prepared for this week's First Amendment activities. MPD has coordinated with its federal partners, namely the US Park Police, US Capitol Police and the US Secret Service—all of whom regularly have uniformed personnel protecting federal assets in the District of Columbia. This week, MPD has additional logistical support of unarmed members of the DC National Guard, who will work under the direction of, and in coordination with, MPD.

The District of Columbia Government has not requested personnel from any other federal law enforcement agencies. To avoid confusion, we ask that any request for additional assistance be coordinated using the same process and procedures.

We are mindful that in 2020, MPD was expected to perform the demanding tasks of policing large crowds while working around unidentifiable personnel deployed in the District of Columbia without proper coordination. Unidentifiable personnel—in many cases, armed—caused confusion among residents and visitors and could become a national security threat with no way for MPD and federal law enforcement to decipher armed groups.

To be clear, the District of Columbia is not requesting other federal law enforcement personnel and discourages any additional deployment without immediate notification to, and consultation with, MPD if such plans are underway. The protection of persons and property is our utmost concern and responsibility. MPD is well trained and prepared to lead the law enforcement, coordination and response to allow for the peaceful demonstration of First Amendment rights in the District of Columbia.

Sincerely,

Muriel Bowser
Mayor

Cc: Congresswoman Eleanor Holmes Norton