IN THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF
COLUMBIA

DISTRICT OF COLUMBIA.

     Plaintiff(s),

v.

PROUD BOYS INTERNATIONAL, LLC

     Defendants.

1:21-CV-03267-APM

**DEFENDANTS' CONNIE MEGGS AND KELLY MEGGS
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

     Defendants, Connie Meggs and Kelly Meggs, by and through undersigned

counsel, respectfully, jointly, move the Honorable Court to dismiss the Plaintiff's

five causes of action of the Amended Complaint, pursuant to (a) Rule 12(b)(1) of the

Federal Rules of Civil Procedure ("FRCP") with respect to the causes of action which

seek declaratory and injunctive relief, and further with respect to the lack of direct

injury in tort; (b) FRCP Rule 12(b)(6) with respect to all of the claims for lacking

foundation, and additionally because the state-based causes of action which

implausibly seek to make all Defendants in this case responsible for the

intervening, independent, criminal acts of others who allegedly committed

treacherous acts whether intentionally or negligently, whereas Plaintiff fails to

plead that these individual Defendants caused any of these acts or committed any

injuries.  In the alternative, the Plaintiff, the District's, Amended Complaint must be dismissed under Rule 8 because it is an improper shotgun complaint.

## I.    INTRODUCTION

The District accuses Defendants, Connie and Kelly Meggs, residents of Florida, of coordinating travel with others for the purposes of making it to Washington, D.C. on January 6, 2021. ECF 94 at ¶ 185-186, 197. With respect to Defendant's alleged conduct, the District claims Defendants and others "entered the Capitol grounds" and "gathered in a circle" at "[a]round 2:22 p.m." ECF 94 at ¶ 341. Defendants are claimed to have entered a "stack" with others and walked up the steps of the Capitol. ECF 94 at ¶ 345, 347.

The District alleges that the "stack" group, along with other unidentified individuals, "forcibly entered the Capitol through the Rotunda door." ECF 94 at ¶ 356. It says this group "assaulted police officers guarding the door," though it fails to identify *who* took part in the assault – whether it was the purported members of the "stack" or those "other currently unidentified" persons. ECF 94 at ¶ 356.

All defendants – including Defendants Connie and Kelly Meggs – are accused of the following counts:

1. Count 1: 42 U.S.C. § 1985(1) – conspiracy to prevent United States officials from discharging their official duties;

2. Count 2: 42 U.S.C. § 1986 – neglecting or refusing to prevent the 42 U.S.C. 1985(1) conspiracy;

3. Count 3: civil conspiracy to commit assault;

4. Count 4: civil conspiracy to commit battery; and

5. Count 5: civil conspiracy to intentionally inflict emotional distress.

## II.   LEGAL ARGUMENT AND AUTHORITY

### A. <u>The District Lacks Standing To Allege Its Causes Of Action</u>.

The District lacks standing to support its claims, "[t]o satisfy the constitutional requirements for standing, a party must have (1) an injury in fact, (2) fairly traceable to the challenged agency action, (3) that will likely be redressed by a favorable decision." *Kansas Corp. Com'n v. FERC*, 881 F.3d 924, 930 (D.C. Cir. 2018) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To establish standing at this stage, a plaintiff "must state a plausible claim that [they have] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Friends of the Earth, Inc. v. Laidlaw Env 't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015).

The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U. S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990).  Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 578 U.S. 330, 338, 194 L. Ed. 2d 635, 643, (2016).  "A 'concrete' injury must be 'de facto'; that is, it must actually exist. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), as revised (May 24, 2016) (citing Black's Law

Dictionary 479 (9th ed. 2009)). An injury is particularized where it affects "the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561 fn. 1.

" [A] plaintiff has standing to sue for injunctive relief when there is a 'real or immediate threat' that the party will suffer an injury in the future." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (citation omitted). An injury in fact is defined as an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560 (quotation omitted).

There must also be "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). However, "it is generally understood that, in establishing standing, a plaintiff must assert and rely on its own alleged injuries, not those of a third party who is not a plaintiff in the case." *New York Stock Exch. LLC v. Sec. & Exch. Comm'n*, 962 F.3d 541, 552 (D.C. Cir. 2020).

### a. <u>Count 1 Lacks Standing: 42 U.S.C. § 1985(1).</u>

With respect to Count One, its cause of action under 42 U.S.C. § 1985(1), The District does not have standing because it does not have a cause of action under the statute.

The inquiry into Plaintiff's "statutory standing asks whether the plaintiff 'has a cause of action under the statute.'" *Thompson v. Trump*, No. 21-CV-00400 (APM), 2022 WL 503384, at \*24 (D.D.C. Feb. 18, 2022) citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4, 134 S.Ct. 1377, 188 L.Ed.2d 392

(2014). That question requires a court "to determine the meaning of the congressionally enacted provision creating a cause of action." *Lexmark*, 572 U.S. at 128.

