**UNITED STATES DISTRICT**
**FOR THE DISTRICT OF COLUMBIA**

**DISTRICT OF COLUMBIA,**

       **Plaintiff,**

    **v.**

**PROUD BOYS INTERNATIONAL, LLC,**
**ET AL,**

       **Defendants.**

**Case No. 21-cv-03267**

**DEFENDANTS JONATHAN PETER KLEIN, ROBERTO MINUTA, WILLIAM**
**JOSEPH PEPE MOTION TO MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

John M. Pierce
**JOHN PIERCE LAW PC**
21550 Oxnard Street, 3d Floor, PMB#172
Woodland Hills, CA 91367
Tel: (213) 279-7846
Email: jpierce@johnpiercelaw.com

*Attorney for Defendants Jonathan Peter Klein,*
*Roberto Minuta and Joseph Pepe*

## I.    INTRODUCTION

Plaintiff's Amended Complaint ("FAC"), ECF No. 94, clearly states that their only interest in this matter is "hold the Defendants accountable under federal laws and the laws of the District of Columbia for the actions committed in furtherance of their conspiracy." FAC ¶ 9.  Plaintiff has failed to demonstrate a concrete and particularized injury-in-fact, nor does Plaintiff demonstrate that his requested relief will redress their alleged injury. Accordingly, Plaintiff lacks standing, and this matter should be dismissed for a lack of subject matter jurisdiction. Even if Plaintiff had standing in this matter, the Amended Complaint otherwise fails to state any cognizable claim.

## II.    BACKGROUND

### In re Minuta:

The 2020 United States Presidential Election ("Presidential Election") occurred on November 3, 2020. As of November 7, 2020, the incumbent President Donald J. Trump was projected to have lost the Presidential Election. After the Presidential Election, on January 6th, 2021, Roberto Minuta, with his co-defendants, both known and unknown to the Grand Jury peacefully assembled in protest of the election results.

Minuta, a current resident of Hackettstown, New Jersey, was/is a member of the *Oath Keepers*, a large but loosely organized collection of American patriots and philanthropists. During his peaceful assemblage in Washington D.C., Roberto Minuta entered the Capitol grounds, moving from the west side to the east side of the Capitol building and up the east stairs. At around 3:15 p.m., Minuta entered the Rotunda Doors which had been previously utilized by numerous other protestors/demonstrators. Once inside, Minuta traveled past law enforcement officers assigned to guard the Rotunda. At this time, Minuta was reported to have been chanting and repeating demonstrative phrases, such as "this is our Capitol!" ("our" refers to the American citizens).

Additionally, it was at this same time that Minuta has been accused of assaulting (both physically and verbally) D.C police officers. These accusations, however, are baseless and defamatory, as Minuta has not been charged with any criminal assault and maintains that no assault was committed. In furtherance, Minuta has been charged with multiple offenses including but not limited to: multiple counts of Conspiracy, Obstruction of an Official Proceeding and Aiding & Abetting. These charges, as with the aforementioned claim(s) are baseless and defamatory. Finally, these charges are an egregious waste of resources for the Federal Court system and its affiliates.

**In re Pepe:**

The United States Electoral College is a group required by the Constitution to form every four years for the sole purpose of electing the president and vice president. On December 14, 2020, the presidential electors of the Electoral College met in the nation's capital to formalize the result of the 2020 U.S. Presidential Election. During this session, Joseph R. Biden, Jr. and Kamala D. Harris were declared to the next President and Vice President of the United States.

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened in the United States Capitol to certify the vote of the Electoral College of the 2020 Presidential Election. It was on this day that tens of thousands of demonstrators arrived at the capital to protest the results of the 2020 U.S Presidential Election. Among these demonstrators was William Pepe.

Pepe, a U.S. citizen residing in Beacon, New York, arrived in Washington D.C. on January 5/6 with several other friends and acquaintances. On January 6, 2021, at approximately 12:45 p.m., a large crowd gathered outside the Capitol perimeter, including near a pedestrian entrance to the Capitol grounds on First Street, Northwest, near the Peace Monument. Among those

present was Pepe. The pedestrian entrance was guarded by Capitol Police. Signs posted on metal barriers at the pedestrian entrance and other locations read, "AREA CLOSED By order of the United States Capitol Police Board."

