**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**DISTRICT OF COLUMBIA,**                           )
                                                    )
     **PLAINTIFF,**                         )
                                                    )
**v.**                                              )     **NO. 1:21-CV-03267-APM**
                                                    )
**PROUD BOYS INTERNATIONAL, L.L.C.,**               )     Oral Hearing Requested
**et al.**                                          )
                                                    )
     **DEFENDANTS.**                        )
_____)

**DEFENDANT LAURA STEELE'S MEMORANDUM IN SUPPORT OF MOTION TO**
<u>**DISMISS**</u>

George R.A. Doumar, D.C. Bar 415446
Raj H. Patel, D.C. Bar 240973
Doumar Martin, PLLC
11350 Random Hills Road, Suite 700
Fairfax, VA 22030
Tel: 703-352-1300
Fax: 703-352-1301
gdoumar@doumarmartin.com
rpatel@doumarmartin.com

*Counsel for Laura Steele*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ......................................................................................................iii

Introduction and Summary ............................................................................................1

Argument ......................................................................................................................3

I.   The District Lacks Standing to Pursue Common Law Torts Reserved for Individuals
     and Not Entities.......................................................................................................3

     A.  The District Does Not Have a Body That Can Suffer From Assault, Battery, or
         Intentional Infliction of Emotional Distress ...............................................3
     B.  The District Cannot Bring a Claim in Subrogation for the Costs of Providing
         Ordinary Municipal Services ....................................................................4

II.  The District Lacks Standing to Bring a § 1985(1) Claim ..............................................4

     A.  The Legislative Language of Section 1985 Does Not Grant the District's Standing
         ...................................................................................................................5
     B.  The Legislative Purpose of Section 1985 Does Not Support the District's Standing
         ...................................................................................................................6
     C.  The Legislative History of Section 1985 Does Not Support the District's Standing
         ...................................................................................................................6

III. The District Fails to State a Claim Against Laura Steele Because it Makes No
     Allegations That She Agreed to the Conspiracy ............................................................7

     A.  The District Fails to Distinguish <u>Sines</u> and <u>Kurd</u> ......................................7
     B.  The District Does Not Adequately Claim Ms. Steele's Involvement in Any
         Conspiracy ...............................................................................................9
     C.  The District Fails to State a Claim Under Section 1986 Because Ms. Steele Did
         Not Have the Power to Prevent January 6th ...........................................10

IV.  Plaintiff's Request for Injunctive Relief Should be Dismissed for Failure to Allege
     Any Real or Immediate Threat of Future Harm .........................................................11

V.   The District Bring a Creative and Novel Lawsuit for Potentially Worthy Goals, but
     Important Policy Reasons Favor Not Expanding the Reach of Liability, for the
     Protection of all Americans ......................................................................................12

Conclusion ...................................................................................................................13

Certificate of Service ...................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

### <u>Statutes</u>

42 U.S.C. § 1985 ..................................................................................5-9, 12

42 U.S.C. § 1986 ...................................................................................... 10, 11

D.C. Code § 4-602 ...............................................................................................4

D.C. Code § 5-602 ...............................................................................................4

SLA Section 7–2551.02 ....................................................................................... 3

### <u>Rules</u>

Federal Rule of Civil Procedure 12(b)(1). ...................................................................1

Federal Rule of Civil Procedure 12(b)(6). ...................................................................1

### <u>Cases</u>

<u>A Soc'y Without A Name v. Virginia</u>
   655 F.3d 342, 347 (4th Cir. 2011) ....................................................... 7, 9

<u>Coleman v. Drug Enf't Admin.</u>
   134 F. Supp. 3d 294 (D.D.C. 2015) ..................................................... 11

<u>District of Columbia v. Air Florida, Inc.</u>
   750 F.2d 1077, 1079-80 (1984) ............................................................. 4

