IN THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA.

    Plaintiff(s),

v.

PROUD BOYS INTERNATIONAL, LLC

    Defendants.

1:21-CV-03267-APM

**DEFENDANTS, CONNIE MEGGS AND KELLY MEGGS' RESPONSE TO PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

    Defendants, Connie Meggs and Kelly Meggs, by and through undersigned counsel, hereby submit this Reply Memorandum of Points and Authorities to Plaintiff's ("the District") Omnibus Opposition (ECF 145) to Defendants' Motions to Dismiss (the "Opposition") and in further support of the Meggs' Motion to Dismiss (ECF 110). The District of Columbia accuses Defendants Connie and Kelly Meggs of violating 42 U.S.C. § 1985(1) and conspiring to assault, batter, and inflict emotional distress on District police officers along with a number of other individuals, entities, and the unknown "John and Jane Does 1-50."

    The District's Opposition is unconvincing. Its weaknesses on standing are self-evident, its proposed expansion of 42 U.S.C. § 1985(1) to allow for entities such as a municipality to sue for damages as a third party on behalf of others is wholly

unsupported by the law and the legislative history, and its failure to establish traceability to the Meggs Defendants is particularly glaring. The Opposition's deficiencies and omissions and misconstruction of the law are also apparent with respect to Rule 8, which requires this Court to dismiss the District's Amended Complaint.

**1. The District does not have statutory standing under 42 U.S.C. §§ 1985(1) and 1986**

The District argues that it can recover for its purported injuries, or for another's injuries, due to a violation of 42 USC § 1985. It alleges "both Sections 1985(1) and 1986 clearly include the District within the class authorized to sue." (ECF 145 at p. 32).

The District is mistaken. It does not belong to a protected class, nor has it attempted to set forth what protected class the District of Columbia municipality belongs to, and its argument that Section 1985 "broadly authorizes" any entity injured by a Section 1985(1) conspiracy to assert a claim is without foundation. The District's demands for an impermissibly broad reading of Section 1985 contradicts the plain language of the law and the limitations courts have imposed on Section 1985. The "Deprivation Clause," found in Section 1985(3), establishes those who may proceed with a cause of action. In the context of Section 1985(1), only the party whose rights were deprived can "have an action for the recovery of damages occasioned by such injury or deprivation." 42 USC 1985(3). Plaintiff brought a claim under the first clause of § 1985, which, as a preliminary matter is limited to constitutional violations

by state actors. 42 USCS § 1985 (1). It is a remedy that is based on constitutional principles. *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 831-832, 103 S. Ct. 3352, 3357-3358, 77 L. Ed. 2d 1049, 1056, (1983). ("As we have consistently held '[t]he Fourteenth Amendment protects the individual against state action, not against wrongs done by individuals.' *Williams I*, 341 U.S., at 92 (opinion of Douglas, J.)" *United States v. Price*, 383 U.S. 787, 799 (1966)). Plaintiff has not pled, and cannot show that Defendants Connie or Kelly Meggs are State Actors. Private actors cannot violate, and thus cannot conspire to violate, another person's First, Fourth, or Fourteenth Amendment rights under section (1). *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329 (7th Cir. 1977).

But the Deprivation Clause of 1985(3), which allows for claims against private individuals, "requires that a plaintiff belong to a protected class." *Zhang Jingrong v. Chinese Anti-Cult World All.*, 287 F. Supp. 3d 290, 297 (E.D.N.Y. 2018); (*see also, Chambers v. Omaha Girls Club*, 629 F. Supp. 925, 941–42 (D. Neb. 1986) ("[T]here is a requirement that there be a mens rea present, i.e., that the conspirators have a particular hatred of the protected group. . . . Evidence of adverse impact, if any, simply does not fulfill the mens rea requirement necessary to show irrational or invidious class discrimination.").. The reason for this statutory limitation is because Section 1985(3) "merely provides a remedy for violation of the rights it designates." *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990).

It attempts to circumvent the clear restrictions of Section 1985, arguing the court in *Thompson* held that "the District is within the zone of interests and may

assert a claim under Section 1985." (ECF 145 at p. 43). The court held no such thing in *Thompson*, which involved the claims of "eleven members of the House of Representatives in their personal capacities and two Capitol Police officers." *Thompson v. Trump*, No. 21-CV-00400 (APM), 2022 WL 503384, at *1 (D.D.C. Feb. 18, 2022).

