UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DISTRICT OF COLUMBIA,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 21-cv-03267 (APM) |
| **PROUD BOYS INTERNATIONAL, LLC,** *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This case, like others before the court, seeks to hold civilly liable certain individuals who participated in the riot at the U.S. Capitol on January 6, 2021. This case differs from the others, however, in that the plaintiff here is not a police officer or Member of Congress claiming individual harm, but rather the District of Columbia. The District demands compensation for, among other things, the costs it has incurred, and continues to incur, to provide medical care to Metropolitan Police Department (MPD) officers who responded to the Capitol on January 6th. Am. Compl., ECF No. 94, ¶ 458. It seeks to hold responsible 37 individuals[1] and two entities (Proud Boys International, LLC and Oath Keepers). It asserts five causes of action against all Defendants: (1) violation of 42 U.S.C. § 1985(1) (Count I); (2) violation of 42 U.S.C. § 1986 (Count II);

---

[1] The individual Defendants are: (1) Ryan Ashlock, (2) Joseph R. Biggs, (3) Marc A. Bru, (4) Thomas E. Caldwell, (5) William Chrestman, (6) Louis E. Colon, (7) Donovan R. Crowl, (8) Nicholas Decarlo, (9) Charles Donohue, (10) Matthew Greene, (11) Joseph Hackett, (12) Kenneth Harrelson, (13) Arthur Jackman, (14) Joshua James, (15) Jonathanpeter Klein, (16) Christopher Kuehne, (17) Connie Meggs, (18) Kelly Meggs, (19) Roberto A. Minuta, (20) David Moerschel, (21) Ethan Nordean, (22) Nicholas R. Ochs, (23) Bennie A. Parker, (24) Sandra R. Parker, (25) William J. Pepe, (26) Dominic Pezzola, (27) Zachary Rehl, (28) Elmer Stewart Rhodes III, (29) Jon R. Schaffer, (30) Daniel L. Scott, (31) Laura Steele, (32) Henry "Enrique" Tarrio, (33) Brian Ulrich, (34) Edward Vallejo, (35) Jessica M. Watkins, (36) Christopher J. Worrell, and (37) Graydon Young.

(3) civil conspiracy (assault) (Count III); (4) civil conspiracy (battery) (Count IV); and (5) civil conspiracy (intentional infliction of emotional distress) (Count V).

Some but not all Defendants have moved to dismiss.[2]  For the reasons explained below, the court dismisses Counts I and II as to the moving defendants but not Counts III through V.  The court also holds that the District has not pleaded a plausible basis for permanent injunctive relief.

## I.

Defendants advance three threshold challenges.  First, they contend that the District lacks Article III standing as to all claims.  Next, they maintain that the District does not have statutory standing as to the federal claims under §§ 1985 and 1986.[3]  And, finally, they assert that Plaintiffs do not have standing to secure permanent injunctive relief.  The court agrees with the second and third of these arguments, but not the first.

## A.

To establish standing, a plaintiff must satisfy the familiar three elements of (1) injury in fact, (2) causation, and (3) redressability.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Defendants' standing arguments focus on the injury-in-fact and causation elements.  They say that, to the extent the District seeks compensation for "the costs of deploying D.C. police officers, the costs to treat injured officers, and the costs for paid leave for injured officers," such outlays do not qualify as a cognizable injury in fact for purposes of constitutional standing.  *See, e.g.*, Kuehne MTD at 7–9; Ulrich MTD at 11–12.  Additionally, they contend that the District is improperly

---

[2] The moving Defendants are: (1) Christopher Kuehne, ECF No. 97 [hereinafter Kuehne MTD]; (2) Brian Ulrich, ECF No. 108 [hereinafter Ulrich MTD]; (3) Laura Steele, ECF No. 109-1 [hereinafter Steele MTD]; (4) Kelly and Connie Meggs, ECF No. 110-1 [hereinafter Meggs MTD]; (5) Jonathanpeter Klein, Roberto Minuta, and William Pepe, ECF No. 111 [Klein MTD]; (6) Kenneth Harrelson, ECF No. 114; (7) Joseph Biggs, ECF No. 115; (8) Henry Tarrio, ECF No. 116; (9) Christopher Worrell, ECF No. 140; (10) Edward Vallejo, ECF No. 149; and (11) Jon Schaffer, ECF No. 168.  The remaining Defendants have either answered or not appeared.
[3] More than one Defendant conflates Article III standing with statutory standing.  *See, e.g.*, Meggs MTD at 4–7.  These are distinct concepts, and the court treats them as such.  *See Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 197 (2017).

relying on the third-party injuries of its employee-officers to establish injury in fact. *See, e.g.*, Steele MTD at 9; Meggs MTD at 9. Finally, some Defendants have argued that the District has failed to plead the requisite causation to establish standing. *See, e.g.*, Meggs MTD at 7.

