## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DISTRICT OF COLUMBIA,** | Civil Cause of Action |
| Plaintiff, | 1:21-CV-03267-APM |
| v. | |
| **PROUD BOYS INTERNATIONAL, LLC,** *et al.* | Assigned to the Honorable |
| Defendants. | Judge Amit Mehta |

### MOTION OF DEFENDANTS

### EDWARD VALLEJO
### ROBERTO A. MINUTA
### ELMER STEWART RHODES
### JONATHAN PETER KLEIN
### WILLIAM JOSEPH PEPE
### DOMINIC PEZZOLA

### TO RESCHEDULE DEADLINE FOR
### ANSWER TO THE AMENDED COMPLAINT,
### AFFIRMATIVE DEFENSES, COUNTER-CLAIM[1], AND CROSS-CLAIMS[2]

Comes now the above-named Defendants, by undersigned counsel, who request that the Court adjust the deadlines for the foregoing Defendants to file their Answers to the Amended Complaint of the Plaintiff, along with any Affirmative Defenses, Counter-Claim, and/or Cross-Claims, in parallel to those requested by Kenneth Harrelson.

For the same reasons as the motion by Kenneth Harrelson, these Defendants also ask for the same deadline to be ordered for them as well as for Harrelson.

---

[1]     If any
[2]     If any

That is, counsel can file Answers by midnight tonight.  But counsel cannot make the prison bureaucracy cooperate fast enough to let the client's review the 100 page drafts (the Plaintiff's Amended Complaint is 490 paragraphs) and make sure the specifics are correct, which are slightly different in terms of who talked to whom, who was walking with whom, who heard someone else say something and who did not, etc.

Because the Plaintiff has scheduled a "meet and confer" consultation for 3 PM on Tuesday, May 9, 2023, counsel is not asking for any longer delay than May 8, 2023, to accommodate all interests.  Because the Plaintiff's counsel is familiar with their own client's Amended Complaint, we have not heard in consultations with the Plaintiff's counsel any objection to filing the Answer by May 8, 2023.

Counsel has conferred with Plaintiff's counsel and the only question was as to when the deadline would be postponed to.

May 5, 2023                                              RESPECTFULLY SUBMITTED,


John M. Pierce
**JOHN PIERCE LAW, P.C.**
21550 Oxnard Street,
3rd Floor, PMB 172
Woodland Hills, CA 91367
(213) 279-7846
jpierce@Johnpiercelaw.com
*Civil Attorney for Roberto A. Vallejo*

## AFFIRMATIVE DEFENSES[3]

Plaintiff's claims in the Amended Complaint should be dismissed in Defendants' favor based upon the following affirmative defenses. The Defendant specifically alleges as true each and every factual circumstance and element of each Affirmative Defense.

A) Contributory Negligence: Plaintiff, the District of Columbia, is significantly responsible for the damages alleged in the Complaint. For example, District of Columbia Mayor Muriel Bowser refused to call in up to 10,000 to 20,000 National Guard troops, pre-authorized by then Commander-in-Chief President Donald Trump, to protect the U.S. Capitol building and other areas of the District, despite being advised by federal law enforcement and security officials to take this action. The District did request about 153 National Guardsmen for traffic control only, and these were granted several days before January 6, 2021, and were in fact on duty and deployed on July 5-6, 2021. Therefore, the Plaintiff was fully aware that it could have requested additional National Guardsmen for other needs beyond just traffic duty, because it actually did request 153 National Guardsmen for traffic duty and received approval for them. The Plaintiff knows the process.

B) Furthermore, Mayor Bowser officials not only allowed Antifa, so-called (mis-named) Black Lives Matter, anarchist, and other Leftist protestors to riot, run amok, batter Washington, D.C.'s Metro Police Department officers, commit

---

[3]     Credit due to Thomas Caldwell's attorney David Fischer from whose Answer Harrelson incorporates his Affirmative Defenses.

arson, burn police cars, throw bricks and frozen water bottles, and destroy public property from 2017 through 2020.  But then the District of Columbia and its officials celebrated and rewarded the rioters such as by renaming a plaza as Black Lives Matter Plaza, thereby capitulating to the violent riots.  The District and its officials effectively endorsed and encouraged left-wing and anarchist rioters to burn churches, burn businesses, burn cars, and burn buildings; to topple historical statues; fomented a violent attack upon the White House as the nation's world-wide headquarters of its military and foreign policy and crisis management and which resulted in law enforcement officers being assaulted and injured and causing the U.S. Secret Service to evacuate President Trump from the Oval Office; failing to provide security for Republican U.S. Senators such as Rand Paul (R-KY), who was assaulted, battered, and threatened by a mob of BLM and Antifa protestors; and otherwise encouraging and tacitly approving of unruly and violent behavior.  Mayor Bowser and District officials also figuratively "handcuffed" D.C. Metro Police and other law enforcement agencies in enforcing the law by threatening legal action against police for taking aggressive actions to quell left-wing violence in the District.  Mayor Bowser's refusal to oppose violent rioting along with the District's officials doing likewise clearly contributed to the damages and injuries that Plaintiff alleges in the Amended Complaint.  Accordingly, Plaintiff is barred from recovery based upon its contributory negligence.

C) As a result, the Defendants came prepared to defend themselves against lawless rioters whom the Plaintiff celebrated and coddled for years and were then falsely

blamed for being ready to defend themselves and others where the District of

Columbia failed to maintain order and safety.

D)  Proximate Causation and/or Mitigating Damages:  Similarly, and for the same

reasons just stated, the District of Columbia is the cause of many of its own costs.

