IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DISTRICT OF COLUMBIA,**

Plaintiff,

v.

**PROUD BOYS INTERNATIONAL, LLC,** *et al.*

Defendants.

Civil Cause of Action

1:21-CV-03267-APM

Assigned to the Honorable
Judge Amit Mehta

<u>**DEFENDANT JONATHAN PETER KLEIN's**</u>
<u>**ANSWER TO THE AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES**</u>

Comes now the Defendant JONATHAN PETER KLEIN, and hereby Answers the Complaint of the Plaintiff, along with his Affirmative Defenses.

<u>**GENERAL ANSWER AND RESPONSES**</u>

The Amended Complaint is structured that there was a giant conspiracy which strikes KLEIN as a conspiracy theory, and therefore police officers should be compensated for injuries and the District should be compensated for as-yet unidentified "other" damages.

With some exceptions of those who created much of the violence, members of the U.S. Capitol Police and Metropolitan Police Department were injured during violent confrontations with a few – very few – of the estimated 500,000 to 1 million people who came to the District of Columbia on January 6, 2021.  These officers deserve to be compensated, to the extent the legal system is capable of making them whole, for the injuries they sustained.  KLEIN and others point out that much of the problem was actually caused by the Congress, Mayor Muriel Bowser, and a very few errant police officers.  However, the fact that causation is broken as to these

Defendants does not suggest that the officers should not be cared for, provided with medical care, and healed.  But KLEIN understands on information and belief that the Federal Government is responsible to pay for all of that when it calls upon the District of Columbia for help (and all the more so because the District is unavoidably the venue for both large and small demonstrations, possibly a hundred per year including small ones, aimed at the Federal Government which would have no relevance to the District other than the presence of the U.S. Government within the District of Columbia).

However, this Plaintiff is not suing those who actually injured them, at least not in this suit, except as unknown John Does 1-10.  Assuming that the Plaintiff and other officers can get access through the U.S. Capitol Police to the identifications of those actually responsible from the FBI's massive review of video recordings, those who actually assaulted officers for injuries should be asked to contribute to remedy those injuries.

The Plaintiff seeks to make all of the Defendants in this civil case liable for injury allegedly experienced by the District of Columbia (though not identified other than MPD injuries) because the injury resulted from an otherwise irrelevant conspiracy in which the District of Columbia has no standing, claim, or interest.  Although MPD participated in law enforcement activities on Federal, Legislative Branch, property at the U.S. Capitol, presumably MPD does so under a pre-existing, written agreement and presumably the Federal Government agrees to reimburse and indemnify the District for the time, work, and injuries suffered by the MPD when in the service of the Federal Government as supplementary personnel.

Defendant KLEIN, by counsel, requests that the allegations be restated in a Second Amended Complaint without run-on compound paragraphs and sentences that assert multiple different facts within the same sentence, so that it can be more easily understood, analyzed,

responded to, discussed, and decided.  In order to try to admit or deny parts of long compound paragraphs, KLEIN may note that the paragraph is compound, but continues his objection on a blanket level whether restated or not.

Defendant KLEIN urges that the District of Columbia sue those people who actually did what the Plaintiff alleges, not these 39 Defendants who are either innocent or who engaged in only minor infractions, unlike the very few demonstrators who did cross over into violence.

Defendant KLEIN hopes that the extensive investigation by the Federal Bureau of Investigation and the U.S. Capitol Police will identify all those who actually attacked and/or harmed police officers.  But the Plaintiff cannot sue on behalf of the Legislative Branch of the Federal Government nor on behalf of the Executive Branch.

Furthermore, with every allegation denied, the Defendant intends any denial as including a demand that the allegation be proven by competent evidence.  Rather than repeating this demand each time, Defendant applies this to all of his answers on a blanket basis.

Furthermore, throughout the Complaint's compound paragraphs, the Amended Complaint alleges actions or statements by all of the Defendants but also an unbounded population of millions of other people.  Clearly it would be impossible for Defendant KLEIN to know everything that other people did or said or speak for all of the people swept up in the Complaint's over-broad implications. Therefore, KLEIN can only admit or deny with regard to himself or maybe those about whom he has direct personal knowledge.   KLEIN, by counsel, does not consider being aware of things only through the news the same as any other consumer of news as being something he could or should admit or deny.  He may point that out for clarity but asserts the objection as a blanket interpretation for all allegations. Defendant notes that some things are "known" only through news media reporting.  KLEIN may deny allegations that have been the

subject of news reporting or other discussion if he has no first-hand, personal knowledge.  Note that even with respect to news reports, KLEIN may not know if those reports are accurate.

Where an allegation rests on misinterpreting, twisting, misreading, or the like a fact or statement, KLEIN will outright deny the allegation as untrue.  Even where someone may have done or said something somewhat similar to what is alleged, if the allegation is a twisting or misrepresentation of what actually was done or said, KLEIN will deny the allegation.

Where KLEIN DENIES an allegation, particularly a compound paragraph, this is intended to and should be understood to deny any implied allegations or implications or inferences that might be drawn from the explicit factual allegations.  Defendant also denies that the factual allegation if taken as true necessarily has the meaning assigned to it by the Plaintiff as having any relevance to the case.

Furthermore, KLEIN does not necessarily agree that any of the indictments can be "incorporated into the Amended Complaint by reference."  However, Defendant KLEIN does not view this Answer as the ideal forum for addressing such legal questions.  KLEIN notes that there may be a difference between attaching indictments to the Plaintiff's Amended Complaint, but that might be different from actually incorporating the allegations of an indictment into the Amended Complaint as live allegations of the Amended Complaint.


### ANSWERS TO INDIVIDUAL PARAGRAPHS OF THE COMPLAINT

*Answering Complaint Par. 1)*        The paragraph is compound.  Defendant accepts the allegations of the first clause as to who is suing whom, but has no direct knowledge of why the Plaintiff is suing and denies the characterizations contained within the paragraph.

*Answering Complaint Par. 2)*        KLEIN DENIES each and every allegation or

factual detail made or which might be interpreted from or gleaned from the paragraph, including

most especially any events or characterizations which the Plaintiff may come to think are

indisputable, but Defendant does dispute them.

    ***Answering Complaint Par. 3)***        KLEIN DENIES each and every allegation or

factual detail made or which might be interpreted from or gleaned from the paragraph.

    ***Answering Complaint Par. 4)***        KLEIN DENIES each and every allegation or

factual detail made or which might be interpreted from or gleaned from the paragraph.

    ***Answering Complaint Par. 5)***        KLEIN DENIES each and every allegation or

factual detail made or which might be interpreted from or gleaned from the paragraph.

Defendant accepts that different people and groups did different things on or about January 4-6,

2021, and that outside of his knowledge some people may have had plans or intentions he did not

witness.  However, KLEIN DENIES any suggestion that there was any common plan or desire or

intention among the roughly 500,000 to 1 million demonstrators who visited Washington, D.C.,

of whom about 10,000 demonstrated at the Capitol according to the U.S. Capitol Police.

    ***Answering Complaint Par. 6)***        The paragraph is compound.  KLEIN DENIES each

and every allegation or factual detail made or which might be interpreted from or gleaned from

the paragraph.

    ***Answering Complaint Par. 7)***        KLEIN DENIES each and every allegation or

factual detail made or which might be interpreted from or gleaned from the paragraph, except to

the extent that it is unclear and ambiguous what a "shambles" is.  If by Paragraph 7 the Plaintiff

means that there was debris or trash left behind by the crowd estimated 500,000 to 1 million

people throughout the City, requiring nothing more than collecting the trash for discarding,

Defendant accepts that clean-up after the protest might have been required.  However, Defendant

limits this by the fact that the same is true of every demonstration, parade, or event in the Nation's Capitol, including New Year's Eve, the 4th of July, and concert series often held on the West face of the U.S. Capitol for members of the public.

**Answering Complaint Par. 8)**     Denied as mischaracterizing the testimony.

**Answering Complaint Par. 9)**     The paragraph is compound.  KLEIN DENIES that the Plaintiff can "hold the Defendants accountable under federal laws" including because the District of Columbia cannot sue for any alleged injury to federal property it does not own, does not lease, and does not occupy for use.  Defendant further denies that the allegations of Paragraph 9 describe the true motivations of the Plaintiff, which Defendant asserts are plainly to engage in pure political activism and attempt to campaign for the Democrat Party and against the Republican Party in future elections using this lawsuit as a political prop paid for at taxpayer expense.  Furthermore, the paragraph relies upon "by filing this action, makes clear that it will not countenance the use of violence against the District, including its police officers," but ignores the fact that the demonstrators went to the U.S. Capitol, not to any building of the District of Columbia, but the City's Metropolitan Police Department went to the Capitol.

**Answering Complaint Par. 10)**     The Paragraph is compound.  Defendant accepts without personal knowledge the Plaintiff's description of itself.

**Answering Complaint Par. 11)**     The Paragraph is compound.  KLEIN was not involved in the creation of the Proud Boys Club or Proud Boys International and has little knowledge or awareness of the organizational structure.  Therefore, each allegation is DENIED.

**Answering Complaint Par. 12)**     Defendant lacks knowledge about the allegations concerning the Oath Keepers.

**Answering Complaint Par. 13)**     KLEIN does not know and takes no position from

any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Ryan Ashlock.

  ***Answering Complaint Par. 14)***  KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Joseph Randall Biggs, except that he offered public commentary and KLEIN met him briefly and observed him at events in December 2020 and January 2021 and knows him by reputation.

  ***Answering Complaint Par. 15)***  KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Marc Anthony Bru.

  ***Answering Complaint Par. 16)***  KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Thomas Caldwell.

  ***Answering Complaint Par. 17)***  KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant William Chrestman.

  ***Answering Complaint Par. 18)***  KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Enrique Colon.

  ***Answering Complaint Par. 19)***  KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Donovan Ray Crowl.

  ***Answering Complaint Par. 20)***  KLEIN does not know and takes no position from

any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Nicholas DeCarlo.

***Answering Complaint Par. 21)*** Defendant was vaguely aware of Donohoe from Defendant's time in the Proud Boys but takes no position from any personal knowledge as to Defendant Charles Donohoe concerning these allegations.

***Answering Complaint Par. 22)*** Defendant got to know Defendant Matthew Greene during KLEIN's membership in the Proud Boys. Defendant understands that the paragraph is referring to Proud Boys member Matthew Greene from New York and not Oath Keepers member Michael Greene from Indiana. KLEIN believes the allegations of the paragraph are correct except that (1) KLEIN does not agree to the contents of any documents incorporated by reference and (2) KLEIN does not know if Greene is aware of this lawsuit.

***Answering Complaint Par. 23)*** KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Joseph Hackett.

***Answering Complaint Par. 24)*** KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Kenneth Harrelson.

***Answering Complaint Par. 25)*** KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Arthur Jackman.

***Answering Complaint Par. 26)*** KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Joshua James.

***Answering Complaint Par. 27)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Jonathan Peter Klein.

***Answering Complaint Par. 28)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Christopher Kuenke.

***Answering Complaint Par. 29)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Connie Meggs.

***Answering Complaint Par. 30)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Kelly Meggs.

***Answering Complaint Par. 31)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Roberto Minuta.

***Answering Complaint Par. 32)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant David Moerschel.

***Answering Complaint Par. 33)***      KLEIN knows Defendant Ethan Nordean and believes the allegations to be correct.

***Answering Complaint Par. 34)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Nicholas Robert Orchs.

***Answering Complaint Par. 35)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Bennie Alvin Parker.

***Answering Complaint Par. 36)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Sandra Ruth Parker.

***Answering Complaint Par. 37)***      ADMITTED, except that KLEIN objects to the incorporation by reference of other documents and does not necessarily agree to or admit the contents of other documents.

***Answering Complaint Par. 38)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Dominic Pezzola, except that KLEIN objects to the incorporation by reference of other documents and does not necessarily agree to or admit the contents of other documents.

***Answering Complaint Par. 39)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Elmer Stewart Rhodes.

***Answering Complaint Par. 40)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Zachary Rehl.

***Answering Complaint Par. 41)***      KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Jon Ryan Schaffer.

***Answering Complaint Par. 42)***      KLEIN does not know and takes no position from

any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Daniel Lyons Scott.

*Answering Complaint Par. 43)*       KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Laura Steele.

*Answering Complaint Par. 44)*       KLEIN knows Enrique Tarrio from Florida as the leader of the Proud Boys, though from a distance, and believes the allegations to be correct.

*Answering Complaint Par. 45)*       KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Brian Ulrich.

*Answering Complaint Par. 46)*       KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Edward Vallejo.

*Answering Complaint Par. 47)*       KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Jessica Marie Watkins.

*Answering Complaint Par. 48)*       KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Christopher John Worrell.

*Answering Complaint Par. 49)*       KLEIN does not know and takes no position from any personal knowledge, except vague awareness of the home states of members of the Proud Boys, as to Defendant Graydon Young.

*Answering Complaint Par. 50)*       Defendant accepts the Plaintiff's own definition of

the Plaintiff's claim, without waiving rights to potentially bring a third-party claim against others who might not fit within the Plaintiff's definition of John and Jane Does 1-50.  KLEIN suggests that those "who planned, conspired to carry out, and executed the January 6th Attack" are likely to be Federal agents or assets and/or agents of private organizations who are not what the Plaintiff is expecting.

*Answering Complaint Par. 51)*        Defendant accepts the Plaintiff's own definition of the Plaintiff's claim and the categorization of some Defendants as "Individual Defendants."

*Answering Complaint Par. 52)*        DENIED, except to the extent that the unnamed Defendants John Does 1 to 10 might have done so since by definition and logic KLEIN has no way of knowing at this time who (if anyone) those might be.  However, KLEIN DENIES that to the best of his knowledge any of the named Defendants conspired with any of the unnamed Defendants.

*Answering Complaint Par. 53)*        DENIED, with the possible exception of the unnamed Defendants John Does 1 to 10, whom KLEIN suspects may be liable and are probably agents of extremely wealthy principal persons or organizations.

*Answering Complaint Par. 54)*        The paragraph is a statement of law to which an answer is not required but which seems correct.

*Answering Complaint Par. 55)*        The paragraph is a statement of law to which an answer is not required but which seems correct.  Further developments might alter the diversity analysis and Defendant does not mean to foreclose reconsideration if the claims change.

*Answering Complaint Par. 56)*        The paragraph is a statement of law to which an answer is not required but the KLEIN DENIES the factual characterizations and assertions of the paragraph.  Transparently the allegations presented by the Plaintiff are overwhelmingly about

events, plans, agreements, etc. taking place in various states around the country and not in D.C.
The very basis of the Plaintiff's claim is the theory that Defendants planned all around the
country to come to demonstrate at the Capitol.

       ***Answering Complaint Par. 57)***      DENIED.

       ***Answering Complaint Par. 58)***      DENIED.[1]  KLEIN has not heard or investigated
what the Canadian government has done on this topic, but on other topics Canada's positions
would not be reliable or trustworthy on such a point.  Canada appears to be at war with its own
citizens in terms of their liberty, rights, and status as formerly free people.  KLEIN is not aware
of the Proud Boys ever having any members or activities in Canada.

       ***Answering Complaint Par. 59)***      DENIED.

       ***Answering Complaint Par. 60)***      DENIED.  The Proud Boys assemble in large and
small groups at public events or demonstrations _because_ violence from anarchist street gangs
like ANTIFA, Left-wing street gangs like the completely mis-named Black Lives Matter (who
would eagerly attack Black Enrique Tarrio and the other 20% of the Proud Boys who are
minorities) and others are announced or expected.  The Proud Boys are divided into two groups –
the vast majority just want to hang out, watch sports, and drink adult beverages.  These are called
"party boys."  A very small number of them are called "rally boys" and want to defend the rights
of U.S. citizens to gather peaceably and express their First Amendment beliefs.  The constant
trope about the Proud Boys is no different from saying that wherever ambulances go there are
usually wounded people.

       ***Answering Complaint Par. 61)***      DENIED.

       ***Answering Complaint Par. 62)***      DENIED.

---

[1]      Please take note of the general answer explanation concerning implied allegations or taking inferences.  As
stated at the outset, KLEIN denies allegations if they cannot be fully admitted or explained clearly.

