IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA,

    Plaintiffs,

v.

PROUD BOYS INTERNATIONAL, L.L.C., et al.,

    Defendants,

Civil Case No.: 1:21-cv-03267-APM

**DEFENDANT ZACHARY REHL'S MOTION TO COMPEL THE DISTRICT OF COLUMBIA TO PRODUCE DOCUMENTS THINGS AND INFORMATION IN <u>RESPONSE TO HIS FIRST REQUEST FOR PRODUCTION</u>**

    Defendant Zachary Rehl (hereinafter "Rehl"), by and through the undersigned counsel, respectfully moves this Court for an Order compelling Plaintiff the District of Columbia (the "District" or "Plaintiff") to produce documents, things, and information in response to Rehl's First Request for Production.

    1.    On September 5, 2023, in accordance with *Rule 34 of the Federal Rules of Civil Procedure* Rehl served the District his First Request for Production ("First Requests" of "Requests"), which consisted of twelve (12) requests for documents, things, and information, and limited the relevant period for production to January 1, 2020, through the date of production ("Rehl's relevant period").

    2.    Rehl's requests are intended to discover: (1) the information that formed the basis of the District's allegations within its First Amended Complaint; (2) whether the District is precluded from damages in this case due its reimbursement in the sum of $66,760,000.00 for its alleged incurred costs related to January 6, 2021. *Emergency Security Supplemental Appropriations Act, 2021*, Pub. L. No. 117-31, 135 Stat. 309 (2021) (to be codified affecting

titles 2, 8, 50); and (3) the District's foreknowledge of the First Amendment activities of January 6, 2021.

3. Rehl requested: (1) all safety and security plans created by the District, or shared with District by any law enforcement agency, NGO (non-government organization), or office of elected official prior to January 6, 2021; (2) same records as requested in number, but which specifically concerned Mr. Rehl, the Proud Boys, and/or Oath Keepers; (3) all communications the District exchanged with any NGO concerning defendants; (4) all internal communications the District exchanged concerning the political protests that occurred on January 6, 2021; (5) all external communications the District exchanged concerning the political protests that occurred on January 6, 2021; (6) all communications the District has received that purport to identify Mr. Rehl or any defendant(s) as being a protester at the United States Capitol on January 6, 2021; (7) all social media messages the District received that purport to identify Mr. Rehl or any defendant(s) as being a protester at the United States Capitol on January 6, 2021; (8) all documents and things that identity the District's plainclothes (undercover) law enforcement officers and non-law enforcement officers on January 6, 2021; (9) all records to identify the markings worn or applied (such as multi-colored wristbands) on all plainclothes law enforcement officers, including D.C. Metropolitan Police Officers, officers from all other state and federal law enforcement agencies, which distinguished plainclothes officers from protesters on January 6, 2021; (10) all records to identify the plainclothes law enforcement officers on duty on January 6, 2021; (11) all communications the District exchanged concerning Mr. Rehl, all other defendant(s), and the political protests that occurred on January 6, 2021; and (12) all documents that identify all alleged sixty-five (65) members of the "MOSD Members Group" as alleged in paragraph 232 of the Amended Complaint.

5. On October 5, 2023, the District produced written responses and objections to Rehl's requests, wherein it objected to all requests and did not produce responsive materials. The District objected on the grounds that the requests were "vague and ambiguous, unduly burdensome, overbroad, and not proportional to the needs of the litigation."

6. The parties met and conferred twice to attempt to resolve differences. The first conference was conducted October 30, 2023, and the second on January 17, 2024.

7. On October 30, 2023, the District disclosed that it had not assigned or appointed a litigation custodian, it was not prepared to identify keywords to use to search for electronically stored information ("ESI"), or select a technology assisted review ("TAR") learning method to be used in the search for ESI.

8. Further, during the October 30, 2023, conference the District's counsel spent significant amount of time arguing that Rehl's requests were unduly burdensome on the grounds that Rehl's requests require the District to contact each and every District employee to ask him/her whether the employee had in its control, custody, or possession relevant records, and/or had if they destroyed same, because counsel for the District argued that each District employee is his/her own records custodian and subject to his/her own records retention policy. At the conclusion of the October 30, 2023, conference, the District's counsel advised they would speak to their client to identify custodians, keywords, and production status, but have not produced responsive materials.

