**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DISTRICT OF COLUMBIA,

        *Plaintiff*,

    v.

PROUD BOYS INTERNATIONAL, L.L.C., et al.,

        *Defendants.*

Case No. 1:21-cv-03267 (APM)

**PLAINTIFF DISTRICT OF COLUMBIA'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT ZACHARY REHL'S MOTION TO COMPEL**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

ARGUMENT ............................................................................................................................ 10

   I.   MR. REHL'S REQUESTS ARE NOT APPROPRIATELY LIMITED IN TIME .......... 11

  II.   MR. REHL'S DEFINITION OF "PLAINTIFF" IS OVERBROAD AND
       DISPROPORTIONATE. ................................................................................................ 15

  A.  Mr. Rehl's Vastly Overbroad Definition of "Plaintiff" Seeks Documents of No Relevance
      to This Litigation.............................................................................................................. 16

  B.  The Request for Documents from All District Agencies is Disproportionate to the Needs
      of this Litigation.............................................................................................................. 18

 III.   MR. REHL'S REQUEST FOR ALL DOCUMENTS THAT IDENTIFY MEMBERS OF
       THE MOSD MEMBERS GROUP IS OVERBRAOD AND UNDULY
       BURDENSOME…………………………………………………………………………19

 IV.   MR. REHL'S REMAINING POINTS MUST FAIL. ...................................................... 20

CONCLUSION ......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.N.S.W.E.R. Coal.* v. *Jewell,*
   292 F.R.D. 44 (D.D.C. 2013) ................................................................13

*United States* v. *All Assets Held at Bank Julius Baer & Co., Ltd.,*
   202 F. Supp. 3d 1 (D.D.C. 2016) .......................................................10

*United States* v. *All Assets Held at Bank Julius Baer & Co., Ltd.,*
   309 F.R.D. 1 (D.D.C. 2015) ..........................................................10, 11

*American Center for Law and Justice* v. *U.S. National Security Agency,*
   474 F. Supp. 3d 109 (D.D.C. 2020) ...................................................17

*In re Anthem, Inc. Data Breach Litig.,*
   236 F.Supp.3d 150 (D.D.C. 2017) ......................................................13

*United States* v. *Bru,*
   21-cr-352 ..........................................................................................8, 9

*United States* v. *Crowl,*
   No. 21-cr-28 ......................................................................................8, 9

*D'Onofrio* v. *SFX Sports Grp.,*
   256 F.R.D. 277 (D.D.C. 2009) ...........................................................12

*United States* v. *Duke Energy Corp.,*
   214 F.R.D. 392 (M.D.N.C. 2003) .......................................................18

*Edwards* v. *Gordon & Co.,*
   94 F.R.D. 584 (D.D.C. 1982) .............................................................18

*Gilmore* v. *Palestinian Interim Self-Gov't Auth.,*
   843 F.3d 958 (D.C. Cir. 2016) ...........................................................11

*Glenn* v. *Williams,*
   209 F.R.D. 279 (D.D.C. 2002) ...........................................................12

*Linder* v. *Calero-Portocarrero,*
   183 F.R.D. 314 (D.D.C. 1998) ...........................................................18

*Menashe* v. *Covington & Burling LLP,*
   552 F. Supp. 3d 35 (D.D.C. 2021 .......................................................13

*United States* v. *Nordean*,
  21-cr-175 ................................................................................................8

*Pietrangelo* v. *Refresh Club, Inc.*,
  2021 WL 1209300 (D.D.C. Mar. 31, 2021).......................................................12

*United States ex rel. Pogue* v. *Diabetes Treatment Ctrs. of Am.*,
  235 F.R.D. 521 (D.D.C. 2006)...........................................................................11

*In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*,
  No. 20-00008, 2021 WL 1909777 (D.D.C. May 12, 2021)................................11

*United States* v. *Rhodes*,
  22-cr-15 ..............................................................................................2, 8

*Strike 3 Holdings, LLC* v. *Doe*,
  964 F.3d 1203 (D.C. Cir. 2020) .........................................................................11

*Wall* v. *Reliance Standard Life Ins. Co.*,
  341 F.R.D. 1 (D.D.C. 2022)..........................................................10, 11, 16

*Webb* v. *U.S. Vets. Initiative*,
  993 F.3d 970 (D.C. Cir. 2021) ...........................................................................11

*United States* v. *Worrell*,
  21-cr-292 ..............................................................................................8, 9

*Zimmerman* v. *Al Jazeera Am., LLC*,
  2018 WL 11411310 (D.D.C. Sept. 26, 2018) .....................................................17

**Statutes**

Emergency Security Supplemental Appropriations Act, Pub. L. No. 117-31, 135
  Stat. 309 (2021).................................................................................................20

**Other Authorities**

U.S. Constitution, Fifth Amendment .............................................................................2

Federal Rule of Civil Procedure 26 .....................................................10, 11, 13

Federal Rule of Civil Procedure 37 ..............................................................................11

Plaintiff District of Columbia ("Plaintiff" or the "District") submits this memorandum of law in opposition to Zachary Rehl's Motion to Compel the District to Produce Documents, Things and Information in response to his First Request for Production (ECF No. 275). For the reasons set forth below, Mr. Rehl's motion should be denied.

## PRELIMINARY STATEMENT

On January 6, 2021, members of the Proud Boys and Oath Keepers stormed the United States Capitol Building in furtherance of a conspiracy to prevent members of Congress and Vice President Pence from certifying the results of the 2020 Presidential Election (the "January 6 Attack" or the "Attack"). The District brought this case against 39 named defendants, including Mr. Rehl—who was convicted of seditious conspiracy and sentenced to 15 years' imprisonment in connection with January 6—to recover damages incurred as a result of the defendants' conspiracy, including for injuries to 65 officers in the Metropolitan Police Department ("MPD").