The "Deprivation Clause," found in Section 1985(3), establishes those who may proceed with a cause of action under Section 1985(1). In the context of Section 1985(1), only the party whose rights were deprived can "have an action for the recovery of damages occasioned by such injury or deprivation." 42 USC 1985(3). The Deprivation Clause "requires that a plaintiff belong to a protected class.*" Zhang Jingrong v. Chinese Anti-Cult World All.*, 287 F. Supp. 3d 290, 297 (E.D.N.Y. 2018). This requirement was added by the Supreme Court "in order to prevent § 1985(3) from being broadly—and erroneously—interpreted as providing a federal remedy for 'all tortious, conspiratorial interferences with the rights of others.'" *Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of New York, Inc.*, 968 F.2d 286, 291 (2d Cir. 1992) (*citing Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338 (1971)).

"[A] plaintiff has standing to sue for injunctive relief when there is a 'real or immediate threat' that the party will suffer an injury in the future." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (citation omitted). Because Section 1985(3) "provides no substantive rights itself but merely provides a remedy for violation of the rights it designates in order to state a claim under § 1985(3) a complaint must allege, inter alia, that the defendants who allegedly conspired sought, with discriminatory intent, to deprive the plaintiff of a right

covered by the Constitution or other laws." *Spencer v. Casavilla,* 903 F.2d 171, 174 (2d Cir. 1990) (citation omitted). In a complaint on "conspiracy," *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.,* 246 F. Supp. 3d 52, (D.D.C. 2017), this court held that, '…[a] plaintiff must establish standing "for each claim" and "for each form of relief sought," *DaimlerChrysler*, 547 U.S. at 352 (internal quotation marks omitted), "with the manner and degree of evidence required at the successive stages of litigation," *Lujan*, 504 U.S. at 561.' *Id.*

Plaintiff must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions.' *LA v. Lyons*, 461 U.S. 95, 101, 103. S. Ct. 1660, 1665, 75 L.Ed. 2nd 675, 684, (1983) (*citing Baker v. Carr*, 369 U.S. 186, 204 (1962) (emphasis added)).

Under its 1985(1) Cause of Action, Plaintiff alleges it suffered damages including costs to employ officers; costs for treating MPD officers; and costs of paid leave for MPD officers. The purported injury to a municipality, and the recovery for these types of damages, are not allowed under 42 USC 1985(3), which states there may be recovery only "whereby another is injured in his person or property."[1]

Furthermore, a municipality does not have standing under 1985(1). Similar cases brought under 1985(1) have been rejected. *See Wiseman v. Cnty of Washoe*, 44

---

[1] To the extent any of these Metropolitan Police Department employees of the Plaintiff would have a judicially cognizable claim for a declaratory action, at most it would be against the District of Columbia. After all, the Metropolitan Police were providing law enforcement services per directives for the House and the Senate.

F. App'x 776, 778 (9th Cir. 2002) (unreported) ("The Wisemans' claim under 42 U.S.C. § 1985 is similarly unavailing. Mr. Wiseman was neither a federal officer nor a party or witness in a federal proceeding; therefore 42 U.S.C. § 1985(1) and (2) do not apply."); *see also Baron v. Carson*, 410 F. Supp. 299, 300-01 (N.D. Ill. 1976) (holding that a member of a county board "does not fall within the purview" of 42 U.S.C. § 1985(1) and dismissing that count for lack of subject matter jurisdiction).

The District also lacks standing because it has not sufficiently claimed to have suffered an injury caused by Defendant. Were Defendant Connie Meggs not present, the District would have sustained the same purported "injuries" and "damages." And the District does not suggest otherwise, as its Amended Complaint is devoid of details concerning the particular damages caused by these Defendants.

The standard for Injunctive Relief includes, "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*citing* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995). Plaintiff cannot establish Article III standing to seek declaratory and injunctive relief, much less clear the high bar to obtaining preliminary declaratory relief.

### b. <u>Count 2 Lacks Standing: 42 U.S.C. § 1986.</u>

Section 1986 states:

> "Every person who, having knowledge that any of the wrongs conspired
> to be done, and mentioned in section 1985 of this title, are about to be
> committed, and having power to prevent or aid in preventing the
> commission of the same, neglects or refuses so to do, if such wrongful act

be committed, shall be liable to the party injured, or his legal
representatives, for all damages caused by such wrongful act, which
such person by reasonable diligence could have prevented[.]