At approximately 12:53 p.m., a group of demonstrators utilized the pedestrian entrance. A large crowd, which included Pepe, followed. Several minutes later, at 1:00 p.m., the Joint Session convened in the Capitol to certify the Electoral College vote. During this time, however, between 12:53 and 2:00 p.m., law enforcement continued to control the growing crowd. By 2:13 p.m., crowd members, including Pepe, had begun to enter the capitol building through open doors. Unbeknownst to them, the crowd was not lawfully authorized to enter or remain inside the Capitol building.

Because of his presence at the demonstration, William Pepe has been charged with numerous offenses including but not limited to: multiple counts of Conspiracy, Obstruction of an Official Proceeding, Aiding & Abetting, Obstruction of Law Enforcement During Civil Disorder, Destruction of Government Property, Entering and Remaining in a Restricted Building or Grounds, as well as Disorderly Conduct in a Restricted Building or Grounds. As with Roberto Minuta, the claims against William Pepe are entirely baseless and defamatory, as well as an egregious waste of federal court resources. As a single individual amongst a throng of demonstrators, Pepe had no knowledge of crimes committed by other individuals within that same crowd, nor was he involved in any illegal or immoral misconduct.

### In re: Klein

Finally, Jonathan Peter Klein (Klein), a 21-year-old resident of Oregon, was also present at these same demonstrations at the U.S Capitol. Like Pepe and Minuta, J. Klein also arrived in Washington D.C. to protest the certification of the 2020 U.S Presidential Election and joined in

the large crowds gathering outside of the Capitol perimeter.  All pedestrian entrances to the Capitol grounds were guarded by Capitol Police, and prominent signs posted on metal barriers read, "AREA CLOSED By order of the United States Capitol Police Board." Unbeknownst to Klein, at approximately 12:53 p.m., a group of people had forcibly breached the barriers on the west side of the Capitol. After these barriers had been removed, members of the crowd freely rushed past the downed signs/barriers entirely ignorant of their true purpose or warning.  Some crowd members, including Klein, eventually made their way past additional signs/barricades and advanced to the building's exterior facade.

At approximately 2:13 p.m., disgruntled members of this demonstration (not including Klein) began shattering windows and ramming down the doors to the Capitol building.  Klein did not/does not condone the actions of these singular individuals and should therefore be afforded the liberties of an innocent and nonviolent spectator. Additionally, at no point was any prohibitive signage restricting entry visible to Klein or any member of his party, as they had been removed prior to his arrival. Furthermore, Klein entered the Capitol building not through a breached window or side passage, but from a door which was open and seemingly inviting to the demonstrators.

Because of his presence at the U.S. Capitol on January 6, 2021, Klein is being subjugated and alienated by the U.S. Government and its legal system. Klein has been charged with multiple offenses including but not limited to: Conspiracy, Obstruction of an Official Proceeding, Aiding & Abetting, Obstruction of Law Enforcement During Civil Disorder, Destruction of Government Property, Entering and Remaining in a Restricted Building or Grounds and Disorderly Conduct in a Restricted Building or Grounds. As with the other two aforementioned January 6th defendants, the accusations and charges against Jonathan Peter

Klein are baseless, defamatory, and an egregious waste of federal court resources.

### III.   SUMMARY OF THE ARGUMENT

The Complaint alleges five causes of action. All five causes of action are based on the District of Columbia's ("Plaintiff") claim that Defendants conspired to interfere with the 2020 election certification by forming part of the group of Americans that entered the Capitol building on January 6, 2021. Plaintiff claims that it suffered damages as a result of Defendants' conspiracy to violate and alleged violations of 42 U.S.C. § 1986, as well as Defendants' alleged conspiracy to indirectly cause others to commit assault, battery, and the intentional infliction of emotional distress. The Court should dismiss the FAC in its entirety again the Defendants for three (3) reasons.  First, the FAC is implausible on its face.  Second, the FAC is inadequately pleaded.  Lastly, even if the FAC were plausibly and adequately, Plaintiff fails to state a claim and has no standing.