<u>District of Columbia v. Beretta, U.S.A., Corp.</u>
   872 A.2d 633 (D.C. 2005) ..................................................................... 3

<u>EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.</u>
   246 F. Supp. 3d 52 (D.D.C. 2017) ......................................................... 5

<u>Kurd v. Republic of Turkey</u>
   374 F. Supp. 3d 37 (D.D.C. 2019) ......................................................... 8

<u>Marsh v. Barry</u>
   705 F. Supp. 12, 14 (D.D.C. 1988) ..................................................... 10

<u>Peck v. United States</u>
   470 F. Supp. 1003, 1012-13 (S.D.N.Y. 1979) ..................................... 11

<u>Sines v. Kessler</u>
   324 F. Supp. 3d 765 (W.D. Va. 2018) .................................................... 7

<u>Stern v. U.S. Gypsum, Inc.</u>
   547 F.2d 1329 (7th Cir. 1977) ........................................................................................ 6

<u>United Bhd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott</u>
   463 U.S. 825, 836 (1983) ............................................................................................... 6

<u>United States v. Price</u>
   383 U.S. 787, 801 (1966) ............................................................................................... 6

<u>Vietnamese Fishermen's Ass'n v. Knights of Ku Klux Klan</u>
   518 F. Supp. 993, 1007 (S.D. Tex. 1981) ................................................................. 10, 11

The District in its Amended Complaint ("Amended Complaint" or "Am. Compl.") buttresses its claims with dozens of new paragraphs detailing e-mails and other communications showing pre-planning by leaders and organizers in November, December, and the first few days of January 2021. Tellingly, none of these new allegations or pre-planning involved Ms. Steele.

## <u>INTRODUCTION AND SUMMARY</u>

Defendant Laura Steele ("Ms. Steele") moves to dismiss all counts against her in the Amended Complaint filed by Plaintiff in this matter, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). <u>See generally</u> Am. Compl. (ECF 94).

The District does not have standing to bring claims for the voluminous types and amounts of damages and monies that the District seeks. Unlike other plaintiffs who have brought civil cases connected to January 6th, the District is an **entity** that claims to have suffered common law assault, battery, and intentional infliction of emotional distress. This is an impossibility that the District does not adequately address in its Omnibus Opposition. The District does not have standing to bring these claims and cannot state a claim against Ms. Steele. Ms. Steele respectfully requests that all claims against her be dismissed.

Even if it has standing, the District fails to state a claim against Ms. Steele. In its Amended Complaint, the District includes new, more specific factual allegations of a conspiracy leading up to January 6, which the District has buttressed by dozens of paragraphs setting forth communications and planning in November and December directed to overturning the election results. None of these paragraphs include any such planning or communication by Ms. Steele. Ms. Steele is not alleged to have had any clue of any planning or organization, and in fact had no clue of such rally at all, until a few days before January 6.

The District dedicates nearly a third of its Omnibus Opposition ("Opp.") setting forth planning and communication among certain group leaders weeks prior to January 6, but none of these new communications include Ms. Steele. There are no allegations tying Ms. Steele to any such planning and agreement. There are no allegations of any agreement to engage in any wrongful acts, no reciprocal communications, no plans discussed, and no goals or other conspiratorial actions by Ms. Steele.

The effort to include even Ms. Steele in this "conspiracy" ignores what the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol has shown, which is that persons around Donald Trump planned, encouraged, and/or failed to prevent the events of January 6. Beyond that inner circle, criminal trials have confirmed that leaders of organizations and groups were involved in planning and organization for January 6 and did agree on plans to try to overturn the election. Ms. Steele is not implicated in any such pre-planning or unlawful conspiracy. The District in its Amended Complaint details a myriad of pre-January 6 communications going back to November planning to overturn the elections and threaten government officials --- and again, Ms. Steele's name is nowhere included in these new allegations. The District has cast too wide a net, effectively casting any person in the Capitol that terrible day as part of an unlawful conspiracy.