Instead, the holding in *Thompson* was that the plaintiffs therein had standing. *Thompson v. Trump*, No. 21-CV-00400 (APM), 2022 WL 503384, at *8 (D.D.C. Feb. 18, 2022). Importantly, the court in *Thompson* found "that members of Congress plainly are within § 1985(1)'s zone of interests." *Thompson*, No. 21-CV-00400 (APM), 2022 WL 503384, at *28 (D.D.C. Feb. 18, 2022). In doing so, it referenced the text of the statute and noted it specifically referenced members of Congress. *Thompson v. Trump*, No. 21-CV-00400 (APM), 2022 WL 503384, at *28 (D.D.C. Feb. 18, 2022) (stating "the Reconstruction-Era Congress would have understood members of Congress to occupy an "office, trust, or place of confidence under the United States" or qualify as an "officer of the United States").

The District of Columbia is in no such zone of interest. It certainly is not mentioned specifically in the statute, which making the District's references to *Thompson* unconvincing. Importantly, *Thompson* discussed the limits of Section 1985, explaining that its plain language only allows recovery for individuals. *See Thompson*, 2022 WL 503384, at *10 ("The statute creates a cause of action for a person 'injured in his person or property' due to a proscribed conspiracy."). Thus *Thompson*, by its clear language, excludes entities, such as municipalities like the

4

District. The "broad" interpretation of Reconstruction civil rights statutes does not justify the unwarranted and indefensible expansion of civil rights statutes to include a municipality supported by tax dollars.

The District is equally mistaken to purport that the legislative history of Section 1985 gives it standing. Contrary to its representations, the legislative history cited in the District's Opposition considers the standing of a person and the injuries to a person, not to an entity, or a municipality. Senator Edwards, as cited by the District, stated "This section gives a civil action to anybody who shall be injured by the conspiracy." Congressional Globe, 42d Cong., 1st Sess., at 568 (1871). He did not mention a municipality, and it is disingenuous to assume or conclude that "anybody" includes a municipality. The other members of Congress cited by the District also mention the remedies available to "people who were injured." (ECF 145 at p. 44). Further, a close reading reveals the District actually omits key parts of the legislative history that undercuts its arguments. This includes the statements of the Senator it cited – Senator Edwards – who emphasized the limitations of the law: "It does not provide for the punishment of any act done in pursuance of the conspiracy" just as it "does not punish an act done as a crime." Congressional Globe, 42d Cong., 1st Sess., at 568 (1871).

Again, the District fails to locate a single part of the legislative history that allows for recovery for a municipal entity pursuing a subrogation claim. Because the District does not have standing under Section 1985, its claim under Section 1986 must also fail. *See Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of New York,*

*Inc.*, 968 F.2d 286, 292 (2d Cir. 1992) ("Liability under § 1986 is derivative of § 1985 liability, i.e., there can be no violation of § 1986 without a violation of § 1985.").

**2. The District does not have standing under Article III.**

The District also lacks standing under Article III, which requires (1) an "injury in fact" that is "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of" that is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted) (cleaned up).

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "[U]nder Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190, 2205 (2021). The requirement of a plaintiff "to demonstrate a concrete and particularized injury" ensures that federal courts decide on individual rights and that "federal courts exercise their proper function in a limited and separated government." *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190, 2203 (2021) (citations omitted).

**A. The District has not suffered actual, concrete, and particularized injuries.**

Contrary to its representations to this Court, the District has not made a sufficient showing to establish it has suffered economic, physical, and emotional

injuries. It has not alleged concrete harm. This fact negates the District's standing. "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190, 2200 (2021). Being confronted with its lack of standing, the District argues it has a statutory right to pursue "*common law tort claims as a subrogee for its employees' and medical beneficiaries' tort claims,*" citing DC Code §§ 5–602 and 4–602 in support. (ECF 145 at p. 33). It should be noted that the Amended Complaint makes no reference to these statutes, but even assuming the argument is accepted, it fails because as a subrogee, Plaintiffs admit that this is a subrogation claim. As Defendant Meggs argued, The District cannot – as it does so here – claim the injuries of another for itself. "[I]n establishing standing, a plaintiff must assert and rely on its own alleged injuries, not those of a third party who is not a plaintiff in the case." *New York Stock Exch. LLC v. Sec. & Exch. Comm'n*, 962 F.3d 541, 552 (D.C. Cir. 2020).