At this stage, the District need only allege a plausible injury in fact. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). The city's "direct expenditures" for health care assistance to officers and leave pay satisfy this requirement. *Arias v. DynCorp*, 752 F.3d 1011, 1015 (D.C. Cir. 2014); *see also City of Olmsted Falls v. FAA*, 292 F.3d 261, 268 (D.C. Cir. 2002) ("In this Circuit we have found standing for a city suing an arm of the federal government when a harm *to the city itself* has been alleged"; holding that municipality had standing where it "alleged harm to its own economic interests based on the environmental impacts of the approved project"); *Texas v. United States*, 809 F.3d 134, 155 (5th Cir. 2015), *as revised* (Nov. 25, 2015) (holding that "[a]t least one state—Texas—has satisfied the first standing requirement by demonstrating that it would incur significant costs in issuing driver's licenses to [] beneficiaries" of a federal program); *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 262 (6th Cir. 2009) (holding that the plaintiff school districts, which had to spend state and local funds in order to comply with the federal government's education standards, established injury in fact to challenge those standards).

Defendants' contention otherwise rests on a misreading of *Arias*. The D.C. Circuit said in that case that "[l]ost tax revenue is generally not cognizable as an injury-in-fact for purposes of standing." *Arias*, 752 F.3d at 1015. But it also confirmed that "direct expenditures" on public services to mitigate the adverse health effects on residents "could theoretically constitute an injury-in-fact for standing purposes." *Id.* The District here does not seek "lost tax revenue," but asks to

be made whole for certain costs resulting directly from Defendants' alleged actions. That allegation is enough to establish injury in fact.

Defendants' contention that the District cannot sue based on the injuries suffered by its officer-employees fares no better. District of Columbia law permits the city to recover certain medical and related expenses from Defendants arising from their alleged conduct. *See* D.C. CODE §§ 5–602, 4–602. Section 5-602 gives the District a "right to recover" healthcare expenses it has paid for police officers, and the costs of their "extend[ed] leave[s] of absence with pay," from third parties whose tortious conduct resulted in injuries to those employees. *Id.* § 5–602. Similarly, § 4-602 grants the District "an independent, direct cause of action against [a] third party for the unreimbursed value or cost of the health-care assistance provided," "[w]henever the District provides health-care assistance to a beneficiary who has suffered an injury or illness under circumstances creating liability in a third party." *Id.* § 4–602(a). "[B]oth statutes effectively give the District rights of 'legal subrogation,' to claims a beneficiary or specified District employee may have against a defendant." *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 653 (D.C. 2005) (quoting D.C. CODE § 4–602(b)).[4]

The Supreme Court has long recognized "the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000). That includes "suits by subrogees" "who have been described as "equitable assign[ees]." *Id.* at 774 (citation omitted); *see also Sprint Commc'ns Co., v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008) (observing that "within the past decade we have

---

[4] Some Defendants have suggested that *Baretta* requires the complaint to identify the officers whose costs the District has covered. Steele MTD at 16. The complaint in *Baretta* apparently joined the subrogees as plaintiffs, but neither the statutory subrogation provisions nor *Baretta* require such joinder for the District to establish standing or to state a claim. No Defendant has opted for an available cure if they are concerned about a lack of notice: a motion for a more definite statement. FED. R. CIV. P. 12(e).

4

expressly held that an assignee can sue based on his assignor's injuries"). The District here is thus asserting its "first-party, not third-party, legal rights." *Id.* at 290 (rejecting argument that the assignors in the case lacked standing because they were asserting the rights of third parties). There is therefore no Article III impediment to the District's suit.