The District of Columbia – after having many decades of experience with mass

demonstrations converging on the Nation's Capitol – ignored warnings and failed

to prepare to keep order.  On information and belief, planners of peaceful

demonstrations and a "March to the Capitol" applied for and received VALLEJO

understands that it would not be a convincing defense to say "I'm not at fault

because you left the jewelry store door open."  But VALLEJO did not commit

any violence nor any property destruction.  The Plaintiff is suing VALLEJO for

what other people did, mostly people who are unidentified and whom VALLEJO

has never met or known.  Thus, it is valid in defense to say that the District of

Columbia is trying to sue VALLEJO for actions by other people, when the

District actually caused much of the damages it seeks recovery for.  The correct

analogy is that the jewelry store left the door open, but doesn't know who robbed

it, so they are accusing random, innocent people who did not do it.  Most of the

clashes between demonstrators and police began when the District of Columbia's

MPD arrived and took a very different approach than most of the U.S. Capitol

Police.  On one body-cam video, USCP officers are seen and heard confronting

MPD officers asking "*What* are you doing???"  as MPD officers fought with

demonstrators.  MPD officers, like USCP officers, did not follow their training or

instructions concerning the use of force and especially use of non-lethal force.

Clashes with USCP and MPD officers and demonstrators were inflamed when police unlawfully (contrary to rules and instructions) fired rubber bullets and other munitions at the heads of demonstrators from above and blew out part of the face of demonstrator Joshua Black.  The blood on the marble was from the demonstrators, not from the police.  And the District of Columbia's MPD and the USCP sparked off the clashes of which it now complains.  Furthermore, the MPD knew that there was a planned "March to the Capitol" on the streets of Washington, D.C., and accommodated the march with deployment of police blocking side streets while allowing the march along Pennsylvania Avenue, N.W. Thus the MPD knew that there was a march and likely issued a permit for it.  Yet the MPD deployed exactly zero (0) MPD officers at the terminus of the "March to the Capitol" leaving only 5 USCP officers standing behind some bike racks near the fountain now known as the "Peace Monument."  MPD knew weeks before January 6, 2021, that a march would end at the edge of the City's streets where Pennsylvania Avenue, N.W. intersections Second Street, N.W. at the fountain.  Furthermore, MPD officers were asked to allow certain self-appointed leaders of the crowd (including Alex Jones at one point) to address the crowd and try to calm them down and de-escalate the situation.  MPD officers told them that officers were seeking permission to let them up on the steps to address the crowd. An answer never came.  But this confused the crowd into thinking it would be okay to go up on the stairs as the yelling back and forth suggested.  They gave the crowd an alternative understanding and explanation for what they were seeing.  Furthermore, had the MPD cooperated with those self-appointed leaders

the crowd would likely have been at least partly de-escalated.  Finally, the USCP (and even the MPD) had the ability to use the building's massive public address system to warn the crowds to disperse.  But they did not.  And the MPD could have used portable megaphones to warn the police to disperse.  But they did not. These actions would have mitigated the damages claimed.

E)  Mistaken Identity:  While plaintiffs may often have to start with a lawsuit to find out who was actually to blame for injuries, clearly that was not VALLEJO nor any of the Defendants sued here.  Out of around 500,000 to 1 million demonstrators in the District of Columbia on January 5-6, 2021, with about 10,000 demonstrators at and around the U.S. Capitol and Capitol Grounds, and about 1000 charged mostly for misdemeanor trespassing, the District of Columbia has picked out 39 Defendants to be sued here.  But these Defendants are not the people responsible for what the Plaintiff complains about.

F)  Lack of Damages – "Other":   The Plaintiff primarily alleges injury to MPD officers, which is clear enough to examine, but broadly alleges damages to the District of Columbia (not to the Federal Government) of other, unspecified, vaguely hinted at damages.  Since the events at issue (those that are not normal Free Speech demonstrations) happened on Federal Government property, especially, it appears that there are really no damages other than injuries to MPD officers.  Photographs complaining of "damage" to the Capitol Hill area show only debris (trash) – not damage.  Defendant objects to the inclusion of routine clean-up of trash from a mass-demonstration (although typical of leftist demonstrations and not normal for conservative demonstrations) as "damage" to

anything in the District of Columbia or at or around the Capitol.

G) Lack of Damages – Injuries to MPD Officers:  While injuries to anyone, especially police officers, are a very serious matter, nevertheless for the purposes of a legal process to assign responsibility, the Plaintiff's Complaint provides very little detail about who was injured, how, how much, and any indications as to how (context).  Naturally Defendant is not suggesting public disclosure of names or personally identifying information or HIPPA-protected medical information. But at some point in some way the details of injuries claimed with regard to a large number of officers must be alleged or disclosed.  Perhaps this will be addressed by a motion for a bill of particulars / more definite statement which would facilitate confidentiality of police officer and medical information. Furthermore, presumably the MPD responding at a 12:58 PM request from the U.S. Capitol Police for assistance means that (1) the District of Columbia had some kind of pre-existing memorandum of understanding to spell out the details of when the MPD assists USCP or perhaps the reverse.  (2) The Federal Government has as of January 6, 2021, already agreed to reimburse and indemnify the District of Columbia for any costs incurred including for any injuries to MPD or any other District of Columbia officials.  While of course money alone cannot fully remedy physical injuries or related effects, the Amended Complaint has not identified how much of the costs (to the extent that a monetary remedy can be effective) have already been paid by the Federal Government.

May 5, 2023                                        RESPECTFULLY SUBMITTED,

John M. Pierce
**JOHN PIERCE LAW, P.C.**
21550 Oxnard Street,
3rd Floor, PMB 172
Woodland Hills, CA 91367
(213) 279-7846
jpierce@Johnpiercelaw.com
*Civil Attorney for Roberto A. Minute*