***Answering Complaint Par. 63)***        DENIED, although if the unidentified, unsourced quote is accurate it clearly shows the opposite of what the Plaintiff is claiming as to defensive actions only.  Furthermore, the Plaintiff is arguing guilt by group membership.

***Answering Complaint Par. 64)***        DENIED.                .

***Answering Complaint Par. 65)***        DENIED.

***Answering Complaint Par. 66)***        DENIED.

***Answering Complaint Par. 67)***        KLEIN is not familiar with the details of these allegations concerning Elders or the structure of the Proud Boys.  KLEIN has understood that the Proud Boys are organized into chapters for various states or regions of states or cities under the Chairman Enrique Tarrio.

***Answering Complaint Par. 68)***        See Answer to 67.

***Answering Complaint Par. 69)***        The paragraph is compound.  The first sentence is ADMITTED.  KLEIN lacks knowledge of the allegations of the second.  KLEIN notes that many members of the Proud Boys have been outspoken in public, such as Joe Biggs, but apparently the allegations may refer to who has the legal authority to speak for the Proud Boys officially.

***Answering Complaint Par. 70)***        ADMITTED.   KLEIN further answers that each city, state, or regional chapter comes to an agreement through the qualities of leadership and persuasion but is more interested in its local chapter than the national organization.  The main focus of the Proud Boys is to actually gather together in the same place and drink heavily and joke and watch sports.  Those are local activities engaged in in-person.

***Answering Complaint Par. 71)***        KLEIN is aware that Matthew Greene pled guilty and testified in a trial but to the best of KLEIN's knowledge and information, any such allegation is FALSE.  KLEIN is not aware of anyone among the Proud Boys or known to him engaging in

any conspiracy or planning to or actually obstructing any official proceeding.

  ***Answering Complaint Par. 72)***  KLEIN understands that under cross-examination in the trial of *United States v. Nordean, et al*, Mathew Greene rejected the claims of the prosecutors in connection with his plea deal and statement of offense.  Defendant insists that Greene's answers to cross-examination be included.

  ***Answering Complaint Par. 73)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

  ***Answering Complaint Par. 74)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

  ***Answering Complaint Par. 75)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

  ***Answering Complaint Par. 76)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

  ***Answering Complaint Par. 77)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

  ***Answering Complaint Par. 78)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 79)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 80)***  DENIED.

***Answering Complaint Par. 81)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 82)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 83)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 84)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 85)***  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.  But it is unconstitutional to convict someone of statements made that do not qualify the strict requirements of *Brandenburg v. Ohio*.  If Daniel Hayden was convicted of something, it was not for making statements protected by the First Amendment, which do not qualify as inciting <u>*imminent*</u> violence.

***Answering Complaint Par. 86)***  KLEIN has no knowledge about these allegations

concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 87)***        KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 88)***        KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 89)***        KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 90)***        KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 91)***        DENIED.  Although KLEIN explicitly denies all of these allegations in totality, KLEIN also further answers that the transfer of presidential power occurs on January 20 every four months automatically, by operation of law, by the clock striking noon.  KLEIN further answers that no one did, or could, conspire to or oppose the local time in Washington, D.C. becoming noon on January 20  A new President takes off by operation of law in the United States of America, not by any ceremony or official act as in Great Britain.  KLEIN further answers that no presidential power is transferred on January 6.

***Answering Complaint Par. 92)***        KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include

reading news reports without personal knowledge.

    ***Answering Complaint Par. 93)***    KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

    ***Answering Complaint Par. 94)***    DENIED.

    ***Answering Complaint Par. 95)***    DENIED.

    ***Answering Complaint Par. 96)***    DENIED.  President Donald Trump asked the debate moderator Chris Wallace "whom do you want me to condemn?  What do you want me to call them?"  Joe Biden suggested "the Proud Boys."  Trump echoed "Proud Boys."  Thus, Trump (unfairly) *condemned* the Proud Boys upon the invitation of Joe Biden.  Trump made no mention of the Proud Boys until Joe Biden named them.  The  Proud Boys took advantage of the notoriety but no one misunderstood that Trump had told all organizations to stand down.  See Jonathon Moseley, "January 6 House Committee repeats Trump 'Stand by, Proud Boys' myth," American Thinker, June 12, 2022, at

https://www.americanthinker.com/blog/2022/06/january_6_house_committee_repeats_trump_stand_by_proud_boys_myth.html

    ***Answering Complaint Par. 97)***    DENIED.

    ***Answering Complaint Par. 98)***    DENIED.  Like any organization engaging in public relations "spin" the Proud Boys sought to exploit the mention for public relations advantage, but never believed that Trump – who had just *condemned* them on national television at Joe Biden's urging – was agreeing with the Proud Boys about anything.

    ***Answering Complaint Par. 99)***    KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include

reading news reports without personal knowledge.

**_Answering Complaint Par. 100)_**        KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

**_Answering Complaint Par. 101)_**        KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

**_Answering Complaint Par. 102)_**        DENIED.  Although President Trump did claim to have won the 2020 presidential election – and he did in fact win the 2020 presidential election at a minimum because the rules were changed during the election in violation of Article II, Section 1, of the U.S. Constitution which requires that only the state legislatures can set the rules, this paragraph is not what Trump said on November 4, 2020.  Trump described the progress of vote totals throughout the hours after the polls closed, following the sophisticated models of experts, the premature declaration of states before the actual vote totals could be reliably known, and the suspicious activities that took place in states.  Trump described the entire sequence of events and left it to the listener to draw conclusions.  Over the subsequent days and weeks as information developed further, Trump stated the now clear conclusion that the changes in the rules and other irregularities produced an inaccurate tally of the popular votes in several key states. Mountains of evidence were presented to courts – but ignored.  For example, in the State of Georgia, Trump and his campaign filed a 34 page Complaint on December 3, 2020, with **_1,978 pages of evidence attached_**, in _Trump v. Kemp,_ Case No. 1:20-cv-05310, in the U.S. District Court for the Northern District of Georgia.   On January 2, 2021, the parties engaged in an obligatory Rule 26(f) "meet and confer" telephone call which has been consistently lied about.   See "Georgia investigation

of Trump: Yet another scam," World Net Daily,  https://www.wnd.com/2023/03/georgia-investigation-trump-yet-another-scam/

***Answering Complaint Par. 103)***      KLEIN believes that Joe Biggs posted something like this, although it should be remembered that the FBI seized smart phones and computers from both suspected witnesses and suspected Defendants.  Therefore, checking his messages on his smart phone to confirm is not possible at this time.

***Answering Complaint Par. 104)***      KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 105)***      KLEIN believes that Enrique Tarrio posted something like this, although it should be remembered that the FBI seized smart phones and computers from both suspected witnesses and suspected Defendants.  Therefore, checking his messages on his smart phone to confirm is not possible at this time.

***Answering Complaint Par. 106)***      Defendant cannot answer the ambiguous paragraph in terms of what "most" outlets means, but primarily because the American system of governance does not run on media projections.  News media projections do not decide elections.  Elections are decided by accurate, honest, reliable counts of only legitimately-cast ballots by persons who are alive and qualified to vote in the precinct where they are registered, pursuant to rules established by only the State legislature under Article II, Section 1, of the U.S. Constitution.  Letting news media declare the winner of a presidential election is as far removed from a legitimate election as one can imagine.

***Answering Complaint Par. 107)***      DENIED

***Answering Complaint Par. 108)***      KLEIN does not recall the allegations of this

paragraph, again reminding all that the FBI seized smart phones and computers interfering with KLEIN's ability to check on his messages.  But KLEIN further answers that the focus on State capitols conflicts with the Plaintiff's narrative of plans to attack the U.S. Capitol in Washington, D.C.  Furthermore, if the Chair of the Proud Boys declared a break with Donald Trump over the Proud Boys' plans and future actions, this would disassociate Donald Trump from any activities of the Proud Boys (whom the Plaintiff and others falsely try to associate with the Oath Keepers). KLEIN further answers that this would indicate that Tarrio fully understood that Trump's "standby order" had meant that the Proud Boys were not to do anything and Tarrio was calling to defy Trump's "standby order."

*Answering Complaint Par. 109)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 110)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 111)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 112)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 113)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include

reading news reports without personal knowledge.

*Answering Complaint Par. 114)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 115)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 116)*     KLEIN was not a member of the Proud Boys until December 12, 2020, and also did notice such a message from Tarrio or know the context of the conversation that he was referring to.

*Answering Complaint Par. 117)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 118)*     KLEIN has no knowledge of Defendant Nordean's posts.

*Answering Complaint Par. 119)*     KLEIN believes that Tarrio posted something like this on or about November 16, 2020, although in the context of other messages.  Again, KLEIN cannot check to confirm since the FBI has seized computers and smart phones.  Furthermore, the alleged quotes have proven to be true in reality, as the Proud Boys have in fact become political prisoners due to attacks from the Left in and out of government.

*Answering Complaint Par. 120)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 121)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 122)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 123)*     KLEIN has no knowledge of Defendant Joe Biggs' unidentified posts on November 24, 2020, to some unidentified person.

*Answering Complaint Par. 124)*     KLEIN is not aware of Defendant Tarrio's post on November 25, 2020.

*Answering Complaint Par. 125)*     KLEIN does not know if somewhere on social media Nordean posted something like this, however KLEIN suspects that Nordean like others were posting messages along these lines.

*Answering Complaint Par. 126)*     KLEIN is not aware of Defendant Rehl's posts alleged on November 27, 2020, and again notes that he cannot check without his smart phone or computer available.s

*Answering Complaint Par. 127)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 128)*     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 129)*     KLEIN has no knowledge about these allegations

concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

**Answering Complaint Par. 130)**    DENIED.

**Answering Complaint Par. 131)**    The paragraph is compound.  The first sentence is ADMITTED except that the singling out of only some of the attendees and groups involved is misleading and distorting of the truth and is therefore denied.  The second sentence is DENIED as stated.  The Proud Boys were violently attacked by members of Antifa, the so-called Black Lives Matters, anarchists, and other Leftists while trying to protect innocent conservative demonstrators.  Leftists were solely and exclusively responsible for their violence against the Proud Boys and other Trump supporters, just as the Leftists had done since Trump's inauguration in January 2017, and from 2012 through 2020.

**Answering Complaint Par. 132)**    The paragraph is compound.  The first sentence is ADMITTED that the District of Columbia's favored protestors in ANTIFA, Black Lives Matter, and other Leftist and anarchist groups did vastly increase their Left-wing and anarchist violent attacks on innocent demonstrators, and the Proud Boys and the Oath Keepers stood between the violence of the Left and the innocent demonstrators on the right, left defenseless by the District of Columbia's unconstitutional laws on guns.  The second sentence's singling out of only some of the attendees and groups involved is misleading and distorting of the truth and is therefore DENIED.  The third sentence is DENIED in that the Proud Boys were attacked by members of Antifa, the so-called Black Lives Matters, anarchists, and other Leftists.

**Answering Complaint Par. 133)**    ADMITTED.  Members of the Proud Boys were victims of unprovoked attacks from Left-wing and anarchist groups specializing in political violence.

***Answering Complaint Par. 134)***     DENIED.

***Answering Complaint Par. 135)***     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 136)***     KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

***Answering Complaint Par. 137)***     DENIED.

***Answering Complaint Par. 138)***     ADMITTED, using 1:42 a.m. as an approximation and Defendant knowing only long after the tweet that there was such a tweet at some point in time sent by someone in Trump's name. KLEIN further answers that Defendant is aware of many parties promoted as billed to be "wild" parties and fails to grasp what could be wrong with a "wild" protest, particularly those approved by the U.S. Park Police and USCP.  In any event, the Proud Boys were there to provide security and escort peaceful attendees at any such events. They were not there to protest or engage in a wild party.  They came to protect Trump supporters, so that those Trump supporters cold engage in a lawful protest.

***Answering Complaint Par. 139)***     The paragraph is compound.  KLEIN DENIES the opinion expressed in the first clause, as Trump did not consult with KLEIN and KLEIN does not know Trump's private thoughts at 1:42 AM.  Defendant admits the second part, the first full sentence after the opinion, except that under the Constitution the presiding officer (with the Vice President choosing to serve in that role in 2021) counts the Electoral College votes cast in the various States in the presence of the Joint Session of Congress.  Oddly, Congress does not count the votes.  Congress is charged with witnessing the Vice President counting the votes.  Finally,

the Congress is required to convene at 1:00 PM on January 6 every four years.  However, it is common for Congress to break up is work by recessing and reconvening.  Congress even pretends that it is the same "legislative day" days later.  Therefore, there was no requirement for Congress to conclude the Vice President's counting of the Electoral College votes on January 6, 2021.

*Answering Complaint Par. 140)*        DENIED, particularly in the vagueness as stated. The Defendants here have no relationship with the random – unnamed -- people supposedly making unsourced statements.

*Answering Complaint Par. 141)*        DENIED.  There was no alliance or coordination between the Proud Boys, whether nationally or any chapter, and the Oath Keepers, whether nationally or any chapter, concerning any events or activities of any kind in or around the District of Columbia relating to January 6, 2021.  KLEIN has learned that Kelly Meggs was not a leader in the Florida chapter of the Oath Keepers until about December 26, 2020, and then only because the previous leader fell sick and unable to serve.

*Answering Complaint Par. 142)*        DENIED.

*Answering Complaint Par. 143)*        DENIED

*Answering Complaint Par. 144)*        DENIED.  KLEIN has no knowledge about these allegations concerning the Oath Keepers.  If Kelly Meggs – not then even a leader in the Oath Keepers – was thinking of such plan that would be purely Meggs' own thoughts, and not a plan agreed to by the Proud Boys.

*Answering Complaint Par. 145)*        KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.  KLEIN again further answers that he has

learned that Kelly Meggs was not yet a leader in the Oath Keepers until December 26.

*Answering Complaint Par. 146)*      KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.  KLEIN never heard of any plan to work with the Oath Keepers.

*Answering Complaint Par. 147)*      DENIED.  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge or any plan for the Proud Boys to work with the Oath Keepers.  KLEIN further answers that "de-conflicting" with other organizations to simply inform other groups that they would also be at the same event was not a plan or agreement to do anything with such other organization other than to avoid getting in each other's way.

*Answering Complaint Par. 148)*      DENIED.

*Answering Complaint Par. 149)*      DENIED.

*Answering Complaint Par. 150)*      The paragraph is compound.  The first sentence is ADMITTED.  KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 151)*      KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 152)*      KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include

reading news reports without personal knowledge.

*Answering Complaint Par. 153)*        KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 154)*        KLEIN has no knowledge about these allegations concerning the Oath Keepers, which again as stated in the general answer does not include reading news reports without personal knowledge.

*Answering Complaint Par. 155)*        KLEIN has no knowledge of the substance of the allegations.

*Answering Complaint Par. 156)*        KLEIN has no knowledge of the substance of the allegations.  They sound believable, except that people wanting to join the Proud Boys were spontaneously contacting the Proud Boys faster than the Proud Boys could vet or process their inquiries.  There was no need to recruit.

*Answering Complaint Par. 157)*        KLEIN has no knowledge of this private conversation.  However, KLEIN  further answers that the Proud Boys was not created with any public activism role but merely as a social club and drinking club.  Therefore, the vast majority of Proud Boys members joined and were active only in getting together to watch or engage in sports, drink alcoholic beverages, and Biggs would have been (if the conversation occurred) been referring to those relatively small numbers of Proud Boys who grew interested in protecting the right of free speech of Americans against violent street gangs like ANTIFA continuing the tradition of Mussolini's "Black Shirts" street army.  The Proud Boys saw and responded to the threat of political violence committed by the Left and by anarchists.

*Answering Complaint Par. 158)*        ADMITTED.  See also Answer to paragraph 157.

*Answering Complaint Par. 159)*        DENIED.

*Answering Complaint Par. 160)*        DENIED, except with regard to unnamed

Defendant's John Doe 1 through 10 which obviously included undercover provocateurs working

for the Federal Government, as revealed in video recordings.  KLEIN further answers that he

cannot imagine how wearing street clothes would give anyone a "tactical advantage" over law

enforcement.  Law enforcement is based on people's conduct, not on who they are.  Wearing

street clothes would, however, and did deter ANTIFA from attacking unarmed protestors,

because ANTIFA street thugs would not know whom they were attacking.