9. On January 17, 2024, the parties conducted a second meet and confer to discuss the District's refusal to produce responsive materials. The District again did not identify its litigation custodian, would not identify ESI search keywords, and would not select the TAR learning method to be used in the search for ESI. At the conclusion of the conference, the

3

District's counsel advised they would speak to their client to identify custodians, keywords, and production status, but have not produced responsive materials.

## I. Legal Argument

### a. Motion to Compel Standard

The Supreme Court has long held that "discovery provisions are to be applied as broadly and liberally as possible" to fulfill the purpose of discovery that "the parties [] obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501, 506 (1947). Civil litigants are entitled to discovery of any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence. *Degen v. United States,* 517 U.S. 820, 825-26 (1996).

In accordance with *Rule 34 Federal Rules of Civil Procedure* parties may serve any other party requests for documents within the scope of *Rule 26*. Fed. R. Civ. P. 34(a). Under *Rule 26(b)(1) of the Federal Rules of Civil Procedure* a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Wall v. Reliance Std. Life Ins. Co.*, 341 F.R.D. 1, 5 (D.D.C. 2022) (*quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). A showing of relevance can be viewed as a showing

of need for the purpose of prosecuting or defending a specific pending civil action. *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 86 (D.D.C. 2005). Further, information need not be admissible in evidence to be discoverable. *Food Lion v. United Food & Commer. Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). To determine proportionality, the courts balance the six factors identified in *Rule 26(b)(1)*, but no single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional, and all proportionality determinations must be made on a case-by-case basis. *Oxbow Carbon & Minerals. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017).

Under *Rule 34(a)(1)(A)* a party can request that any party produce, or permit the requesting party "to inspect, copy, test, or sample…any designated documents or electronically stored information, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations," that is in the receiving "party's possession, custody, or control." When a party objects to a discovery request, the requesting party may—after first attempting to resolve the issue by conferring with the refusing party—file a motion to compel." *Lamaute v. Power*, 339 F.R.D. 29, 35 (D.D.C. 2021).

### b. The District's Objections

Rehl's requests seek production of public records and are limited to the relevant period of January 1, 2020, through the date of production. The District objected to Rehl's relevant period as being overly broad, unduly burdensome, impractical, and not proportional to the needs of the case, and attempts to restrict the relevant period to January 1, 2021, through January 30, 2021. Rehl's requests encompass the dates within the District's complaint, wherein the District alleged defendants committed acts in furtherance of the alleged conspiracy. Moreover, the District alleged defendants formed conspiracies to commit violent acts in April 2019, August 2020,

5

throughout the Summer 2020, October 2020, and November 2020, and the District's relevant period precludes discovery of these allegations. *See* First Amended Complaint ("Pl. FAC.") ¶¶ 63-64, 65, 87, 94-96, 100, 102-106, 108-109, ECF No. 94.

Moreover, the District's restrictive relevant period precludes discovery of other relevant information as to: (1) whether the District's allegations are informed by personal knowledge or hearsay provided by biased persons/entities. Pl. Fac. ¶ 126; (2) the allegations that Rehl is a member of the *Proud Boys Ministry of Self Defense ("MOSD")*. Pl. FAC. ¶¶ 158-59, 223, 225; (3) Rehl's alleged acts in furtherance of the conspiracy. Pl. FAC. ¶¶ 166, 169, 202, 223, 225; (4) Rehl's alleged position on the *Operations Council*. Pl. FAC. ¶¶ 219, 223; (5) allegations that the Proud Boys have been known as a violent organization since October 2018. Pl. FAC. ¶¶ 58-62; (6) defendants formed conspiracies in April 2019, August 2020, throughout the Summer 2020, October 2020, and November 2020. Pl. FAC. ¶¶ 63-64, 65, 87, 94-96, 100, 102-106, 108-109; and (7) that defendants, including Rehl allegedly plotted and planned for January 6, 2021, during calendar year 2020. Pl. FAC. ¶¶ 2-9.

Whether a request creates an undue burden is determined by reference to factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed. *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005). The information sought by Rehl's requests is largely, if not entirely, comprised of ESI. The District's argument that production of ESI in response to Rehl's requests creates an undue burden is a difficult objection to consider seriously, since the District has not assigned or appointed a litigation custodian, who would be the person to make that determination. Furthermore, a request for

production does not create an undue burden when it requires production of information that supports allegations made within a complaint.