On September 5, 2023, Mr. Rehl served the District with 12 sprawling requests for production, seeking more than four years of documents from more than 60 District agencies and a multitude of third parties. These requests are almost exclusively about what happened on January 6, 2021 and what evidence exists of the Defendants' involvement in the Attack. The District served responses and objections aimed at narrowing the requests to target relevant information while avoiding undue burden on the District. The District met and conferred with Mr. Rehl's counsel three times in an effort to reach agreement on a reasonable, proportional search for relevant documents, offering to review and produce thousands of MPD files related to the District's investigation of the January 6 Attack, including thousands of social media tips and email communications. Mr. Rehl categorically refused to consider the District's proposals, ultimately filing a motion to compel without notice to the District.

Mr. Rehl fails to meet his burden to demonstrate that the discovery he seeks is relevant and proportional to the needs of the case.  The District is seeking—and is already in the process of producing to the Defendants—any exhibits from the Defendants' related criminal trials, which covered the same conduct at issue in this case and provide the most relevant evidence of the Defendants' role in the conspiracy to plan and participate in the January 6 Attack.  Imposing a more expansive search and review process on the District when, in all likelihood, the most relevant documents will already be produced from criminal trial exhibits, is simply not proportional to the needs of the case.  In any event, the District's proposed search process is more than sufficient to identify documents responsive to Mr. Rehl's request, while avoiding fruitless and burdensome searches from sources unlikely to contain relevant documents.  Thus, Mr. Rehl's motion should be rejected.

## FACTUAL AND PROCEDURAL BACKGROUND

The District filed this case on December 14, 2021.  ECF No. 1.  On April 1, 2022, the District filed its Amended Complaint.  ECF No. 94.  On September 30, 2022, the Court stayed the case pending the conclusion of the criminal trial *United States* v. *Rhodes*, No. 22-cr-15.  ECF No. 159.  On January 24, 2023, the Court lifted the stay.  Min. Order (Jan. 24, 2023).

On June 16, 2023, the District served 13 requests for the production of documents on all Defendants, including Mr. Rehl.  On August 28, Mr. Rehl objected to every request, asserting that he was not responding to any of the District's requests on Fifth Amendment grounds.  On September 5, 2023, Mr. Rehl served his First Requests for Production of Documents and Things (the "RFPs") on the District.  *See* Ex. A.

### I.     Mr. Rehls' Document Requests and the District's Responses and Objections

Mr. Rehl's RFPs sought documents from all entities that Mr. Rehl defined as the "Plaintiff," which included "the District of Columbia" and (1) "all District Agencies and their

employees, officers, law enforcement (public safety)"; (2) the "District of Columbia Council"; (3) "political action committees ('PAC')"; and (4) "all non-governmental organization(s) acting on behalf of, or in concert with the District of Columbia."  Ex. A at 1.  The RFPs further instructed that all entities defined as the "Plaintiff" should produce documents from "January 1, 2020, through the date on which Plaintiff responds," Ex. A at 3—a time period dating back more than one year before the Attack and ten months before Donald Trump even lost the 2020 election, and extending nearly three years after the Attack (and nearly two years after this action was filed).

Ten of the requests specifically sought information about the January 6 Attack, including about:

- the Defendants' involvement in the Attack (Request Nos. 6-7, 11);

- the District's safety plans and preparations (Request Nos. 1-2);

- MPD officers' involvement at the Capitol (Request Nos. 8-10); and

- "the political protests that occurred on January 6, 2021" (Request Nos. 4-5).

Ex. A at 5-6.  The remaining two requests sought:

- "[a]ll communications Plaintiff exchanged during the relevant period" (i.e., January 1, 2020 through the date on which the District makes its production) concerning the Defendants, Ex. A at 5 (Request No. 3); and

- documents identifying the 65 members of the MOSD Members Group, *id.* at 6 (Request No. 12), which the District alleges Defendant Tarrio created on January 2, 2021, *see* Am. Compl. ¶ 232.

On October 5, 2023, the District served its Responses and Objections to Mr. Rehl's RFPs. *See* Ex. B.  Among other objections, the District objected to the RFPs' definition of "Plaintiff" on grounds including that the definition was "overbroad" and "unduly burdensome."  Ex. B at 4.  The District further objected to the RFPs' definition of the "relevant period of time" as "January 1, 2020 through the date on which the Plaintiff responds" on grounds including that "such period is

overly broad, unduly burdensome, impractical, and not proportional to the needs of the case." Ex. B at 7-8. The District stated that unless otherwise specified, it would "produce documents from January 1, 2021 through January 30, 2021." Ex. B at 7-8. The District agreed to produce documents from MPD about the Defendants' involvement in the January 6 Attack. The District also offered to meet and confer on the scope of Mr. Rehl's requests, in hopes of reaching agreement on a reasonable and proportional search.

## II.     Meet and Confer Discussions

The parties met and conferred about the District's responses and objections to Mr. Rehl's RFPs on October 13, 2023 and October 31, 2023. Those discussions were largely unproductive, including because Mr. Rehl's counsel repeatedly refused to engage in discussions related to identifying custodians, establishing a relevant time period on a request-by-request basis, or any other subject.[1]

Nonetheless, the District agreed to search for and produce documents responsive to Mr. Rehl's requests in accordance with its responses and objections, including:

- MPD communications, social media messages, and other documents concerning the involvement of any Defendant in the events of January 6, 2021 (Request Nos. 3-7, 11);

- "safety and security plans" of the MPD (Request Nos. 1-2); and

- records related to purportedly plainclothes officers and any markings they may have worn on January 6 (Request Nos. 8-10).