42 U.S.C.A. § 1986 (West).

"Liability under § 1986 is derivative of § 1985 liability, i.e., there can be no
violation of § 1986 without a violation of § 1985." *Jews for Jesus, Inc. v. Jewish Cmty.
Rels. Council of New York, Inc.*, 968 F.2d 286, 292 (2d Cir. 1992). In other words, "a
colorable claim under § 1956 is a prerequisite to stating an adequate claim for neglect
to prevent under § 1986." *Burnett v. Sharma*, 511 F. Supp. 2d 136, 145 (D.D.C. 2007)
(citing *Thomas v. News World Commc'ns*, 681 F.Supp. 55, 72 (D.D.C. 1988)). Because
the District fails to state a claim under Section 1985, it cannot proceed with a claim
under Section 1986. *See Burnett*, 511 F. Supp. 2d at 145 ("Because the complaint fails
to state a claim under § 1985, plaintiff cannot maintain a claim under § 1986.").

### c. There is no Standing for Count 3 Conspiracy to Commit (Assault), Count 4 Conspiracy to Commit (Battery), and Count 5 Intentional Infliction of Emotional Distress

With regard to Count 3, the District alleges "the Defendants' intentional acts
caused individuals in and around the Capitol, including MPD officers, to suffer
immediate apprehension of harmful or offensive bodily contact." ECF 94 at ¶ 479.
And as to Count 4, the District claims "the Defendants' intentional actions caused
harmful and offensive bodily contact with individuals in and around the Capitol,
including MPD officers." ECF 94 at ¶ 484.

The District does not have standing to allege these causes of action, as it has
not suffered injury in fact. The constitutional requirements for standing make clear

that the District's injury must be "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation omitted).

The District cannot – as it does so here – claim the injuries of another for itself. "Ordinarily, a party 'must assert his own legal rights' and 'cannot rest his claim to relief on the legal rights ... of third parties.'" *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). "[I]n establishing standing, a plaintiff must assert and rely on its own alleged injuries, not those of a third party who is not a plaintiff in the case." *New York Stock Exch. LLC v. Sec. & Exch. Comm'n*, 962 F.3d 541, 552 (D.C. Cir. 2020).

Further, the District spends an inordinate amount of time on general allegations related to the acts, some criminal, that took place inside the Capitol on January 6, 2021.  However, the Capitol belongs to Congress, so it is not alleged to be the District's property, and as such the District lacks standing to recovery any claimed damages.  And similarly, the MPD employees and as such any claim of tort fails because of the lack of third-party standing.[2]

## B. <u>All Counts Must Be Dismissed Under Rule 12(B)(6).</u>

---

[2] 'We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.'  *Powers v. Ohio*, 499 U.S. 400, 410-411, 111 S. Ct. 1364, 1370-1371, 113 L. Ed. 2d 411, 425, (1991) (*citing Department of Labor v. Triplett*, 494 U.S. 715, 720 (1990); *Singleton v. Wulff*, 428 U.S. 106 (1976), *Craig v. Boren*, 429 U.S. 190 (1976)(internal citations omitted).

a. **Legal Standard**

In addition to its standing arguments, Defendant requests the Court dismiss the Amended Complaint under Rule 12(b)(6). The District has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a FRCP Rule 12(b)(6) motion, a court "constru[es] the complaint liberally in the Plaintiff's favor, accept[ing] as true all of the factual allegations contained in the complaint, with the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet v. Fame Jeans Inc.*, 525 F.3d 8, 13 (D.C. Cir. 2008) (internal quotations and citations omitted).  However, a Rule 12(b)(6) motion to dismiss permits the defendant to test whether the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b) (6) (2008).

In considering a Rule 12(b)(6) motion, a court need not "assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (citations omitted) (cleaned up). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully."

The District has not stated a claim upon which relief can be granted. Even if this Court were to accept the allegations in the Amended Complaint as true, the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. 662 at 678. In deciding a FRCP Rule 12(b)(6) motion, a court "constru[es] the complaint liberally in the Plaintiff's favor, accept[ing] as true all of the factual allegations contained in the complaint, with the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet v. Fame Jeans Inc.*, 525 F.3d 8, 13 (D.C. Cir. 2008) (internal quotations and citations omitted). However, a Rule 12(b)(6) motion to dismiss permits the defendant to test whether the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b) (6) (2008).

"The court need not accept inferences drawn by Plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal, et al v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Agomo v. Williams*, 2003 D.C. Super. LEXIS 31 (D.C. Super. Ct. 2003); *Alexis v. District of Columbia*, 44 F. Supp.2d 331, 336-37 (D.D.C. 1999). *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("a plaintiff's obligation [is] to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do").

One could submit in relation to Connie or Kelly Meggs, that not one fact is alleged that would be inconsistent with these Defendants alleged to have sought to

protect and provide security as volunteers for others - not to attack Congress or stop any alleged proceedings.  And any other allegation in relation to Connie or Kelly Meggs relates to political rhetoric under the First Amendment.