### IV.   ARGUMENTS AND AUTHORITIES
#### A.   Overview of Pertinent Legal Standards
##### 1.   *Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim.*

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations that, if accepted as true, would state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In addition, a Rule 12(b)(6) motion is a proper vehicle for dismissal on an affirmative defense when the facts that give rise to the defense are clear from the face of the complaint. *See Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 306 (D.D.C. 2015). Moreover, where the tort claims based on the defendant's exercise of First Amendment rights, the plaintiff must plausibly plead that the defendant acted with actual malice. *See Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021). The actual malice standard applies to all claims involving free speech – not just defamation claims. *See id.* at 243 (applying to false light claims); *Montgomery v. Risen*, 197 F. Supp. 3d 219, 267 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017) (applying to common law assault claim).

### 2. *Special Pleading Standards For Claims Under 42 U.S.C § 1985(1) and 42 U.S.C. § 1986.*

The Plaintiff does not have standing to bring claims against the Defendants under 42 U.S.C. § 1985(1) and 42 U.S.C. § 1986 because they are not a federal official whose job obligations worsened or halted as a result of Defendants' alleged conduct. Also, under 42 U.S.C. § 1986, Defendants did not have a duty to, nor were they in a position to, stop any of the acts of the third-party individuals who allegedly caused damages to the Plaintiff.

Section 1985(1) opens the possibility of liability against persons who have knowledge of certain wrongs conspired, and that have power to prevent or aid in preventing the effectuation of the conspiracy, and neglect or refuse to, with reasonable diligence, prevent the conspiracy from manifesting. The conspiracies that § 1985(1) aims to stop are the following: obstruction of justice; preventing officer from performing duties; or depriving persons of rights or privileges.

According to the Plaintiff, the Defendants had the "power to prevent or aid in preventing" the conspiracy. FAC ¶ 473. Further, that Defendants spread "misinformation" and "fanned the flames of conspiracy," thereby making them participants in the January 6 Capitol protests. *Id.* ¶

7

474. The Plaintiff argues that due to the Defendants' alleged refusal and neglect to help prevent the "conspiracy," Defendants are liable to Plaintiff under 42 U.S.C. § 1986 for damages the Plaintiff sustained. *Id.* ¶ 475.

However, the Plaintiff does not have standing to bring this claim against Defendants because the Plaintiff is not a federal government official whose duty it was to certify the election. Moreover, the Plaintiff failed to allege facts in cause of action that explains how Defendants' acts prevented or aided in preventing an official from performing his or her duties. Plaintiff's failure to state, with particularity or even broadly, how it is that Defendants had the power to, through reasonable diligence, prevent or aid in preventing the January 6 protests. The Plaintiff mentioned in its complaint that the Capital Police could not stop the protests. FAC ¶ 445.  What then could Defendants possibly have done to help stop the protests, even if they knew what was going to happen? The Plaintiff fails to allege facts which, if taken as true, would prove that Defendants knew of the conspiracy or could have stopped its manifestation. As such, Plaintiff's 42 U.S.C. § 1986 is legally insufficient and this Court should dismiss it under Fed. R. Civ. P. 12(b)(6).

The Plaintiff claims that the Defendants agreed to enter into a conspiracy amongst themselves, and with others, to storm the Capitol building "violently" and "unlawfully" on January 6, 2021. FAC ¶ 462. Plaintiff further contends that the Defendants' objective was to "prevent, interrupt, and hinder, through force, intimidation, and threat," officials from counting and certifying the electoral votes for the 2020 Presidential Election and declaring a winner. *Id.* ¶463.  Moreover, the Plaintiff assumed and concluded that that the Defendants also intended to stop President Biden and the Vice- President from accepting or holding their respective offices and discharging their duties. *Id.*

With disregard of logic and evidence, Plaintiff would have this Court to believe that the Defendants also conspired to physically injure Vice President Pence and his property in direct retaliation of him discharging his duties as Vice President of the United States and President of the Senate. *Id.* at 464.

All of these allegations without any evidence in the record that supports a violation of Plaintiff's rights under 42 U.S.C. §§ 1985 and 1986. The Defendants are alleged to have violated the first subsection of Section 1985 that protects persons from deprivations of rights committed by either private or state actors as part of a conspiracy. *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 805 (3d Cir. 2001). Section 1985(1) does not create any substantive rights, but rather serves as a vehicle for vindicating federal rights and privileges that have been defined elsewhere. *Id.* (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979)). Courts, therefore, "prevent the use of § 1985(1) as a general federal tort law." *Id.* In order to state a establish a claim under 42 U.S.C. § 1985(1), a plaintiff must establish: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).