The District has improperly lumped together those who got caught up in the rally that day and were encouraged by the then President with organizers who actually planned unlawfully to overturn election results. The District's intent in bringing this lawsuit against this mountain of defendants was made clear by Attorney General Racine when he said regarding the January 6th defendants that his goal was "to get every penny of damage that we can . . . if it so happens that

we bankrupt them, then that's a good day."[1] Such a tactic may be understandable but has resulted in too wide a net of defendants.

The District brings a creative and novel lawsuit but expanding liability to a large class of persons in the manner the District proposes would unduly expand the reach of civil liability under the applicable statutes and could be subject to potential abuse.

## ARGUMENT

The District's Amended Complaint should be dismissed as to Ms. Steele because it fails to establish the District's standing and fails to allege that Ms. Steele joined the conspiracy or had the power to prevent the harms allegedly caused by the true conspirators.

## I.   THE DISTRICT LACKS STANDING TO PURSUE COMMON LAW TORTS RESERVED FOR INDIVIDUALS AND NOT ENTITIES

The District ignores the simple truth that it is an **entity** that cannot suffer from the common law torts of Assault, Battey, and Intentional Infliction of Emotional Distress. The District also attempts to bring claims in subrogation for the costs of operating a police force which is not permitted by law.

### A.   The District Does Not Have a Body That Can Suffer From Assault, Battery, or Intentional Infliction of Emotional Distress

The District relies on District of Columbia v. Beretta, U.S.A., Corp., 872 A.2d 633 (D.C. 2005) to support its position that it can bring all of its statutory and common law claims in subrogation. Opp. at 26. But, as this court made clear in that decision, this right of subrogation is not a panacea or license for any potential claim. In *Beretta*, the District brought a claim under the Strict Liability Act ("SLA") which makes manufacturers and others strictly liable in tort "for all

---

[1] Ryan Lucas, D.C.'s Attorney General is Suing the Proud Boys and Oath Keepers Over Capital Attack, NPR, December 14, 2021, available at https://www.npr.org/2021/12/14/1064144431/d-c-attorney-general-karl-racine-sue-proud-boys-oath-keepers-jan-6-capitol.

direct and consequential damages that arise from *bodily injury or death* if the bodily injury or death proximately results from the discharge of" one of the enumerated firearms. SLA Section 7–2551.02 (emphasis added). The court found that the SLA does not provide the District with a cause of action because "[b]odily injury or death self-evidently can happen only to individual persons, not corporate entities." <u>Beretta</u>, 872 A.2d at 652. Further, the SLA does not provide for any right in subrogation, so the District was not able to state a claim. As Ms. Steele has already demonstrated, to state a claim for assault, battery, or intentional infliction of emotional distress, a plaintiff must have a body that can be subject to the harms resulting from the torts alleged. Steele MTD at 8-9. Because the District is an entity and there is no statute or common law right to subrogation of the claims of its officers, they should be dismissed.

## B. The District Cannot Bring a Claim in Subrogation for the Costs of Providing Ordinary Municipal Services

In its Opposition, the District alleges that it can recover under D.C. Code §§ 4-602 and 5-602. Opposition at 24-25. These statutes provide the district a limited right to recover in limited individual circumstances for unreimbursed healthcare costs, funeral expenses, and leave of absence pay. They do not provide the District the right to bring a mass claim against hundreds of defendants for claims relating to a thousand or more individual District employees.

The District of Columbia, like most other jurisdictions, follows the common law rule that a municipality may not, in the absence of authorizing legislation, recover from a tortfeasor the costs of providing ordinary municipal services. <u>See</u> <u>District of Columbia v. Air Florida, Inc.</u>, 750 F.2d 1077, 1079-80 (1984) ("cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service"). D.C. Code §§ 4-602 and 5-602 only provide for a very narrow set of expenses that can be claimed by the District if it can establish tort liability upon a third party (which

4

it cannot as to Ms. Steele). Those claims that reach for any damages outside of these statutes should be dismissed for lack of standing and any claims for statutory expenses should be dismissed for failure to adequately state a claim.