Defendants further observe neither of the statutes cited by the District allows the recovery of a number of damages the District seeks. They do not allow for the District to recover costs arising from the deployment of officers. (ECF 94 at ¶ 457). These statutes certainly do not allow for the District to recover the costs of being "deprived of these officers' valuable services." (ECF 145 at p. 40). The District of Columbia, like most other jurisdictions, follows the common law rule that a municipality may not, in the absence of authorizing legislation, recover from a tortfeasor the costs of providing ordinary municipal services. *See District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1079-80 (1984) ("cost of public services for

7

protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service"). D.C. Code §§ 4-602 and 5-602 only provide for a very narrow set of reimbursement on health care and other incurred expenses, such as reasonable value of the care and treatment so furnished or to be furnished, or for which payment has been or will be made, and the amount of wages paid or to be paid during the leave of absence resulting therefrom. The Amended Complaint, however, seeks damages that include but are not limited to:

A. A declaratory judgment that the actions described herein constitute a violation of 42 U.S.C. § 1985(1); 42 U.S.C. § 1986; and the torts of assault, battery, and intentional infliction of emotional distress.

B. Injunctive relief enjoining Defendants from engaging in future violations of 42 U.S.C. § 1985(1); 42 U.S.C. § 1986; and the torts of assault, battery, and intentional infliction of emotional distress.

C. Compensatory and statutory damages in an amount to be determined at trial as to damages incurred by the District resulting from the events alleged above.

D. Punitive damages at an amount to be determined at trial.

E. Attorneys' fees and court costs under 42 U.S.C. § 1988.

F. Such other relief as the Court deems just and proper.

The District's reliance on these statutes is misplaced, as it has not alleged the Meggs Defendants conspired to or caused any injuries or emotional harm to its employees directly, nor is the District seeking damages in compliance with its

subrogation statutes. Further, the District and its officers lack standing for a Declaratory Judgement, Injunctive Relief, much less compensatory or punitive damages or for attorneys' fees.

**B.      The District fails to establish traceability.**

The District has not plausibly alleged that its injuries are fairly traceable to the alleged conspiracy – or to the Meggs Defendants. The District argues that at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497, 499 (D.C. Cir. 2020), cert. denied, 141 S. Ct. 2466, 209 L. Ed. 2d 528 (2021). The standard for Injunctive Relief includes, "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995). Plaintiff cannot establish Article III standing to seek declaratory and injunctive relief, much less clear the high bar to obtaining preliminary declaratory relief. "If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190, 2204 (2021). Moreover, for traceability, "there must be a causal connection between the injury and the conduct complained of" and the injury must not result from "the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation omitted). Here, the Amended Complaint fails the

9

traceability requirement with its vague references to causation and its attribution of attacks and damages to the "mob" and to unknown parties not linked to any purported "conspiracy.

The Amended Complaint fails to describe injuries to officers alleged to have come from the purported conspiracy, and certainly not from the Meggs Defendants. It alleges "65 MPD officers reported sustaining injuries as a direct result of the January 6th Attack." (ECF 94 at ¶ 450). None of those injuries are directly attributed to the Meggs Defendants. It alleges one officers was "beaten unconscious by the crowd." (ECF 94 at ¶ 452). Those injuries were caused by a crowd, not by the Meggs Defendants. The District maintains other officer injuries, both physical and mental, that are again not attributed to the Meggs Defendants. (*See* ECF 94 at ¶¶ 451, 453).

It does not sufficiently allege that the Meggs Defendants conspired to do so, either, or that the damages resulted from the conspiracy. All this negates traceability. To get around its deficiencies, the District argues that it need not demonstrate causation to establish traceability. (ECF 145 at p. 40). The Supreme Court disagrees. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (stating there must be "a fairly traceable connection between the plaintiff's injury and the complained-of-conduct of the defendant").

Instead of pointing to Defendants' conduct, the District blames the "mob and the violence it inflicted." (ECF 145 at p. 39). It attributes attacks, and thus the damages, to "unidentified John and Jane Doe Defendants." (ECF 94 at ¶ 401). It does not, however, specify that the Meggs Defendants assaulted or battered or caused

emotional distress on its officers. This court dismissed the plaintiff's assault claim in a case because the plaintiff had not alleged that the defendant "intentionally threatened him or attempted to cause him harm." *Collier v. District of Columbia*, 46 F. Supp. 3d 6, 15, (D.D.C. 2014).

The scope of the conspiracies relevant to plaintiffs' tort law claims depends on the underlying tortious acts, *see Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 241 (D.D.C. 2007), for there is no independent tort of "civil conspiracy." *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 176, (D.D.C. 2018) (*citing Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000)).