The District's pleading of causation is also plausible. In "reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003). What that means here is that the court must assume the District has successfully pleaded conspiracy claims. *See Thompson v. Trump*, 590 F. Supp. 3d 46, 72 (D.D.C. 2022). Once the court assumes the merits of these claims, causation is easily established.

The alleged injuries need only be "fairly traceable to the actions of the defendant[s]." *Food & Water Watch*, 808 F.3d at 913. And, "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," including for claims of conspiracy. *Osborn v. Visa Inc.*, 797 F.3d 1057, 1063 (D.C. Cir. 2015) (internal quotation marks and citation omitted); *Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497, 499 (D.C. Cir. 2020) ("The general allegation that the Platforms conspired to suppress Freedom Watch's audience and revenue, combined with Freedom Watch's representations that its audience and revenue declined, suffices to establish standing."). Here, the District has alleged that Defendants' alleged conspiratorial actions, both among themselves and with others, led to police officers being injured, resulting in the District's use of public funds to pay for officers' healthcare needs and to fund authorized leave. The District has thus plausibly alleged that its injuries are "fairly traceable" to Defendants' alleged

actions as coconspirators, and "not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

Finally, the court agrees that the District lacks standing to pursue permanent injunctive relief. *See, e.g.*, Meggs MTD at 7. To obtain injunctive relief, a plaintiff must establish that they are "likely to suffer future injury" from the conduct at issue. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). That requires a showing that the plaintiff "face[s] an imminent threat of future injury." *In re Navy Chaplaincy*, 697 F.3d 1171, 1175 (D.C. Cir. 2012). Here, the District argues that "the very nature of Defendants' conspiracy—an attempt to violently undo the settled results of an election that was completed months earlier—reflects a refusal to acknowledge or concede, and an ongoing willingness to violently contest, long-settled results." Pl.'s Omnibus Opp'n to Defs.' Mots. To Dismiss, ECF No. 145 [hereinafter Pl.'s Opp'n], at 28 n.11. But that contention is belied by the fact that many of the named Defendants are incarcerated and no Defendant is identified as having engaged in politically related violence in the more than two years since January 6th. The District's concern about similar future violence by *these defendants* is nothing more than a "vague prediction[] of future . . . conduct" that is "insufficient to demonstrate the imminent threat of future injury necessary to support standing to seek injunctive relief." *In re Navy Chaplaincy*, 697 F.3d at 1176. The District lacks standing to pursue permanent injunctive relief.

### B.

A plaintiff also must satisfy statutory standing. *See Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 197 (2017). "The question is whether the statute grants the plaintiff the cause of action that he asserts." *Id.* Federal courts must "presume" that "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked."

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (internal quotation marks and citation omitted). "Whether a plaintiff comes within the zone of interests is an issue that requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127. Using those tools, the court asks if the injuries the plaintiff "suffered as a result of the statutory violations 'are, at the least, *arguably* within the zone of interests that the [statute] protects." *Bank of Am.*, 581 U.S. at 197 (internal quotation marks and citation omitted).[5]

The District says it has statutory standing under § 1985—and, by extension, under § 1986—because "the statute's text, purpose, and legislative history" "demonstrate that Section 1985 broadly authorizes any person *or entity* injured by those engaged in a Section 1985 conspiracy . . . to assert a claim." Pl.'s Opp'n at 33 (emphasis added). The court does not think that § 1985 reaches so far.

*Statutory text.* Starting with the statutory text, as relevant here, § 1985 allows a "party" "injured in his person or property" by a conspiracy prohibited by § 1985(1) to bring suit against "any one or more of the conspirators." 42 U.S.C. § 1985(3). The first clue that a municipality like the District does not fall within the statute's zone of interests is that a municipality cannot be injured in its "person." Only natural persons can be so injured. But that fact is not dispositive, because a city arguably can be "injured in its property" by "payment of money wrongfully induced." *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 396 (1906) (holding, in the antitrust context, that a city was "injured in its property" "by being led to pay more

---

[5] "Although the zone-of-interests test 'is not meant to be especially demanding,'" *White Stallion Energy Ctr., LLC v. EPA*, 748 F.3d 1222, 1256 (D.C. Cir. 2014) (quoting *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 399 (1987)), "'the breadth of the zone of interests varies according to the provisions of law at issue,'" *Lexmark*, 572 U.S. at 130 (quoting *Bennett v. Spear*, 520 U.S. 154, 163 (1997)). The court here uses the "arguably within the zone of interests" formulation that the Court used in *Bank of America* to evaluate statutory standing under the Fair Housing Act. *Bank of Am*, 581 U.S. at 197. This court has not found a case that uses a more stringent zone-of-interests standard.