*Answering Complaint Par. 161)*        ADMITTED.  KLEIN further answers that the idea

that there is anything nefarious about Proud Boys members coming in ordinary clothing is

absurd, baffling, and ridiculous.  There are no fashion crimes in America.  The United States of

America does not have a national dress code.  In fact, KLEIN further answer that this decision by

the Proud Boys only leads to the obvious legal conclusion that Chair of the Proud Boys Enrique

Tarrio had decided that attendance at events in January 6, 2021, were to be disassociated from

the Proud Boys.  Banning the use of Proud Boys "colors" (identifiable clothing and insignia)

clearly meant (and no other meaning makes any sense) that if people went to D.C. on January 4-

6, 2021, they were not going as members of the Proud Boys but as independent individuals.  The

organization itself disavowed any role in the January 6 protests.  See also Answer to Paragraph

160.

*Answering Complaint Par. 162)*        See Answer to Paragraphs 160 and 161.

*Answering Complaint Par. 163)*        See Answer to Paragraphs 160 and 161.  KLEIN

rejects the opinions of uninformed law enforcement engaging in pure speculation.

*Answering Complaint Par. 164)*        DENIED.  These quotes are from a book, not

instructions from Tarrio.  KLEIN further answers that the Proud Boys did none of those things.

KLEIN also answers that opinions of other people, even law enforcement, are not relevant.

> **_Answering Complaint Par. 165)_**        See Answer to Paragraphs 160 and 161.

> **_Answering Complaint Par. 166)_**        See Answer to Paragraphs 160 and 161.

> **_Answering Complaint Par. 167)_**        The paragraph is compound.  KLEIN DENIES the

allegations, particularly the unlimited application to all Defendants communicating with each

other, which did not happen.

> **_Answering Complaint Par. 168)_**        KLEIN has no knowledge about these allegations

concerning the Oath Keepers, which again as stated in the general answer does not include

reading news reports without personal knowledge.

> **_Answering Complaint Par. 169)_**        The paragraph is compound.  To the first sentence,

KLEIN admits that to the extent he is aware of activities of other Proud Boys they made use of

commercially-available, off-the-shelf communication systems readily available to any civilian.

With regard to the second and third sentences KLEIN does not know.

> **_Answering Complaint Par. 170)_**        KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

> **_Answering Complaint Par. 171)_**        KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

> **_Answering Complaint Par. 172)_**        KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

> **_Answering Complaint Par. 173)_**        KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

> **_Answering Complaint Par. 174)_**        KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

*Answering Complaint Par. 175)*      KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

*Answering Complaint Par. 176)*      KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

*Answering Complaint Par. 177)*      KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

*Answering Complaint Par. 178)*      KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

*Answering Complaint Par. 179)*      KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

*Answering Complaint Par. 180)*      KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

*Answering Complaint Par. 181)*      KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

*Answering Complaint Par. 182)*      KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

*Answering Complaint Par. 183)*      DENIED.  KLEIN further answers that the Proud

Boys have never possessed nor used any "military-style communications equipment."

Furthermore, "protective gear" is quite different from "tactical vests."  Protective gear is aimed

at not getting stabbed by ANTIFA as happened in December.

*Answering Complaint Par. 184)*      DENIED, particularly where the Plaintiff

intermingles unrelated Defendants and there was no planned attack.  However, KLEIN further

answers that the Plaintiff alleges that unnamed persons coordinated "plans to travel to and stay in or near the District." In other words, the Defendants are accused of tourism. The economy of the Plaintiff depends upon tourism. KLEIN further denies the implication that it is expensive at all to travel to Washington D.C. for a couple of days.

*Answering Complaint Par. 185)*    DENIED. See Answer to Paragraph 184.

*Answering Complaint Par. 186)*    KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

*Answering Complaint Par. 187)*    KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

*Answering Complaint Par. 188)*    KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

*Answering Complaint Par. 189)*    KLEIN has no knowledge of the conversations alleged.

*Answering Complaint Par. 190)*    KLEIN has no knowledge of the conversations alleged. However, KLEIN further answers that if the alleged statements are accurate, they disprove the Plaintiff's claims by focusing on activities at night when the Plaintiff and others allege a plan to stop the Electoral College counting at or around 1:00 PM on the afternoon of January 6, 2021.

*Answering Complaint Par. 191)*    KLEIN has no knowledge of the conversations alleged or the allegations regarding the Oath Keepers.

*Answering Complaint Par. 192)*    KLEIN has no knowledge of the conversations alleged or the allegations regarding the Oath Keepers.

*Answering Complaint Par. 193)*    KLEIN has no knowledge of the conversations

alleged or the allegations regarding the Oath Keepers.

      *Answering Complaint Par. 194)*      KLEIN has no knowledge of the conversations alleged or the allegations regarding the Oath Keepers.

      *Answering Complaint Par. 195)*      KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.  However, KLEIN further answers that maps of Washington, D.C. are commonly available.

      *Answering Complaint Par. 196)*      KLEIN has no knowledge of the conversations alleged or the allegations regarding the Oath Keepers.

      *Answering Complaint Par. 197)*      KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

      *Answering Complaint Par. 198)*      KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.  However, from later review of news reports and information in subsequent years, Kelly and Connie Meggs attended basic firearm training in September 2020, when everyone thought that Donald Trump would easily win re-election.

      *Answering Complaint Par. 199)*      KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

      *Answering Complaint Par. 200)*      KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

      *Answering Complaint Par. 201)*      The paragraph is compound.  As to the first sentence, KLEIN has no knowledge of what all Proud Boys did or Proud Boys in other parts of the country, but it is obvious that a very small percentage of Proud Boys from around the country traveled to Washington, D.C.  Many members did not want to attend a third demonstration.  As to the second sentence, KLEIN further answers that volunteering to provide supplemental

security for "wild" parties like "wild" protests is perfectly lawful.  KLEIN understands that

calling an event "wild" is simply marketing embellishment or enthusiasm that is commonplace.

As to the third sentence, KLEIN does not know about Matthew Greene's decision-making,

thoughts or plans.  The fourth sentence is DENIED as being vague.  Greene did not coordinate

any plans other than for tourism, that is cars, travel routes, stops for gas, hotels, etc.  The fifth

sentence might be true but it is vaguely stated.

  ***Answering Complaint Par. 202)***  ADMITTED.  However, KLEIN further answers

that to cover expenses for multiple "events" $5,500 is a small amount of money.

  ***Answering Complaint Par. 203)***  KLEIN has no knowledge of the substance of the

allegations.   However, KLEIN further answers that he DENIES any implication that flying from

Miami to Washington, D.C., requires some special funding source.

  ***Answering Complaint Par. 204)***  DENIED.  Among other things, the paragraph is

vague.  As any event approaches, and people pay more attention, promotion normally increases.

But KLEIN does not know who the paragraph refers to or in what way.

  ***Answering Complaint Par. 205)***  KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

  ***Answering Complaint Par. 206)***  KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

  ***Answering Complaint Par. 207)***  KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

  ***Answering Complaint Par. 208)***  KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

  ***Answering Complaint Par. 209)***  KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

***Answering Complaint Par. 210)***    KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

***Answering Complaint Par. 211)***    KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

***Answering Complaint Par. 212)***    KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

***Answering Complaint Par. 213)***    KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

***Answering Complaint Par. 214)***    KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

***Answering Complaint Par. 215)***    KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

***Answering Complaint Par. 216)***    KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

***Answering Complaint Par. 217)***    KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

***Answering Complaint Par. 218)***    The paragraph is compound.  The first sentence is DENIED as there was no January 6th Attack and no promotion or plans for a January 6th Attack. The rest of the paragraph is ADMITTED.

***Answering Complaint Par. 219)***    KLEIN believes that this is correct.

***Answering Complaint Par. 220)***    KLEIN believes that this is correct.

***Answering Complaint Par. 221)***    ADMITTED.

*Answering Complaint Par. 222)*     KLEIN admits that the general message of the alleged communications is generally correct.

*Answering Complaint Par. 223)*     KLEIN admits that the general message of the alleged communications is generally correct.  Again, KLEIN cannot check because the FBI took smart phones and computers.

*Answering Complaint Par. 224)*     KLEIN admits that the allegations and the general message of the alleged communications are generally correct, but again the FBI seized all electronic equipment, smart phones and computers, during arrests.

*Answering Complaint Par. 225)*     KLEIN admits that the allegations and the general message of the alleged communications are generally correct, but again the FBI seized all electronic equipment, smart phones and computers, during arrests.  KLEIN further answers that the overwhelming majority of Proud Boys members merely conduct or attend parties and engage in or watch sports and drink.  Those who attend rallies as defense for vulnerable citizens do so as a diversion from their normal partying, and were usually an informal, disorganized field trip as a diversion.  So, "a completely different operation" is compared with that.

*Answering Complaint Par. 226)*     KLEIN answers that the 1776 Returns document is a false flag and fabrication by members of the U.S. Government, probably not the FBI. Nevertheless, the document bears no relationship with what actually happened on January 6, 2021.

*Answering Complaint Par. 227)*     KLEIN agrees with the Plaintiff's summary of what the "false flag" document fabricated by agents of the U.S. Government, whether FBI or CIA, says, however the document speaks for itself.  However, it was not known to any of the Proud Boys at the time.

***Answering Complaint Par. 228)***      KLEIN agrees with the Plaintiff's summary of what the "false flag" document fabricated by agents of the U.S. Government, whether FBI or CIA, says, however the document speaks for itself.

***Answering Complaint Par. 229)***      KLEIN agrees with the Plaintiff's summary of what the "false flag" document fabricated by agents of the U.S. Government, whether FBI or CIA, says, however the document speaks for itself.

***Answering Complaint Par. 230)***      ADMITTED, although KLEIN does not know what Tarrio's meme (or whomever created the meme that Tarrio posted) meant.

***Answering Complaint Par. 231)***      KLEIN believes that recalls such a post, but again does not have his smart phone taken by the FBI with which to check.

***Answering Complaint Par. 232)***      ADMITTED.

***Answering Complaint Par. 233)***      DENIED.

***Answering Complaint Par. 234)***      KLEIN does not know about the substance of the allegations.  If Tarrio posted that, KLEIN missed it.

***Answering Complaint Par. 235)***      KLEIN does not know about the substance of the alleged post.  However, KLEIN further answers that other than rough language the idea that law makers who break the law should be punished is hard to find fault with, provided that all actions against law-breakers is done according to law and due process in a court of law.

***Answering Complaint Par. 236)***      KLEIN does not know what an unidentified "one MOSD leader responded."  KLEIN further understands Rehl's response to mean that the comment "I strongly recommend you use the national mall and not Pennsylvania avenue though. It's a wide-open space, you can see everything coming from all angles" was a good start at coming up with a plan.  In fact, that is the only comment exchanged among the Proud Boys leading up to January 6, 2021, that actually happened as proposed.  KLEIN further answers that the Proud Boys were notorious for not

planning anything and most of all for not following plans.

**Answering Complaint Par. 237)**        KLEIN answers that in the alleged quote Tarrio on

January 4, 2021, is asking what another person is proposing that the Proud Boys might do only 2

days later.  Tarrio is inquiring of what plans the leaders are discussing and proposing as late as 2

days before January 6, 2021, indicating that there was no plan or conspiracy.  This tone and way

of speaking was typical for Tarrio, more leading a discussion as a brainstorming leader or

committee leader than giving directions or orders.  KLEIN further answers that in any such quote

Tarrio would have been saying that someone sent a voicemail message suggesting that the Proud

Boys "storm" (whatever that means) the U.S. Capitol. Tarrio did not give his opinion but is

opening up a discussion by citing what someone proposed for discussion.  Furthermore, we now

know that the Proud Boys was littered with undercover government agents (not limited to the

FBI).  None of them reported any conspiracy or plan regarding January 6 to their handlers.  But

some of them may have provoked or steered the Proud Boys.

**Answering Complaint Par. 238)**        The paragraph is compound.  KLEIN DENIES that

Tarrio or any other Proud Boys member ever did anything for any January 6 Attack.  The

Plaintiff has declared that Tarrio was arrested for being present when other Proud Boys members

burned a Black Lives Matter banner – after Proud Boys were viciously attacked and stabbed by

BLM protestors and ANTIFA about 2-3 weeks earlier.  There was no indication that Tarrio either

knew where the banner came from or did anything other than watch it being burned.  MPD

officers did not discover any high-capacity firearm magazines "while arresting Tarrio."  MPD

officers executed an illegal and unconstitutional search of his parked car – unnecessary to and

unrelated to his arrest – without a warrant and found ceremonial gifts that the Plaintiff has

unconstitutionally tried to prohibit in violation of *District of Columbia v. Heller* and *New York*

*State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. ___ (2022) and the Second Amendment

to the U.S. Constitution.  Tarrio was ordered as a condition of his bail to take 24 hours to gather

his belongings and reschedule his speech scheduled for the U.S. Capitol Grounds under "Latinos

for Trump" on January 6, 2021, and then return for his trial when scheduled.

**Answering Complaint Par. 239)**     The paragraph is compound.  As to the first

sentence, KLEIN was not a member of the leaders chat group.  As to the second sentence, Tarrio

was not arrested for an unlawful conspiracy but for events on December 12, 2020.  Therefore,

employing our mind-reading powers it would appear that Donohoe would want to delete

evidence of December 12, 2020.  KLEIN has no knowledge of the third sentence's allegations.

KLEIN has no knowledge of the fourth sentence's allegations but they sound highly improbable.

**Answering Complaint Par. 240)**     ADMITTED, even if not word for word.

**Answering Complaint Par. 241)**     ADMITTED.  KLEIN further answers that any

plans that existed prior to January 4, 2021, at 7:15 PM were cancelled and stopped.  Nothing that

had been planned, discussed, or agreed upon prior to 7:15 PM on January 4, 2021, was still

operative or relevant to any subsequent activities or events.  The Proud Boys overtly disbanded

any plans that had existed prior to that time.

**Answering Complaint Par. 242)**     KLEIN does not know the unidentified MOSD

leader.

**Answering Complaint Par. 243)**     DENIED, unless "the plans" referred to were to

attend the lawful, permitted rally at the Ellipse where Donald Trump and others spoke and to

provide security at lawful, permitted demonstrations on the U.S. Capitol Grounds.  Again any

plans were cancelled on 7:15 PM on January 4, 2021.

**Answering Complaint Par. 244)**     KLEIN has no knowledge of the substance of the

allegations concerning the Oath Keepers.

     ***Answering Complaint Par. 245)***     KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

     ***Answering Complaint Par. 246)***     KLEIN was not part of that conversation between Kelly Meggs and KLEIN.

     ***Answering Complaint Par. 247)***     KLEIN does not know about Caldwell doing these particular things or not.  However, one could easily map out a route on www.Google.com/maps

     ***Answering Complaint Par. 248)***     KLEIN has no knowledge of the substance of the allegations concerning the Oath Keepers.

     ***Answering Complaint Par. 249)***     ADMITTED, even though compound, although in the last sentence KLEIN cannot speak for Greene but KLEIN did receive word to meet at the Washington Monument at or by 10:00 AM.  KLEIN further answers that normally these actions would be referred to as tourism, upon which the District of Columbia depends.

     ***Answering Complaint Par. 250)***     The paragraph is compound.  KLEIN never knew Rehl and has no knowledge of Rehl.  KLEIN may have seen a post like that described in the second sentence.  Again, the FBI confiscated KLEIN's smart phone and computer upon his arrest so he cannot check this. As to the third sentence, KLEIN did not Rehl and does not recall such a message.  KLEIN has no knowledge of Donohoe's communications with Rehl.  KLEIN further answers that radios still remain legal in the United States of America, unlike parts of occupied Europe in World War II.

     ***Answering Complaint Par. 251)***     The paragraph is compound.  KLEIN has no knowledge of the allegations of the paragraph.

     ***Answering Complaint Par. 252)***     ADMITTED, except only in the context that the Proud Boys were notorious for not planning, not paying attention to plans, not following plans,

but instead drinking late into the night and forgetting all of their plans.

> ***Answering Complaint Par. 253)***     DENIED.

> ***Answering Complaint Par. 254)***     KLEIN has no knowledge of these allegations about

unknown MOSD leaders, including because they are unknown.