Rehl defined Plaintiff as the "District of Columbia and all District Agencies and their employees, officers, law enforcement (public safety), District of Columbia Council, political action committees ("PAC"), all non-governmental organization(s) acting on behalf of, or in concert with the District of Columbia." The District objected by claiming Rehl's definition calls for production of materials that are in the "possession, custody, or control of legal entities other than the District" or any "person purporting to act on behalf of the District," is beyond the scope of discovery under *Rule 26*.

The District's objection allows them to improperly withhold relevant materials simply because the materials are possessed by its agent. When it is a matter of "commonsense for anyone who works in a hierarchical organization, like the government. [a] communication on behalf of the" government "is equivalent to a communication from the" government. *Am. Ctr. For Law & Justice v. United States NSA*, 474 F. Supp. 3d 109, 125 (D.D.C. 2020). Materials in the possession, custody, or control of the District's alleged agent are viewed as if they are in the possession, custody, or control of the District, and must be produced.

During the October 30, 2023, meet and confer, the District argued that Rehl's requests were unduly burdensome, in that they require the District to contact every employee to determine whether the employee possessed or destroyed relevant records, because each employee is his/her own records custodian subject to his/her own records retention policy, which is not true. Each District employee is not his/her own custodian with his/her individual records retention policy.

All District employees must preserve public records in accordance with the District's Public Records Management law, which states "public records are the property of the District

that shall not be destroyed, sold, transferred, or disposed of in any manner, including through the enabling of settings on electronic devices that allow for the non-retention or automatic deletion of records." *D.C. Code § 2-1706(a)(1) (2023)*. Moreover, each District agency must designate a "records management officer…who shall develop and carry out the records management program of the agency and provide liaison with the Administrator." *D.C. Code ¶ 2-1706(c) (2023)*.

The District Code defines public records as:

> any document, book, photographic image, electronic data recording, electronic mail or other communications transmitted electronically, including through any electronic messaging service or mobile messaging application, paper, video recording, sound recording, microfilm, computer disk, or other material, regardless of physical form or characteristic, that documents a transaction or activity made, received, or retained pursuant to law or in connection with the transaction of public business by or with any officer or employee of the District. The medium upon which such information is recorded shall have no bearing on the determination of whether the record is a public record.

*D.C. Code § 2-1701(13) (2023)*.

The District objected to requests because Rehl did not define commonly used words, such as "safety and security," and "purport to identify." The District objected to:

   a. Request Numbers 1 and 2 because Rehl did not define "safety and security" in reference to requests for law enforcement plans created by and shared with the District before January 6, 2021.

   b. Request Number 6 because Rehl did not define "purport to identify" where he requested "all communications Plaintiff has received that purport to identify Mr. Rehl or any defendant(s) as being a protester at the United States Capitol on January 6, 2021."

   c. Request Number 7 because Rehl did not define "purport to identify" where he requested "all social media messages Plaintiff received that purport to identify Mr. Rehl or any defendant(s) as being a protester at the United States Capitol on January 6, 2021."

   d. Request Number 12 because Rehl did not define "identify" where he requested records related to the District's specific allegations.

The District objected and refused to produce information that supports its allegations at paragraph 232 of the First Amended Complaint, where the District alleged Rehl was one of the sixty-five (65) members of the "MOSD Members Group." Pl. FAC. ¶ 232. Rehl's request number 12 requested "all documents that identify all alleged sixty-five (65) members of the MOSD Members Group." The District objected that the request was overbroad and unduly burdensome, because it requests "all documents that identify the MOSD members." The District further objected to the request to identify the MOSD members on the grounds the request was vague and ambiguous, because Rehl failed to defined "identify." The documents and information the District relied upon to identify the alleged members of the MOSD, and bring this action are relevant to Rehl's defenses and must be produced.

Rehl's requests are specific and targeted to the District's allegations, but the District's objections are canned objections for the sake of objecting. The District has not provided an explanation as to how they determined production of ESI is unduly burdensome when they have not assigned a litigation custodian, or how they filed this complaint when they are unable to produce information relevant to their allegations. The Court should promptly order the District to produce responsive materials.

Respectfully submitted,

Dated: February 6, 2024

_____
PATRICK TRAINOR
LAW OFFICE OF PATRICK TRAINOR
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Counsel for Defendant Zachary Rehl*

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2024, a copy of the foregoing was sent by ECF, to all counsel of record and registered parties. A hardcopy of the within consent motion will be mailed to all non-registered *pro se* defendants.

Dated: February 6, 2024

_____
PATRICK TRAINOR
LAW OFFICE OF PATRICK TRAINOR
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Counsel for Defendant Zachary Rehl*