The District did not understand there to be any remaining dispute between the parties at the conclusion of those discussions.

---

[1]     Following the October 13 meet-and-confer, which Mr. Rehl's motion does not mention, *see* Mot. at 3, the District sent Mr. Rehl's counsel an email noting that his conduct did not comport with the D.C. Bar's Voluntary Standards of Civility in Professional Conduct, *see* Ex. C.

On January 4, 2024, Mr. Rehl sent the District an insert to include in the parties' joint status report, which was filed on January 8.  *See* ECF No. 270 at 7–12.  Among numerous other issues that Mr. Rehl deemed "outstanding," he stated that "Plaintiff has not identified its document custodian," despite the District having stated multiple times that there was not a single "custodian" from whom documents would be collected, but that the District would collect documents from many custodians.  *Id.* at 8.  The District offered to provide a list of custodians, and Mr. Rehl's counsel said he was not interested.  At the January 11 status conference, the Court stated, "there may be some semantic difference" in the parties' uses of the term "custodian," Tr. 17:17-19, and "[i]t's not, frankly, clear to me that there is [a dispute]," *id.* 19:25-20:1.  The Court further instructed the parties to "have [a] dialogue" and, "if you can't reach an agreement . . . by next Wednesday, just contact chambers and we'll set down a briefing schedule."  *Id.* 20:10-15.

On January 17, 2024, the parties met and conferred for the third time pursuant to the Court's instruction at the January 11 status conference.  Mr. Rehl's counsel identified the following issues as open areas of dispute.

- **Relevant time period.**  Mr. Rehl's counsel reiterated that he believed the allegations in the Amended Complaint justified requesting documents dating back to January 1, 2020.  The District's counsel again offered to negotiate a reasonable time period on a request-by-request basis, and Mr. Rehl's counsel refused.  The District's counsel stated that it would not agree to a time period beginning January 1, 2020 on a blanket basis for all requests, but that it would consider searching for responsive emails from the fall of 2020, around the time of the 2020 Presidential Election giving rise to the conspiracy at the heart of this case.  Mr. Rehl's counsel reiterated that he thought a time period beginning January 1, 2020 was reasonable.

- **"Safety and security plans" from MPD and other agencies.**  The District's counsel agreed to collect and produce non-privileged, responsive documents from MPD.  Mr. Rehl's counsel insisted that the District must also produce such plans from other agencies, including the "Department of Public Safety"[2] and the D.C.

---

[2]    The District does not have a "Department of Public Safety."

Housing Authority.  The District's counsel conveyed that it would assess whether any agencies in addition to MPD would have responsive documents.

- **Other documents from non-MPD agencies.**  Mr. Rehl's counsel expressed that the District's production should include documents from all District agencies and organizations, including offices of elected officials, because such agencies and organizations could have been communicating and have relevant information.  The District's counsel responded that it would assess whether there was a way to calibrate a reasonable search to accommodate this request.

- **Communications exchanged with NGOs.**  The District's counsel explained that to the extent MPD communicated with any NGOs about any Defendants, such communications would be collected as part of the search the District agreed to conduct of MPD email boxes for communications concerning the involvement of any Defendant in the events of January 6.  Mr. Rehl's counsel responded that the search should not be limited to the MPD.  Again, the District's counsel explained that it would assess whether there was a way to calibrate a reasonable search for documents of other agencies.

During that call, the District shared that it had requested and was in the process of waiting for a search of *all* MPD email from November 1, 2020 through January 31, 2021.  The search terms were simple: the District ran the name of each Defendant—and variations of their names, where Defendants have known middle names—through *all* emails from *all* MPD email addresses for the three-month time period around the January 6 Attack.  This search has since returned approximately 4,000 de-duplicated emails and 4,100 attachments, all of which the District is reviewing.

The District further shared the parameters of its document collection.  Specifically, the District described that it has collected and is in the process of reviewing responsive documents collected from:

- The District's Office of Unified Communications;

- MPD's Body-Worn Camera and CCTV Retrieval Branch;

- MPD's Joint Strategic and Tactical Analysis Command Center;

- MPD Air Support Unit; and

- MPD's Director of Medical Services.

Following the January 17 meet-and-confer, the District did not understand the parties to be at an impasse in their discussion: it had shared that it was waiting for search results and that it had to seek information from the District about Mr. Rehl's requests for documents from agencies within the District besides the MPD, which would take at least a few weeks.  The District further understood that, if Mr. Rehl believed there were open areas of dispute requiring the Court's attention, he would follow the procedure set forth in the Amended Scheduling Order by arranging to contact chambers jointly with the District so that the Court could "rule on the issue or determine the manner in which it will be handled."  ECF No. 274 at 2; *see also* Jan. 11, 2024 Status Conf. Tr. 20:10-15 (instructing parties that, if discovery dispute was not resolved, they should "contact chambers and we'll set down a briefing schedule").

On February 6, Mr. Rehl filed the instant motion, in violation of the provision in the Amended Scheduling Order that "[t]he parties may not file a discovery motion without leave of court."  ECF No. 274 at 2.  Mr. Rehl did not provide notice to the District.