The claims must be analyzed as to the predicate that attempts to put tortious liability for third party criminal conduct on Connie or Kelly Meggs because of, at best, political affiliations and a loose organization of which unknown people, alleged to be affiliated or members in a loose organization, made various hearsay statements, political rhetoric protected by the First Amendment and other speech. Moreover, *neither Connie or Kelly Meggs* are alleged individually to have attacked, battered, brawled with or injured or even touched any law enforcement officers – much less Metropolitan Police Officers, nor are they alleged to have called for injury to any law enforcement, much less to the Metropolitan Police Department.

Neither of the Meggs' is alleged to have brought any weapons, including firearms to the District of Columbia or to the Capitol, nor are they alleged to have assaulted or battered anyone.  The Plaintiff sues on assumptions about the Defendants, remote and many steps removed from any injuries suffered by the Plaintiff.

### b. <u>1985(1) Fails As A Matter Of Law</u>

Plaintiff brought a claim under the first clause of § 1985, which, as a preliminary matter is limited to constitutional violations by state actors.  42 USCS § 1985 (1).  Plaintiff has not plead, and cannot show that Defendants Connie or Kelly Meggs are State Actors.  'Private actors cannot violate, and thus cannot

12

conspire to violate, another person's First, Fourth, or Fourteenth Amendment rights.'[3]  The Supreme Court in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993), as in *Carpenters[4]*, as in *Morrison*, repeatedly held that the federal tort actions against private individuals fail, *"[a]s we have consistently held 'The Fourteenth Amendment protects the individual against state action, not against wrongs done by individuals,[10]"* which was the holding in *Stern v. United States Gypsum.*

Plaintiff pleads violations under 42 U.S.C. §1985 (1), but addresses claims resting in criminal law, common law and other federal statutes to argue elements or criminal or common law conspiracy – but not the requirements of §1985(1), or even the statutory requirements of the state law claims (addressed below) and otherwise appear to be making claims resting in civil conspiracy but the Supreme Court explained § 1985(1) in *Stern v. United States Gypsum, Inc.* that,  "Construction of § 1985(1) to apply a federal damage remedy to such facts would raise grave constitutional questions, because "laws which actually affect the exercise of these

---

[3] "Construction of § 1985(1) to apply a federal damage remedy to such facts would raise grave constitutional questions, because "laws which actually affect the exercise of these vital [First Amendment] rights" need not do so directly and overtly to be adjudged constitutionally offensive.  *United States Gypsum, Inc.*, 547 F.2d at 1343 *(citing United Mine Workers, supra*, at 222; *Bates v. City of Little Rock*, 361 U.S. 516, 523, 4 L. Ed. 2d 480, 80 S. Ct. 412 (1960)).
[4] *United Bhd. of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 831-832, 103 S. Ct. 3352, 3357-3358, 77 L. Ed. 2d 1049, 1056, (1983). *("As we have consistently held 'The Fourteenth Amendment protects the individual against state action, not against wrongs done by individuals.' Williams I*, 341 U.S., at 92 (opinion of Douglas, J.)" *United States v. Price,* 383 U.S. 787, 799 (1966)).

vital [First Amendment] rights" need not do so directly and overtly to be adjudged constitutionally offensive. *Id.* at 134. The *Stern* Court explained clause (1) of 42 U.S.C. §1985, and stated, that the First Amendment cannot be avoided. *Id. (see also, Chambers v. Omaha Girls Club,* 629 F. Supp. 925, 941–42 (D. Neb. 1986) *("[T]here is a requirement that there be a mens rea present, i.e., that the conspirators have a particular hatred of the protected group. . . . Evidence of adverse impact, if any, simply does not fulfill the mens rea requirement necessary to show irrational or invidious class discrimination.").*

Further, in addressing such conspiracies under 1985(3), the Court explained, "[t]he Court of Appeals accordingly erred in holding that § 1985(3) prohibits wholly private conspiracies to abridge the right of association guaranteed by the First Amendment. *United Bhd. of Carpenters & Joiners, Local 610*, 463 U.S. 831-832. In *Bray v. Alexandria Women's Health Clinic*, the Supreme Court held that Fourth and Fourteenth Amendment rights cannot be privately impaired. 506 U.S. 263, 278 (1993).

Even conclusory allegations without facts that Meggs could have prevented others still unknown to Connie or Kelly Meggs (except for a court case where people he had never known pled guilty) fail the requirements of plausibility and credibility of *Twombly* and *Iqbal.* While perhaps other Defendants might have had the ability to prevent the "wrong," which is still doubtful, the Meggs are not alleged to have had such power or knowledge.