Plaintiff has not alleged impairments of this right, nor have they provided any evidence that the Defendants deprived the federal officials from their performance of their constitutional duties. A plaintiff has a valid cause of action under Section 1986 against a person who had knowledge of a conspiracy addressed in Section 1985, "and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do . . . ." 42 U.S.C. § 1986.

"[W]ithout a § 1985 claim, there can be no claim under 42 U.S.C. § 1986." *Rogin v. Bensalem Township*, 616 F.2d 680, 696 (3d Cir. 1980). Indeed, "[b]ecause transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also." *Id*. There are no facts in the record demonstrating the Defendants deprived Plaintiff of their right to perform their constitutional duties. Accordingly, Plaintiff cannot establish a Section 1985 claim, and because they cannot establish a Section 1985 claim, they cannot establish a Section 1986 claim either. The Court should rule in favor of the Defendants on Plaintiff's claims for violations of Section 1985 and 1986 because they have no standing to bring the claims that it tries to set before this Court. Even if this Court were to decide that the Plaintiff has standing, the complaint does not plead its claims with legal sufficiency and is therefore invalid.

### 3.    *Conspiracy to Commit Assault has no merit*

Plaintiff alleges that Defendants conspired to commit the common law tort of assault against the Plaintiff, but a government entity or organization cannot state a claim for a common law personal tort. Plaintiff asks this Court to order that Defendants be liable to Plaintiff because random people that Defendants did not know allegedly placed MPD officers in apprehension of offensive bodily contact to their persons.

This cause of action is premised on the theory that due to Defendants' alleged plan to participate in the scheme of attending the protests at the Capitol building on January 6, 2021, Defendants probably also conspired to be part of a large group of people that would incite a riot that would cause the officers to be intimidated and fear violence. The Plaintiff goes further and suggests that such knowledge and actions helped fuel a riot that indirectly led to random actors' assault on officers. However, the Plaintiff does not allege facts that satisfy the elements

of assault, much less facts showing that the Defendants had a plan to conspire so that eventually protestors would assault officers. To be clear, Plaintiff incorrectly and improperly pled alleged facts in trying to claim that Defendants' alleged support of the January 6 protests at the Capitol building somehow makes them liable to Plaintiff for unrelated third-party actors' alleged assault on MPD officers.

A legally sufficient claim for assault requires that the defendants intentionally threaten plaintiff with imminent force or verbal threats and that the plaintiff be in reasonable apprehension of receiving a battery. Plaintiff is not a person, and so it did not and cannot be in apprehension of receiving a battery. The Plaintiff is a societal construct that wants money, not a human being. Accordingly, this claim does not survive a 12(b)(1) motion for dismissal because the Plaintiff has no standing. Assault is an intentional tort that requires the defendants' conduct to be directly traceable to the plaintiff's damages. Plaintiff offers no facts linking the Defendants' alleged conduct directly to the Plaintiff's damages. To be clear, the Plaintiff admitted, in the complaint, that the acts of third-party actors directly caused the damages it alleges. Thus, this claim is legally insufficient under Fed. R. Civ. P. 12(b)(6) and the sound principles of *Iqbal* and *Twombly*. Accordingly, this Court should dismiss Count III of the Plaintiff's complaint against Defendants.

### 4.    *Conspiracy to Commit Battery Have No Merit*

The Plaintiff alleges that Defendants conspired to commit the common law tort of battery against the Plaintiff. However, a government entity or organization cannot state a claim for a common law personal tort. Moreover, Plaintiff's claim does not plead facts which are legally sufficient to state a claim upon which relief is plausible or recognized.  A legally sufficient claim for battery requires that the defendants intentionally make harmful or offensive physical contact with the person of the plaintiff without consent. Plaintiff is not a person, and so there

cannot be physical conduct that is harmful on the part of the Defendants. Accordingly, this claim does not survive a 12(b)(1) motion for dismissal because the Plaintiff has no standing.