## II.    THE DISTRICT LACKS STANDING TO BRING A § 1985(1) CLAIM.

The District continues to assert claims reserved for people and not **entities**. The statutory language and history that the District cites do not support its assertions and confirms the simple truth that entities do not have standing under the statute. Because the District has failed to point to a single piece of statutory text, case law, or legislative history supporting its assertion that an entity plaintiff has standing, this Court must presume the contrary. EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A., 246 F. Supp. 3d 52 (D.D.C. 2017).

### A.    The Language of Section 1985 Does Not Grant the District Standing

The District argues that "the statute's text, purpose, and legislative history demonstrate that Section 1985 broadly authorizes any person *or entity* injured by those engaged in a Section 1985(1) conspiracy, not just 'federal officers or office holders,' to assert a claim." Opp. at 33 (emphasis added). The District then selects a few short phrases from the statute, rearranges them into a self-serving order, and points to this string of rearranged trimmings as if it were a fair restatement of the "plain language" of the statute's final sentence. See id.

When the operative portion of a statute is as short as the one here – a single sentence – there is no reason not to simply read the text in full without trimming or rearranging:

> [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby *another is injured in his person or property*, or deprived of having and exercising any right or privilege of a citizen of the United States, *the party so injured or deprived may have an action for the recovery of damages* occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985 (emphasis added). The phrase "the party so injured," refers to the immediately preceding phrase "another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen." The statute does not "broadly authorize[] any person *or entity*" to sue. See Opp. at 33 (emphasis added). The statute authorizes suits only by real human people. An *entity* is not a "his," has no "person," and is not a "citizen."

### B.   The Legislative Purpose of Section 1985 Does Not Support the District's Standing

The legislative purpose of Section 1985 does not provide non-person entities with a cause of action. The District was unable to identify a single case wherein an *entity* plaintiff like a government or even an incorporated business or nonprofit was found to have statutory standing. To its detriment, each of the cases cited by the District involves people, not entities, bringing a claim under § 1985. See Opp. at 35, 46. The plaintiff in Stern v. U.S. Gypsum, Inc., 547 F.2d 1329 (7th Cir. 1977) is an IRS agent suing in his individual capacity. United States v. Price, 383 U.S. 787, 801 (1966) is a criminal case about a completely different statute. United Bhd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott, 463 U.S. 825, 836 (1983) involves the Supreme Court *reversing* a judgment in favor of a business entity plaintiff (although the Supreme Court does not discuss the entity status issue) and declining an opportunity to expand the reach of Section 1985 beyond its original scope. This Court should follow that example and refuse to expand the statute's grant of standing beyond what has been repeatedly recognized by 150 years of caselaw: only human plaintiffs can sue under Section 1985.

### C.   The Legislative History of Section 1985 Does Not Support the District's Standing

Even the District's single paragraph on the legislative history of Section 1985 provides further evidence for Laura Steele's argument that entity plaintiffs do not have statutory standing.

The District's citations to the Congressional record quote Senator Edmunds assertion that "[t]his section gives a civil action to *anybody* who shall be injured by the conspiracy." Opp. at 35 (emphasis added). The District also reminds the Court that Section 1985 created a cause of action for "white people" injured by white supremacists during Reconstruction. Opp. at 35. Both citations refer to causes of actions for people and not entities. In its review of the 150-year history of Section 1985, the District failed to point to a single case where an **entity** had standing to sue.

## III.   THE DISTRICT FAILS TO STATE A CLAIM AGAINST LAURA STEELE BECAUSE IT MAKES NO ALLEGATIONS THAT SHE AGREED TO THE CONSPIRACY.