With respect to Count 5, the District's arguments that it has standing to assert its claim for intentional infliction of emotional distress *on another* is unpersuasive. To support this claim, a plaintiff must allege: "(1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213, 1260 (D.C. 2016). The District, nor its officers suffered harm by the Meggs, and severe emotional distress is not only not available under the subrogation statutes, but the District did also not suffer "severe emotional distress." And there is no allegation in the Amended Complaint that there is any such injury traceable to the conduct of the Meggs Defendants' that purports to meet the high bar required by the elements of intentional infliction of emotional distress.

**3. The District's claims must otherwise be dismissed.**

11

The District has failed to state claims upon which relief can be granted. Its conclusory statements about the Meggs Defendants fail to establish a civil conspiracy. The inferences about Defendants' liability are unsupported by the facts of the Amended Complaint. This is especially true for Counts 3, 4, and 5, all of which claim the Meggs Defendants were part of a "civil conspiracy." The facts of the Amended Complaint are insufficient to establish such an agreement. *See Kurd v. Republic of Turkey*, 374 F.Supp.3d 37, 51 (D.D.C. 2019). Neither does the Amended Complaint plead facts to allow for the recovery of punitive damages.

The Opposition has little to say on these issues, choosing to not respond to the well-argued position in the Meggs Defendants' Motion to Dismiss. (*See* ECF 110-1 at p. 10-12). Yet the shortcomings of the District's Amended Complaint cannot be ignored, as it failed to properly allege any type of joint plan or civil conspiracy on the part of the Meggs Defendants to batter, assault, or inflict severe emotional distress on anyone. As to plausibility, the District's Opposition is found wanting. It is long-winded on plans to go to the Capitol, but lacking on the traceability of injuries or concrete damages resulting from the alleged conspiracy. The District's failures require dismissal.

**4. The Amended Complaint Violates Rule 8.**

The District's Amended Complaint is 776 pages. It incorporates 58 separate documents. Each count incorporates all the preceding paragraphs and counts. It is the shotgun pleading to end all shotgun pleadings, and the District's flawed arguments in support of its deficiencies cannot save it.

For starters, the District's Opposition misconstrues Defendant's position and would have this Court believe that the "thrust" of Defendant's Rule 8 argument is that the Amended Complaint is of "excessive length." (ECF 145 at p. 69). Wrong. The thrust of Defendant's argument is that the Amended Complaint violates Rule 8 for a host of reasons and that dismissal is warranted when considering these reasons independently or all together.

One of these reasons – but not the only reason – is that the Amended Complaint incorporates 58 separate documents by reference, making the Amended Complaint a total of 776 pages. The District creates a convenient straw man for itself, arguing that "[l]ength is not, by itself, a basis for striking or dismissing a complaint." (ECF 145 at p. 69). Yet as Defendant made clear, what is important is the *effect* of the length and how it makes the Amended Complaint "hopelessly confusing" and "a burden to the Court and all Defendants" and otherwise contrary to the purpose of Rule 8, which emphasizes "clarity and brevity" for federal pleadings. *Ciralsky v. C.I.A.*, 355 F.3d 661, 669 (D.C. Cir. 2004) (citation omitted).

Courts in this District support Defendant's position. Length itself can render a complaint unmanageable. *See T.M. v. D.C.*, 961 F. Supp. 2d 169, 175 (D.D.C. 2013) (stating "dismissal under Rule 8 is typically reserved for complaints that are so excessively long as to be unmanageable"). The Amended Complaint exceeds that "unmanageable" standard, with its 776 pages and 58 documents – the criminal complaints, affidavits in support of criminal complaints, indictments, superseding

indictments, memorandums in support, statements of facts, statements of offense, and plea agreements – it incorporates by reference.

Other Circuits agree with Defendants' argument. The Amended Complaint exceeds the "unintelligible" standard set by the Third Circuit. *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378–79 (7th Cir. 2003) ("Length may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter. Three other circuits have held that length and complexity may doom a complaint by obfuscating the claim's essence."). The length and complications of the Amended Complaint exceeds the length of other complaints Third Circuit federal district courts have rejected as "unnecessarily complicated and verbose." *In re Westinghouse Securities Litigation*, 90 F.3d 696, 703 (3rd Cir. 1996) (Supporting dismissal under Rule 8 where "[t]he second amended complaint is unnecessarily complicated and verbose. The text of the complaint rambles for more than 600 paragraphs and 240 pages, including a 50-plus page 'overview' of the alleged wrongful conduct.").