7

than the worth" of the product purchased); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979) (stating in a case interpretating Section 4 of the Sherman Act, "the word 'property' has a naturally broad and inclusive meaning"; "Money, of course, is a form of property").

The next textual clue that a "party" does not include a governmental authority is the conduct that the statute proscribes. Section 1985(1) makes unlawful conspiracies whose object is a person who occupies "any office, trust, or place of confidence under the United States" or is "any officer of the United States." 42 U.S.C. § 1985(1). Section 1985(1) thus creates liability arising from "conspiracies that interfere with . . . the performance of official duties by federal officers." *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). The "clear import of [§ 1985(1)'s] language is that the statute's protections extend exclusively to the benefit of federal officers." *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717 (9th Cir. 1981) (holding that "non-federal officers," in that case members of a local sheriff's office, "are not the intended beneficiaries of the rights and protections afforded by § 1985(1)").[6] The District's financial injuries do not fall within the zone of interests of a statute whose "clear import" is to protect federal officers.

The District's textual argument focuses solely on the statute's allowing a "party so injured" to bring suit. Pl.'s Opp'n at 33–34. The District says it "easily qualifies as a 'party so injured.'" *Id.* at 33. But reliance on that term alone does not advance the ball. The term "party so injured" is so broad that it conceivably could encompass all who can show Article III standing. Yet, there is no reason to think that the statute extends so far. By the District's logic, an insurance company

---

[6] In a footnote, Plaintiffs have suggested that MPD officers who were present and injured at the Capitol on January 6th would have statutory standing under § 1985(1). Pl.'s Opp'n at 36 n.16. The court declines to address that undeveloped argument raised in only a footnote. *See Armstrong v. Geithner*, 608 F.3d 854, 858 n.** (D.C. Cir. 2010) (stating that a court is not required to "address an argument raised only cursorily in a footnote"). The court notes that two MPD officers have brought a § 1985(1) claim in another January 6th civil case before this court, *see Tabron v. Trump*, No. 22-cv-11 (APM), Compl., ECF No. 1, at 44–45, but the defendant in that case, President Trump, only moved to dismiss on grounds of absolute immunity, *id.*, Def.'s Mem. of Law in Support of Def.'s Mot. to Dismiss, ECF No. 9-1. The court, therefore, was not called upon in *Tabron* to address whether an MPD officer falls with § 1985(1)'s zone of interests.

that covered the medical costs of a "party so injured" by a § 1985(1) conspiracy would have standing to sue. That cannot be what Congress intended.

The whole point of the statutory standing inquiry is to determine "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at 127. The fact that § 1985(1) authorizes a "party so injured" to file suit does not alone supply an answer to that question. *Id.* at 129 (rejecting expansive reading of Lanham Act remedial provision, which authorizes suit by "'any person who believes that he or she is likely to be damaged' by a defendant's false advertising") (quoting 15 U.S.C. § 1125(a)); *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 177 (2011) (rejecting construction of Title VII, which permits suit by "a person claiming to be aggrieved," as reaching "anyone with Article III standing").

*Statutory purpose.* Section 1985(1)'s purpose likewise does not support recognizing the District's finances as falling within its zone of interests. Congress enacted § 1985(1) in response to "massive and frequently violent resistance in the southern states to federal Reconstruction after the Civil War," but it "did not fashion a narrow and limited remedy applicable only to the southern states in 1871." *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334–35 (7th Cir. 1977). Courts have thus "broadly interpreted § 1985(1) consistent with its 'terms and legislative intent . . . , which [are] directed against efforts to impede governmental operations by interfering with officials in the discharge of their duties.'" *Thompson*, 590 F. Supp. 3d at 72 (quoting *Lawrence v. Acree*, 665 F.2d 1319, 1329 (D.C. Cir. 1981) (Wald, J., concurring)).