> ***Answering Complaint Par. 255)***     KLEIN has no knowledge of these allegations about

unidentified MOSD leaders.

> ***Answering Complaint Par. 256)***     KLEIN has no knowledge of these allegations.

KLEIN further answers that once again the alleged conversations if true and accurate would

show the lack of any clear plan as of 9:17 PM on January 5, 2021.

> ***Answering Complaint Par. 257)***     KLEIN has no knowledge of these allegations, but

if true again would emphasize the lack of planning with regard to January 6, 2021.

> ***Answering Complaint Par. 258)***     KLEIN has no knowledge of these allegations.

However, KLEIN further answers that the Complaint alleges that "at approximately the same

time" (9:17 PM) Joe Biggs announced that "We have a plan" implying that prior to 9:17 PM the

day before January 6, 2021, there was no plan.  Similarly, the paragraph alleges that Donohoe

responded: "What's the plan so I can pass it to the MOSD guys," presumably after 9:20 PM on

January 5, 2021.  So the Proud Boys did not come to Washington, D.C. pursuant to any plan.

> ***Answering Complaint Par. 259)***     KLEIN has no knowledge of these allegations.

However, the alleged posts again reinforce that no plan existed.

> ***Answering Complaint Par. 260)***     KLEIN has no knowledge of these allegations.

> ***Answering Complaint Par. 261)***     ADMITTED.

> ***Answering Complaint Par. 262)***     DENIED, unless the allegations concern violence

planned by Antifa, Black Lives Matter, anarchists, or left-wing rioters.

*Answering Complaint Par. 263)*        KLEIN knows of these allegations only through news reports but denies that Tarrio's arrest has anything to do with "law enforcement officials [making] substantial efforts to disrupt and prevent [any] planned violence in advance and – unless violence planned by Antifa, Black Lives Matter, anarchists, or left-wing rioters. The record is clear that law enforcement officials did not make substantial efforts to disrupt or prevent any violence, but on the contrary engaged in a widespread "stand down" with seriously under-staffed (compared to normal days) and uninformed (with little to no sharing of intelligence) law enforcement officers of the District of Columbia and U.S. Capitol Police making almost no efforts to prepare for January 6, 2021, or respond until the riots by a very small number of the 10,000 demonstrators at the Capitol had already spun out of control.

*Answering Complaint Par. 264)*        KLEIN does not have any knowledge of these alleged conversations or actions but in the alternative DENIES the content of these alleged communications as being transparently false, left-wing, paranoid conspiracy theories and defamation of peaceful protestors and wonders why the FBI did not disseminate this information to MPD and the USCP so they could have properly prepared.  If County officials and County law enforcement in Maryland were advising residents of a huge rally on January 6, 2021, why didn't the Plaintiff's MPD and the USCP know about it?

*Answering Complaint Par. 265)*        DENIED.  Information found by KLEIN is that the FBI internally had extensive information about upcoming demonstrations but utterly failed to pass that information along to anyone governmental or public who should have been told about it.   KLEIN further answers that the subject and content of the information reported within the FBI was about the likelihood of violence by Antifa and other anarchist or left-wing organizations.  During the criminal trial, KLEIN became aware of information that Sam

Andrews and other groups (the Salt and Light Brigade and certain media outlets) may have been promoting aggressive forms of protest, but he to date has encountered no evidence that patriots were traveling "to the District to commit violence and "war" on January 6, 2021," and KLEIN further answers that no patriots did in fact travel to the District of Columbia "to the District to commit violence and "war" on January 6, 2021."

*Answering Complaint Par. 266)*        DENIED, unless the allegation refers to information that parts of the FBI utterly failed to share with anyone.  However, KLEIN further answers that the maps referred to are available (instantly) on the internet including from the Architect of the Capitol because the Capitol is a public building and a museum which is open to the public.  This would be like the FBI discovering that maps of the United States are for sale at gas stations.

*Answering Complaint Par. 267)*        The paragraph is compound.   KLEIN has no knowledge of the allegations concerning the Oath Keepers, except that maps of the Capitol have been publicly available for decades.  KLEIN also wonders why the FBI's Norfolk, Virginia field office did not warn the District's MPD or the USCP about this.

*Answering Complaint Par. 268)*        DENIED.

*Answering Complaint Par. 269)*        DENIED.

*Answering Complaint Par. 270)*        DENIED, in that the only activities required are for the presiding officer to count the Electoral College votes while the Joint Session of Congress watches.  There are duties imposed, but not on Members of Congress other than to attend. Of course many do not attend for various reasons, as is customary with Congressional business, and in the days of horses and buggies would be even more normal. The 12th Amendment requires Congress to assemble on a certain day, designated by law as January 6, but Congress has always functioned with some of its members absent.  In fact, a process of asserting a quorum exists

specifically because there are always or almost always some Members of Congress absent.

Therefore, even the directive to assemble is not a binding duty upon any particular Member of

Congress.  However, it is common practice in Congress to recess proceedings and reconvene

later.  Therefore, the Congress could have convened at 1:00 PM on January 6, 2021, and then

immediately recessed to another day.  The Vice President as President of the Senate, should he

choose to attend in that role, which Vice Presidents frequently do not, is required to count the

votes in the presence of Congress.  Members of Congress have the opportunity – but not the duty

– to object to the inclusion of certain Electors or slates of Electors, or which slate of Electors is

the correct one, or the vote total of the Electoral College from each State.

*Answering Complaint Par. 271)*        Admitted expect that the functions described occur

on December 12, not January 6, and in the State capitols, not in Washington, D.C. (except to the

extent that the three (3) Electors specifically for the District of Columbia also meet the same as

for the various States in State capitols all across the nation).  Therefore, this process had already

occurred and been completed well before January 6, 2021.

*Answering Complaint Par. 272)*        ADMITTED.  See Answer to Paragraph 270.

However, KLEIN further answers that the Constitution empowers each House of Congress to set

its own rules and procedures.  One of those rules or procedures is the common practice of

Congress to recess and continue particular business on another day.  Therefore, while the

Constitution requires Congress to assemble at 1:00 PM and "that date" is set as January 6, every

four years, there is no requirement or expectation that the activities mentioned will conclude on

January 6 in any given year.  Once the Congress has met for even 1 minute at 1:00 PM (Congress

was in fact late on January 6, 2021, as often), Congress is free to recess immediately and retire to

engage in discussions, consultations, horse-trading, deal-making, debates, or visit the District of

Columbia's many fine drinking establishments or go play golf, as they may desire. Therefore, the actions described cannot be obstructed when it is common place for Congress to break up and conduct is business into different sessions spread across different days[2]. Furthermore, there is no requirement as to _where_ the Congress must "be in session." Congress could assemble on the beach in Key West, Florida, if they wished. Note that the identity of the "President of the Senate" changes depending upon whether the Vice President of the United States of America chooses to be in attendance on any particular day or whether another Senator must substitute for the actual President of the Senate. That is, the President of the Senate means whomever is the presiding officer over the U.S. Senate at the time.

*Answering Complaint Par. 273)*        ADMITTED. However, KLEIN further answers that the paragraph and the constitutional provisions quoted debunk the narrative of the Plaintiff, Department of Justice, and others that any "presidential power" is "transferred" on January 6.

*Answering Complaint Par. 274)*        KLEIN lacks knowledge of the allegations asserted, but from general information and news reports further answers that Tarrio's condition of bail included a requirement for him to remain outside the District of Columbia after a 24 hour period of time (presumably but not explicitly stated to collect his belongings from his hotel). From news reports and other information, Tarrio fully and faithfully complied with the Court's order setting the terms of bail, and left the District of Columbia in about 8 hours – less than the required 24 hours -- after conferring with potential attorneys and coordinating the cancellation of his planned speech to be delivered lawfully on the U.S. Capitol Grounds for "Latinos for Trump" at the Russell Senate Office Building under a permit issued by the USCP.

*Answering Complaint Par. 275)*        DENIED. The documentary film crew mentioned

---

[2]        Note that in a recent impeachment, the U.S. Senate assembled at 1:00 PM on the required day following receipt from the U.S. House of Articles of Impeachment, then immediately went into recess within a minute. This allowed the Senate about 4-5 days in which to plan and organize its next steps.

recorded a video, which may be viewed on YouTube at "GREETING NOT A MEETING:

Enrique Tarrio (Proud Boys) and Stewart Rhodes (Oath Keepers) Jan. 5, 2021" at

https://www.youtube.com/watch?v=cMr1GKhC5bY The video shows Oath Keepers leader

Stewart Rhodes providing security for attorney Kellye SoRelle who (Kellye) wanted to talk to

Enrique Tarrio about Tarrio finding an appropriate lawyer.  On the video, Rhodes says

something to the effect of "pleased to meet you" (indicating that Rhodes and Tarrio had never

meet in person prior to January 5, 2021) for all of about 6 seconds.  Rhodes then steps away,

turns his back on Tarrio and the group around Tarrio, and continues to provide security by

scanning the parking garage looking out away from Tarrio and Kellye SoRelle and others.  A

woman takes over the conversation and extensively discusses with Tarrio Tarrio's logistical

plans to leave the District of Columbia.  The woman offers to arrange a car for Tarrio that will

not be known or noticed and is surprised to learn that Tarrio plans to immediately drive North to

Baltimore, Maryland, not to fly on an airplane, and not to drive South toward his home in Miami,

Florida, through Virginia.  The "meeting" is undeniably about how Tarrio is going to get his

luggage out of his hotel and his travel plans leaving Washington, D.C. after being delivered by a

National Geographic film crew led by Nick Quested and who has not been disclosed as a

confidential human source by the Department of Justice.  Rhodes is not part of the meeting as

shown on video.  There is clearly no mention of the Capitol or any event on January 6, 2021.

    ***Answering Complaint Par. 276)***       KLEIN has no knowledge of these events except

that he has heard of Tarrio's description that Tarrio went to Baltimore, Maryland, the evening of

January 5, 2021, which meant he left in about 8 hours from release on bail although he was

allowed 24 hours by the D.C. Superior Court.

    ***Answering Complaint Par. 277)***       The paragraph is compound.  KLEIN ADMITS that

an estimated 500,000 to 1 million demonstrators peacefully assembled at and centered around the Ellipse area of the U.S. park known as the Washington Mall, South of the White House.  KLEIN further answers that an enormous contingent of Chinese-Americans and other Asian-Americans protesting the Communist Party of China, gathered at the Ellipse park area on the Washington Mall near the White House and near the Washington Monument and spread all around the Washington Mall and surrounding areas.  No one engaged in, thought about, planned for, mentioned, or even considered any violence, which is DENIED.

**Answering Complaint Par. 278)**     DENIED, unless the "action" referred to is correctly understood as defending innocent and peaceful Trump supporters – unarmed in the "gun free zone" of the District of Columbia – from violent attacks from Antifa, other anarchists, misnamed Black Lives Matter rioters, and other Leftist rioters and violent street thugs.  Furthermore, KLEIN does not understand what the paragraph is alleging that people "traveled together or otherwise convened" which appears to be just another way of saying 500,000 to 1 million demonstrators committed tourism and came to their Nation's Capital.

**Answering Complaint Par. 279)**     KLEIN has no knowledge of the matters alleged in the paragraph concerning the Oath Keepers.

**Answering Complaint Par. 280)**     KLEIN has no knowledge of the matters alleged in the paragraph except that it reinforces that there was no plan as of 6:37 AM on January 6, 2021.

**Answering Complaint Par. 281)**     KLEIN has no knowledge of the matters alleged in the paragraph concerning the Oath Keepers.

**Answering Complaint Par. 282)**     KLEIN has no knowledge of the matters alleged in the paragraph concerning the Oath Keepers.

**Answering Complaint Par. 283)**     KLEIN has no knowledge of the matters alleged in

the paragraph concerning the Oath Keepers.

*Answering Complaint Par. 284)*        KLEIN has no knowledge of the matters alleged in
the paragraph concerning the Oath Keepers.

*Answering Complaint Par. 285)*        The paragraph is compound.  KLEIN ADMITS the
allegations of the paragraph, except denies that there was any marching.

*Answering Complaint Par. 286)*        ADMITTED, except that the "barriers" were mobile
bike racks that one could pick up and carry away possibly with one hand in the center.  However,
KLEIN further answers that there were flimsy paper signs 11 inches by 14 inches affixed to
portable bike racks, which were no longer intact, in place, or visible by the time most of the
crowds arrived.

*Answering Complaint Par. 287)*        The paragraph is compound.  KLEIN responds that
Eddie Block's video speaks for itself but KLEIN did not witness most of what the video shows.
KLEIN further answers that he is not aware of any attack referred to being addressed in the video
or in the real world.  KLEIN is said that lawyers at the DOJ and with the District never had
walkie-talkies growing up, but KLEIN is not from the big city. Eddie Block's 2 hour plus video
recording (which is available on the internet, but not necessarily on YouTube) shows quite a
different story than alleged.  The video shows Proud Boys walking around a giant rectangle
patrolling – explicitly – for any signs of ANTIFA poised to attack, walking away from the
Capitol at one point and stopping to take photographs.  Photographs of the Proud Boys and
others curiously always show them looking away from the Capitol towards the Capitol.  The
alleged quote in the last sentence is not accurate or what is said on the video from KLEIN's
knowledge.  KLEIN believes that the video shows a Proud Boys member responding to Scott by
saying "Don't say that!" but never said "do it."

*Answering Complaint Par. 288)*        KLEIN has no knowledge of the conversations alleged, although possibly because he was focused on what has happening "in the real world" not on a computer chat group at that time.

*Answering Complaint Par. 289)*        DENIED.  Trump said "I know that many of you are going to walk down to the Capitol" referring to pre-existing plans for 6 demonstrations on Capitol Grounds that the USCP had issued permits for back in December 2020 KLEIN further answers that Trump could not be heard clearly by the crowds at the Ellipse and that cell phone service and data usage was extremely poor and limited due to the large crowds and most people did not know what Trump was saying because of unintelligible sound.  See https://www.youtube.com/watch?v=76w7RPLwYIs for the distorted sound system.  Rallies had been promoted at the Capitol grounds for weeks.

*Answering Complaint Par. 290)*        DENIED.  KLEIN further answers that Trump could not be heard by the crowd at the Ellipse.  The Plaintiff, like most of the political world and news media, appears to be quoting from the microphone feeds at the podium, which could not be heard clearly by the crowds.  And to the best of KLEIN's knowledge nobody yelled anything (including because the crowd and the speeches were too loud) much less anything about taking the Capitol, other than perhaps Ray Epps.  Defendant KLEIN further answers that – like most of the crowd that wandered off because they could not understand what Trump was saying – KLEIN was not physically present at the Ellipse to hear any such comment by Trump (which he has since learned was near the end of that speech) nor could he hear it on local radio since it was not broadcast nor could he hear it over the internet with cell phone towers overwhelmed by the crowds.  This was not a church-like "responsive reading."  No one except Ray Epps said any such thing.  Nobody said anything like "LET'S TAKE THE CAPITOL!" at or near the rally at

the Ellipse unless the Plaintiff might be referring to Ray Epps and other suspicious actors, provocateurs, and/or undisclosed CHS.

***Answering Complaint Par. 291)*** DENIED. See Answer to paragraph 290. No one could understand what Trump was saying in the crowd and there was no "responsive reading."

***Answering Complaint Par. 292)*** DENIED, nobody said anything like "STORM THE CAPITOL!" or " INVADE THE CAPITOL BUILDING!" or "Let's take the Capitol! " at or near the rally at the Ellipse unless the Plaintiff might be referring to Ray Epps and other suspicious actors, provocateurs, and/or undisclosed CHS. See Answer to paragraph 290. No one could understand what Trump was saying in the crowd and there was no "responsive reading."

***Answering Complaint Par. 293)*** KLEIN has no knowledge of the matters alleged in the paragraph concerning the Oath Keepers.

***Answering Complaint Par. 294)*** DENIED. See Answer to Paragraph 290. Trump did not say what is claimed in the allegations. The crowd could not understand what Trump was saying due to technical problems with the sound system. And no one in the crowd chanted anything in response other than perhaps "USA!" No one in the crowd chanted "Fight Like Hell!"