### III.    The District's Document Searches and Production

Despite being apparently unable to reach agreement with Mr. Rehl on the scope of the District's document production, the District has been diligently collecting, reviewing, and producing documents.  Specifically, the District collected from its MPD files approximately 6,500 MPD documents about January 6, including:

- MPD briefings on planned protests and demonstrations around January 6;

- MPD briefings on the events of January 6, including MPD officer involvement at the Capitol and the surrounding area;

- photos and videos of the January 6 Attack;

- audio files from MPD officers from January 6;

- records of MPD officer injuries from January 6; and

- social media tips sent to the District in connection with the District's investigation of the January 6 Attack.

The District did not run search terms across MPD's files because the January 6-related documents had already been comprehensively collected by MPD and shared with the U.S. Attorney's Office in connection with its criminal investigation related to January 6. The District collected those files and is in the process of searching them for relevant information, some of which the District has already produced.

In addition, the District requested and obtained 331 documents consisting of trial exhibits from the criminal cases *United States* v. *Crowl*, No. 21-cr-28; *United States* v. *Bru*, 21-cr-352; and *United States* v. *Worrell*, 21-cr-292. The District is also in the process of obtaining criminal exhibits from the Defendants' other criminal cases, including *United States* v. *Rhodes*, 22-cr-15 and *United States* v. *Nordean*, 21-cr-175. Given that the Defendants' related criminal trials covered the same conduct at issue in this case and provide the clearest evidence of the Defendants' role in the conspiracy to plan and participate in the January 6 Attack, those documents are most likely to contain relevant information about the Defendants' participation in planning and undertaking the January 6 Attack.

Nonetheless, the District also searched all MPD email addresses for the Defendants' names—with no limitations[3]—from November 1, 2020 through January 31, 2021, identifying

---

[3]    The search was for: "proud boys OR oath keepers OR ryan ashlock OR joseph biggs OR joseph randall biggs OR marc anthony bru OR marc bru OR thomas edward caldwell OR thomas caldwell OR william chrestman OR louis enrique colon OR louis colon OR donovan ray crowl OR donovan crowl OR nicholas decarlo OR charles donohoe OR matthew greene OR joseph hackett OR Kenneth Harrelson OR Arthur Jackman OR Joshua James OR Jonathanpeter Klein OR Christopher Kuehne OR Connie Meggs OR Kelly Meggs OR Roberto A. Minuta OR Roberto Minuta OR David Moerschel OR Ethan Nordean OR Nicholas Robert Ochs OR Nicholas Ochs OR Bennie Alvin Parker OR Bennie Parker OR Sandra Ruth Parker OR Sandra Parker OR William Joseph Pepe OR William Pepe OR Dominic Pezzola OR Zachary Rehl OR

approximately 4,000 de-duplicated emails and 4,100 attachments that the District is in the process of reviewing.[4]  This additional search should identify any communications about the Defendants' involvement in the January 6 Attack, and communications about the Defendants generally during the relevant period, as re-defined by the District (Request No. 3), and any communications identifying the Defendants as members of MOSD (Request No. 12).

To date, the District has produced:

- 400 pages of documents related to damages;

- 331 documents consisting of trial exhibits from the criminal cases *United States* v. *Crowl*, No. 21-cr-28; *United States* v. *Bru*, 21-cr-352; and *United States* v. *Worrell*, 21-cr-292; and

- 467 documents consisting of the files collected from the MPD and MPD emails (totaling 2,067 pages), which the District is still in the process of collecting and reviewing, but which are being produced on a rolling basis.  These documents include, among others, documents responsive to Mr. Rehl's requests for "safety and security plans," documents related to purportedly "plainclothes" officers and markings they may have worn on January 6, and documents about the Defendants' involvement in the January 6 Attack.

In addition, the District is in the process of reaching out to eleven additional agencies within the purview of the District's Office of the Deputy Mayor for Public Safety and Justice[5] in order to assess whether these agencies have responsive documents that can be reasonably collected

---

Elmer Stewart Rhodes OR Elmer Rhodes OR Jon Ryan Schaffer OR Jon Schaffer OR daniel lyons scott OR daniel scott OR Laura Steele OR Henry Tarrio OR Enrique Tarrio OR Brian Ulrich OR Edward Vallejo OR Jessica Marie Watkins OR Jessica Watkins OR Christopher John Worrell OR ChristopherWorrell OR Graydon Young."

[4]     Before returning the search results, the search processor indicated that a "request with broad search scopes may take up to 3 weeks to complete."

[5]     These agencies are the Department of Corrections, the Department of Forensic Sciences, the Department of Youth Rehabilitation Services, Fire and Emergency Management Services, Homeland Security and Emergency Management Agency, Mayor's Office of Returning Citizens Affairs, Office of the Chief Medical Examiner, Office of Human Rights, Office of Unified Communications (whose relevant documents the District has already obtained from MPD), the Office of Victims Services and Justice Grants, and the Stay Stronger DC Office of Neighborhood Safety and Engagement.  *See* DC.gov, *Office of the Deputy Mayor for Public Safety and Justice*, https://dmpsj.dc.gov/page/cluster-agencies (last visited Feb. 19, 2024).

(although the District believes that any such documents are likely to be duplicative of MPD documents).

## ARGUMENT

While Federal Rule of Civil Procedure 26(b)(1) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense," discovery sought must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).[6] The Rule 26 relevance standard "is not without bite" and will not allow parties to 'explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Wall* v. *Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 5 (D.D.C. 2022) (quoting *Food Lion, Inc.* v. *United Food & Commercial Workers Int'l Union, AFL–CIO–CLC*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997)); *see also United States* v. *All Assets Held at Bank Julius Baer & Co., Ltd.*, 309 F.R.D. 1, 5 (D.D.C. 2015), *aff'd sub nom.*, *United States* v. *All Assets Held at Bank Julius*, 170 F. Supp. 3d 161 (D.D.C. 2016) (explaining that discovery under Rule 26 "is bounded by the limitations that come into existence when the inquiry touches upon the irrelevant") (quotations and citations omitted).