14

### c.  Civil Conspiracy fails as a Matter of Law

A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss. " *Graves v. United States,* 961 F. Supp. 314, 321 (D.D.C. 1997) (dismissing conspiracy claim, holding that "plaintiff has failed to allege any facts showing the existence or establishment of an agreement" other than a "conclusory allegation" that defendants "colluded" together), *(see also, Estate of Phillips v. District of Columbia*, 257 F. Supp.2d 69, 83 (D.D.C. 2003) (dismissing claim where Plaintiff failed to specify that defendants how the defendants "acted in concert")); *Davey v. Tomlinson*, 627 F. Supp. 1458, 1462 (E.D. Mich. 1986) (dismissing claim where plaintiff made no allegations of specific acts or the means by which defendants were alleged to have conspired, other than arguing "in conclusory fashion that defendants conspired to deprive him of his constitutional rights"). *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004).

In the District of Columbia, civil conspiracy has four elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Second Amendment Found. v. United States Conf. of Mayors*, 274 F.3d 521, 524, (D.C. Circuit 2001) (*citing Halberstam v. Welch*, 227 U.S. App. D.C. 167, 705 F.2d 472, 477 (D.C. Cir. 1983).

'While civil conspiracies share some similarities with criminal conspiracies,

they are principally distinct in that, for a Court to impose liability, the underlying unlawful act must cause some injury. See 42 U.S.C. § 1985(3).' *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 181, (D.D.C. 2018)(further citations omitted).  Similarly, the scope of the conspiracies relevant to plaintiffs' tort law claims depends on the underlying tortious acts, *see Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 241 (D.D.C. 2007), for there is no independent tort of "civil conspiracy." *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 176, (D.D.C. 2018) (*citing Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000).

The court further explained, '[t]he same conclusion follows for acts of concealment that postdate the conclusion of the conspiracies. Even in the context of criminal conspiracies, acts of concealment that follow completion of the conspiracies' main objective are generally not considered to be part of the conspiracy, *see Grunewald v. United States*, 353 U.S. 391, 402, 77 S. Ct. 963, 1 L. Ed. 2d 931 (1957), and courts have applied *Grunewald* and its progeny to civil conspiracies. *Id.* at 182 (*citing* e.g., *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1118, 288 U.S. App. D.C. 157 (D.C. Cir. 1991)).

"[M]ere association, standing alone, is inadequate; an individual does not become a member of a conspiracy merely associating with conspirators known to be involved in crime." *United States v. Gaskins*, 402 U.S. App. D.C. 262, 273 (D.C. Cir., 2012) (*quoting Wardell*, 591 F.3d at 1288)(*See United States v. Dellosantos*, 649 F.3d 109, 115 (1st Cir. 2011) ("The agreement is the *sine qua non* of a conspiracy, and this element is not supplied by mere knowledge of an illegal activity . . . , let alone by mere association with

other conspirators." (internal quotation marks omitted)); *United States v. Diaz*, 637 F.3d 592, 602 (5th Cir. 2011) ("If all that was shown was a defendant's . . . 'close association with conspirators,' jurors would not be entitled to infer participation in the conspiracy." (internal quotation marks omitted)); *Nusraty*, 867 F.2d at 764 ("[M]ere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement.").

There are no specific allegations as to Connie Meggs agreement to any unlawful act, much less to commit an assault and battery.  (*See* Am. Compl. at 51, 186, 197, 198, 244, 301, 341, 345).  A defendant may be held liable for assault against another if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." A defendant may be held liable for battery if the above "requirements of (a) are met and (b) an offensive contact with the person of the other directly or indirectly results." *Rude v. Adeboyeku*, 552 F. Supp. 2d 32, 35, (D.D.C. 2008)(*citing Rogers v. Loews L'Enfant Plaza Hotel*, 526 F. Supp. 523, 529 (D.D.C. 1981) (*quoting* Restatement (Second) of Torts § 21 (1979)) (*interpreting* District of Columbia law(*quoting* Restatement (Second) of Torts § 18 (1979)) (*interpreting* District of Columbia law).

This court dismissed the plaintiff's assault claim in a case because the plaintiff had not alleged that the defendant "intentionally threatened him or attempted to cause him harm." *Collier v. District of Columbia*, 46 F. Supp. 3d 6, 15, (D.D.C. 2014). A defendant may be held liable for assault against another if "(a) he

acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." A defendant may be held liable for battery if the above "requirements of (a) are met and (b) an offensive contact with the person of the other directly or indirectly results." *Rude v. Adeboyeku*, 552 F. Supp. 2d 32, 35, (D.D.C. 2008)(*citing Rogers v. Loews L'Enfant Plaza Hotel*, 526 F. Supp. 523, 529 (D.D.C. 1981) (*quoting* Restatement (Second) of Torts § 21 (1979)) (*interpreting* District of Columbia law)(*quoting* Restatement (Second) of Torts § 18 (1979)) (*interpreting* District of Columbia law).  This court dismissed the plaintiff's assault claim in a case because the plaintiff had not alleged that the defendant "intentionally threatened him or attempted to cause him harm." *Collier v. District of Columbia*, 46 F. Supp. 3d 6, 15, (D.D.C. 2014).