Plaintiff is not a person who can be a victim of battery as defined by the common law tort. Therefore, Plaintiff does not have standing to bring this claim, based on Fed. R. Civ. P. 12(b)(1). Plaintiff contends that Defendants conspired to verbally motivate others to enter the Capitol building and that they "fanned the flames." However, Plaintiff did not specify, describe, or allege what physical harm it has suffered as a result of the Defendants' alleged conduct. Moreover, the Plaintiff failed to describe what intentional conduct these Defendants displayed that caused direct offensive or harmful physical conduct with the Plaintiff. Battery is an intentional tort that requires the defendants' conduct to be directly traceable to the plaintiff's damages. Plaintiff offers no facts linking the Defendants' alleged conduct directly to the Plaintiff's damages. To be clear, the Plaintiff actually admitted, in the complaint, that the acts of third-party actors caused the damages it alleges. Thus, this claim is legally insufficient under Fed. R. Civ. P. 12(b)(6) and the sound principles of *Iqbal* and *Twombly*. Consequently, this Court should dismiss Count IV of the Plaintiff's complaint against Defendants.

### 5. *Conspiracy to Commit Intentional Infliction of Emotion Distress Falls Short*

The Plaintiff alleges that Defendants conspired to commit the common law tort of intentional infliction of emotional distress against the Plaintiff. However, a government entity or organization cannot state a claim for a common law personal tort.  Intentional infliction of emotional distress requires that the defendants, by extreme and outrageous conduct, intentionally or recklessly cause the plaintiff severe emotional distress and that, if bodily harm results from the severe emotional distress, the defendants be liable to the plaintiff for such damages. *Wultz v. Islamic Republic of Iran*, 864 F. Supp.2d 24, 36 (D.D.C. 2012).

Plaintiff is not a person who can suffer emotional distress or physical harm as defined by the common law tort of intentional infliction of emotional distress. Therefore, Plaintiff does not have standing to bring this claim, based on Fed. R. Civ. P. 12(b)(1). Plaintiff contends that Defendants exhibited extreme and outrageous conduct that went beyond all possible bounds of decency. Then, in an attempt for a catch-all phrase, Plaintiff argues that such conduct intentionally or recklessly caused MPD officers to suffer from severe emotional distress. However, Plaintiff did not specify, describe, or allege what physical harm it has suffered because of the Defendants' alleged conduct. Moreover, the Plaintiff failed to describe what conduct these Defendants displayed that caused the Plaintiff's damages. The intentional infliction of emotional distress is an intentional tort that requires the Defendants' conduct to be directly traceable to the Plaintiff's damages. Plaintiff offers no facts linking the Defendants' alleged conduct directly to the Plaintiff's damages. To be clear, the Plaintiff actually admitted, in the complaint, that the acts of third-party actors caused the damages it alleges. Thus, this claim is legally insufficient under Fed. R. Civ. P. 12(b)(6) and the sound principles of *Iqbal* and *Twombly*. Consequently, this Court should dismiss Count V of the Plaintiff's complaint against Defendants.

### 6.    *Plaintiffs' Claims Are Facially Implausible.*

Plaintiff's claims are facially and utterly implausible. In essence, Plaintiff's claims require the Court to believe the following fantastical claim of conspiracy: (1) All of the Defendants, immediately after the Election, conferred, had a meeting of the minds and reached an agreement; (2) for the purpose of joining other Proud Boys' members to break down the Capitol defenses; (4) for the ultimate purposes of a completing violent attack on the Capitol and thereby interfering with United States official duties of participating in the certification of the Election ("Electoral Certification"). The conspiracy defies all plausibility and believability on its face.

### 7.     *A Claim Conspiracy with Rioters is Farfetched*

The FBI is one of the most advanced law enforcement organizations in the country. The FBI launched an extensive investigation into the Capitol Riot, making over 500 arrests. The FBI and Department of Justice have revealed that the attack on the Capitol was, in substantial part, the result of coordinated efforts by extremist groups. Still, there is no evidence that the Defendants were involved with these extremist groups which the Plaintiff would have the Court believe.  The Plaintiff would have what the FBI has been unable to do—tie the Defendants to a vast conspiracy to mastermind the attack on the Capitol. This is simply too far-fetched and outlandish to pass the plausibility standards of Rule 12(b)(6).