The District claims that its "Amended Complaint details how the Defendants worked together to coordinate their efforts at the planned January 6th Attack," but this is not true regarding Ms. Steele. Opp. at 40. Because the District has alleged no violence committed by Steele herself, the District's entire case against her relies upon holding her liable for the violence committed by others. This theory requires proving that Steele entered into a conspiratorial agreement. Steele's alleged activity, including marching to the Capitol and entering the Capitol grounds, constitutes *parallel conduct* but does not constitute a conspiratorial *agreement*. The District's attempt to lump everyone at the rally together as part of a joint conspiracy is not tenable.

### A.      The District Fails to Distinguish Sines and Kurd

In Sines v. Kessler, 324 F. Supp. 3d 765 (W.D. Va. 2018), the plaintiffs sued defendants under Section 1985 for the violence committed by alleged co-conspirators during the 2017 "Unite the Right" rally in Charlottesville. This required proving that those defendants had entered into a conspiratorial agreement. The Court in Sines notes that "Plaintiffs cannot plausibly plead that all rally attendees who disagreed with them were part of one overarching conspiracy." Sines at 784 (citing A Soc'y Without A Name v. Virginia, 655 F.3d 342, 347 (4th Cir. 2011). The District

7

attempts to "seemingly label everyone at the rally who disagreed with them as co-conspirators. The Court does not credit such conclusory labeling." Id.

The court in Sines granted dismissal to a defendant whose statements and actions were far more indicative of an agreement than the statements (none alleged) and actions (few alleged) of Ms. Steele. The dismissed Sines defendant, Mr. Peinovich, hosted a racist podcast that included a discussion of violence against black people, appeared on a promotional poster recruiting people to attend the rally, set up a legal fund before the rally, delivered a speech to right-wing protestors at the rally where he called their opposition "savages," arrived at the park-turned-battlefield surrounded by a "security team" armed for combat, regrouped with combatants when they moved to a different park, and helped rally leaders fundraise from prison after the rally. Ms. Steele's involvement does not even approach the level of direct activity and coordination alleged in Sines, and the claim should also be dismissed.

The District argues that Steele's conduct is "far closer to the conduct of the *other* defendants in Sines, whom the court declined to dismiss based on their direct role in the violence alongside their coconspirators." This is flatly wrong. The Sines court helpfully dedicated a separately numbered subsection of its opinion to each of the defendants accused of civil conspiracy under Section 1985. This is crucial to the Court's analysis of whether each individual defendant took part in the alleged conspiracy. Many of those defendants were alleged to have personally and directly inflicted violence; Ms. Steele is not alleged to have done so. Ms. Steele is not alleged to have participated *at all* in the planning of the lawful January 6 rally, let alone the planning of the more specific criminal acts that the District says were the object of the conspiracy.

The District also attempts to distinguish Ms. Steele's use of Kurd v. Republic of Turkey, 374 F. Supp. 3d 37 (D.D.C. 2019) by merely stating that the District has alleged affiliation with

the Proud Boys and Oath Keepers. Steele is not alleged to have any affiliation with the Proud Boys. The District's conclusory statement that "Steele was a member of the Oath Keepers" is unsupported by the facts alleged; her emailed application was for providing security only, not for joining the organization as a full member, and her application received no approval. Although some Oath Keepers members certainly did "engage[] in extensive coordination and planning," no allegations of that type have been made regarding Ms. Steele specifically. Again, the District's broad brush should not reach Ms. Steele without specific allegations.

The District points out that some of the Defendants in this civil case have been charged with the crime of seditious conspiracy and argues that this criminal charge "further support[s] the Defendants' involvement in the conspiracy." Opp. at 42-43. Steele's name is notably absent from the list of Defendants so charged. The District's complaint against Steele must be dismissed without specific allegations against Steele.