A review of other decisions proves that the effect of excessive length can justify Rule 8 dismissal. In the Tenth Circuit, "sheer length" can make a "complaint unintelligible." *Mann v. Boatright*, 477 F.3d 1140, 1148. And the Amended Complaint is similar, in its length and the number of exhibits, to those dismissed in the Seventh Circuit. *See U.S. ex rel. Garst v. Lockheed Martin Corp.*, 328 F.3d 374, 379 (Observing that at "400 paragraphs covering 155 pages, and followed by 99 attachments, Garst's distended pleadings join that unsavory company" of complaints made unintelligible.).

In light of cases contrary to its position, the District doubles-down on its inaccuracies, stating that Defendant contends "the Amended Complaint is improper because its counts reincorporate by reference the preceding allegations." (ECF 134 at p. 70). Wrong again.

Defendant correctly points out that the District improperly incorporated "by reference the allegations of predecessor counts," which is a long-recognized violation of Rule 8. *See Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1356 n. 9 (11th Cir. 2002); *see Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (observing that pleadings like the District's Amended Complaint causes counts to "contain irrelevant factual allegations and legal conclusions"); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (finding a complaint to be a shotgun pleading where each count incorporated the counts that preceded it).

Unable to find a case on point to dispute Defendants' argument, the District reveals its desperation by citing to *Maynard*. But *Maynard* involved allegations of Rule 8 violations where "each count incorporates by reference all prior allegations of fact." *Maynard v. Melton*, No. CV1702612KBJRMM, 2021 WL 6845008, at *4 (D.D.C. Apr. 7, 2021). In the present case, Defendants argue the District wrongfully incorporated counts into other counts. The District provides no rebuttal to that argument and thus provides this Court with no valid reason to save its utterly deficient Amended Complaint. Considering the well-understood requirements of Rule 8, it should be no surprise that the District found zero cases where a complaint is allowed to have counts incorporate other counts.

15

Continuing on, the District's contention that "Defendants fail to identify fail to identify any portions of the Amended Complaint that are so extraneous or confusing so as to render the pleading as a whole 'unintelligible.'" That assertion is demonstrably false. (*See* ECF 110-1 at p. 24) (discussing how the excessive page lengths and excessive number of documents it "incorporates" makes the pleading "hopelessly confusing"). Defendants have now spent numerous pages illustrating how the Amended Complaint is "unintelligible."

But, in the spirit of cooperation, Defendants will provide one final example. Count 5 "reincorporates by reference the allegations contained in all preceding paragraphs." (ECF 94 at ¶ 486). This includes Count 1 (42 U.S.C. § 1985(1)), Count 2 (42 U.S.C. § 1986), Count 3 (assault civil conspiracy), and Count 4 (battery civil conspiracy). This by itself makes Count 5 hopelessly confusing – in other words, "unintelligible." Defendants also observe that the District's practice, which it somehow defends, leads to all other predecessor counts – in the present case, Counts 2 through 4 –include "irrelevant factual allegations and legal conclusions" in violation of Rule 8. *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). It is bad enough that each Count, in violation of Rule 8, also incorporates 58 separate documents and over 450 paragraphs.

Finally, the District contends that dismissal with prejudice would not be warranted. (ECF 145, p. 70 fn. 3). The District is wrong yet again. It would not be an abuse of discretion to dismiss with prejudice. Especially not after the District was

16

granted its requested consolidated briefing schedule and has long passed its deadline to amend its pleadings.

### III.   CONCLUSION

In conclusion, and for all of the foregoing reasons, pursuant to (a) Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") with respect to the causes of action which seek declaratory and injunctive relief, and further with respect to the lack of direct injury in tort; (b) FRCP Rule 12(b)(6) with respect to all of the claims for lacking legal foundation, including the state-based causes of action which implausibly seek subrogation claims and to make all Defendants in this case responsible for the intervening, independent, criminal acts of others who allegedly committed treacherous acts whether intentionally or negligently, whereas Plaintiff fails to plead that these individual Defendants caused any of these acts, or committed any injuries.

Further, the Plaintiff, the District's, Amended Complaint must be dismissed under Rule 8 because, it is an improper shotgun complaint.  Therefore, Defendants Connie and Kelly Meggs respectfully request that this Court dismiss the Plaintiff, the District's, Amended Complaint with prejudice.

Dated: September 16, 2022          Respectfully submitted,

*/s/ Juli Zsuzsa Haller*
Juli Z. Haller, (DC 466921)
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W., S. Bldg, Suite 900
Washington, DC 20004
Telephone: (202) 729-2201

HallerJulia@outlook.com

*Counsel for Defendants, Connie and Kelly Meggs*