But notwithstanding its broad purpose, the District has not cited a single case, and the court is aware of none, in which a state or local government has even attempted to sue under § 1985(1) to recoup financial losses caused by a prohibited conspiracy—not a single case in the more than 150 years since the statute's adoption. *Cf. Bank of Am.*, 581 U.S. at 200 (concluding that the

9

City of Miami's "financial injuries fall within the zone of interests that the [Fair Housing Act ("FHA")] protects" because "our case law with respect to the FHA drives that conclusion"). That history is telling. Congress's purpose for enacting § 1985(1) cannot be said to extend to making government authorities whole for injuries incurred by their employees.

*Legislative history.* Finally, legislative history does not help the District. There is no indication in the legislative history that Congress intended for government authorities to sue under § 1985(1) for financial losses incurred. The District points to a single sentence from a single Senator in the Congressional Globe, stating "[t]his section gives a civil action to anybody who shall be injured by the conspiracy." Pl.'s Opp'n at 35 (quoting CONGRESSIONAL GLOBE, 42d Cong., 1st Sess. 568 (1871)). But that sentence (which is actually an independent clause) appears in no more than a summary recitation of the legislation's contents, and it comes at the end of commentary observing that § 1985(1)'s criminal analog punishes the conspiracy itself but not an act in furtherance.[7] It is of little value in discerning the intent of Congress.

Notably, what is absent in the text and the legislative history is any discussion about the *United States'* authority to bring suit under § 1985(1). If the District's reading were to prevail, the United States would have statutory standing to sue, as well. In the absence of any hint in the statutory text, legislative history, and history itself that Congress intended for the United States to qualify as a "party so injured," it is a stretch to think that Congress had the District's interests in mind when it provided a cause of action.

---

[7] The full relevant discussion is as follows: "It punishes the conspiracy alone, leaving the States, if they see fit, to punish the acts and crimes which may be committed in pursuance of the conspiracy. I confess that I thought myself it was desirable, to make the bill complete, to make it completely logical and completely effective, that a section should have been added providing not only for punishing the conspiracy, but providing also in the same way for punishing any act done in pursuance of the conspiracy. This section gives a civil action to anybody who shall be injured by the conspiracy, but does not punish an act done as a crime." CONGRESSIONAL GLOBE, 42d Cong., 1st Sess. 568 (1871).

Accordingly, the court holds that the District of Columbia does not "arguably" fall within the zone of interests protected by § 1985(1). The court therefore dismisses Count I against all movants.

### C.

For the reasons discussed, the court likewise finds the District lacks statutory standing to sue under § 1986. Count II is dismissed, as well.

### II.

### A.

The court now turns to the common-law civil conspiracy counts.[8] Defendants assert, in essence, that the District has failed to state plausible claims. The court disagrees.

"A civil conspiracy is defined as an agreement between two or more people to participate in an unlawful act or a lawful act in an unlawful manner." *Hobson v. Wilson*, 737 F.2d 1, 51 (D.C. Cir. 1984). The agreement can be either express or tacit. *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). So, a plaintiff "need not show that the members entered into any express or formal agreement, or that they directly, by words spoken or in writing, stated between themselves what their object or purpose was to be, or the details thereof, or the means by which the object or purpose was to be accomplished." KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, 3B FED. JURY PRAC. & INSTR. § 167:30 (6th ed. 2023) (quoting federal standard jury instruction for claims brought under § 1985(3)). It is enough "that members of the conspiracy in some way or manner, or through some contrivance, positively or tacitly[,] came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* All coconspirators must share in the general conspiratorial objective, though they need not know all the details of the plan

---

[8] The court still has original jurisdiction over the civil conspiracy claims based on the complete diversity of the parties and the amount in controversy, which exceeds $75,000. *See* 28 U.S.C. § 1332.

11

or even possess the same motives. *Hobson,* 737 F.2d at 51. They need not know the identities of other coconspirators. *Id.* In short, a civil conspiracy requires a showing "that there was a single plan, the essential nature and general scope of which were known to each person who is to be held responsible for its consequences." *Id.* at 51–52 (cleaned up). And, to be actionable, there must be an unlawful overt act in furtherance of the conspiracy that results in injury. *Id.* at 52.