***Answering Complaint Par. 295)*** The paragraph is compound. KLEIN DENIES the allegations of the first sentence. Trump said something to the effect that "I know many of you are going down to the Capitol" because those plans were announced in mid-December 2020. KLEIN ADMITS the allegations of the second sentence except that about half of the people walking with the Proud Boys were not themselves Proud Boys but just walking with them. The allegations of the third sentence KLEIN DENIES.

***Answering Complaint Par. 296)*** The paragraph is compound. KLEIN DENIES the

allegations of the paragraph including because many people planning to go to the Capitol went straight to the Capitol and did not stop at the Ellipse rally where Trump was speaking and many others left the Ellipse long before Trump stopped speaking.  The lawfully permitted demonstrations scheduled for the U.S. Capitol Grounds had been promoted since mid-December 2020, whereas Trump's plans to address the rally at the Ellipse were announced only on about January 4, 2021.

    ***Answering Complaint Par. 297)***     KLEIN has no first-hand knowledge of the claims of the paragraph about the Oath Keepers.

    ***Answering Complaint Par. 298)***     DENIED.  Although some of the Proud Boys members in attendance had radios, the Proud Boys could never be described as coordinated in their movements, that is organized or in harmony with any plan.  The Proud Boys have a tradition and reputation for being fiercely independent and non-compliant with plans.  Furthermore, if the Proud Boys had any plan or conspiracy about January 6, 2021, they would already know what they were supposed to be doing and where they should be.  They would not need to constantly coordinate on the fly.

    ***Answering Complaint Par. 299)***     The paragraph is compound.  The first sentence is DENIED.  The first half of the second sentence is ADMITTED.  The second half of the second sentence is ADMITTED.  However, KLEIN DENIES the implication or attempted inference that anyone outside of occupied Europe in the 1940s is required to wear clothing to declare their politics, group membership, affiliations, or beliefs.  While the Nuremberg laws did require certain clothing to identify certain groups, the United States never has had any such requirement.  Furthermore, the Proud Boys wore street clothes because there participation was not an official Proud Boys function, but did not uniformly wear dark clothing.  KLEIN further DENIES any

implication or attempted inference that it is illegal to have walkie-talkie style communication

devices outside of occupied Europe during the 1940s.

***Answering Complaint Par. 300)*** The paragraph is compound.  ADMITTED.

However, see also Answer to Paragraph 299.

***Answering Complaint Par. 301)*** KLEIN has no knowledge of the matters alleged in

the paragraph concerning the Oath Keepers.

***Answering Complaint Par. 302)*** The paragraph is compound.  All allegations of the

paragraph are DENIED.  All U.S. citizens have authorization to enter the public U.S. Capitol, a

meeting place between the public and its representatives and a national museum, is not less than

for all U.S. citizens.  The U.S. Capitol is guarded 24 hours a day, like any of the Smithsonian

museums and other public buildings. But "secured" does not mean closed.  During business

hours the Capitol is open to the public.  The U.S. Capitol hosts thousands of school children in

tours every year along with visits by other tourists.  Court precedents recognize the U.S. Capitol

as a public building.  There are no permanent security barriers nor any permanent signs

announcing that entry is restricted.  Visitors to the U.S. Capitol do not require any authorization

and may enter merely to enjoy the national art such as the iconic painting of General George

Washington crossing the Delaware and our national documents on display.  That is, visitors to

the Capitol are not required to give any reason to the U.S. Capitol Police for their visit.  A U.S.

citizen can enter the U.S. Capitol for no reason at all.  Public viewing galleries are physically

built in to the Capitol building as the central focus of the Capitol.  The very structure of the

building revolves around the public's access to view its representatives in session.  The Capitol is

as public, more so, than a court trial in progress.  Members of the public may enter at any time

during business hours to meet or seek an appointment with their elected Representatives and

Senators, listen to hearings in progress, or even merely to have lunch in the cafeterias or dining rooms or to admire the art.

**Answering Complaint Par. 303)** KLEIN has no personal knowledge of the allegations of the paragraph, but believes that if the MPD assists with the security of the U.S. Capitol.  There appears to be a statute that gives MPD limited jurisdiction to assist at the Capitol. However, KLEIN assumes that it would have to be under a memorandum of understanding or agreement pursuant to which the Legislative Branch of the U.S. Government is obligated to fully and completely reimburse members of the MPD for their work as well as any injuries regrettably experienced. It should also be noted that MPD closed off access streets and other exits that deviated from the directed path to the Capitol.  This further suggests that the District of Columbia issued a permit for a march on city streets.

**Answering Complaint Par. 304)** DENIED.

**Answering Complaint Par. 305)** DENIED.

**Answering Complaint Par. 306)** DENIED.  However, KLEIN has no knowledge of Greene's private thoughts or opinions, nor is Greene an expert on crowd behavior or how crowd behavior in Afghanistan correlates to American crowds.  KLEIN further answers that liability does not depend upon crowds or moods, but on the individual conduct of specific people.

**Answering Complaint Par. 307)** DENIED. If anyone other than the Defendant said or did any such things, KLEIN has no knowledge of it.  However, KLEIN understands that the U.S. Capitol Police did not call MPD for back-up until 12:58 PM (see paragraph 444) so the Defendants could not have "clashed" with MPD officers at or prior to 12:53 PM (see paragraph 308).

**Answering Complaint Par. 308)** The paragraph is compound.  The paragraph is

DENIED with regard to KLEIN.

  ***Answering Complaint Par. 309)***  The paragraph is compound.  KLEIN has no knowledge of the allegations of this paragraph.

  ***Answering Complaint Par. 310)***  The paragraph is compound.  KLEIN DENIES the first sentence.  While KLEIN and other Proud Boys moved forward, they were never at "the front of the crowd."  There were hundreds of demonstrators closer to the Capitol than KLEIN and other Proud Boy, except possibly at one point in time where Joe Biggs was close to the portable bike racks at the Second Street, N.W. beginning of the pedestrian bikeway, along with Ryan Samsel, Ray Epps, and probably 50 to 100 others.  As to the second sentence, KLEIN has no knowledge of anyone removing any black metal fence other than from news and videos shown 2 years later.  But KLEIN believes that the Black metal fence shown in videos after the fact was less than knee-high which might be why KLEIN never saw it at the time.

  ***Answering Complaint Par. 311)***  The paragraph is compound.  KLEIN is not sure what is meant by a plaza on the West side of the U.S. Capitol.  All parts of the U.S. Capitol seem to be given somewhat fanciful names known to insiders in Congress and support staff, but mystifying to most citizens like KLEIN.  The center of the grounds on the West side were dominated by a construction zone where the very tall platform for the January 20 presidential inauguration was being constructed with construction trailer offices and equipment and tools positioned all around.  Perhaps that construction work was on what would normally at a different time be considered a plaza.  Perhaps the West Portico elevated above the ground by 1-2 floors is what is meant by the plaza. KLEIN has not paid attention to Greene's guilty plea although probably his lawyers looked at it.  However, as to the substance of the alleged statements, KLEIN has no knowledge of "some Proud Boys" tearing down any fencing.  As to the second

sentence, KLEIN DENIES the allegations.  As to the third sentence of the paragraph, depending

on what one means by "stormed" the allegation might be true.  Again, KLEIN knew Biggs and

Nordean and was vaguely aware of Donohoe and Rehl.  These Proud Boys approached the

Capitol onto the raised West Portico 1-2 floors above the ground.    KLEIN again denies that the

Proud Boys were ever at the "front of the crowd."  As to the last sentence, KLEIN has no

knowledge of Nordean and Biggs hugging, shaking hands, or expressing any gestures.

  *Answering Complaint Par. 312)*  KLEIN has no knowledge of what Biggs recorded,

but KLEIN further answers that neither the Proud Boys nor the crowd of demonstrators standing

on the West Portico or its stairs had actually taken the Capitol, so any such statement would be

exaggeration, embellishment, or "click bait"  if the Amended Complaint means prior to 1:00 PM

(see paragraph 313).

  *Answering Complaint Par. 313)*  ADMITTED but KLEIN understands that Congress

was a few minutes late in convening, if the time matters.

  *Answering Complaint Par. 314)*  The paragraph is compound.  Since the Amended

Complaint claims that the District's MPD was only asked to come over at 12:58 PM, it is

extremely improbable that they arrived at 1:00 PM ("approximately the same time").  The first

part of the second paragraph is DENIED.  Concerning the rest of the second sentence, KLEIN

denies that the John Doe with a bullhorn remains unidentified, but was in fact a co-conspirator

with Ray Epps, as proven on video recordings.  The DoJ clearly knows who the provocateur is

because they are not looking for him.  Concerning the third sentence, KLEIN categorically

DENIES that Proud Boys led any charge.  The videos show that Ray Epps did.  But the Proud

Boys did not in any way or any sense led the crowd, the charge, or anything.  Concerning the

fourth sentence, what other members of the crowd did including scaling walls has no relevance

to KLEIN or these Defendants.

       ***Answering Complaint Par. 315)***     DENIED.

       ***Answering Complaint Par. 316)***     DENIED.  KLEIN further DENIES that "unidentified" people in MOSD can be "MOSD leaders" while unidentified.  Typically leaders who are unidentified are not leaders.  KLEIN further answers the statement "Find some eggs and rotten tomatoes" – because that would be impossible to go shopping in the middle of the demonstration – warns us that the comments are not to be taken literally.  Since either people brought eggs and rotten tomatoes with them or they would have to find a convenience store to buy them at, this also confirms the lack of any planning or conspiracy.  The comments are ironic humor, maybe not very good humor, but an attempt at dry humor nonetheless.

       ***Answering Complaint Par. 317)***     The paragraph is compound.  The first sentence, although vague, is vaguely correct.  As to the second sentence, the Proud Boys clearly did not, in fact, storm the Capitol (whatever that means) and clearly did not "take" the Capitol.  Therefore, the statements are clearly hyperbole and exaggeration, conflating a famous quote with improper usage of "infamy," that is most likely intended as "click bait" to promote social media presence.  These quotes as "puffery" are not evidence of the truth of the statements made as marketing for podcasts.

       ***Answering Complaint Par. 318)***     KLEIN has no knowledge of the allegations of the paragraph.

       ***Answering Complaint Par. 319)***     The paragraph is compound.  As to the first sentence, without first-hand knowledge in the crowd, KLEIN has no knowledge of the allegations of the paragraph.  As to the second sentence, KLEIN denies that Worrell had a tactical vest, which is different from merely a style or work vest, does not know what kind of

communication devices if any is being referred to – a flip phone is a communication device – does not know if Worrell sprayed anything or if he did what it was and demands strict proof of whatever was sprayed.

*Answering Complaint Par. 320)*      KLEIN has no knowledge of the matters alleged in the paragraph concerning the Oath Keepers.

*Answering Complaint Par. 321)*      ADMITTED based on news reports seen after the fact except that the characterization as "restless" is imprecise opinion.

*Answering Complaint Par. 322)*      KLEIN is without knowledge as to the allegations concerning the Oath Keepers.

*Answering Complaint Par. 323)*      DENIED.  Among other mistaken statements a broader violent confrontation with the police was police excessive use of force, such as blowing a hole in Joshua Black's face and illegally pelting demonstrators in the head, face, and neck with rubber and plastic bullets and other projectiles (which are supposed to be aimed lower at torsos, etc., to minimize harm, and demonstrators coming to the defense of demonstrators who were being injured and crushed by MPD police, such as Roseanne Boyland.

*Answering Complaint Par. 324)*      DENIED.

*Answering Complaint Par. 325)*      DENIED.

*Answering Complaint Par. 326)*      DENIED

*Answering Complaint Par. 327)*      KLEIN is without knowledge as to the allegations concerning the Oath Keepers or their conversations.

*Answering Complaint Par. 328)*      KLEIN is without knowledge as to the allegations concerning the Oath Keepers or their conversations.

*Answering Complaint Par. 329)*      KLEIN is without knowledge as to the allegations

concerning the Oath Keepers or their conversations.

*Answering Complaint Par. 330)*      KLEIN is without knowledge as to the allegations concerning the Oath Keepers or their conversations.  However, KLEIN further answers that if there were any plan or conspiracy by the Oath Keepers they would not need to keep asking where everyone else was.  They would already know where they are supposed to be.

*Answering Complaint Par. 331)*      KLEIN is without knowledge as to the allegations concerning the Oath Keepers.

*Answering Complaint Par. 332)*      KLEIN is without knowledge as to the allegations concerning the Oath Keepers.

*Answering Complaint Par. 333)*      DENIED.  None of these Defendants led anyone or led anything.

*Answering Complaint Par. 334)*      DENIED.  None of the Proud Boys were the first to enter the U.S. Capitol building.  However, the paragraph's allegation is confusing to the extent that the first people to enter the U.S. Capitol on January 6, 2021, were unidentified John and Jane Doe Defendants and not Proud Boys affiliated individuals.  KLEIN DENIES that there is such a thing as "Proud Boys affiliated individuals."  There were supportive people who wanted to follow the Proud Boys or do what they were doing.  But there is no "affiliate" status of the Proud Boys, if the Amended Complaint is implying anything of that nature.

*Answering Complaint Par. 335)*      DENIED.  PEZZOLA is seen on video recordings hitting the left pane of a window after an unidentified person tagged as #RedGlassesOverRed broke the right pane and he and others (not PEZZOLA) attacked other windows and doors.  By no means was PEZZOLA anywhere close to being the first to enter the Capitol building.  Furthermore, demonstrators entered the Capitol through other windows and entrances all around

the gigantic 750 foot length of the building, the size of a small ocean-going cruise ship

*Answering Complaint Par. 336)*        KLEIN is without knowledge as to these allegations here concerning Joe Biggs or unspecified other members of MOSD.

*Answering Complaint Par. 337)*        KLEIN is without knowledge as to these allegations concerning Joe Biggs or unspecified other members of MOSD.  However, KLEIN further answers that Biggs quickly exiting the Capitol demonstrates no plan to attack the Capitol or interfere with the Joint Session of Congress.  KLEIN answers further that the erratic and uncoordinated manner in which supposedly coordinating people followed different paths wandering around uncoordinated inside the Capitol and left at different times through different exit paths rebuts the narrative of the Complaint that there was any plan or conspiracy. Furthermore, if the alleged statement is an accurate recording, Biggs clearly did not take the Capitol and the alleged statement is counter-factual.  Therefore, Biggs was clearly embellishing and exaggerating for effect.

*Answering Complaint Par. 338)*        KLEIN has no knowledge about the allegations about the Oath Keepers.

*Answering Complaint Par. 339)*        KLEIN has no knowledge about the allegations about the Oath Keepers.

*Answering Complaint Par. 340)*        KLEIN has no knowledge about the allegations about the Oath Keepers.  To the extent that allegation about "many involved in the Attack" might be construed to mean KLEIN or any of the Proud Boys, KLEIN DENIES the allegation that Stewart Rhodes had any involvement, communication with, or coordination with any of the Proud Boys.

*Answering Complaint Par. 341)*        KLEIN has no knowledge about the allegations

about the Oath Keepers.

> ***Answering Complaint Par. 342)***     KLEIN has no knowledge about the allegations about the Oath Keepers.

> ***Answering Complaint Par. 343)***     KLEIN has no knowledge about the allegations about the Oath Keepers.

> ***Answering Complaint Par. 344)***     KLEIN has no knowledge about the allegations about the Oath Keepers.

> ***Answering Complaint Par. 345)***     KLEIN has no knowledge about the allegations about the Oath Keepers.

> ***Answering Complaint Par. 346)***     KLEIN has no knowledge about the allegations about the Oath Keepers.

> ***Answering Complaint Par. 347)***     KLEIN has no knowledge about the allegations about the Oath Keepers and has no idea what the Plaintiff means by a "stack."

> ***Answering Complaint Par. 348)***     KLEIN has no knowledge about the allegations about the Oath Keepers.

> ***Answering Complaint Par. 349)***     KLEIN was not aware of any such post by Proud Boys Chair Enrique Tarrio.  And again, the FBI has seized smart phones and computers of many Defendants making it nearly impossible to check or confirm such posts.

> ***Answering Complaint Par. 350)***     KLEIN did not notice what Nordean was doing, but answers further that if the Proud Boys had any plan or conspiracy they would have entered together and stayed together.  They did not.