"Moreover, [Rule 26] was amended in 2015 to emphasize the need for proportionality in discovery and to 'encourage judges to be more aggressive in identifying and discouraging

---

[6]     Mr. Rehl asserts that litigants are broadly entitled to discovery of any information if it appears "reasonably calculated to lead to the discovery of admissible evidence." Mot. at 4. That language was removed from the text of Rule 26, and the current language directs courts to focus on proportionality. *See United States* v. *All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 6 (D.D.C. 2016) ("The party seeking discovery must first demonstrate that the information sought" is *both* relevant and proportional and therefore falls "within the scope of discoverable information under Rule 26.").

discovery overuse.'"  *Wall*, 341 F.R.D. at 5 (quoting  Fed. R. Civ. P. 26(b)(1) Advisory Comm.

Note to 2015 Amendments).  With this emphasis, courts will "not impose on the government the

extreme burden of responding to" requests "which the Court views as a fishing expedition." *Julius*

*Baer*, 309 F.R.D. at 12. A "district court has broad discretion to limit the scope of discovery

pursuant to [Rule] 26(b)" in order to ensure that discovery sought is both relevant and proportional

to the needs of the case.  *Webb* v. *U.S. Vets. Initiative*, 993 F.3d 970, 974 (D.C. Cir. 2021); *see*

*also Gilmore* v. *Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 968 (D.C. Cir. 2016) ("Rule

26 vests the trial judge with broad discretion to tailor discovery narrowly." (quoting *Crawford-El*

v. *Britton*, 523 U.S. 574, 598 (1998))).

 In assessing a motion to compel discovery under Rule 37, "courts must look carefully to

the complaint's allegations to determine if the requested discovery" satisfies Rule 26's relevance

and proportionality requirements.  *Strike 3 Holdings, LLC* v. *Doe*, 964 F.3d 1203, 1210 (D.C. Cir.

2020).  The party seeking to compel discovery bears the burden of demonstrating "that the

information sought is both relevant and proportional and therefore falls 'within the scope of

discoverable information under Rule 26.'"  *In re Rail Freight Fuel Surcharge Antitrust Litig. (No.*

*II)*, No. 20-00008, 2021 WL 1909777, at *6 (D.D.C. May 12, 2021) (quoting *United States* v. *All*

*Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 6 (D.D.C. 2016)). [7]

 Here, Mr. Rehl cannot meet that burden.

## I. MR. REHL'S REQUESTS ARE NOT APPROPRIATELY LIMITED IN TIME

---

[7] In addition, Rule 37 requires that the parties make a good faith effort to resolve discovery
disputes without the Court's intervention, and that the movant specifically make a certification of
such to the Court (Fed. R. Civ. P. 37(a)(1)), because it is a "waste" of the Court's "time and
resources to adjudicate a dispute that could have been resolved by the parties themselves."
*United States ex rel. Pogue* v. *Diabetes Treatment Ctrs. of Am.*, 235 F.R.D. 521, 529 (D.D.C.
2006).  Mr. Rehl has submitted no such certification.

Mr. Rehl's requests, as drafted, require the District to search its records for documents related to the January 6 Attack beginning on January 1, 2020—more than a year before the Attack—and carrying through until the end of fact discovery.  This time period is not appropriate in this case: it is likely to result in review of irrelevant documents and is not proportional to the needs in the case.  The District's proposed time period will capture any relevant, non-privileged communications about the events at issue.

A discovery request "must . . . be reasonably limited in time."  *Glenn* v. *Williams*, 209 F.R.D. 279, 282 (D.D.C. 2002).  The guiding principle is that "[a] judge must simply draw a reasonable line between the likely and the unlikely, the discoverable and the prohibited, the wheat and the chaff."  *D'Onofrio* v. *SFX Sports Grp.*, 256 F.R.D. 277, 280 (D.D.C. 2009).

In this case, the District alleges that the Defendants conspired to attack the U.S. Capitol on January 6, 2021 in order to prevent members of Congress and Vice President Pence from certifying the results of the 2020 Presidential Election.  The conspiracy was formed in response to Donald Trump's loss to Joseph Biden in the 2020 Presidential Election.  That election was held on November 3, 2020, and the results of the election were announced on November 7, 2020.  *See, e.g.*, Am. Compl., ECF No. 94, ¶¶ 102-36; 269-73.  Thus, "[t]he relevant time period is that immediately abutting" the January 6th Attack, starting from the Presidential Election in November 2020, and "[a]ny earlier than this is, at best, tangentially relevant to Plaintiff's claims." *Pietrangelo* v. *Refresh Club, Inc.*, 2021 WL 1209300, at *5 (D.D.C. Mar. 31, 2021), *aff'd*, 2021 WL 2156504 (D.D.C. May 26, 2021).

Mr. Rehl himself appears to acknowledge this, given that nine of his twelve document requests seek information about what happened *on* January 6, 2021.  *See* Ex. A at 5-6 (Request Nos. 1, 4-11).  It is, of course, impossible that documents describing what happened on January 6,

2021 would exist **before January 6, 2021**.  It does not make sense for the District to run searches across MPD emails created a year before that date.  *See Menashe* v. *Covington & Burling LLP*, 552 F. Supp. 3d 35, 42 (D.D.C. 2021) (finding the petitioner had failed to demonstrate the relevance of the requested time period when "there could be no relevant records" from that period and "there [wa]s no explanation why records as far back as late 2007 would be relevant" to a terrorist attack that took place on July 18, 2012).