Mrs. Connie Meggs gets repeatedly lumped in with other defendants, or conclusory allegations are made, but generally she appears to be included for "guilt by association."  Similarly despite more statements made, there is no specific allegation that Kelly Meggs agreed to use any force to enter the Capitol, much less that Mr. Meggs affirmatively sanctioned the use of force against any police officers – or that he did.  (See *Id*. at ¶¶356, 375)

As a highly relevant fact, Defendant Kelly Meggs is not actually charged with any violence such as assault or weapons violations.  (*See U.S. v. Rhodes*, generally; nor does the Amended Complaint allege that, *see id.* generally).  There are no specific allegations that Mr. Meggs destroyed any property - or agreed to do so.  (see

id. generally).  There are no allegations Mr. or Mrs. Meggs or others in this

Indictment brought weapons from the alleged "QRF" to the District of Columbia.

(*see id.* generally).

Mr. Meggs is alleged to have paid for two rooms in Arlington, Virginia.  (*Id.* at

¶186). Mr. Meggs is alleged with specifics only as to communications about a "QRF

location" and a posting of a DC Map regarding QRF and the closing of bridges and

being a ground team lead.  (*Id.* at ¶195).  He is further alleged to have said regarding,

"ammo, I am checking on as far as what they will have for us ***if SHTF***…just in case"

(*Id.* at ¶ 176 (emphasis added)).

Obviously, 'If S--- Hit the Fan" does not mean or suggest a plan to commit

assault and battery that came to a fruition.  The allegations at ¶ 375 continue to be

vague where it states that:

> Oath Keepers member Dolan and Defendants Crowl, Hackett,
> Harrelson, Watkins, Moerschel, S. Parker, Young, Steele, K. Meggs, and
> C. Meggs, as well as other unidentified John and Jane Doe Defendants
> in the group, *also joined the larger crowd,* pushing past law enforcement
> who attempted to stop them.
> (Id.)

The question becomes who specifically "assaulted these law enforcement

officers."  Mr. Meggs is not specifically alleged to have committed violence nor to have

made contact physically with law enforcement officers, nor told anyone to commit an

assault and battery on a police officer whether inside or around the Capitol.  Having

weapons stored in Virginia is not actually illegal, and thus there are no allegation of

weapons violations.

Mr. Meggs is alleged to have subsequently written in a message "We aren't quitting!! We are reloading!!" which even if true, constitutes imagery / rhetoric, since there are no actions alleged of actual use of guns being reloaded, it stands alone without misconduct to corroborate it.  (*Id.* at ¶425.)  "On January 10, 2021 James sent Meggs a message asking if Meggs and other Florida Oath Keepers were coming to Texas, and Meggs responded, "**Fl stays home until shots fired**!"  (*Id.* at ¶ 434).  Again there is no allegation that Mr. Meggs agreed to any unlawful conduct such as assault and battery.  It is again rhetorical speech, and he is not alleged to have agreed to any misconduct having followed that statement.  Undisputedly **there are no allegations** regarding Mr. Meggs having a **specific plan** on "*continuing to plot, after January 6, 2021, to oppose by force the lawful transfer of presidential power.*"  (*Id.* at ¶111 (the allegation includes the qualifying statement *by Rhodes*, "…[s]o our posture's gonna be that we're posted outside of DC, um, awaiting the President's orders. . . . We hope he will give us the orders. We want him to declare an insurrection, and to call us up as the militia.) Lacking further are any specific allegations regarding a specific plan to commit any assault or battery. See also *Id.* at ¶207 ('…Rhodes urged President Trump to use military force to stop the lawful transfer of presidential power and described January 6th as "a hard constitutional deadline" by which to do so.')

Following these allegations, a litany of alleged statements follow by various members of the different Oath Keepers groups, and the Proud Boys but lacking is any specific response from Mr. Meggs to agree to any unlawful act.  Instead Mr.

Meggs is quoted in the Amended Complaint as saying that, "we need to make those senators very uncomfortable with all of us *being a few hundred feet away*." (*Id*. at ¶ 211 (emphasis added)).   That is what protesters do at Congress.  And a loose association with Rhodes, does not equate to a conspiracy.