### 8.     *Causation is implausible*

Finally, aside from all else, Plaintiff cannot plausibly plead causation. Thousands of demonstrators were already at the Capitol. The initial attacks on the Capitol were pre-planned and were completely independent. As discussed above, it would have been impossible to tie the Defendants to a vast conspiracy to mastermind the attack on the Capitol. Despite there were attendees that were stirred to violence, the attack on the Capitol would have occurred regardless. This is clearly evidenced by public records demonstrating that extremists planned the attack independent of the Ellipse Rally and with no plans to attend the Rally or hear the speeches. *See id.* Plaintiffs therefore cannot plausibly demonstrate any actions of Defendants were the proximate cause of their injuries given the indisputable evidence the Capitol Riot would have occurred.

### 9.     *Plaintiffs Have Failed To Plead Malice*

As discussed above, where a public official brings a tort claim based on speech, the First Amendment requires the plaintiff to plead and prove actual malice. This type of pleading requires more than "labels and conclusions" and a simple reference to the relevant legal standard.

14

*See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The ill-will or wrongful motivation of the defendants are not sufficient to demonstrate actual malice. *See Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90 (D.D.C. 2012); *see also Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) ("[T]he motivations behind defendants[] . . . inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law."). Here, Plaintiff fails to show that Defendants acted with any malice.  Accordingly, all of the Plaintiff's claims should be dismissed.

### 10.     *Failure to Plead Conspiracy with Particularity*

Lastly, with all the argument above, Section 1985 claim must be pleaded with particularity.  Plaintiff's Section 1985 Claim is not pleaded with sufficient particularity. Plaintiffs have failed to particularly plead conspiracy – a necessary element of a Section 1985 claim. First, Plaintiff cannot plead the particularization of an agreement between Defendants and other alleged co-conspirators as they are required to do. Further, Plaintiff has pleaded no specific facts that would give rise to an inference that Defendants and all other Defendants agreed and had a meeting of the minds on the far-sweeping plot that Plaintiff alleges in their Amended Complaint – namely to engage in a concert to ultimately to incite, disrupt and block the Electoral Certification. Plaintiff cannot, within the confines of Fed. R. Civ. P. 11, allege that Defendants and other co-conspirators had a meeting of minds with Proud Boys, Oath Keepers, Warboys, and Tarrio to engage in an elaborate plot to create an insurrection. This conspiracy theory is far more fantastical than any of the allegations that Plaintiff claims. In their Amended Complaint, Plaintiff do nothing other than make the conclusory assertion that the Defendants "coordinated the January 6th Attack", (FAC ¶ 148) and executed a common plan to "engaged in preparations and took steps to advance the goals of their conspiracy against United States officials in advance of and on January 6, 2021". *Id. ¶* 465. This Court has recently held mere allegations of a shared

conspiratorial objective or purpose is insufficient to state a claim for conspiracy. *See United States ex rel. PCA Integrity Assocs., LLP v. NCO Fin. Sys., Inc.,* No. CV 15-750 (RC), 2020 WL 686009, at *30 (D.D.C. Feb. 11, 2020) (dismissing conspiracy claim subject to heightened pleading standard where, like here, plaintiff only alleged a shared conspiratorial objective). There is no allegation in the Complaint of the time, place, and manner of how the Defendants came to a meeting of the minds and reached an agreement on the course of action Plaintiff complains of. Because Section 1985 claims are subject to a heightened pleading standard, Plaintiff was required to—but did not—plausibly alleged the "who, what, where, when" of the supposed meeting of the minds and agreement of the conspirators. *See id.*

## V.   **CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff's Amended complaint as it fails to state a claim.

Date: June 8, 2022                         Respectfully Submitted,

John M. Pierce
John Pierce Law P.C.
21550 Oxnard Street
3d Floor, PMB#172
Woodland Hills, CA 91367
Tel: (213) 279-7846
Email: jpierce@johnpiercelaw.com

*Attorney for Defendants Jonathan PeterKlein,*
*Roberto Minuta and Joseph Pepe*

## **CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, June 17, 2022, I caused a copy of the

foregoing document to be served on all counsel through the Court's CM/ECF case filing

system.


/s/ John M. Pierce
John M. Pierce