### B. The District Does Not Adequately Claim Ms. Steele's Involvement in Any Conspiracy

In the District's own words, "the Section 1985 Conspiracy was to prevent, interrupt, hinder, and impede, through force, intimidation, and threat:" (1) election officials from counting and certifying votes, (2) Biden and Harris from accepting office, (3) Biden and Harris from performing the duties of President and Vice President, and also "to injure Vice President Pence's person and property." Am. Compl. At ¶¶ 463-464. The District has nowhere alleged that Ms. Steele participated in planning how to achieve these goals with other defendants. Neither does the District allege that Ms. Steele herself even held these goals.

Even if Ms. Steele did independently have goals identical to those of the true conspirators, her independent opinions cannot be the basis for liability under a conspiracy theory unless the District alleges facts sufficient to show that she entered into an agreement with a specific co-

conspirator to achieve those goals. Like the unsuccessful plaintiff in <u>A Soc'y Without A Name,</u> the District has "failed to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made." 655 F.3d at 347. There are no allegations of agreement or communications with any coconspirators.

The District explicitly attempts to conflate Ms. Steele with all the rally participants, stating that "[b]ecause Defendants' conduct was designed to bring about, and substantially contributed to, the larger mob's violence, Defendant's conduct is the proximate cause of that violence." Opp. at 48. For support, the District inexplicably cites a case in which the District itself was held liable for damages caused by overcrowding at a prison which led to a prisoner riot. <u>Id.</u> (citing <u>Marsh v. Barry</u>, 705 F. Supp. 12, 14 (D.D.C. 1988)). This case supports an argument that the District's failure to prevent the violence is not overcome by the actions of the rioters, not that any person present for a riot is liable for the actions of every person at the riot.

### C.    The District Fails to State a Claim Under Section 1986 Because Ms. Steele Did Not Have the Power to Prevent January 6th

Ms. Steele, a minor actor uninvolved in the rally's planning and lacking any position of authority or influence over the alleged co-conspirators, could not possibly have changed the course of January 6th and prevented its damage by exercising any "reasonable diligence." The §1986 claim against her should be dismissed.

Under Section 1986, for Ms. Steele to be within the class of defendants eligible for potential liability, she must have had "power to prevent or aid in preventing" the conspirators from attempting to hinder/harm the targets of the conspiracy. 42 U.S.C. § 1986. The District has not alleged that Ms. Steele had any special nonpublic knowledge of the conspirators' plots that she could have disclosed to the police. Neither has the District alleged that she had any control over

the alleged co-conspirators. As one woman in a rushing crowd of hundreds or even thousands, she had no power to prevent the mob from attempting to achieve its goals. She does not fall within the class of defendants eligible for potential liability.

The District in its Omnibus Opposition cites <u>Vietnamese Fishermen's Ass'n v. Knights of Ku Klux Klan</u>, 518 F. Supp. 993, 1007 (S.D. Tex. 1981) and <u>Peck v. United States</u>, 470 F. Supp. 1003, 1012-13 (S.D.N.Y. 1979) for the proposition that a failure to attempt to dissuade or inform authorities about a conspiracy was enough to state a claim under Section 1986. These cases bear almost no resemblance to Ms. Steele's case. In <u>Vietnamese Fishermen</u>, the defendants were leadership and other members of the KKK who participated in or facilitated a violent racist display of force. In <u>Peck</u>, the plaintiffs brought an action against the FBI who had knowledge of a KKK conspiracy to attack a "Freedom Ride." Ms. Steele is in no way a member of an inner circle of planners of a racist display with the power to dissuade or report those few people involved in the conspiracy. She is also not an FBI agent with the power to prevent or mitigate racist violence. Ms. Steele was not a part of the group of people involved in planning the events of January 6th and had no power on that day or prior to prevent the events that unfolded.