An example of a civil conspiracy cited by the court in *Halberstam* provides a useful illustration. The Circuit explained that "[t]he original meaning of 'joint tort' was that of vicarious liability for concerted action. All persons who acted in concert to commit a trespass, in pursuance of a common design, were liable for the entire result." *Halberstam*, 705 F.2d at 476 (quoting W. PROSSER, LAW OF TORTS § 46, at 291 (4th ed. 1971)). This illustration, the court observed, "portrays a standard situation that involved this 'joint tort': combined action *by tortfeasors on the scene together*—'one might have battered the plaintiff, while another imprisoned him, and a third stole his silver buttons.'" *Id.* at 476–77 (quoting PROSSER at 291) (emphasis added). "Each was responsible for the others' actions." *Id.* at 477.

It is important to frame what the complaint in this case actually pleads. Notwithstanding some imprecise language in its opposition, *see* Pl.'s Opp'n at 52 (arguing that the "District also sufficiently alleged civil conspiracy claims for assault, battery, and intentional infliction of emotional distress"), the District does not allege three separate conspiracies whose objects were to assault MPD officers, batter them, and to cause them emotional distress. Rather, the complaint alleges an overarching agreement to take part in the unlawful acts of "obstructing federal officials in the performance of their constitutional duties," "inciting and carrying out a riot," "unlawfully trespassing on federal property," and "committing numerous acts of intimidation, threats of violence, and violence." Am. Compl. ¶¶ 478, 483, 488. The alleged acts of assault, battery, and

12

intentional infliction of emotional distress are tortious overt acts in furtherance of the conspiracy. *Id.* ¶¶ 479, 484, 489. So understood, the complaint makes out a plausible claim of civil conspiracy much like the trespass example cited in *Halberstam*, albeit on a far larger scale.

The court need not recite the alleged facts chapter and verse. It suffices to say that the complaint alleges that Defendants, individually and collectively, came to the Capitol on January 6th to obstruct Congress's certification of the Electoral College vote. Some Defendants are alleged to have breached the security perimeter of the Capitol grounds; others are alleged to have forcibly entered the building intending to stop the vote. Some Defendants are alleged to have brought arms to the outskirts of the District of Columbia to support a possible incursion into the Capitol; some are alleged to have had direct violent confrontations with members of the MPD who were at the Capitol that day. To corroborate these allegations, the court can, and does, take judicial notice that some Defendants have been convicted—either by plea or by jury verdict—of participating in a criminal conspiracy to obstruct Congress, other conspiratorial conduct, or related criminal conduct.[9] *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220 (D.C. Cir. 2005) (stating that, when reviewing motions to dismiss for failure to state a claim, courts may take judicial notice of facts on the public record). The District's overall claim of civil conspiracy, and the moving Defendants' involvement in it, is therefore plausible. The alleged acts of assault, battery, and intentional infliction of emotional distress against MPD officers were "reasonably

---

[9] *See, e.g.*, Jury Verdicts, *United States v. Rhodes III*, No. 22-cr-15 (APM) (D.D.C.) [hereinafter *Rhodes* Docket], ECF Nos. 410, 450 (Defendants Elmer Stewart Rhodes, Kelly Meggs, Kenneth Harrelson, Jessica Watkins, Thomas Caldwell, Roberto Minuta, Joseph Hackett, David Moerschel, and Edward Vallejo); Plea Agreements, *Rhodes* Docket, ECF Nos. 59 (Joshua James), 116 (Brian Ulrich); Partial Jury Verdict, *United States v. Crowl*, No. 21-cr-28 (APM) (D.D.C.) [hereinafter *Crowl* Docket], ECF No. 910 (guilty verdicts for Connie Meggs, Bennie Parker, Sandra Parker, and Laura Steele); Plea Agreement, *Crowl* Docket, ECF No. 249 (Graydon Young); *United States v. Schaffer*, No. 21-cr-306 (APM) (D.D.C.), Plea Agreement, ECF No. 29; *United States v. Decarlo*, No. 21-cr-73 (BAH) (D.D.C.), Plea Agreements, ECF Nos. 77 (Nicholas Decarlo), 81 (Nicholas Ochs); *United States v. Kuehne*, No. 21-cr-160 (TJK) (D.D.C.), Plea Agreement, ECF No. 142 (Louis Enrique Colon); *United States v. Pezzola*, No. 21-cr-52 (TJK), Plea Agreement, ECF No. 104 (Matthew Greene).

foreseeable" consequences of the scheme, for which Defendants can be held liable, even if they themselves did not carry out those tortious acts. *Halberstam*, 705 F.2d at 487.