> ***Answering Complaint Par. 351)***     KLEIN was not aware of any such comments by Proud Boys Chair Enrique Tarrio, but further answers that if the Proud Boys had a plan or

conspiracy, they would know the plan and would not need to be told by Tarrio who was in Baltimore, Maryland.

**Answering Complaint Par. 352)**     KLEIN has no knowledge about the allegations about the Oath Keepers.

**Answering Complaint Par. 353)**     KLEIN did not notice any such messages and cannot answer concerning vague, unidentified people.

**Answering Complaint Par. 354)**     KLEIN is without knowledge as to what Biggs was doing at these times.  However, KLEIN further answers that Congress recessed at 2:13 PM according to Parliamentarian Thomas Wickham.  If Biggs entered the East Side at 2:40 PM, he was not following any plan or conspiracy with regard to the Joint Session of Congress.

**Answering Complaint Par. 355)**     DENIED.

**Answering Complaint Par. 356)**     KLEIN has no knowledge about the allegations about the Oath Keepers.

**Answering Complaint Par. 357)**     KLEIN has no knowledge about the allegations about the Oath Keepers.

**Answering Complaint Par. 358)**     KLEIN has no knowledge about the allegations about the Oath Keepers.

**Answering Complaint Par. 359)**     KLEIN has no knowledge about the allegations about the Oath Keepers.

**Answering Complaint Par. 360)**     KLEIN has no knowledge the allegations about Proud Boys member Garcia and does not know him.

**Answering Complaint Par. 361)**     KLEIN has no knowledge about the allegations about the Oath Keepers.

**Answering Complaint Par. 362)**    KLEIN has no knowledge about the allegations about the Oath Keepers.

**Answering Complaint Par. 363)**    KLEIN was unaware of any such post by Tarrio at the time but heard of it.

**Answering Complaint Par. 364)**    KLEIN has no knowledge about the allegations about the Oath Keepers.

**Answering Complaint Par. 365)**    KLEIN believes this to be correct after seeing a public source video of Zachary Rehl, Finley, and others debating whether or not to go into the Capitol building, and someone off camera answers "I think it's a terrible idea but I'm not going to let you guys go in their alone."  The indecision as late as 2:53 PM about whether or not to go into the Capitol proves that there was no plan or conspiracy among the Proud Boys.

**Answering Complaint Par. 366)**    KLEIN is without knowledge as to the allegations concerning these alleged, attempted conversations.

**Answering Complaint Par. 367)**    KLEIN is without knowledge as to the allegations. However, KLEIN further answers after research and review after January 6, 2021, that the *Rayburn* House Office Building must refer to the "Latinos for Trump" rally at the *Russell* Senate Office Building where Tarrio had been scheduled to speak.  It is clear that the Proud Boys never went anywhere near the Rayburn House Office Building.  Therefore, "revolutionaries" refers to patriotic speakers at the lawful rally.

**Answering Complaint Par. 368)**    DENIED.

**Answering Complaint Par. 369)**    KLEIN has no knowledge about the allegations about the Oath Keepers.

**Answering Complaint Par. 370)**    KLEIN has no knowledge about the allegations

about the Oath Keepers.  However, KLEIN further answers that the paragraph further confirms
that there was no plan or agreement or conspiracy, because James and Minuta were making it up
as they went along.

*Answering Complaint Par. 371)*        ADMITTED, from later review of the Eddie
Block's video.   However, KLEIN further answers that if the statements alleged are accurate,
they further confirm the unlawful police brutality and excessive use of force by the District of
Columbia's Metropolitan Police Department that transformed a peaceful demonstration into a
few violent confrontations in a few small, isolated areas.

*Answering Complaint Par. 372)*        DENIED.  KLEIN further answers that the video
recordings reviewed after the fact as discovery shows that demonstrators who entered the U.S.
Capitol wandered around in random, disconnected, uncoordinated, separate, and dissociated
ways demonstrating no plans or intentions whatsoever.  KLEIN further answers that there was
never any violent rampage, unless by the MPD forcing and squeezing demonstrators into the
Rotunda from which they could not exit.  KLEIN further answers that in Figure 18 we see U.S.
Capitol Police walking calmly with the demonstrators shown (the USCP has their backs to the
demonstrators as they walk in a group, entirely unconcerned and at rest).  Some of the
demonstrators are carrying flags, which gives the impression of something more than the reality.
KLEIN further answers that the Electoral College vote count is required by law to convene at
1:00 PM so arriving at 2:40 PM shows that the Oath Keepers were certainly not "actively seeking
out the official election certification proceedings and individuals with official functions in an effort
to disrupt the election certification process with threats and violence."

*Answering Complaint Par. 373)*        DENIED.

*Answering Complaint Par. 374)*        KLEIN is without knowledge as to the allegations
concerning Chrestman.

*Answering Complaint Par. 375)*     KLEIN has no knowledge about the allegations about the Oath Keepers.

*Answering Complaint Par. 376)*     KLEIN has no knowledge about the allegations about the Oath Keepers.

*Answering Complaint Par. 377)*     KLEIN has no knowledge the allegations.

*Answering Complaint Par. 378)*     Denied on the basis of being vague given that different things were happening at different times. The Government has been furiously and frantically imprecise and evasive about who, what, and where any demonstrators "first" entered the U.S. Capitol.  The Government is evasive because the facts prove their conspiracy theories false.  KLEIN further answers that he does not know "When the mob first broke into the Capitol," recalling that the Capitol is 750 feet long and the size of a small ocean-going cruise ship.  It has a great many entrances and exits and windows, apparently none of them but the Columbus Doors sufficient to the task of defending the Capitol.

*Answering Complaint Par. 379)*     The paragraph is compound.  KLEIN accepts that the first sentence is true without first-hand knowledge from news reporting.  Of course, the 12th Amendment says that the presiding officer counts the Electoral College votes, not that he presides over the counting.  Congress only watches.  KLEIN has no knowledge of the allegations of the second sentence.  KLEIN further answers that statements, chants, or threats by "a crowd" are not relevant to any of the Defendants in this or any January 6 related case.  Finally, KLEIN has no idea what "having declined to suspend the Electoral College vote tally" means, because the Plaintiff and others are accusing these Defendants and others of causing the Joint Session of Congress to be recessed.  So obviously Pence did suspend the tally, if these allegations are true.

*Answering Complaint Par. 380)*     KLEIN answers that the paragraph describes the

rights of every American to petition the government for redress of grievances, which is a right guaranteed to every U.S. citizen under the First Amendment to the U.S. Constitution.  Even if the conduct appears to violate the terms of a statute, the statute would be unconstitutional.  Proud Boys member Matthew Greene's guilty plea as well as the original allegations violates the U.S. Constitution.  The statute applied, as applied, violates the U.S. Constitution (because any part of it that is valid is already covered by other statutes, leaving only the pure First Amendment activity).  The Judiciary has repeatedly and stubbornly upheld the rule that even disagreeable, crude, rude, unpleasant, or impolite speech, even incorrect speech, is constitutionally protected.  "The answer to bad speech is more speech" is the foundational principle of the United States of America decreed by our U.S. Supreme Court.

*Answering Complaint Par. 381)*        DENIED, primarily in the first instance for being vague.  As the events unfolded, Pence and Congress were evacuated from the chambers and then the building and thus the risk to them – having been evacuated – was actually decreased. But mainly KLEIN answers that again the Plaintiff, like the DoJ and others, is essentially trying to sue a crowd and/or hold these Defendants responsible for the actions of others.  Discussions of crowds or unnamed people is ineffective in either civil or criminal law.

*Answering Complaint Par. 382)*        KLEIN is aware of these disturbing events only through news coverage well after the facts.  KLEIN never entered the Capitol building.  None of the Proud Boys were in that area of the building.  KLEIN further answers that the door to the Chamber would be viewed by security camera footage, and the Government could prosecute those actually responsible for beating on the door, but would rather prosecute innocent people in whom there is more political profit.  KLEIN further denies any of the Defendants named in this lawsuit "beat on the doors and attempted to force their way through the barricades," but were

nowhere near the doors to the House or Senate chambers.  KLEIN further answers that the bid to emotionally inflame the circumstances should be tempered by how many of those Members of Congress and others mocked, insulted, and denigrated President Donald Trump when a violent insurrection occurred at the White House in May to June 2020, and the Secret Service whisked Trump into a safe bunker below ground.  While the attack on the House chambers doors is one of the few horrible examples of the few places where a few of the 10,000 demonstrators turned violent, it would be wrong for those who mocked Trump for being whisked away from a violent mob of rioters at the White House to demand more sympathy than they were willing to extend to others.

**Answering Complaint Par. 383)**      Denied in that the evacuation of the Members of Congress *began* at 2:13 PM according to the testimony of Thomas Wickham, at the time.  The Proud Boys were not at all disruptive.

**Answering Complaint Par. 384)**      The paragraph is compound.  KLEIN DENIES any knowledge of or any relevance of what "many individuals" did.  None of the named Defendants to KLEIN's knowledge "breached the House and Senate chambers."  KLEIN further answers that the galleries of the Senate Chamber and of the House chamber are open to the public and were literally built into the center of the architecture of the Capitol to allow the public to view and monitor their Members of Congress debating and voting on bills.  The Capitol is structurally designed to allow the public unfettered access to their representatives so that nothing is done in secret, just like a courtroom trial.  Nevertheless, Jackman – whom KLEIN does not know – entering the Senate gallery (if he did) is not "breaching" the Senate chamber.  KLEIN further answers that taking a picture of oneself is not illegal, walking up a flight of stairs is not illegal, and walking with a hand on Biggs' shoulder is not illegal as long as Biggs did not object.

***Answering Complaint Par. 385)***     DENIED.  KLEIN further answers that once again the Plaintiff's like the Department of Justice is trying to impose collectivist liability and prosecuting a crowd collectively.  This collectivism is in contradiction to American law.

***Answering Complaint Par. 386)***     KLEIN has no knowledge of what some unknown "an individual' posted or these communications or the underlying substance stated.   KLEIN has no knowledge about the allegations about the Oath Keepers.  KLEIN is without knowledge as to the allegations concerning the Oath Keepers.

***Answering Complaint Par. 387)***     KLEIN has no knowledge of the alleged communications perhaps because he was not in leadership.  However, again, the alleged conversation sounds like the Proud Boys did not have a plan in advance.

***Answering Complaint Par. 388)***     The paragraph is compound.  The allegations are DENIED with regard to any of the Defendants named herein, including because nearly all of them left after a short time not "for hours that day" nor did these Defendants commit any violence.

***Answering Complaint Par. 389)***     The paragraph is compound.  The first sentence is DENIED.  The Joint Session apparently *did not* reconvene until approximately 8:09 PM according to KLEIN's research and review of information after the fact on later days.  But it is false that the Joint Session *could not* reconvene.  No information has ever been provided or submitted to substantiate that other than vague, unsupported, inadmissible opinions.  There has been no evidence or proof whatsoever that the Joint Session of Congress "could not reconvene until approximately 8:00 PM."  All that has been offered is conjecture, speculation, and opinion.

***Answering Complaint Par. 390)***     DENIED.

***Answering Complaint Par. 391)***     KLEIN has no knowledge about the allegations

about the Oath Keepers.

***Answering Complaint Par. 392)***        KLEIN was not aware of any such post by Enrique
Tarrio.

***Answering Complaint Par. 393)***        DENIED.  KLEIN did not see or witness any such
thing personally from his vantage point.  KLEIN further answers from his later research and
review of discovery information and news reports that some Defendants and law enforcement
officers improperly and unwisely (on both sides) got sucked into mutual brawls triggered by acts
of police brutality against demonstrators, particularly beating and shooting demonstrators who
could not respond by leaving because there was no way for them to leave through the crush of
the crowds behind them.  KLEIN further answers that the Plaintiff's Figure 30 in its Amended
Complaint depicts law enforcement officers forcing demonstrators into the Rotunda while not
allowing them to leave the building.  Video from many angles and sources, including the "Keep
in News Agency" news video lasting about 2 ½ hours under contract to French TV, shows what
happened in Figure 30, where the demonstrators are being crushed and injured by the out-of-
control and illegal acts of MPD officers who have blocked any path of exiting the Capitol.  At
one point in the "Keep in News Agency" video,  labeled by the DoJ 210107 LAURA USA
CAPITOL WASHINGTON, French Reporter Laura Giesweller asks in the Rotunda another
demonstrator if she can get by she is trying to get out and a chorus of other demonstrators in the
Rotunda roars "We are all trying to get out!"  Again, that is preserved on TV-quality video.  See
starting around 1:08 time stamp on the video (which is not the actual time of day).  But the MPD
would not let them out of the Rotunda.  Therefore, photographs of people jammed into the
Rotunda are being misrepresented as examples of violence.

***Answering Complaint Par. 394)***        DENIED.  However, KLEIN understands that MPD

officers did do these things, including accidentally but massively tear gassing their own officers.

**Answering Complaint Par. 395)**      DENIED.  However, KLEIN understands that MPD

officers did do these things to unarmed, peaceful demonstrators.

**Answering Complaint Par. 396)**      The paragraph is compound and is DENIED.

KLEIN further answers from later review and investigation that the man with the crutches was

trying to mark the location of and warn MPD officers to the danger of imminent death to

Roseanne Boyland, Victoria White, and other demonstrators.  The crutches were being held up –

and never touched anyone at least not by any voluntary act – to signal the MPD to stop beating

people and stop throwing people on top of Roseanne Boyland and to call for medical help. On

information and belief, the woman laying on the floor to the right side of Figure 32 wearing a

black shirt or coat is Roseanne Boyland and the people on the floor around her, including

someone wrapped in an American flag like a cape, are trying to revive Boyland.  Unfortunately,

Boyland was murdered by the MPD in the same manner in which George Floyd was murdered

by officer Derek Chauvin, as MPD officers then piled more and more people on top of her.

**Answering Complaint Par. 397)**      DENIED.

**Answering Complaint Par. 398)**      KLEIN has no knowledge about the allegations

about the Oath Keepers.

**Answering Complaint Par. 399)**      KLEIN has no knowledge the allegations about the

Oath Keepers.

**Answering Complaint Par. 400)**      KLEIN has no knowledge about the allegations

about the Oath Keepers.

**Answering Complaint Par. 401)**      KLEIN denies that unidentified John and Jane Doe

Defendants have any relevance to this case, because the Plaintiff cannot sue a crowd.  On the

other hand, Plaintiff like the DOJ and other conspiracy theorists have persecuted the innocent demonstrators while showing little to no interest in those actually guilty.

**Answering Complaint Par. 402)**    KLEIN is unaware of such a post by Nordean.

**Answering Complaint Par. 403)**    DENIED, largely because the paragraph is so compound and vague that KLEIN cannot unpack the allegations to respond to them. Furthermore, as KLEIN has already answered the communication systems were over-whelmed by the volume.

**Answering Complaint Par. 404)**    KLEIN has no knowledge about the allegations. KLEIN further answers that he has never seen since then any indication of any demonstrators at the South side of the U.S. Capitol, which was the only part of the U.S. Capitol were signs and fencing remained in place rather than having been removed everywhere else.

**Answering Complaint Par. 405)**    KLEIN has no knowledge of a "Stop the Steal J6" Zello Channel or its contents, except that a copy was distributed to defense counsel and it was discussed in the criminal trial of *United States v. Stewart Rhodes, et al.*  Most notable about this conversation over Zello is the _total lack of crowd noise_ in the background, because none of the participants were in Washington, D.C.  Near the end of the recorded conversation one of the participants says he would like to go to the Capitol [on January 6, 2021] but Washington, D.C. is **_12 hours away from him_**.  The "Stop the Steal J6" channel conversation was among people sitting in their homes across the country watching the news on television and making random commentary from what they are seeing on the television.

**Answering Complaint Par. 406)**    KLEIN has no knowledge about the allegations about the Oath Keepers.

**Answering Complaint Par. 407)**    KLEIN has no knowledge about the allegations

about the Oath Keepers.

   ***Answering Complaint Par. 408)***      KLEIN has no knowledge about the allegations

about the Oath Keepers.