Nor should the District have to search for and review email and social media communications from after January 2021.  While the District has collected, and is in the process of reviewing for production, official MPD records related to the January 6 Attack from late 2020 with no end date restriction—including briefings on the Attack and medical records related to the MPD officer injuries on January 6 (some of which have already been produced)[8]—to the extent there were non-privileged email or social media communications about the Attack, the data the District has collected and reviewed to date indicates that such communications largely occurred in the immediate wake of the January 6 Attack.  Moreover, to the extent such communications exist, they are likely privileged[9] or attorney work product, as the District began investigating the January 6 Attack (and potential claims arising from the Attack) shortly after it took place.

---

[8]     For example, the District's disclosures under Rule 26 dated June 1, 2023 included documents Bates-stamped PLTF-0000262 (dated April 1, 2021), PLTF-00000146 (dated October 6, 2021), and PLTF-00000341 (dated October 8, 2021).

[9]     In addition to potentially implicating attorney-client privilege, these documents may also implicate the qualified "law enforcement privilege" which "aims to protect the integrity of law enforcement techniques, sources, and investigations—disclosure of which would be 'contrary to the public interest in the effective functioning of law enforcement.'" *In re Anthem, Inc. Data Breach Litig.*, 236 F.Supp.3d 150, 159 (D.D.C. 2017) (quoting *Tuite* v. *Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999) (per curiam)); *see also A.N.S.W.E.R. Coal.* v. *Jewell*, 292 F.R.D. 44, 50 (D.D.C. 2013) (noting that the privilege serves, among other things, to prevent interference with law enforcement investigations).

As for Mr. Rehl's other requests—including "[a]ll communications Plaintiff exchanged during the relevant period" concerning the Defendants, Ex. A at 5 (Request No. 3), "safety and security plans" beginning January 1, 2020 and "prior to January 6, 2021," *id.* (Request Nos. 1-2), and documents identifying the 65 members of the MOSD Members Group, *id.* at 6 (Request No. 12), which the District alleges Defendant Tarrio created on January 2, 2021, *see* Am. Compl. ¶ 232—Mr. Rehl's proposed time period would similarly result in discovery of irrelevant documents. The District's January 6 safety plans did not exist more than a few days before January 6, and are fully captured by the District's collection of documents from MPD's files. As discussed in greater detail below, publicly available information from related criminal cases states that the MOSD Members Group was created on January 2, 2021—there can be no relevant documents about this group dated much before it existed (and to the extent such documents exist, they would be in the possession of MOSD members, including Mr. Rehl, not the District). As for Mr. Rehl's request for "all communications" concerning the Defendants, Mr. Rehl has stated no reason to believe that such communications exist prior to the Defendants' participation in the January 6 Attack or after the weeks following the Attack in which Defendants were identified.

Mr. Rehl argues that the dates referenced in the Amended Complaint justify his expansive requested time period. *See* Mot. at 6. But searching years of the District's documents simply because the District's Amended Complaint references dates prior to the unfolding of the central events in this case is not proportional to the needs of the case. Allegations in the Amended Complaint regarding the violent history of the Proud Boys and Oath Keepers in April 2019 (describing a rally in Providence, Rhode Island), August 2020 (describing protests in Portland, Oregon related to the police killing of George Floyd in Minneapolis, Minnesota), and the fall of 2020 (describing then-President Trump's statement that the Proud Boys should "stand back and

stand by" and the Proud Boys' support for President Trump) describe publicly available information related to events outside the District. *See* Am. Compl. ¶¶ 63-65, 87, 96-97. There is no reason to believe the District would have relevant documents or communications in its possession, custody or control from these events—and the search to find any such potential documents would be prohibitively expansive.

The District has collected documents from MPD files from late 2020 with no end date restriction, which include MPD's records of the Attack, documents about MPD's participation in efforts to protect the Capitol during the January 6 Attack (including plainclothes MPD officers), MPD's safety plans for post-election protests in the District, and MPD officer injuries resulting from the January 6 Attack. The District has also undertaken a search through all MPD email addresses for the Defendants' names (without limiting qualifiers) from November 1, 2020 through January 31, 2021 and is collecting and reviewing more than 6,000 social media tips regarding the January 6 Attack that were sent to the District following the Attack.

The date range of the District's collection, which covers the period of time from immediately before the 2020 Presidential Election through the weeks following the January 6 Attack, is more than sufficient to capture any relevant documents responsive to Mr. Rehl's requests. This is particularly true given that the District is seeking—and will produce to the Defendants—any exhibits from the Defendants' related criminal trials, which covered the same conduct at issue in this case and provide the clearest evidence of the Defendants' role in the conspiracy to plan and participate in the January 6 Attack. Imposing a more expansive search and review process on the District when, in all likelihood, the most relevant documents will already be produced from criminal trial exhibits, is simply not proportional to the needs of the case.

## II.   MR. REHL'S DEFINITION OF "PLAINTIFF" IS OVERBROAD AND DISPROPORTIONATE.

Mr. Rehl's requests incorporate a very expansive definition of "Plaintiff" that includes all District agencies, employees, officers, law enforcement (public safety), the "District of Columbia Council," "political action committees" ("PACs"), and "all non-governmental organization(s) [('NGOs')] acting on behalf of, or in concert with the District of Columbia." Ex. A at 1.  Each of his twelve requests seek production of all responsive documents from the "Plaintiff," making Mr. Rehl's requests disproportionate to the needs of the case and an undue burden on the District.  The District's proposal to produce documents from MPD custodians and files, while also inquiring about potentially responsive documents in possession of District agencies supervised by the Office of the Deputy Mayor for Public Safety and Justice, is appropriately targeted to identify relevant documents and sufficient to fulfill the discovery needs in this case.