Instead, the allegations emphasize that it is Defendant Rhodes repeatedly calls for President Trump to invoke the Insurrection Act – which never actually happened – nor is alleged to have, and undisputedly, no defendant is alleged to have fired any gun from the alleged QRF.   The Amended Complaint alleges that,  "Later, Meggs, Harrelson, Watkins, Hackett, Moerschel, and others joined an invitation-only Signal group chat titled "OK FL DC OP Jan 6" ("Florida Signal Chat.")  Meggs was an Administrator of the Chat with Mr. Harrelson.  (*Id*. at ¶167).  Again, being in a chat group, is not by definition a conspiratorial act.

### d.  Count 5: Intentional Infliction of Emotional Distress

In order to prove the tort of intentional infliction of emotional distress, 'a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff [to suffer] severe emotional distress.'" *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013), citing *Baltimore v. District of Columbia*, 10 A.3d 1141, 1155 (D.C.2011). Despite these obvious requirements, Plaintiff does not allege it suffered the high standard of severe emotional distress, which requires "emotional distress of so acute a nature that harmful physical consequences might be not unlikely to result." *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C.2007). And how could it?  Plaintiff "is a

municipal corporation and is the local government for the territory constituting the permanent seat of the government of the United States." ECF 94 at ¶ 10.

Unable to meet its burden, Plaintiff claims injury for the emotional distress of others, arguing Defendants' conduct, in conjunction with others, "intentionally or recklessly caused MPD officers to suffer from severe emotional distress." ECF 94 at ¶ 489. For this, Plaintiff states Defendants are liable "for the resulting damage." ECF 94 at ¶ 490.

Plaintiff's theory that Defendants may be liable for a "conspiracy" to cause, or a "conspiracy" that caused, intentional infliction of emotional distress to another also fails. Instead, there must be proximate cause of "emotional distress of so acute a nature that harmful physical consequences might be not unlikely to result." *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. Cir. 2007). And nowhere in Plaintiff's Amended Complaint does it allege these Defendants, the Meggs' proximately caused severe emotional distress.

### C. The Amended Complaint Fails The Notice And Pleading Requirements Under Rule 8.

#### a. Legal Standard

Rule 8 requires a complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). They must provide "fair notice of the claim to allow a party to "file a responsive answer" and otherwise "prepare an adequate defense." *Prows v. Dep't of Justice*, No. CIV. A. 89-2929-LFO, 1991 WL 111459, at *1 (D.D.C. June 13, 1991) (citing *Brown v. Califano*,

75 F.R.D. 497, 498 (D.D.C. 1977). "The court or opposing party must be able 'to understand whether a valid claim is alleged and if so what it is.'" *Poblete v. Indymac Bank*, 657 F. Supp. 2d 86, 96 (D.D.C. 2009) (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994). Rule 41(b) provides the mechanism for Defendant to move for dismissal for violation of Rule 8, stating: "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41.

'Unlike in *Twombly*, where the doctrine of *respondeat superior* could bind the corporate defendant, here, as we have noted, petitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic. Yet respondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind. His pleadings thus do not meet the standard necessary to comply with Rule 8.' *Ashcroft v. Iqbal*, 556 U.S. 662, 683, 129 S. Ct. 1937, 1952, 173 L. Ed. 2d 868, 887, (2009).  Each count neglects to state with specificity regarding the claims against Defendant Connie and Kelly Meggs, thus failing to provide sufficient notice as required under Rule 8.

The District's Amended Complaint is the ultimate impermissible "'shotgun pleading,' *i.e.*, a pleading for 'which it is virtually impossible to know which allegations of fact are intended to support which claims for relief.'" *Maynard v. Melton*, No. CV1702612KBJRMM, 2021 WL 6845008, at *4 (D.D.C. Apr. 7, 2021) (*citing Jiggetts v. D.C.*, 319 F.R.D. 408, 417 (D.D.C. 2017). It is not "short" but excessively long, and not "plain" but confusing. It incorporates too many documents

totaling too many pages, fails to provide sufficient notice, and otherwise does not comply with Rule 8.

### b. Facts

By Defendant's count, the Amended Petition includes 58 separate documents, such as criminal complaints, affidavits in support of criminal complaints, statements of facts in support of criminal complaints, indictments, superseding indictments, memorandums in support of pretrial detention, and plea agreements.[5] Each one of these documents is "incorporated by reference" – meaning they become part of the Amended Complaint.

In total, the Amended Complaint is 776 pages when adding the 657 pages the District "incorporates by reference."[6] The excessive length of the Amended Complaint and the excessive number of documents it "incorporates" justifies dismissal, as it "makes the pleading hopelessly confusing." *Jiggetts*, 319 F.R.D. at 415. The Amended Complaint is a burden to the Court and to all Defendants, as it is contrary to Rule 8(a)'s purpose that "requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."