### IV.    PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED FOR FAILURE TO ALLEGE ANY REAL OR IMMEDIATE <u>THREAT OF FUTURE HARM</u>

The District's Opposition contains only a single footnote addressing its request for declaratory and injunctive relief. Opp. at 28, FN 11. The District cites this Court's opinion in <u>Coleman v. Drug Enf't Admin.</u>, 134 F. Supp. 3d 294 (D.D.C. 2015) for the proposition that "[t]o pursue prospective relief, a plaintiff must allege only 'that it is likely to suffer a future injury.'" The request for injunctive relief "requires the plaintiff to establish likely future injury that is *both concrete and imminent*." <u>Id</u>. (emphasis added). To obtain declaratory and injunctive relief against

Ms. Steele, the District is required to allege facts showing that she is likely to conspire to inflict future injury that is "both concrete and imminent." The most recent fact alleged by the District is from nearly two years ago, and Ms. Steele is not mentioned. The District has failed to demonstrate any concrete or imminent potential harm from Ms. Steele.

V.     **THE DISTRICT BRINGS A CREATIVE AND NOVEL LAWSUIT FOR POTENTIALLY WORTHY GOALS, BUT IMPORTANT POLICY REASONS FAVOR NOT EXPANDING THE REACH OF LIABILITY, FOR THE PROTECTION OF ALL AMERICANS**

It is of course tempting to construe and apply Section 1985 and related statutes overly broadly, in this case, to give the District and the government generally the tools to make sure that the bad actors of January 6 are caught, punished, bankrupted, and otherwise made to pay. However, once statutes are broadly construed, their reach will not be limited to January 6 defendants. Wide groups of criminal defendants could find themselves facing civil liability, sometimes inappropriately. For example, depending on who has power, broadly construed anti-terrorism statutes, conspiracy claims, or 1985 actions could be applied disproportionately against the Arab-American or Muslim-American communities as was done after 9-11.[2] Often, marginalized communities find themselves on the wrong side of broadly construed statutes. Certain cities like Detroit have even attempted to sue Black Lives Matter protestors for claims such as civil conspiracy, but those cases fortunately have been thrown out.[3] These statutes at issue should be carefully and narrowly construed, and the Court should resist the temptation to expand their reach

---

[2] See Human Rights Watch, Material Witness Report – Witness to Abuse: Human Rights Abuses Under the Material Witness Law since September 11, Vol. 17, No. 2(G) (June 2005), available at: https://www.aclu.org/report/witness-abuse-human-rights-abuses-under-material-witness-law-september-11.

[3] See Opinion and Order Granting Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaim, Detroit Will Breathe, et al. v. City of Detroit, Case No. 20-12363 (E.D. Mich., March 3, 2021) (dismissal for failure to state a civil conspiracy claim).

in novel or creative ways, not only to protect certain January 6th defendants such as Ms. Steele, but for the protection of all Americans.

## **CONCLUSION**

Accordingly, the Court should dismiss with prejudice the District's claims against Ms. Steele.

Dated: September 16, 2022.                    Respectfully submitted,

                                        /s/ George R.A. Doumar
                                        George R.A. Doumar, D.C. Bar 415446
                                        Raj H. Patel, D.C. Bar 240973
                                        Doumar Martin, PLLC
                                        11350 Random Hills Road, Suite 700
                                        Fairfax, VA 22030
                                        Tel: 703-352-1300
                                        Fax: 703-352-1301
                                        gdoumar@doumarmartin.com
                                        rpatel@doumarmartin.com

                                        *Counsel for Laura Steele*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 16, 2022, a copy of the foregoing was sent, by ECF, to all counsel of record and registered parties.

/s/ George R.A. Doumar_____
George R.A. Doumar, D.C. Bar 415446
Raj H. Patel, D.C. Bar 240973
Doumar Martin, PLLC
11350 Random Hills Road, Suite 700
Fairfax, VA 22030
Tel: 703-352-1300
Fax: 703-352-1301
gdoumar@doumarmartin.com
rpatel@doumarmartin.com

*Counsel for Laura Steele*