Defendants rely on two main cases to support their contentions that the District has not pleaded a plausible conspiracy. The first is *Kurd v. Republic of Turkey*, in which the court found the plaintiffs had not pleaded a plausible conspiracy, but only "parallel conduct," where the defendants had broken police barriers and shouted similar slurs before attacking protesters. 374 F. Supp. 3d 37, 52 (D.D.C. 2019)*; see, e.g.*, Kuehne MTD at 4; Steele MTD at 17–18. But that case is inapposite, as the court in *Kurd* reasoned that "Plaintiffs do not allege that Defendants knew each other before the event. Plaintiffs also do not allege that Defendants in any way communicated with each other prior to or during the event in question, possibly providing the opportunity to form an agreement." *Kurd*, 374 F. Supp. 3d at 52. Here, of course, the District alleges that many of the Defendants were members of one of two organizations—the Proud Boys or Oath Keepers—and not only knew each other, but coordinated their planning and conduct before and on January 6th.

The other case is *Sines v. Kessler*, a case involving the violence that occurred in Charlottesville, Virginia, in August 2017. 324 F. Supp. 3d 765 (W.D. Va. 2018); *see, e.g.*, Steele MTD at 19. In that case, the court found that the plaintiffs had failed to plead a civil conspiracy as to one defendant, because the only well-pleaded fact allegations were that he had hosted a racist podcast, was featured on a poster for the rally, and spoke to followers after the events. *See Sines*, 324 F. Supp. 3d at 794. There were "no allegations he was involved in violence." *Id.* at 795. The facts alleged here against these Defendants are obviously quite different.

In sum, the court holds that the District has pleaded a plausible claim of civil conspiracy, as to which acts of assault, battery, and intentional infliction of emotional distress, even if not

directly committed by individual Defendants, were foreseeable consequences of the alleged scheme.

B.

The court quickly disposes of a few last remaining arguments. Defendants contend that the District has not plausibly pleaded causation: "the attack on the Capitol would have occurred regardless" of Defendants' actions. Klein MTD at 14. But this argument gains no traction, as a tortfeasor's conduct proximately causes harm if "his conduct is a substantial factor in bringing about the harm." *District of Columbia v. Carlson*, 793 A.2d 1285, 1288 (D.C. 2002) (quoting RESTATEMENT (SECOND) OF TORTS § 431 (1965) (legal cause for purposes of negligence)); *see also* RESTATEMENT (SECOND) OF TORTS § 870 cmt. l (1979) (noting that the same "rules on cause in fact for negligent conduct are applicable here in the case of intentional conduct"). The pleading plainly supports that element.

Defendants also contend that their alleged conduct is protected expression under the First Amendment. Meggs MTD at 11–12; Klein MTD at 7. It is not. The court has rejected that argument before and does so again for the same reasons. *See Thompson*, 590 F. Supp. 3d at 118.

Finally, Defendants assert that the complaint fails to set forth a "short and plain statement" in violation of Rule 8. Meggs MTD at 22–26. The court disagrees. True, the complaint is long (117 pages). But it sets forth allegations against 39 Defendants and details their actions, coordination, and movements before and on January 6th. Given the scope of the complaint and its subject matter, the pleading does not exhibit the kinds of traits that warrant repleading, let alone dismissal. *See Ciralsky v. CIA*, 355 F.3d 661, 670 (D.C. Cir. 2004).

**III.**

For the foregoing reasons, Defendants' various motions, *see* n.2, are granted in part and denied in part. The court dismisses the counts alleging violations of § 1985 (Counts I) and § 1986 (Count II), but the District may proceed on its civil conspiracy claims (Counts III–V). Also, the court dismisses the District's prayer for permanent injunctive relief.

Dated: March 31, 2023

Amit P. Mehta
United States District Court Judge