   ***Answering Complaint Par. 409)***      DENIED.  However, KLEIN refers back to the

general answer in that no one individual can know what everyone else in the world was doing

when there were an estimated 10,000 people around the U.S. Capitol.  It is possible that

somebody was talking about this but KLEIN had and has no knowledge of any such thing.

KLEIN further answers that only Government personnel, U.S. Capitol Police, MPD or

Congressional staff could possibly know the location of Members of Congress after they

evacuated from the House and Senate Chambers and/or offices.  Therefore, only a government

agent organizing incitement of demonstrators could be sharing information about the location(s)

of Members of Congress at that point in time.  Subsequently, Members of Congress have given

interviews and there is some information after the fact, but not on the day.

   ***Answering Complaint Par. 410)***      KLEIN has no knowledge about the allegations

about the Oath Keepers.

   ***Answering Complaint Par. 411)***      KLEIN has no knowledge of the conversation

alleged or the substance allegedly conveyed.  But KLEIN further answers that he does not know

how anyone would know where the Members of Congress were at that time, other than Members

of Congress themselves, the USCP or the MPD.  The message – if accurate – would have to

come from an undercover government agent who would know where the Members of Congress

were.  Since the Oath Keepers did not have any gas – but are accused at most of a can of bear

spray which would contain a tiny amount of spray – the alleged conversation makes sense only if

an undercover government agent was giving directions to another and send the message to the

wrong person.  This would not be the first time this happened, that a Confidential Human Source clicked on the wrong contact on his phone's contact list.   Caldwell never went into the Capitol so Caldwell could not have done anything in the tunnels under the Capitol building.

*Answering Complaint Par. 412)*        KLEIN has no knowledge of the conversation alleged and has no knowledge of any "backup" coming to the Capitol.  KLEIN doesn't know – and suspects that the Plaintiff does not know – what "backup" means.  Is Keith Lee referring to the MPD or the National Guard coming to the aid of the U.S. Capitol Police?  While the Plaintiff continues the DOJ's practice of ripping phrases out of context of complete conversations, so far the allegations would suggest that Keith Lee was passing along news reports that "backup" law enforcement teams from MPD, Virginia, Maryland, and eventually the National Guard were on their way to the Capitol to assist the USCP.

*Answering Complaint Par. 413)*        DENIED, to begin with because prosecutors do not "reveal" anything in indictments, which are not proof of anything.  Indictments are accusations, not evidence or information.  KLEIN condemns the vilification of any person simply for whom they are, here Roger Stone.  KLEIN has no knowledge of Rhodes' phone calls and doubts that under the conditions of overwhelmed phone systems on January 6, 2021, that anyone could communicate with anyone 19 times.

*Answering Complaint Par. 414)*        KLEIN was not aware of any such social media posts by Tarrio, being a little busy in a vast crowd at the time and unable to communicate or monitor social media due to the overwhelmed cell phone circuits.  KLEIN is not aware of anyone executing an Attack.

*Answering Complaint Par. 415)*        See Answer to Paragraph 414.

*Answering Complaint Par. 416)*        DENIED.

***Answering Complaint Par. 417)***        DENIED.  KLEIN further answers that not only had

he left the area of the Capitol but that it would be impossible to prevent President Biden and Vice

President Harris from assuming office by preventing the certification of the electoral votes.  Such

a Left-wing conspiracy theory is preposterous.  A new President and Vice President assume

office on January 20, not on January 6.  KLEIN further answers that the allegations are

nonsensical, and thus not something he can answer, because if it were true that the Defendants

intended to prevent "certification" (actually counting, not certifying) the electoral votes, they

would already know from the moment they stepped outside of the Capitol that they had not

"succeeded" if that were their goal.  If anyone wanted to do that they would have to stay in the

Capitol building to the exclusion of all law enforcement at least through January 20, and

probably that would not accomplish the goal either.

***Answering Complaint Par. 418)***        DENIED.

***Answering Complaint Par. 419)***        KLEIN has no knowledge about the allegations

about the Oath Keepers.  However, KLEIN further answers that the Plaintiff's Complaint is self-

contradictory, now admitting that no presidential power is transferred on January 6 but only on

January 20.  .

***Answering Complaint Par. 420)***        KLEIN has no knowledge about the allegations

about the Oath Keepers.

***Answering Complaint Par. 421)***        KLEIN has no knowledge about the allegations

about the Oath Keepers.

***Answering Complaint Par. 422)***        KLEIN has no knowledge about the allegations

about the Oath Keepers.

***Answering Complaint Par. 423)***        KLEIN has no knowledge about the allegations

about the Oath Keepers.

   ***Answering Complaint Par. 424)***  KLEIN has no knowledge about the allegations
about the Oath Keepers.

   ***Answering Complaint Par. 425)***  KLEIN has no knowledge about the allegations
about the Oath Keepers.

   ***Answering Complaint Par. 426)***  KLEIN has no knowledge about the allegations
about the Oath Keepers.

   ***Answering Complaint Par. 427)***  KLEIN has no knowledge about the allegations
about the Oath Keepers.

   ***Answering Complaint Par. 428)***  KLEIN has no knowledge about the allegations
about the Oath Keepers.

   ***Answering Complaint Par. 429)***  KLEIN has no knowledge about the allegations
about the Oath Keepers.

   ***Answering Complaint Par. 430)***  KLEIN has no knowledge about the allegations
about the Oath Keepers.

   ***Answering Complaint Par. 431)***  KLEIN has no knowledge about the allegations
about the Oath Keepers.

   ***Answering Complaint Par. 432)***  KLEIN has no knowledge about the allegations
about the Oath Keepers.

   ***Answering Complaint Par. 433)***  KLEIN has no knowledge about the allegations
about the Oath Keepers.  KLEIN further answers and objects to the overly-dramatic allegation of
a burner phone, apparently meaning just buying a phone at a store like Walmart.

   ***Answering Complaint Par. 434)***  KLEIN has no knowledge about the allegations

about the Oath Keepers.

*Answering Complaint Par. 435)*     KLEIN has no knowledge about the allegations

about the Oath Keepers.

*Answering Complaint Par. 436)*     KLEIN has no knowledge about the allegations

about the Oath Keepers.

*Answering Complaint Par. 437)*     KLEIN has no knowledge about the allegations

about the Oath Keepers.

*Answering Complaint Par. 438)*     KLEIN has no knowledge about the allegations

about the Oath Keepers.

*Answering Complaint Par. 439)*     KLEIN has no knowledge about the allegations

about the Oath Keepers.

*Answering Complaint Par. 440)*     KLEIN has no knowledge about the allegations

about the Oath Keepers.

*Answering Complaint Par. 441)*     KLEIN has no knowledge about the allegations

about the MPD of the City of Washington, but on information and belief DENIES the allegations

as highly improbable in light of events that unfolded.  For example, there was clearly a planned

march from the Ellipse to the Peace Monument at the edge of the Capitol Grounds, along City

streets, with MPD officers steering demonstrators along the City streets toward the Capitol, but

there were only 5 USCP officers stationed with flimsy bike racks at the end of the city streets of

the march.  The USCP and MPD would not be calling for help as far away as New Jersey, as

Plaintiff claims, if all MPD officers were reporting for duty that day.

*Answering Complaint Par. 442)*     DENIED, unless by "supporting these efforts" it is

intending to refer to undercover government agents inciting the crowds to violence.

*Answering Complaint Par. 443)*        DENIED unless the abdication of the District's responsibilities is what is being referenced as "unprecedented."  KLEIN further answers that the U.S. Capitol Police did not even close the 10 ton, 17 foot high, solid bronze Columbus Doors on the East central entrance.  While that is the USCP's fault in the first instance, when the MPD arrived they also did not close or ask for the closing of the main doors to block entrance to the Capitol.  If law enforcement had wanted the demonstrators to enter the Capitol it is hard to think of what more could have been done in that regard.  KLEIN further answers that the District of Columbia clearly had issued a permit for a march from the Ellipse area of the Washington Mall to the Capitol, which apparently the MPD has never disclosed.  Yet there was no MPD presence at the endpoint of the march, leaving only 5 USCP officers and some bike racks to guard the pedestrian entrance to the Capitol Grounds near the Peace Monument (fountain).  Large-scale demonstrations of this nature are not unprecedented.  After Donald Trump's inauguration in January 2017, 2.6 million angry Democrats rioted all across the country, with close to a million rioting in Washington, D.C., including setting businesses and cars and police cruisers on fire, and beating police and others.  In May and June 2020, anarchists and Leftists engaged in a massive, violent riot at the White House launched from City streets.  MPD is no stranger to massive, angry, often violent demonstrations from the Left such as during Ronald Reagan's Presidency.

*Answering Complaint Par. 444)*        DENIED.  KLEIN further answers that the District of Columbia's resources were entirely sufficient to manage everything alleged had those resources actually been deployed, including after police excessive use of force agitated and provoked a defensive and angry response.  The District of Columbia made an intentional and deliberate decision to under-prepare, but instead to inflame and escalate crowd reactions, including failing to request 10,000 to 20,000 National Guard troops that Mayor Muriel Bowser,

as the functional equivalent of Governor, was invited to request, being told that the request

would be approved if asked.  (Mayor Bowser did request and receive approximately 153

National Guardsmen deployed throughout the City exclusively for traffic control, but only that.

Therefore, the District of Columbia knew that had it requested additional resources, they would

have been provided, knew that it was necessary for the District to make the request, knew how

the process worked, and knew how to handle and process such a request if desired.)

   ***Answering Complaint Par. 445)***  See Answer to Paragraph 444.

   ***Answering Complaint Par. 446)***  KLEIN has no direct knowledge of these allegations

and demands proof thereof, in that he does not know when the MPD started to respond compared

to when they arrived at the Capitol, whereupon the MPD made things worse by their excessive

use of force.

   ***Answering Complaint Par. 447)***  DENIED.  KLEIN further answers that the record

makes abundantly clear that the MPD created much of the chaos, as is captured on hundreds of

video recordings.  There are even recordings of  USCP officers confronting MPD officers in

astonishment, demanding to know *"WHAT ARE YOU DOING?"*  There are video recordings of

USCP and MPD officers firing defective tear gas *cannons* so that tear gas fell within their own

ranks, and law enforcement officers gassed themselves but blamed the demonstrators.

   ***Answering Complaint Par. 448)***  The paragraph is compound.  KLEIN ADMITS the

allegations of the first sentence.  KLEIN DENIES the allegations of the second sentence

primarily because too often MPD and USCP attacked otherwise peaceful crowds, including

attacking individuals trying to de-escalate the situation and to call in emergency medical

assistance for demonstrators whom the MPD injured and in two cases killed by crushing them

and suffocating them  under piles of bodies officers kept throwing on top of them while

demonstrators on video screamed at the officers to stop "You're killing her!"

**Answering Complaint Par. 449)**     DENIED in that the MPD was not overwhelmed but was the fuel driving the problem.  KLEIN has no knowledge of whom the MPD contacted or what they did.  However, KLEIN further answers that it is exceedingly improbable that neighboring Virginia – the 12th largest State in the Union -- could not spare many times whatever resources could possibly be required and under no circumstances would MPD acting rationally, if not "designed to fail," contact police officers at least 6 to 10 hours away in New Jersey.  Fairfax County, Virginia – a short distance away -- would be larger in population than 8 of the States if it were a State.  Military bases in Northern Virginia Ft. Belvoir, Fort Myer, Quantico Marine base, the famed FBI Hostage Rescue Team at Quantico are all within a relatively short distance of Washington, D.C.  Therefore, KLEIN further answers that the Plaintiff like nearly everyone in the political class and news media is obviously embellishing and exaggerating.  If the MPD were contacting New Jersey instead of FBI Hostage Rescue in nearby Quantico, Virginia, then there is something seriously wrong with the MPD's management of its involvement.  [Note that while Virginia is currently led by a Republican Governor, that was not the case on January 6, 2021, so there would be no excuse not to simply ask Maryland and Virginia for whatever help might be needed.]

**Answering Complaint Par. 450)**     KLEIN has no knowledge of the details of how many officers were injured on January 6, 2021, how seriously, how, or why.  Any at all is too many, and many of the Oath Keepers' members are current or former police officers.  But to provide an answer to the Complaint, KLEIN lacks the knowledge to do so.  KLEIN does further answer that twice that number were seriously injured in the ANTIFA and Left-wing riot and attack on the White House in May to June 2020.  KLEIN is unaware of a January 6th Attack.

Given that it is the core of the Plaintiff's lawsuit in reality, KLEIN is confident that the Plaintiff should be able to provide details of any and all injuries "as a direct result of" some attack, which injuries KLEIN would be unable to know.  However KLEIN does know from reviewing video recordings that Ray Epps helped a group throw a giant sign of approximately 10 feet by 16 feet at police officers and other demonstrators, yet Ray Epps has not been charged.  None of the Oath Keepers harmed anyone.

**Answering Complaint Par. 451)**     The paragraph is compound.  KLEIN has no knowledge of the allegations of the first and second sentences.  The allegations of the third paragraph are DENIED, including because the Plaintiff, the DoJ, and the political class have no knowledge why this unnamed officer committed suicide.  The Plaintiff, DoJ, and political class merely assume that an officer being celebrated nationwide by the top officials and leaders in the entire country and hailed as a hero would of course commit suicide.  The allegation of the third sentence does not pass the plausibility standard.

**Answering Complaint Par. 452)**     DENIED.  KLEIN further answers that video recordings show that it was demonstrators who screamed for help such as Roseanne Boyland who was crushed to death as MPD officers piled more and more bodies on top of Boyland.  People around the entrance to the arched tunnel screamed for MPD officers to stop and that Boyland was being crushed to death.  KLEIN further answers that no one was electrocuted during any events on January 6, 2021, nor did any instrumentality for electrocuting anyone exist anywhere on Capitol Hill (other than properly insulated and protected electric grids for the building inaccessible to anyone).

**Answering Complaint Par. 453)**     KLEIN has no knowledge of the allegations of the Paragraph but because injuries to MPD officers are the core of the Plaintiff's lawsuit assumes

and insists that the Plaintiff will document all injuries that it is seeing reimbursement for.

**Answering Complaint Par. 454)**        KLEIN has no knowledge of the allegations of the

Paragraph but because injuries to MPD officers are the core of the Plaintiff's lawsuit assumes

and insists that the Plaintiff will document all.  However, it is not credible that those trained to

deal with violations of law would be so fragile.  KLEIN is not aware of any of the 39 Defendants

named in this Amended Complaint causing any harm or trauma to anyone.

**Answering Complaint Par. 455)**        DENIED, in that KLEIN is not aware of any of the

39 Defendants named in this Amended Complaint causing any harm or trauma to anyone. Other

people did, out of 10,000 total demonstrators. But KLEIN has no knowledge of any of these 39

Defendants doing so. KLEIN is aware of the MPD and USPC blowing a hole in the side of one

demonstrator's face (Joshua Black) and is aware that the blood spilled on the marble of the U.S.

Capitol was the blood of peaceful protestors like Joshua Black, none of it from police officers.

While police officers have mentioned that they were slipping on blood on the ground, they

neglect to mention that the blood came from the demonstrators whom they attacked with

excessive force, and not from the police officers.

**Answering Complaint Par. 456)**        DENIED.  KLEIN further answers that the

Defendants did not engage in any "calculated, pre-planned, and coordinated actions."  KLEIN

further answers that he does not know of any attack.  KLEIN further answers that the District of

Columbia suffered no fiscal costs from January 6th from demonstrations occurring on Federal

land managed by the U.S. Park Police and the U.S. Capitol Police.  Injuries to MPD police

officers of course in the cold, hard, impersonal math of money have been or will be fully

compensated by the Federal Government and/or insurance.

**Answering Complaint Par. 457)**        The paragraph is compound.  The allegations of the

first sentence are DENIED.  KLEIN further answers that only about 20% of sworn officers of the

U.S. Capitol Police were told to report to work on January 6, 2021, and so there was no necessity

of any MPD officers to be deployed.  One leading USCP officer describes his wife sitting home

on paid time at the direction of USCP leadership.  Leaders of Congress and the USCP

intentionally chose to under-staff the ceremonial gathering of January 6, 2021.  Furthermore,

Deputy Chief Pittman either ordered or was misunderstood as ordering a lockdown not merely of

the U.S. Capitol building but all subsidiary buildings like the six office buildings.  As a result

USCP officers were trapped in various buildings and could not be redeployed where needed.