A.    **Mr. Rehl's Vastly Overbroad Definition of "Plaintiff" Seeks Documents of No Relevance to This Litigation.**

"[A]ll District Agencies" includes at least 67 agencies, including many that are overwhelmingly unlikely to have information concerning the January 6 Attack on the Capitol, such as the Commission on the Arts and Humanities, Child Support Services Division, Contract Appeals Board, Office of Disability Rights, Department of Licensing and Consumer Protection, and Department of Insurance, Securities and Banking.  *See* DC.gov, *Agency Directory* (last visited Feb. 19, 2024).[10]  As the moving party, Mr. Rehl "bears the initial burden of explaining how the requested information is relevant," and he has not even attempted to explain why information from these or any other agencies is relevant.  *Wall* v. *Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 6 (D.D.C. 2022) (quotation omitted).

The RFPs' definition of "Plaintiff" also includes "political action committees" ("PACs") and "all non-governmental organization(s)" ("NGOs") "acting on behalf of, or in concert with the

---

[10]   https://dc.gov/directory?tid=All.

District of Columbia," Ex. A at 1, but Mr. Rehl's RFPs and motion to compel do not identify a single PAC or NGO that purportedly acted as the District's agent, let alone that has relevant documents within the District's control. "Evaluating whether a party has control of documents that are potentially responsive to discovery is a case-specific inquiry which depends on the specific facts and context presented by each dispute," *Zimmerman* v. *Al Jazeera Am., LLC*, 2018 WL 11411310, at *3 (D.D.C. Sept. 26, 2018), and Mr. Rehl has set forth no "specific facts" or "context" that would enable this evaluation. His blanket request for documents responsive to all twelve of his requests from countless unidentified "PACs" and "NGOs" is thus overbroad, seeks information irrelevant to this litigation, and ignores the fact that, to the extent there were any responsive communications with PACs or NGOs, they would be captured by the search of MPD emails that the District has conducted.

The sole authority on which Mr. Rehl relies is inapposite. *See* Mot. at 7. In *American Center for Law and Justice* v. *U.S. National Security Agency*, 474 F. Supp. 3d 109 (D.D.C. 2020), the court considered whether a declassified government memorandum established the existence of certain records, such that the government could not refuse to confirm or deny their existence in response to a FOIA request. *See id.* at 120, 126. The court held that because the declassified memorandum established the existence of records made "on behalf of" a principal, they established the existence of records "from" that principal because under principles of agency law, those records were one and the same. *Id.* at 125. The court's analysis of agency law in analyzing a FOIA request says nothing about whether documents belonging to some unspecified, purported agent of a party must be produced in discovery.

Moreover, to the extent that there is even a remote possibility that District agencies other than MPD have relevant information, the District is in the process of seeking such documents. The

District has identified eleven agencies within the purview of the Office of the Deputy Mayor for Public Safety and Justice that are comparatively likelier to have relevant information, *supra* n. 5, and has taken steps to initiate discussions with these agencies.  Had Mr. Rehl followed the procedure prescribed in the Amended Scheduling Order instead of unilaterally filing this motion, the District would have explained this to him.

### B.   The Request for Documents from All District Agencies is Disproportionate to the Needs of this Litigation.

This case is about the injuries that Mr. Rehl and his co-conspirators inflicted on MPD officers when Defendants conspired to Attack the Capitol.  At most, documents from outside MPD's files would be either duplicative of MPD's documents or of marginal relevance.  Searching for those documents would cost undue time and expense, as the District would need to identify custodians among countless District employees and run broad email searches that can take significant time to process.[11]  In these circumstances, the burden of searching for documents across 67 different agencies—which are unlikely to have relevant documents—far outweighs the likely benefit.  *See Linder* v. *Calero-Portocarrero*, 183 F.R.D. 314, 319 (D.D.C. 1998) (denying discovery from *two* federal agencies when the requested search would "generate mountains of irrelevant documents . . . in the retrieval of some relevant documents"); *United States* v. *Duke Energy Corp.*, 214 F.R.D. 392, 393 (M.D.N.C. 2003) (denying discovery from files of even *one* agency when burden outweighed likely benefit); *Edwards* v. *Gordon & Co.*, 94 F.R.D. 584, 586 (D.D.C. 1982) (discovery does not entitle parties "to roam through . . . files at will").

Mr. Rehl's arguments to the contrary must fail.  Mr. Rehl argues that "[e]ach District employee is not his/her own custodian," Mot. at 7, but this argument fundamentally misconstrues

---

[11]     The District's search process requires the submission of search terms, and it can take several weeks to return results.  Accordingly, an iterative process that involves running different combinations of search terms is impractical.

what a document custodian is for purposes of discovery.  Mr. Rehl then cites a local law governing

the District's obligation to preserve public records.  *See* Mot. at 7-8 (citing D.C. Code § 2-1706).

But this local law speaks to record preservation, not the District's discovery obligations under the

Federal Rules of Civil Procedure.  Therefore, under the applicable law, Mr. Rehl's definition of

"Plaintiff" is overbroad and disproportionate to the needs of this case.

### III.   MR. REHL'S REQUEST FOR ALL DOCUMENTS THAT IDENTIFY MEMBERS OF THE MOSD MEMBERS GROUP IS OVERBRAOD AND UNDULY BURDENSOME.