---

[5] The links to these documents are found at the link provided by Plaintiff: https://statesuniteddemocracy.org/legal/dcvproudboys-info-legal/. ECF 94 at p. 8 fn. 4. There were a number of duplicate documents at that link. For the purposes of accuracy, Defendant has made a good faith effort to only address those documents that are not repeated (such as the "Rhodes, et al. Indictment (Dkt. 1)," which is referenced numerous times.
[6] Defendant includes for reference a table that provides the page numbers for reach document "incorporated by reference" and the total number of pages for all documents combined. See Exhibit 1.

*United States ex rel. Garst v. Lockheed Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

In fact, the 776 page Amended Complaint *exceeds* the length of other complaints found to violate Rule 8. As the Seventh Circuit has observed:

> "Length may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter. Three other circuits have held that length and complexity may doom a complaint by obfuscating the claim's essence. See *In re Westinghouse Securities Litigation*, 90 F.3d 696, 702–03 (3d Cir.1996) (600 paragraphs spanning 240 pages); *Kuehl v. FDIC*, 8 F.3d 905, 908–09 (1st Cir.1993) (358 paragraphs in 'only' 43 pages); *Michaelis v. Nebraska State Bar Association*, 717 F.2d 437, 439 (8th Cir.1983) (144 paragraphs in 98 pages). At 400 paragraphs covering 155 pages, and followed by 99 attachments, Garst's distended pleadings join that unsavory company."

*U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378–79 (7th Cir. 2003).

But that is not all. The Amended Complaint violates Rule 8 in other ways. The Amended Complaint names 39 defendants and includes unknown parties "Defendants John and Jane Does 1-50." ECF 94 at ¶ 50. Counts 1 through 5 are brought against "all Defendants." ECF 94 at ¶ 461, 470, 477, 482, 487.

And still there is more. Each count "reincorporates by reference the allegations contained in all preceding paragraphs." *See*, e.g., ECF 94 at ¶ 469. This by itself makes the Amended Complaint an improper shotgun pleading. *See Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1356 n. 9 (11th Cir. 2002) ("We note that the plaintiffs' complaint is yet another example of what we have often criticized as 'shotgun pleadings,' where each count 'incorporates' all of the preceding paragraphs and counts.") Plaintiff cannot incorporate by reference the allegations of predecessor counts, as this leads "a situation where most of the counts (i.e., all but the first) contain irrelevant factual

allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

Each one of these issues – the excessive number of pages and documents "incorporated by reference," the failure of specificity in each count, the incorporation of counts into other counts – by themselves would be sufficient for dismissal under Rule 8. Taken together, they amount to an Amended Complaint that has adopted for itself the worst features of a shotgun pleading.

The penalty for such grave errors in an Amended Complaint should be dismissal with prejudice. While pleadings in violation of Rule 8 are typically dismissed without prejudice, the extenuating circumstances of the present case warrant the relief requested by Defendants. Back in February 2022, the District requested, and was granted, a consolidated briefing schedule which gave it an April 1, 2022 deadline to file an Amended Complaint. ECF 75 at p. 1. The District then requested a modification of this consolidated briefing schedule on May 16, 2022. ECF 102. That request was granted on May 17, 2022. ECF 103. The District requested these dates for motions challenging the Amended Complaint and requested the deadline to amend its pleading. It should have to live with the results.

### III.   CONCLUSION

In conclusion, and for all of the foregoing reasons, pursuant to (a) Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") with respect to the causes of action which seek declaratory and injunctive relief, and further with respect to the lack of direct injury in tort; (b) FRCP Rule 12(b)(6) with respect to all of the claims for lacking

26

foundation, and additionally because the state-based causes of action which implausibly seek to make all Defendants in this case responsible for the intervening, independent, criminal acts of others who allegedly committed treacherous acts whether intentionally or negligently, whereas Plaintiff fails to plead that these individual Defendants caused any of these acts, or committed any injuries.

In the alternative, the Plaintiff, the District's, Amended Complaint must be dismissed under Rule 8 because, it is an improper shotgun complaint. Therefore, Defendants Connie and Kelly Meggs respectfully request that this Court dismiss the Plaintiff, the District's, Amended Complaint with prejudice.

Dated: June 17, 2022                    Respectfully submitted,


                                        _____/s/ Juli Z. Haller_____
                                        Juli Z. Haller, (DC 466921)
                                        The Law Offices of Julia Haller
                                        601 Pennsylvania Avenue, N.W., Suite 900
                                        Washington, DC 20004
                                        Telephone: (202) 729-2201
                                        HallerJulia@outlook.com

                                        *Counsel for Defendants, Connie and Kelly Meggs*