Therefore, deployment from MPD was admirable and to be commended, but not actually

necessary if Congressional leaders had fulfilled their duties.  Mayor Muriel Bowser as the

functional equivalent of a Governor could have requested and received as many as 20,000

National Guard troops but didn't want to.  As to the second sentence, KLEIN does not know how

many MPD officers were deployed to the Capitol.  As to the third sentence, first part and second

part, KLEIN accepts without knowledge the allegations.  As to the third sentence, third part,

KLEIN DENIES that the deployment of MPD officers on January 6, 2021, was not comparable

to far-larger mass demonstrations periodically held in Washington, D.C., including the

insurrectionist riots following the inauguration of Donald Trump on January 20, 2017, and the

violent street war attack on the White House in May to September 2020.  As to the fourth

sentence, KLEIN DENIES that the Plaintiff had any costs because no such government to

government response could have occurred without a memorandum of understanding making the

Federal government responsible for the full costs to the District.

     ***Answering Complaint Par. 458)***     The allegation is compound. As to the first

sentence, KLEIN DENIES the allegations of the first sentence because they are the same costs

alleged in paragraph 457 not "also" additional costs.  The allegations of the second sentence are DENIED for the same reasons and because none of the 39 named Defendants in this case engaged in any attack or harmed any MPD officers in any way.  The allegations of the third sentence are DENIED as merely being the same costs already alleged in paragraph 457 although perhaps in greater detail.  The allegations of the fourth sentence are DENIED for the same reason that the Federal Government is responsible to pay for these costs under its expected formal agreement with the District of Columbia.  KLEIN hopes that those law enforcement officers who were injured by others are made whole financially and healed in every way that requires more than just money to restore them to full health and happiness.

*Answering Complaint Par. 459)*        KLEIN refers to his answers to paragraphs 456 to 458.

## Count I

***Answering Complaint Par. 460)***        The allegations of paragraphs 460 to 468 are

DENIED but are also really legal conclusions of Count I, which was dismissed.

## Count II

***Answering Complaint Par. 461)***        The allegations of paragraphs 469 to 475 are

DENIED but are also really legal conclusions of Count II, which was dismissed

## Count III

***Answering Complaint Par. 476)***        The paragraph is not a factual allegation.

***Answering Complaint Par. 477)***        The paragraph is not a factual allegation.

***Answering Complaint Par. 478)***        DENIED.

***Answering Complaint Par. 479)***        DENIED.  KLEIN further answers that he does not

know everything that happened among roughly 10,000 people along a 750 foot long building,

KLEIN DENIES that any of the named Defendants did what is alleged.

***Answering Complaint Par. 480)***        DENIED.

## Count IV

***Answering Complaint Par. 481)***        The paragraph is not a factual allegation.

***Answering Complaint Par. 482)***        The paragraph is not a factual allegation.

***Answering Complaint Par. 483)***        DENIED.

***Answering Complaint Par. 484)***        DENIED.  KLEIN further answers that he does not

know everything that happened among roughly 10,000 people along a 750 foot long building,

KLEIN DENIES that any of the named Defendants did what is alleged.

***Answering Complaint Par. 485)***        DENIED.

**Count V**

***Answering Complaint Par. 486)***        The paragraph is not a factual allegation.

***Answering Complaint Par. 487)***        The paragraph is not a factual allegation.

***Answering Complaint Par. 488)***        DENIED

***Answering Complaint Par. 489)***        DENIED

***Answering Complaint Par. 490)***        DENIED


May 30, 2023                            RESPECTFULLY SUBMITTED,


                                        */s/ John M. Pierce*

                                        John M. Pierce
                                        **JOHN PIERCE LAW, P.C.**
                                        21550 Oxnard Street,
                                        3rd Floor, PMB 172
                                        Woodland Hills, CA 91367
                                        (213) 279-7846
                                        jpierce@Johnpiercelaw.com
                                        *Civil Attorney for JONATHAN KLEIN*


**AFFIRMATIVE DEFENSES[3]**

Plaintiff's claims in the Amended Complaint should be dismissed in Defendants' favor

based upon the following affirmative defenses.  The Defendant specifically alleges as

true each and every factual circumstance and element of each Affirmative Defense.

A)  Contributory Negligence:  Plaintiff, the District of Columbia, is significantly

        responsible for the damages alleged in the Complaint.  This is not meant to shift

---

[3]        Credit due to Thomas Caldwell's attorney David Fischer from whose Answer Harrelson
incorporates his Affirmative Defenses.

the blame as a moral matter or to under-appreciate the law enforcement officers who are similar to many of the Oath Keepers' membership, but under the law may affect the quantum of damages or even liability if the jury finds under the District's recently amended law that the District was more than 50% responsible. Again, the Defendant assumes that the Federal Government is responsible for indemnifying any law enforcement officers who were injured.  For example, District of Columbia Mayor Muriel Bowser refused to call in up to 10,000 to 20,000 National Guard troops, pre-authorized by then Commander-in-Chief President Donald Trump, to protect the U.S. Capitol building and other areas of the District, despite being advised by federal law enforcement and security officials to take this action.  The District did request about 153 National Guardsmen for traffic control only, and these were granted several days before January 6, 2021, and were in fact on duty and deployed on July 5-6, 2021. Therefore, the Plaintiff was fully aware that it could have requested additional National Guardsmen for other needs beyond just traffic duty, because it actually did request approximately 153 National Guardsmen for traffic duty and received approval for them.  The Plaintiff knows the process.

B) Furthermore, Mayor Bowser officials not only allowed Antifa, so-called (mis-named) Black Lives Matter, anarchist, and other Leftist protestors to riot, run amok, batter Washington, D.C.'s Metro Police Department officers, commit arson, burn police cars, throw bricks and frozen water bottles, and destroy public property from 2017 through 2020.  Then-President Donald Trump should have ignored the bad advice of tradition-bound and fearful advisers and invoked the

[ANTI] Insurrection Act whose purpose is to restore order in such circumstances. But then the District of Columbia and its officials celebrated and rewarded the rioters such as by renaming a street as Black Lives Matter Plaza, thereby capitulating to the violent riots. This encouraged and incited further violent street riots.  The District and its officials effectively endorsed and encouraged left-wing and anarchist rioters to burn churches, burn businesses, burn cars, and burn buildings; to topple historical statues; fomented a violent attack upon the White House as the nation's world-wide headquarters of its military and foreign policy and crisis management and which resulted in law enforcement officers being assaulted and injured and causing the U.S. Secret Service to evacuate President Trump from the Oval Office; failing to provide security for Republican U.S. Senators such as Rand Paul (R-KY), who was assaulted, battered, and threatened by a mob of BLM and Antifa protestors; and otherwise encouraging and tacitly approving of unruly and violent behavior.  Mayor Bowser and District officials also figuratively "handcuffed" D.C. Metro Police and other law enforcement agencies in enforcing the law by threatening legal action against police for taking aggressive actions to quell left-wing violence in the District.  Mayor Bowser's refusal to oppose violent rioting along with the District's officials doing likewise clearly contributed to the damages and injuries that Plaintiff alleges in the Amended Complaint.  Accordingly, Plaintiff is barred from recovery based upon its contributory negligence.

C)   As a result, the Defendants came prepared to defend themselves against lawless rioters whom the Plaintiff celebrated and coddled for years and were then falsely

blamed for being ready to defend themselves and others where the District of Columbia failed to maintain order and safety.  The Defendants' preparation to meet such Left-wing violence was a necessity in light of these street wars.

D) Proximate Causation and/or Mitigating Damages:  Similarly, and for the same reasons just stated, the District of Columbia is the cause of many of its own costs. The District of Columbia – after having many decades of experience with mass demonstrations converging on the Nation's Capitol – ignored warnings and failed to prepare to keep order.  On information and belief, planners of peaceful demonstrations and a "March to the Capitol" applied for and received KLEIN understands that it would not be a convincing defense to say "I'm not at fault because you left the jewelry store door open."  But KLEIN did not commit any violence nor any property destruction.  The Plaintiff is suing KLEIN for what other people did, mostly people who are unidentified and whom KLEIN has never met or known.  Thus, it is valid in defense to say that the District of Columbia is trying to sue KLEIN for actions by other people, when the District actually caused much of the damages it seeks recovery for.  The correct analogy is that the jewelry store left the door open, but doesn't know who robbed it, so they are accusing random, innocent people who did not do it who just happen to be walking nearby.  Most of the clashes between demonstrators and police began when the District of Columbia's MPD arrived and took a very different approach than most of the U.S. Capitol Police.  On one body-cam video, USCP officers are seen and heard confronting MPD officers asking "*What* are you doing???"  as MPD officers fought with demonstrators.  MPD officers, like USCP officers, did

not follow their training or instructions concerning the use of force and especially use of non-lethal force.  Clashes with USCP and MPD officers and demonstrators were inflamed when police unlawfully (contrary to rules and instructions) fired rubber bullets and other munitions at the heads of demonstrators from above and blew out part of the face of demonstrator Joshua Black.  **"The Blood on the Marble"** was from Joshua Black and other pro-Trump demonstrators, not from the police.  Many police have mentioned in public or testified in Congress about slipping on blood.  But it was the blood of Trump supporters they were slipping on – as proven by video recordings collected and produced by the U.S. Department of Justice.   And the District of Columbia's MPD and the USCP sparked off the clashes of which it now complains.  Furthermore, the MPD knew that there was a planned "March to the Capitol" on the streets of Washington, D.C., and accommodated the march with deployment of police blocking side streets while allowing the march along Pennsylvania Avenue, N.W.  Thus the MPD knew that there was a march and likely issued a permit for it.  Yet the MPD deployed exactly zero (0) MPD officers at the terminus of the "March to the Capitol" leaving only 5 USCP officers standing behind some portable bike racks near the fountain now known as the "Peace Monument."  MPD knew weeks before January 6, 2021, that a march would end at the edge of the City's streets where Pennsylvania Avenue, N.W. intersections Second Street, N.W. at the fountain.  Furthermore, MPD officers were asked to allow certain self-appointed leaders of the crowd (including Alex Jones at one point) to address the crowd and try to calm them down and de-escalate the situation.  MPD officers told them that

officers were seeking permission to let them up on the steps to address the crowd. An answer never came. But this confused the crowd into thinking it would be okay to go up on the stairs as the yelling back and forth suggested. They gave the crowd an alternative understanding and explanation for what they were seeing. Furthermore, had the MPD cooperated with those self-appointed leaders the crowd would likely have been at least partly de-escalated. Finally, the USCP (and even the MPD) had the ability to use the building's massive public address system to warn the crowds to disperse. But they did not. And the MPD could have used portable megaphones to warn the police to disperse. But they did not. (There is one video of a police officer mis-using an L.R.A.D. public address system, designed to throw words very large distances, but not be heard close by. There are no MPD body cam videos that contain any sound of any warnings being given to disperse.) These actions would have mitigated the damages claimed.

E) Intervening superseding cause. The District's handling of the situation was an intervening superseding cause of any damages that the District claims. In part this means that there was a cause of some, many, or all of the damages over which the Defendant had no control. It means in part that the proximate causation chain was interrupted by the District's own actions. The District knew fully well that a massive demonstration was occurring on January 6, 2021. Mayor Muriel Bowser warned business owners and offices in the building to stay closed and stay home out of the District because of the massive size of the expected demonstration – all throughout the City, not just at the Capitol. On information

and belief, the MPD issued a permit for a march along Pennsylvania Avenue, because there was massive publicity of a march. The MPD blocked off side streets to accommodate the march down Pennsylvania Avenue without traffic entering from the side. The U.S. Park Police issued a permit for the demonstration at the Ellipse which included the condition that it did not authorize a march. The six demonstration permits issued by the U.S. Capitol Police for the Capitol Grounds also did not authorize a march. Yet the main events was called a march and there was massive news coverage of the march to be held on January 6, 2021. Therefore, it appears that the MPD issues a permit for a march that it is not telling us about. In any event, the District knew very well since December 19, 2020, at least that there would be a massive demonstration. A few days before the demonstration, it is now proven by documents beyond all doubt despite controversy, then President Donald Trump asked the District of Columbia if they were requesting 10,000 to 20,000 National Guard troops because if Mayor Bowser asked the request would be eagerly granted. Yet in the face of such full awareness, the District of Columbia was woefully unprepared for the demonstration, even though mass demonstrations are fairly common in Washington, D.C. Many analysts believe they know why and it has nothing to do with any of the theories publicly suggested. But we must remember that Nancy Pelosi told the Chairman of the Joint Chiefs of Staff to disobey any military orders from the President and Commander in Chief. In any event, the District's and the U.S. Capitol Police's mis-steps were a superseding cause of the harm that they now complain about.

F) Mistaken Identity:  While in general plaintiffs may often have to start with a lawsuit to find out who was actually to blame for injuries, clearly that was not KLEIN nor any of the Defendants sued here.  Out of around 500,000 to 1 million demonstrators in the District of Columbia on January 5-6, 2021, with about 10,000 demonstrators at and around the U.S. Capitol and Capitol Grounds, and about 1000 charged mostly for misdemeanor trespassing, the District of Columbia has picked out 39 Defendants to be sued here.  But these Defendants are not the people responsible for what the Plaintiff complains about.

G) Lack of Damages – "Other":   The Plaintiff primarily alleges injury to MPD officers, which is clear enough to examine.  Again, Defendant believes that every officer suffering any injuries should receive support and expenses for every type of injury.  But the lawsuit also broadly alleges damages to the District of Columbia (not to the Federal Government) of other, unspecified, vaguely hinted at damages.  Since the events at issue (those that are not normal Free Speech demonstrations) happened on Federal Government property, especially, it appears that there are really no damages other than injuries to MPD officers.  Photographs complaining of "damage" to the Capitol Hill area show only debris (trash) – not damage.  Defendant objects to the inclusion of routine clean-up of trash from a mass-demonstration (although typical of leftist demonstrations and not normal for conservative demonstrations) as "damage" to anything in the District of Columbia or at or around the Capitol.  As a routine matter, the Federal Government should always compensate the District, in Defendant's opinion, for demonstrations held in the District aimed at the Federal Government or its

policies.  But it would be wrong to describe routine – even if extensive – trash pick-up as "damage."

H)  Lack of Damages – Injuries to MPD Officers:  While injuries to anyone, especially police officers, are a very serious matter, nevertheless for the purposes of a legal process to assign responsibility, the Plaintiff's Complaint provides very little detail about who was injured, how, how much, and any indications as to how (context).  Naturally Defendant is not suggesting public disclosure of names or personally identifying information or HIPPA-protected medical information.  But at some point in some way the details of injuries claimed with regard to a large number of officers must be alleged or disclosed.  Perhaps this will be addressed by a motion for a bill of particulars / more definite statement which would facilitate confidentiality of police officer and medical information.  Furthermore, presumably the MPD responding at a 12:58 PM request from the U.S. Capitol Police for assistance means that (1) the District of Columbia had some kind of pre-existing memorandum of understanding to spell out the details of when the MPD assists USCP or perhaps the reverse.  (2) The Federal Government has as of January 6, 2021, already agreed to reimburse and indemnify the District of Columbia for any costs incurred including for any injuries to MPD or any other District of Columbia officials.  While of course money alone cannot fully remedy physical injuries or related effects, the Amended Complaint has not identified how much of the costs (to the extent that a monetary remedy can be effective) have already been paid by the Federal Government.

May 30, 2023                              RESPECTFULLY SUBMITTED,


                                          */s/ John M. Pierce*

                                          John M. Pierce
                                          **JOHN PIERCE LAW, P.C.**
                                          21550 Oxnard Street,
                                          3rd Floor, PMB 172
                                          Woodland Hills, CA 91367
                                          (213) 279-7846
                                          jpierce@Johnpiercelaw.com
                                          *Civil Attorney for JONATHAN PETER*
                                          *KLEIN*


                      CERTIFICATE OF SERVICE

I hereby certify that, on May 30, 2023, this Answer was filed via the Court's
electronic filing system, which constitutes service upon all counsel of
record.   To the extent that some Defendants are not represented by counsel, the
firm will serve them by mail, postage prepaid.

                                          */s/ John M. Pierce*
                                          John M. Pierce