Mr. Rehl's request for the production of "all documents that identify all alleged sixty-five

(65) members of the MOSD Members Group," Ex. A at 6 (Request No. 12), is likewise overbroad

and unduly burdensome.  As the basis for this request, Mr. Rehl points to Paragraph 232 of the

Amended Complaint, which alleges that on January 2, 2021, Defendant Tarrio created a messaging

group for recruits to become the "MOSD Members Group," and that this group included at least

65 members, including Mr. Rehl.  *See* Am. Compl. ¶ 232.  But, as the District explained in the

parties' meet-and-confers, the source of this factual allegation is a publicly available record, and

not an internal District document.  *See* Ex. D, Nordean Second Superseding Indictment ¶ 46 ("On

January 2, 2021, TARRIO created an encrypted message group for recruits who had been accepted

to become members of the MOSD ('MOSD Members Group').  TARRIO posted a message that

read, 'Open for business.'  The group included at least 65 members, including TARRIO,

NORDEAN, BIGGS, REHL, DONOHOE, and PERSONS 1-3, PEZZOLA was subsequently

added to the MOSD Members Group by PERSON 1.").

Moreover, that publicly available record states explicitly that the MOSD Members Group

was created on January 2, 2021, making clear that a search of the District's records prior to that

date would be entirely irrelevant, even if the District had its own documents identifying MOSD

members.  *Id*.  In any event, the District has already searched MPD emails for the names of all of

the Defendants in this case from November 1, 2020 through January 31, 2021. Thus, to the extent there are any MPD documents identifying Defendants, including Mr. Rehl, as members of the MOSD Members Group, those documents would be captured by search the District has already run. Mr. Rehl has not met his burden to show that imposing an additional obligation on the District is otherwise warranted.

## IV.   MR. REHL'S REMAINING POINTS MUST FAIL.

Mr. Rehl states that the District "objected to requests because Mr. Rehl did not define commonly used words, such as 'safety and security' and 'purport to identify.'" Mot. at 8. But Mr. Rehl makes no argument with respect to these objections, and, in any event, the District has agreed to produce responsive, non-privileged "safety and security" plans of MPD and MPD communications that "purport to identify" any Defendant in connection with the Attack. Mr. Rehl also cites the Emergency Security Supplemental Appropriations Act, Pub. L. No. 117-31, 135 Stat. 309 (2021), but he makes no attempt to explain why he believes this Act bears on the District's discovery obligations in this case. *See* Mot. at 1-2. Neither of these arguments is a basis for granting Mr. Rehl's motion.

### CONCLUSION

For the foregoing reasons, Mr. Rehl's Motion to Compel should be denied.

Dated: February 20, 2024

*Counsel for Plaintiff District of Columbia:*

**BRIAN L. SCHWALB, ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA**

By:     */s/ Brendan B. Downes*
            Brendan B. Downes (D.C. Bar 187888)
            400 6th St. NW
            Washington, DC 20001

Tel: 202-724-6533
Email: Brendan.downes@dc.gov

**STATES UNITED DEMOCRACY CENTER**

By:     */s/ Norman Eisen*
        Norman Eisen (D.C. Bar 435051)
        Christine P. Sun
        Katherine Reisner
        Gillian Feiner
        Zack Goldberg
        1101 17th St NW, Suite 250
        Washington, DC 20036
        Tel: (202) 999-9305
        Email: norm@statesuniteddemocracy.org
              christine@statesuniteddemocracy.org
              katie@statesuniteddemocracy.org
              gillian@statesuniteddemocracy.org
              zack@statesuniteddemocracy.org

**DECHERT LLP**

By:     */s/ Vincent H. Cohen, Jr.*
        Vincent H. Cohen, Jr. (D.C. Bar 471489)
        D. Brett Kohlhofer (D.C. Bar 1022963)
        1900 K Street, NW
        Washington, D.C. 20006-1110
        Tel: 202-261-3300
        Fax: 202-261-3333
        Email: vincent.cohen@dechert.com
              d.brett.kohlhofer@dechert.com

By:     */s/ Michael S. Doluisio*
        Michael S. Doluisio
        2929 Arch Street
        Philadelphia, PA 19104-2808
        Tel:  215-994-2000
        Fax:  215-994-2222
        Email: michael.doluisio@dechert.com

**THE ANTI-DEFAMATION
LEAGUE**

By: */s/ James Pasch*
    James Pasch
    605 Third Avenue
    New York, NY 10158-3650
    Tel: 212-885-5806
    Email: jpasch@adl.org

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**

By:     */s/ Jeannie S. Rhee*
        Jeannie S. Rhee (D.C. Bar 464127)
        2001 K Street, NW
        Washington, D.C. 20006-1047
        Tel:  202-223-7300
        Fax:  202-223-7420
        Email:  jrhee@paulweiss.com

By:     */s/ Daniel J. Kramer*
        Daniel J. Kramer
        Andrew J. Ehrlich
        Erin J. Morgan
        Hillary S. Black
        1285 Avenue of the Americas
        New York, NY 10019-6064
        Tel: 212-373-3000
        Fax: 212-757-3990
        Email: dkramer@paulweiss.com
              aehrlich@paulweiss.com
              ejmorgan@paulweiss.com
              hblack@paulweiss.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 20, 2024, I caused the foregoing Joint Status Report to be electronically filed using the Court's CM/ECF system, and service was effected electronically pursuant to Local Rule 5.4(d) to all counsel of record.  Remaining defendants have been served via first class mail.

*/s/ Jeannie S. Rhee*

Jeannie S. Rhee