## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CONRAD SMITH, et al.** **)** | |
| **)** | |
| **)** | Case No 1:21-cv-02265 |
| Plaintiffs, **)** | The Honorable Amit P. Mehta |
| **)** | |
| v. **)** | |
| **)** | |
| **DONALD J. TRUMP, et al.** **)** | |
| **)** | |
| Defendants. **)** | |
| **)** | |
| **)** | |
| **DISTRICT OF COLUMBIA,** **)** | |
| **)** | Case No 1:21-cv-03267 |
| Plaintiff, **)** | The Honorable Amit P. Mehta |
| **)** | |
| v. **)** | |
| **)** | |
| **PROUD BOYS INTERNATIONAL LLC,** **)** | |
| **et al.** **)** | |
| **)** | |
| Defendants. **)** | |

**UNITED STATES V. RHODES, INDICTMENT NO. 1:22-cr-00015-APM, DEFENDANTS'
CONSOLIDATED MEMORANDUM IN
<u>OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

i

# TABLE OF CONTENTS

Page

STANDARD………………………………………………………………………………………1

DEFENDANT BRIAN ULRICH'S MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT……………………………………………….…1

DEFENDANTS RHODES, MINUTA, VALLEJO, RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND RULE 13 COUNTERCLAIM FOR SUMMARY JUDGMENT AND RULE 13(c) COUNTERCLAIM EXCEEDING OPPOSING CLAIM……………………………………………………………………………………….3

DEFENDANT DAVID MOERSCHEL'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT……………………………..…..10

UNITED STATES V. RHODES DEFENDANTS' OPPOSITION TO SMITH PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF DISTRICT OF COLUMBIA'S MOTION FOR PARTIAL SUMMARY JUDGMENT………………………….12

CERTIFICATE OF SERVICE…………………………………………...………………………38

# TABLE OF AUTHORITIES

**Statutes**

18 U.S.C. § 1952........................................................................................................25

18 U.S.C. § 3556..........................................................................................................8

18 U.S.C. § 3663(a)(1)(A) ........................................................................................7-8

18 U.S.C. § 3663A(a)(1) .............................................................................................8

18 U.S.C. § 3664(j)(2) .................................................................................................8

**Cases**

*Ali Baba Co. v. WILCO, Inc.*, 482 A.2d 418 (D.C. 1984)........................................24

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp. 3d 11 (D.D.C. 2023)
......................................................................................................................................17

*Athridge v. Iglesias*, 2000 U.S. Dist. LEXIS (D.D.C. Nov. 14, 2000)....................28

*Austin v. United States*, 509 U.S. 602 (1993) ...........................................................9

*Bushrod v. D.C.*, 521 F. Supp. 3d 1 (D.D.C. 2021)..............................................18, 21

*Carr v. District of Columbia*, 646 F.2d 599 (D.C. Cir. 1980) .................................28

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .........................................................1

*Clark-Cowlitz Joint Operating Agency v. Federal Energy Regulatory Com.*, 826 F.2d 1074 (D.C. Cir. 1987) .......................................................................................................................24

*Columbia Plaza Corp. v. Security Nat. Bank*, 676 F.2d 780 (D.C. Cir. 1982).......................25

*Cumis Ins. Soc'y Inc. v. Clark*, 318 F. Supp. 3d 199 (D.D.C. 2018)......................18

*Delahanty v. Hinckley*, 799 F. Supp. 184 (D.D.C. 1992).........................................24

*Eddington v. United States DOD*, 35 F.4th 833 (D.C. Cir. 2022) ......................17, 19

*Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558 (1951) ...................24-25

*Han v. Fin. Supervisory Serv.*, 2019 U.S. Dist. LEXIS 242791 *42 (D.C. Cir. 2019)..........1

*Hinton v. Shaw Pittman Potts & Towbridge*, 257 F. Supp. 2d 96 (D.D.C. 2003) ..................18, 21

*Hurst v. Socialist People's Libyam Arab Jamahiriya*, 474 F. Supp. 2d 19 (D.D.C. 2007) ...17

*Jack Faucett Associates, Inc. v. American Telephone and Telegraph Co.*, 744 F.2d 118 (D.C. Cir. 1984) ..........................................................................................................................13, 18,
.........................................................................................................................................28

*Jahr v. District of Columbia*, 968 F. Supp. 2d 186 (D.D.C. 2013) .......................24

*Kane v. Hargis*, 987 F.2d 1005 (4th Cir. 1993) ................................................................18

*King v. Barbour*, 2019 U.S. Dist. 141534 (D.D.C. Aug. 21, 2019) ......................................27

*Manrique v. United States*, 581 U.S. 116 (2017)...................................................................8

*Miller v. Holzman*, 2006 U.S. Dist. LEXIS 9165 (D.D.C. Mar. 9, 2006) ............................30

*Montana v. United States*, 440 U.S. 147 (1979) .....................................................................17

*Moore v. Hartman*, 571 F.3d 62 (D.C. Cir. 2009) ................................................................1

*NAACP v. Claiborn*, 458 U.S. 886 (1982) ..........................................................................13

*New Hampshire v. Maine*, 532 U.S. 742 (2001)....................................................................7

*Otherson v. Dep't of Justice*, 711 F.2d 267 (D.C. Cir. 1983) ...............................................17, 24

*Taylor v. Sturgell*, 553 U.S. 880 (2008)...............................................................................7

*Tao v. Freeh*, 27 F.3d 635 (D.C. Cir. 1994)........................................................................17

*Timbs v. Indiana*, 586 U.S. 146 (2019)................................................................................9

*United States v. Anthony*, 25 F.4th 792 (10th Cir. 2022).....................................................7, 8

*United States v. Arutunoff*, 1 F.3d 1112 (10th Cir. 1993).....................................................8

*United States v. Delano*, 981 F.3d 1136 (10th Cir. 2020) ....................................................8

*United States v. Fournier*, Case No. 1:24-cr-00081-JEB, Document 29 Filed 07/24/24 ......7

*United States v. Hudson*, 483 F.3d 707 (10th Cir. 2007)......................................................8

*United States v. Lemon*, 723 F.2d 922 (D.C. Cir. 1983)........................................................13

*United States v. Premises Known as RR No. 1 Box 224, Dalton, Scott Tp. And North Abington Tp., Lackawanna County, PA*, 14 F.3d 864 (3d Cir. 1994) .....................................................18

*United States v. Todd* at 2, 1:22-cr-00166-BAH (July 01, 2024), ECF 238.........................6

*United States v. U.S. Currency in the Amount of $119,984*, 304 F.3d 165 (2d Cir. 2002) .....30

## Court Filings

*Conrad Smith et al. v. Donald J. Trump et al.*, Amended Complaint (Dec. 3, 2021) (ECF No. 089), ¶ 2 ........................................................................................................................22, 23, .........................................................................................................................................29

*District of Columbia v. Proud Boys International, LLC, et al.*, Amended Complaint, (Apr. 1, 2022) (ECF No. 094), ¶¶ 441-445, 457.............................................................................20, 29

Judge Mehta's Memorandum Opinion and Order at 14-15, *District of Columbia v. Proud Boys International LLC et al.*, No. 1:21-cv-03267 (D.C. Cir. March 31, 2023), ECF No. 171.....1-2

Smith Plaintiffs' Motion for Partial Summary Judgment and Plaintiff District of Columbia's Motion for Partial Summary Judgment, at 3-4 (July 19, 2024) (*Smith*, ECF No. 306) (District of Columbia, ECF No. 323) ...............................................................................................14, 15, ......................................................................................................................................19, 26

*United States v. Rhodes*, 1:22-cr-00015-APM (D.D.C), Trial Tr., at 9974:17-20, 9975:4-12 (Nov. 18, 2022) ........................................................................................................................16, 26

**Rules**

Fed. R. Civ. P. 13.........................................................................................................................4

Fed. R. Civ. P. 56(a) ..................................................................................................................17

**Secondary Sources**

18B Fed. Prac. & Proc. Juris. § 4474 (3d ed.) (June 2024) (Wright & Miller) .....................21, 22

*Precluding Defendants from Relitigating Sentencing Findings in Subsequent Civil Suits*, 101 Colum. L. Rev. 128 (Jan. 2001)................................................................................................31

**Miscellaneous Citations**

https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building ..............16

United States Department of Justice, 30 Months Since the Jan. 6 Attack on the Capitol, https://www.justice.gov/usao-dc/30-months-jan-6-attack-capitol ........................................16

COMES NOW, Defendants Brian Ulrich, Elmer Stewart Rhodes, III, Roberto A. Minuta, Edward Vallejo, Kelly Meggs, Kenneth Harrelson, Jessica Watkins, and David Moerschel, and respectfully oppose Plaintiff's Motion for Summary Judgment. Pursuant to this Court's order entered on June 25, 2024, these Defendants file this memorandum jointly as the defendants represented by counsel who were indicted in *United States v. Rhodes*, 21-cr-00015-APM. [1]

**STANDARD**

For a motion for summary judgment, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If material facts are in dispute or undisputed facts "are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).

"When moving for summary judgment, [the moving party] bear[s] the substantial burden of demonstrating there is no issue of material fact." Id. When there are "doubts about the applicability of issue preclusion [they] should generally be resolved against" application of issue preclusion. *Han v. Fin. Supervisory Serv.,* 2019 U.S. Dist. LEXIS 242791 *42 (D.D.C. 2019).

**DEFENDANT BRIAN ULRICH'S MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Brian Ulrich hereby consents to the Partial Motion for Summary Judgment based on his plea of guilty to Count 1 Seditious Conspiracy in violation of 18 U.S.C. § 2384 and Count 3 Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2) and the "Statement of Offense" as agreed to by Defendant Brian Ulrich and the United States, as to the claim of a civil conspiracy "as to which acts of assault, battery, and intentional infliction of emotion

---

[1] Due to the unique nature of his conviction and the posture of this case, Defendant Kelly Meggs only joins the portion of this filing under the heading, "UNITED STATES V. RHODES DEFENDANTS' OPPOSITION TO SMITH PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF DISTRICT OF COLUMBIA'S MOTION FOR PARTIAL SUMMARY JUDGMENT", *infra*, pp. 12-33.

distress, even if not directly committed by individual Defendants, were foreseeable consequences of the alleged scheme." Judge Mehta's Memorandum Opinion and Order at 14-15, District of Columbia v. Proud Boys International LLC et al., No. 1:21-cv-03267 (D.D.C. March 31, 2023), ECF No. 171.

In doing so Defendant Brian Ulrich points out that he did not have any intention prior to January 6, 2021 to even go to the U.S. Capitol, nor as pointed out by the Assistant United States Attorney in Defendant Brian Ulrich's plea, any intention to harm anyone that day, nor "directly committed" any "acts of assault, battery, and intentional infliction of emotional distress." Id. In fact, Defendant Brian Ulrich assisted law enforcement officers in leaving the U.S. Capitol.

Therefore, as noted above Defendant Brian Ulrich consents to the Partial Motion for Summary Judgment as to a civil conspiracy and that as a result the "acts of assault, battery and intentional infliction of emotion distress, even if not directly committed by individual defendants, were foreseeable consequences of the alleged scheme." Id.

In so doing Defendant Brian Ulrich does not waive any other defense he has or may have including, but not limited to, damages, set-off, the Professional Rescuers Doctrine or any other defenses, and joins in the Defendants Minuta and Vallejo's Rule 13 Counterclaim for Summary Judgment and Rule 13(c) Counterclaim Exceeding Opposing Claim and Defendant Rehl's Memorandum of Law in Opposing to Plaintiff's Motion for Partial Summary Judgment.

**DEFENDANTS RHODES, MINUTA, VALLEJO, RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT, AND RULE 13 COUNTERCLAIM
FOR SUMMARY JUDGMENT AND RULE 13(c) COUNTERCLAIM EXCEEDING
OPPOSING CLAIM**

## A. INTRODUCTION

Defendants Rhodes, Minuta, and Vallejo, (collectively, the "John Pierce Law Defendants" or "JPL Defendants"), and any others who may join, hereby respond and oppose the Plaintiffs' motion. Each of these defendants are destitute; and most are serving lengthy prison terms.

These defendants did *not* conspire "to commit acts of violence and attack the United States Congress on January 6, 2021 . . . with the express purpose of preventing members of Congress and then Vice President Michael Pence from discharging their official constitutional duties and declaring Joseph Biden the winner of the 2020 Presidential Election," as described in the *D.C. v. Proud Boys International* complaint. Nor did any of defendant's criminal trials or convictions find the defendants did so. Although these defendants were (wrongly) convicted of one or more conspiracies, the conspiracies they were convicted of were not the same as the conspiracy alleged in these civil cases.

Nor did these defendants engage in the behavior described in the civil complaints in this/these civil cases. Further,

- These defendants are <u>currently appealing</u> the very convictions at issue in Plaintiffs' Motion for Partial Summary Judgment. These appeals focus on, inter alia, the very findings of fact which are central to Plaintiffs' Motion.

- The Supreme Court, in *Fischer v. United States*, recently invalidated criminal liability for the defendants for the crime of "obstructing an official proceeding" by demonstrating, occupying the Capitol, causing a recess of Congress, or 'storming' the Capitol in the manner of January 6.

- The conduct alleged in the Plaintiffs' complaint(s) is, for the most part, conduct protected under the First Amendment.

For all of these reasons, summary judgment on behalf of the Plaintiffs is inappropriate.

But to the extent that the plaintiffs assert any valid claims, each and every one of those claims is precluded by doctrines of *res judicata*, *laches*, *issue preclusion*, *collateral estoppel*, and *offset* with regard to damages. This is because all damages and losses described in Plaintiffs' complaints are both (1) well documented and accounted for; and (2) already compensated **(and overcompensated).**

**Defendants Minuta and Vallejo's Specific Response.**

Plaintiff's Statement of Facts supporting Plaintiffs' motion, at page 8 paragraph 17, makes various statements specific to Minuta and Vallejo. "On January 23, 2023, "Defendant Minuta, Moerschel, and Vallejo were convicted" of Conspiracy to Prevent an Officer from Discharging Any Duties (18 U.S.C. § 372).

However, the conspiracy alleged in the criminal trial was different from the conspiracy alleged in this civil case.

**B. RULE 13 COUNTERCLAIM FOR SUMMARY JUDGMENT AND RULE 13(c) COUNTERCLAIM EXCEEDING OPPOSING CLAIM**

**Plaintiffs in federal court are not entitled to repeatedly draw the same blood over and over again.**

**These defendants also assert a counterclaim for summary judgment pursuant to Rule 13, and a counterclaim exceeding opposing claim pursuant to Rule 13(c).**

1. All Plaintiffs with any valid claims have been made whole by Acts of Congress which already *explicitly* made the Plaintiffs whole regarding all harms from January 6. An

Act of Congress, Public Law 117-31, 135 Stat. 309 (July 30, 2021) compensated the District of Columbia, all the police agencies involved with *funds which were explicitly designated* to resolve and compensate for all losses and damages from January 6.

2. Specifically, the Act provided "$66.760 million for the District of Columbia for unanticipated costs associated with the January 6th Capitol insurrection and other security requirements."

3. Further the Act provided **Mutual Aid Reimbursements** of $35,396,000 until September 30, 2026, for *reimbursements for mutual aid* and related training, including mutual aid and training provided under the agreements described in section 7302 of Public Law 108–458:

> Provided, That of such amount, up to $9,096,000 is available to be used for reimbursement to the United States Capitol Police's primary local law enforcement partners for mutual aid provided in response to the events of January 6, 2021:

4. The Act established the District of Columbia Emergency Planning and Security Fund, which provided "$66.8 million for *reimbursement* to the District of Columbia for costs incurred in their response to the January 6 insurrection and other costs of providing security related to the federal presence in the District. Specifically, **the Capitol Police were provided** with $43.9 million for the Capitol Police response to the January 6 insurrection, including:

> ▪ $31.1 million for Salaries to backfill overtime expected until the Capitol Police can hire, train, and deploy more officers and benefits to retain current officers, including $6.9 million for hazard pay; $3.6 million for retention bonuses; and $2.5 million for tuition credits to help with retention. . .
> ▪ $3.32 million for the Intelligence Division for human and technical resources

▪ $5.048 million for Equipment and Services, including $2.716 million for reimbursement for equipment since the January 6 insurrection; $1.332 million for gas masks, tactical vests, body armor, and other equipment; $900,000 for cellular phone capability; and $100,000 for legal services. . .

▪ $4.411 million for Wellness and Trauma Support, including 6 new mental health counselors and wellness resilience specialists and 2.5 million to reimburse for U.S. Marshals Service for trauma support $40 million to backfill accounts that were used by the Architect to pay for costs directly related to the January 6 insurrection.

$5.5 million for the costs of FBI activities in response to the January 6 insurrection. $1.4 million to the National Park Service for overtime costs and resource damages that occurred while responding to the January 6 insurrection. $1 million for the costs of U.S. Marshals Service activities in response to the January 6 insurrection.

Office of Employee Assistance - $500,800 for additional trauma counselors and support for the Office of Employee Assistance.

**Unjust Enrichment requires disgorgement of all monies received by Plaintiffs in excess of their losses.**

Note that all these payments are far higher than the known stated damages of all agencies, officers, and victims of January 6 combined. For this reason, Defendants assert a counterclaim under Rule 13(c) for disbursement, return and disgorgement of all unjust enrichment by the Plaintiffs in this case.

**Further, DC, the Capitol, and Metro Police have already been fully reimbursed, but federal judges continue issuing restitution orders with the *stated aim of reimbursing* (yet again) DC, the Architect of the Capitol, and the Police Agencies.**

Although DC and the Capitol Police *have already been fully reimbursed* for all harms stemming from January 6, federal judges continue to impose restitution from J6 criminal defendants (including the defendants in this case) to *reimburse the plaintiffs a second time*. The United States has generally sought $2,000 in restitution from felony defendants and $500 from misdemeanor defendants. According to the Department of Justice, "[t]hese numbers are based on

an estimate of the damage to the Capitol and compensable expenses to injured USCP officers divided by the estimated number of felony and misdemeanor defendants prosecuted for the January 6 events." "Government's Submission Regarding Restitution," *United States v. Todd* at 2, 1:22-cr-00166-BAH (July 01, 2024), ECF 238.

The following is from a footnote in the government's recent sentencing memorandum in *United States v. Fournier*:

> 1 As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was **$2,923,080.05.** That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

Case No. 1:24-cr-00081-JEB, Document 29 Filed 07/24/24.

## C. RES JUDICATA, COLLATERAL ESTOPPEL, ISSUE PRECLUSION, and OFFSET PREVENT ANY FURTHER ENRICHMENT BY PLAINTIFFS IN THIS CASE.

**Plaintiffs in federal court are not entitled to repeatedly draw the same blood over and over again.**

Each of the 'criminal defendant' defendants in this case has already been ordered to pay restitution for all damages relating to January 6.

"Res judicata" refers to doctrines and principles which bar "successive litigation of the very same claim" by the very same parties, *see New Hampshire v. Maine*, 532 U.S. 742, 748 (2001), or "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (emphasis added) (quoting *New Hampshire*, 532 U.S. at 748-49). Here, the damages and losses

claimed by Plaintiffs have already been fully litigated in the restitution orders imposed on hundreds of January 6 defendants.

**Restitution is mandatory as part of a sentence where a victim claims losses.**

The plain language of the restitution statutes direct courts to order restitution "when sentencing a defendant." *United States v. Anthony*, 25 F.4th 792 (10th Cir. 2022); 18 U.S.C. § 3663(a)(1)(A); 18 U.S.C. § 3663A(a)(1); see also 18 U.S.C. § 3556 ("The court, in imposing a sentence on a defendant who has been found guilty of an offense *shall* order restitution[.]") (emphasis added). "Taken as a whole, these statutes indicate that a criminal sentence includes restitution." *United States v. Anthony*, 25 F.4th at 796-97.

The Supreme Court has consistently treated restitution as a mandatory component of the criminal sentence. In *Manrique v. United States*, for instance, the majority opinion begins with the following explanation: "Sentencing courts are <u>required to impose restitution</u> as part of the sentence for specified crimes." 581 U.S. 116, 137 (2017) (emphasis added).[2]

Moreover, courts have repeatedly held that an order imposing a restitution amount greater than the total loss caused by the defendant constitutes an "illegal sentence." *United States v. Hudson*, 483 F.3d 707, 710 (10th Cir. 2007) (quoting *United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir. 1993)); *see also United States v. Delano*, 981 F.3d 1136, 1137 (10th Cir. 2020). It is axiomatic that restitution amounts raised in hundreds of January 6 criminal cases totaling millions of dollars must be recognized as res judicata, and an offset, to the Plaintiffs' claims in this case.

**The Eighth Amendment Also Precludes Plaintiffs' Recovery in this Lawsuit.**

---

[2] Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in any Federal civil proceeding. 18 U.S.C.S. § 3664(j)(2).

If all these plaintiffs have already recovered all their costs and damages stemming from January 6, what then can be accomplished in this lawsuit? The Eighth Amendment forbids excessive fines and punishments.

The Eighth Amendment's "protection against excessive fines guards against abuses of government's punitive or criminal-law-enforcement authority," and applies to civil and criminal penalties alike. *Timbs v. Indiana*, 586 U.S. 146, 148 (2019); see also *Austin v. United States*, 509 U.S. 602, 610 (1993). Under *Austin*, because "'[t]he notion of punishment … cuts across the division between the civil and the criminal law,'" a monetary sanction that cannot "'fairly be said solely to serve a remedial purpose'" will be subject to scrutiny as an Eighth Amendment fine if it "can only be explained as serving in part to punish."

### D. CONCLUSION

For all of the foregoing reasons, the Plaintiffs' claims in these cases cannot continue, let alone prevail. All plaintiffs have previously been made totally whole <u>at least twice</u>. All criminal defendant plaintiffs have already either paid or been adjudicated to pay restitution in amounts specifically pegged and tethered to the very claims made by the plaintiffs in this case.

These previous entries of payments, both by an Act of Congress and by restitution orders, must be recognized as offsets which encompass, cover, *and surpass* any monies or other damages claimed by Plaintiffs. The dollar amounts have already been accounted for and litigated in adversarial proceedings, with federal judges entering judgment in the amounts. Thus, the Plaintiffs' claims cannot continue due to doctrines of res judicata, collateral estoppel, issue preclusion and claim preclusion, and lack of standing. Further, the relief sought by Plaintiffs would violate the Eighth Amendment's prohibition of excessive fines.

## DEFENDANT DAVID MOERSCHEL'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

David Moerschel, *pro se*, adopts and joins the arguments presented by the Defense herein and sets forth this response to the Plaintiff's motion for partial summary judgment against him.

### A.  Recitation of Plaintiff's Argument

The Plaintiffs present the laws forming the Legal Standard for issue preclusion. This legal standard states that for Defendants to be collaterally estopped, "the issue of fact or law [must be] actually litigated and resolved in a valid court" (p. 10). The Plaintiffs contend that the present Defendants are collaterally estopped because the "elements, issues, and facts have been litigated and decided in a criminal proceeding" (p. 11).

The Plaintiff's argument explicitly hinges (see p. 2) on the fact that assault, battery, and IIED were "the foreseeable result and consequence of the same conspiracy for which the District Convicted Defendants have been criminally convicted".

Furthermore, the Plaintiff's state "this court has held that 'the alleged acts of assault, battery, and IIED were reasonably foreseeable consequences of the scheme...even if they themselves did not carry out these acts'" (p. 19-20). Therefore, the Plaintiff's contend, the Defendants are collaterally estopped.

### B.  Moerschel's Response

The Plaintiff's own filing proves David Moerschel's claim that he is not collaterally estopped. As to the Legal Standard the Plaintiffs present, David Moerschel contends that the criminal trial revolved around various conspiracies to prevent the certification of the 2020 election. Nowhere were the facts, now at issue in the present civil litigation, of conspiracy to commit assault, battery, and intentional infliction of emotional distress (IIED) litigated – else it would have been cited in the Plaintiff's motion. In fact, the Plaintiff's motion is wholly silent on facts regarding any

conspiracy to assault, batter, or inflict emotional distress. The Plaintiff only cites those facts related to the conspiracy to prevent the certification of the election and the guilty pleas of 2 co-defendants in the civil action with whom Moerschel had no association whatsoever. Thus, Moerschel is not collaterally estopped, because the facts of conspiracy to commit assault, battery, and intentional infliction of emotional distress (IIED) were never litigated.

Furthermore, the Plaintiff's cite a prior case, "A criminal conviction is conclusive proof and operates as an estoppel on the defendants as to the facts supporting the conviction in a subsequent civil action" (p. 12). The facts surrounding a conviction of conspiring to assault, battery, or IIED are much different than the facts that were actually litigated to secure a conviction of conspiring to prevent an officer from discharging his duty. Moerschel contends that the facts presented in the criminal case are not the same facts as would be required to prove a conspiracy to commit assault, battery, or IIED. Therefore, Moerschel is not collaterally estopped.

As noted in the recitation, the Plaintiffs cite filings stating that the Court has already declared "the alleged acts of assault, battery, and IIED were reasonably foreseeable consequences of the scheme...even if they themselves did not carry out these acts." They cite ECF 145 and 55 as their source of this declaration in their motion. However, the ECFs of the present case do not contain this reference. The Plaintiffs were asked by email on 7/31/2024 to provide the correct case for their citation. However, they never responded to this request. There must be professional accountability. Therefore, David Moerschel requests the Court to ignore this assertion, as the Plaintiffs failed to substantiate their claim.

Even if this unsubstantiated claim was legitimate, it would still not be decisive. As the Plaintiffs stated on page 11, the elements, issues, and facts must be litigated and decided in a criminal proceeding. This prerequisite threshold has not been met. The facts of conspiring to cause

assault, battery, and IIED were not litigated in (at a minimum) the trial to which David Moerschel was subjected.

The Oath Keeper indictment, in which Moerschel was named, did not include charges for conspiring to assault, battery, or IIED. No Oath Keeper was charged with any of the above or plead guilty to it. Therefore, it is impossible for facts pertaining to conspiring to assault, battery, or IIED to be litigated in the criminal trial. And therefore, it is not subject to issue preclusion. Therefore, Moerschel is not collaterally estopped.

**UNITED STATES V. RHODES DEFENDANTS' OPPOSITION TO SMITH PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF DISTRICT OF**
**COLUMBIA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants Kelly Meggs, Kenneth Harrelson, Roberto Minuta, David Moerschel, Elmer Stewart Rhodes III, Brian Ulrich, Edward Vallejo, and Jessica Watkins (together, "Rhodes Defendants") respectfully file this in opposition to the Consolidated Motion for Partial Summary Judgment filed by Conrad Smith, Byron Evans, Danny McElroy, Governor Latson, Jason DeRoche, Melissa Marshall, Michael Fortune, and Reginald Cleveland (together, "Smith Plaintiffs") and by the District of Columbia (together with Smith Plaintiffs, "the Plaintiffs") on July 19, 2024. For the reasons contained herein, the Rhodes Defendants respectfully request that this Court deny the Plaintiffs consolidated motion for summary judgment.

## I.    Introduction

The Plaintiffs' consolidated motion for summary judgment proves to be a concerning evolution on the national theme surrounding the events of January 6, 2021: that every single individual present that day are equally culpable and responsible for the most heinous crimes committed that day. Regardless of any person's actual actions that day, public sentiment has decided that they are all guilty for every single action taken on a "guilt by association" theory.

Make no mistake, the Rhodes Defendants will admit that the violent events that occurred on January 6, 2021 are abhorrent. The Rhodes Defendants will have their presence and involvement in that day's events following them for the rest of their lives. However, the participants of January 6, 2021, are not a monolith: while those present that day may have shared many viewpoints, home states, or even memberships in certain groups, the most violent actors were those entirely unrelated to the Rhodes Defendants, or to any defendants named in this action. The court of public opinion may allow for everyday discourse dictated based upon a theory of "guilt by association", but the judicial branch explicitly does not allow for such a theory of guilt to support proceedings in court. *See e.g. United States v. Lemon*, 723 F.2d 922, 941 (D.C. Cir. 1983) (overturning a defendant's sentence for charges of interstate transport of stolen security, where the severity of the sentence was based upon, "an attempt to establish guilt by association through an accumulation of uncorroborated suspicions[]" that the defendant was the member of a controversial group with a pattern of engaging in similar crimes). *See also NAACP v. Claiborn*, 458 U.S. 886, 908 (1982) ("The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected.").

Plaintiffs proudly seek to advance an underlying "guilt by association" theory in this case. They also seek, armed with a legal principle that has been described as "detailed, difficult, and potentially dangerous[]" *Jack Faucett Associates, Inc. v. American Telephone and Telegraph Co.*, 744 F.2d 118 124 (D.C. Cir. 1984), for this Court to significantly hamstring the rights and defenses of the many defendants subject to the Plaintiffs' consolidated motion on the basis of their "guilt by association" theory. The Plaintiffs seek this Court to broadly relieve them of their burden in this case.

In their respective Complaints, each of the Plaintiffs have alleged a broad conspiracy: they allege that former-President Donald Trump, the Proud Boys, the Oath Keepers, and the Three Percenters entered into an explicit agreement to stop the certification of the 2020 Presidential Election, and that this agreement explicitly involved an understanding that they should use force to put down even the slightest attempt to stop that conspiracy. However, none of the Rhodes Defendants had anything remotely similar introduced to their respective juries in their respective criminal prosecutions. The Plaintiffs seek to dance around this issue, noting only in their Consolidated Motion that each defendant subject to the motion, "was convicted. . . to [*sic*] crimes related to the [January 6, 2021] Attack." *See* Smith Plaintiffs' Motion for Partial Summary Judgment and Plaintiff District of Columbia's Motion for Partial Summary Judgment, at 3-4 (July 19, 2024) (*Smith*, ECF No. 306) (District of Columbia, ECF No. 323) (hereinafter, "Plaintiffs' Consolidated Motion"). Despite the acknowledgment that each defendant in this action was convicted for their own unique involvement in that day, the Plaintiffs' broadly assert that these unique criminal proceedings are so similar that they each establish that every single defendant subject to their motion is now equally culpable for every single injury alleged by the Plaintiffs in their respective complaints, regardless of the facts actually proven at each criminal trial. *See e.g. id.*, at 17 ("That verdict 'is conclusive pro[of] and operates as an estoppel on the Defendants' from denying they entered into that conspiracy [that Plaintiffs allege harmed the Smith Plaintiffs].") (internal citations omitted). *See also id.*, at 19-20 ("Notably, the District has shown that the District Convicted Defendants equipped themselves with weapons and armor, knew that the Capitol complex was closed to the public and guarded by police, and asserted that 'cops are the primary threat[]' . . . [t]herefore, the Court should enter partial summary judgment for the District, and the District Convicted Defendants should be collaterally estopped from contesting that they entered

into an unlawful conspiracy in a violent effort to prevent the certification of the 2020 presidential election."). As shown herein, the conspiracies alleged in this civil action are far broader than what the juries were required to find in any of the Rhodes Defendants criminal cases, if not broader than *all* criminal convictions arising out of January 6, 2021.

Though it is true that the Rhodes Defendants faced with long sentences because of their criminal indictments and that those who went to trial were incentivized to vigorously litigate against such convictions, no aspect of their criminal proceedings would have prepared the Defendants to fight against every possible claim that could possibly be made by every single person that was harmed that day. None of the Rhodes Defendants were charged with themselves injuring or even encountering any of the Plaintiffs in either of these matters, a point which the Plaintiffs in their respective complaints simply try to wave away. The Plainitffs essentially assert that someone harmed them, so why not hold the Defendants named in the Complaint liable?

For the Rhodes Defendants, Plaintiffs are a remote class of individuals. Plaintiffs do not even allege that they encountered any of the Rhodes Defendants on January 6, 2021. From a simple fundamental fairness standpoint, this Court cannot grant the Plaintiffs' motion. This Court would need to find that the Rhodes Defendants definitively litigated in their respective convictions every single criminal action engaged in by every single individual with no relation to the Rhodes Defendants present on every single inch of the Capitol Building's two-hundred and seventy-four (274) acre plot of land; even diluting such a theory to every individual present within the Capitol Building's sixteen and a half (16-1/2) acres of floor space demonstrates the absurdity of the Plaintiffs' Consolidated Motion.[3] Fundamental fairness dictates, at the very least, that unrelated facts to support each of the Rhodes Defendants' convictions cannot serve to broadly preclude a

---

[3] https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building.

party from later disputing their liability relating to the actions of one of the more than one thousand (1,000) other individuals present at the Capitol on January 6, 2021.[4]

Yes, the Rhodes Defendants named were charged and convicted with participation in some conspiracy relating to the events of January 6, 2021. However, the proof of membership in an overarching conspiracy was something that, in the words of the government, was not a requirement to convict these defendants. *See e.g. United States v. Rhodes*, 1:22-cr-00015-APM (D.D.C), Trial Tr., at 9974:17-20 ("Ms. Rakoczy: As the Judge instructed you, the government's proof in this case does not need to establish that the conspiracy began or ended at a particular date."), 9975:4-12 ("Ms. Rakoczy: It's also important to think about what the Judge instructed you yesterday, that the defendants each don't have to have joined the conspiracy at the very outset of the conspiracy. Defendants can join a conspiracy at different times.") (Nov. 18, 2022). Other than the jurors themselves, no one could possibly know the exact parameters of the conspiracy for which the jury convicted the Rhodes Defendants. The ultimate requirement for this use of offensive collateral estoppel based upon a criminal conviction is that the facts sought to be precluded match, rather than exceed, what was proven to support the conviction. The Plaintiffs bear the burden for demonstrating that perfect match, and they have failed to do so. As stated herein, the conspiracy as alleged by the Plaintiffs is significantly more expansive than what was proven in each respective criminal trial against the Rhodes Defendants. For that reason, the Plaintiffs are not owed partial summary judgment based upon the criminal convictions of the Rhodes Defendants.

---

[4] *See* United States Department of Justice, 30 Months Since the Jan. 6 Attack on the Capitol, https://www.justice.gov/usao-dc/30-months-jan-6-attack-capitol ("Arrests made: More than 1,069 defendants have been charged in nearly all 50 states and the District of Columbia.").

## II.    Legal Standard

Summary judgment is granted, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Eddington v. United States DOD*, 35 F.4th 833, 836 (D.C. Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). When considering a motion for summary judgment, the Court, "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Eddington*, 35 F.4th at 836 (quoting *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994)).

A party can be barred from relitigating an issue on the theory of collateral estoppel (also known as "issue preclusion") if three conditions are met: "First, the issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court. . . Second, the issue must have been actually and necessarily decided by a court of competent jurisdiction in the first trial. . . [and] [t]hird, preclusion in the second trial must not work an unfairness." *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (internal citations omitted) (citing *Cromwell v. County of Sac*, 94 U.S. 351 (1877)) (also citing *Montana v. United States*, 440 U.S. 147 (1979)). Offensive non-mutual collateral estoppel occurs when, "a defendant [is] prevented from relitigating identical issues that the defendant litigated and lost against another plaintiff." *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp. 3d 11, 23 (D.D.C. 2023) (quoting *Hurst v. Socialist People's Libyam Arab Jamahiriya*, 474 F. Supp. 2d 19, 31 (D.D.C. 2007)). "The doctrine is detailed, difficult, and potentially dangerous, and [w]here offensive estoppel is involved, the element of 'fairness' gains special importance." *Amaplat Mauritius Ltd.*, 663 F. Supp. 3d at 23 (quoting *Jack Faucett Associates, Inc. v. American Telephone and Telegraph Co.*, 744 F.2d 118 124-25 (D.C. Cir. 1984)).

A criminal conviction can be given preclusive effect in a civil matter if the facts raised in the civil case are the same as those which establish a criminal conviction. *See e.g. Bushrod v. D.C.*, 521 F. Supp. 3d 1, 12 (D.D.C. 2021) ("A criminal conviction is conclusive proof and operates as an estoppel on [a] defendant[] *as to the facts supporting the conviction in a subsequent civil action*.") (emphasis added) (quoting *Hinton v. Shaw Pittman Potts & Towbridge*, 257 F. Supp. 2d 96, 100 (D.D.C. 2003)). *See also Cumis Ins. Soc'y Inc. v. Clark*, 318 F. Supp. 3d 199, 216 (D.D.C. 2018) ("It logically follows that, where a civil complaint alleges conduct beyond that for which the defendant was convicted in an earlier criminal case, a plaintiff is not entitled to summary judgment on grounds of collateral estoppel alone.").

Some jurisdictions have been hesitant to afford criminal convictions preclusive effect in later civil cases. *See e.g. Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) ("In Virginia, the settled rule is that a judgment of conviction or acquittal in a criminal prosecution does not establish in a subsequent civil action the truth of the facts on which it was rendered. . . unless the civil plaintiff seeks to recover damages from his/her own wrong in a case such as arson.") (internal citations omitted). *See also e.g. United States v. Premises Known as RR No. 1 Box 224, Dalton, Scott Tp. And North Abington Tp., Lackawanna County, PA*, 14 F.3d 864, 871-72 (3d Cir. 1994) (in a civil forfeiture case, denying government's motion to use property owner's drug trafficking conviction to seize property, noting, "[i]n reaching its decision to convict [defendant], jury did not necessarily decide where the illegal cocaine distribution occurred[, because t]he location of the drug sale was not a critical and necessary part of the judgment and the issue was not necessarily decided by the [trial] court." (internal citation and quotation marks omitted)).

### III.   Argument

The Court should deny the Plaintiffs' partial motion for summary judgment against the defendants, as there exist genuine disputes of material and the Plaintiffs are not owed judgment as a matter of law.

### a.   There are Genuine Disputes of Material Fact

In order for the movant to receive summary judgment, the Court must first find that the movant has demonstrated that there exists no genuine dispute of material facts. *See Eddington v. United States DOD*, 35 F.4th 833, 836 (D.C. Cir. 2022). All inferences are made in favor of the nonmovant, in this case the Rhodes Defendants. *Id.* Here, there exist many genuine disputes of material fact and the Court should deny the Plaintiffs' Consolidated Motion on that ground alone.

The Plaintiffs' base their motion primarily on the allegation that the Defendants, "have all been convicted of violations of 18 U.S.C. § 372 for conspiring to prevent members of Congress and/or federal law enforcement from carrying out their duties related to the certification of the 2020 presidential election." Plaintiffs' Consolidated Motion, at 7. However, the Plaintiffs attempt to take this a step further by stating that the jury's findings exclusive to members of congress could also apply to the Plaintiffs. *Id.*, at 5 ("Plaintiffs allege that the [Rhodes] Defendants conspired to prevent members of Congress and/or United States Capitol Police officers from discharging their duties in connection with the certification of the 2020 presidential election and to induce members of Congress and/or United States Capitol Police officers to leave the place where their duties were required to be performed— the same conspiracy for which [Rhodes] Defendants were found guilty beyond a reasonable doubt."). The Court need not look further than the Rhodes Defendants' respective jury sheets. *See* Plaintiffs' Consolidated Motion, Exhibit 3, at 4-6 ("Count Four: Conspiracy to *Prevent Members of Congress from Discharging Their Duties*. . .") (emphasis

added). Whether the jury found that the Rhodes Defendants conspired to prevent anyone other than members of congress is a genuine dispute of material fact which should preclude this Court from granting summary judgment for the Plaintiffs.

Further, the District of Columbia's motion notes that they intend to preclude the Rhodes' Defendants from arguing against the fact that they joined common law conspiracies to commit assault, battery, and intentional infliction of emotional distress. However, the jury convicted the Rhodes Defendants without making any finding that the Rhodes Defendants engaged in any violence, or finding that the Rhodes Defendants joined a conspiracy with the ulterior motive of committing violence. Whether the Rhodes Defendants were convicted of engaging in violence, or joining a conspiracy to commit violence, is a genuine dispute of material facts that prevents the District of Columbia from being granted summary judgment.

Further still, the District of Columbia's claims were in no way a foreseeable consequence of the Rhodes Defendants joining any conspiracy relating to the Capitol on January 6, 2021, as the officers that the District files on behalf of are officers of the Metropolitan Police Department, the Congressional building is a federal building usually staffed by Capitol Police and other officials from the federal government, and the District themselves concede that the deployment of Metropolitan Police to the Capitol was unprecedented. *See also District of Columbia v. Proud Boys International, LLC, et al.*, Amended Complaint, (Apr. 1, 2022) (ECF No. 094), ¶¶ 441-445, 457 ("The measures taken by MPD and others to prepare for January 6th were unprecedented: never before had the certification of an election required such significant allocation of law enforcement resources. . . the Capitol Police quickly discovered that they could not defend the Capitol alone. Accordingly, at 12:58 p.m. on January 6th, the Chief of the Capitol Police asked for MPD's

Page 20 of 38

assistance at the Capitol. . . The Defendants' actions necessitated an unprecedented deployment of MPD resources.").

### b.  Plaintiffs are Not Owed Judgment as a Matter of Law

The Plaintiffs premise their theory of the relief they seek through this motion on offensive collateral estoppel. This creates many issues which the Court should use as the basis for denying the relief requested by the Plaintiffs. First, the facts were not "actually litigated" as required to establish collateral estoppel, as none of the defendants' convictions were supported by the facts specific to the claims in this matter as alleged in either of the Plaintiffs' operative complaints.

Next, the Plaintiffs' broad attempt to use collateral estoppel creates issues of fundamental fairness which impede the rights of the defendants in this matter, and Court's when faced with broad attempts to use offensive collateral estoppel must factor in the elements of fairness when determining whether to grant such a motion.

Although historically, nonmutual issue preclusion following a criminal conviction had been disfavored, the Rhodes Defendants admit (as they must) that in this Circuit its usage has been permitted in the proper circumstances. *See e.g. Bushrod v. D.C.*, 521 F. Supp. 3d 1, 12 (D.D.C. 2021) ("A criminal conviction is conclusive proof and operates as an estoppel on [a] defendant[] *as to the facts supporting the conviction in a subsequent civil action*.") (emphasis added) (quoting *Hinton v. Shaw Pittman Potts & Towbridge*, 257 F. Supp. 2d 96, 100 (D.D.C. 2003)). However, "nonmutual use of criminal findings in civil litigation requires extra care." 18B Fed. Prac. & Proc. Juris. § 4474 (3d ed.) (June 2024) (Wright & Miller). It has been observed that, "[a]t a minimum, a clear showing must be made that the common issues were in fact resolved by the criminal judgment [and] [p]reclusion is defeated by the failure to make this showing." *Id.* "In addition, the

differences between criminal and civil procedure that suggest that special attention must be paid to the opportunity that there have been a full-and-fair opportunity to litigate the issues." *Id.*

     i.   *The Facts at Issue in the Complaint Were Not Actually Litigated as Part of Any of the Defendants' Criminal Convictions*

The operative Complaints in this case allege a specific, broad conspiracy that the Plaintiffs bear the burden of proving: a conspiracy that involved former-President Donald J. Trump, his administration, the Proud Boys, the Oath Keepers, and the Three Percenters with a coordinated goal to stop the certification of the 2020 Presidential Election, and to do so by force if that proved necessary; the operative Complaints also allege specific violent conduct perpetrated by the Defendants as a result of the broad conspiracy alleged in the operative Complaints. *See e.g. Conrad Smith et al. v. Donald J. Trump et al.*, Amended Complaint (Dec. 3, 2021) (ECF No. 089), ¶ 2 ("After Defendant Donald J. Trump lost the November 2020 Presidential election, he and the other Defendants in this case conspired with each other and others to prevent Congress from certifying the election results through use of force, intimidation, and threats."), ¶ 86 ("[Roger] Stone, a friend and advisor to Trump, also worked to promote and fundraise for the January 6 event, including by coordinating with Oath Keepers for [K.] Meggs. . . and other members to once again provide Stone with security on January 5 and 6[.]"). ¶ 100 ("Members of Proud Boys, Oath Keepers, and the Three Percenters also coordinated to plan the attack."); ¶ 102 ("[K.] Meggs assured others that Oath Keepers would have at least 50 to 100 members present on January 6, and that he had 'made contact' with Proud Boys, who he said always had a big group, calling it a 'Force multiplier.'"); ¶ 170 ("The acts and circumstances of this Complaint establishes that Defendants conspired with each other and others to accomplished the objectives detailed in this Complaint, including through the following agreements: a.) Trump agreed with. . . Oath Keepers, Rhodes, Caldwell, Watkins, [K.] Meggs [and others explicitly named]. . . (c) Stop the Steal and [Ali] Alexander Agreed with.

. . Rhodes, [K.] Meggs, Oath Keepers, [and others explicitly named]. . . (e) [Roger] Stone agreed with. . . Oath Keepers, Rhodes, [K.] Meggs, [and others explicitly named].”). *See also District of Columbia v. Proud Boys International, LLC, et al.*, Amended Complaint, (Apr. 1, 2022) (ECF No. 094), ¶ 2 (“Following the 2020 Presidential Election, two organizations—the Proud Boys and the Oath Keepers—through and with their leadership and certain members and affiliates, conspired to commit acts of violence and attack the United States Congress on January 6, 2021. . . with the express purpose of preventing members of Congress and then [*sic*] Vice President Michael Pence from discharging their official constitutional duties and declaring Joseph Biden the winner of the 2020 Presidential Election.”) ¶ 137 (“Following the Stop the Steal Rally, Proud Boys and Oath Keepers Members openly acknowledged an alliance between their two groups and began to coordinate violence, hoping to maximize their impact through joint efforts on January 6th.”) ¶¶ 451-454 (“One officer was beaten in the face, including with his own baton, which was stripped from him by Defendants and their co-conspirators. . . Another officer was electrocuted multiple times as he was beaten unconscious by the crowd while screaming for help. . . Officers also suffered extensive psychological injuries.”), ¶ 455 (“The effects of these wide-ranging injuries are severe and sustained over time. Some officers were still on leave months after the Attack as a result of the trauma they suffered at the Defendants’ hands.”), ¶ 456 (“For the District, the fiscal costs of this Attack—which are directly attributable to Defendants’ calculated, pre-planned, and coordinated actions—have been steep.”). As will be discussed herein, a brief review of the material that the jury considered when convicting the Rhodes Defendants shows that this is not even remotely like what the jury considered when they convicted the Rhodes of conspiracy under 18 U.S.C. § 372.

One of the fundamental elements of applying collateral estoppel in any context is finding that the matter was actually litigated. *See e.g. Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983). "Actually litigated" as applied to collateral estoppel requires a matter was "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined[.]" *Jahr v. District of Columbia*, 968 F. Supp. 2d 186, 193 (D.D.C. 2013) (quoting *Ali Baba Co. v. WILCO, Inc.*, 482 A.2d 418, 422 (D.C. 1984)). The facts that the Plaintiffs seek to have collateral estoppel applied to were simply not actually litigated in any of the criminal proceedings for the Defendants and the Court should therefore not apply collateral estoppel as the Plaintiffs suggest. "[T]o preclude a party's raising a claim, it must be shown that the claim was (or could have been) raised in a prior proceeding." *Clark-Cowlitz Joint Operating Agency v. Federal Energy Regulatory Com.*, 826 F.2d 1074, 1079 (D.C. Cir. 1987), *cert denied*, 485 U.S. 913 (1988). *See also Delahanty v. Hinckley*, 799 F. Supp. 184, 186 (D.D.C. 1992) ("[I]n order to preclude a party from raising, in a later proceeding, an issue that was determined in a prior proceeding. . . identity of the issues in the two proceedings must exist.") (citing *Clark-Cowlitz*, 826 F.2d at 1079).

Here, the Plaintiffs suggest that a conviction based upon facts unrelated to the claims in the civil case (other than the allegation that the events of conviction occurred on the same date as the claims in the complaint) have a broad preclusive effect in favor of the Plaintiffs that establish all of the wide-ranging facts alleged in their respective Complaints relating to the broad conspiracy which they allege. However, the issues raised in their complaint were not actually litigated in any of the Defendants' convictions: whether the defendants entered the broad conspiracies that caused the injuries in the complaint simply were not central to the convictions of any of the defendants.

The Supreme Court has noted that prior criminal convictions, "may work an estoppel in favor of the government in a subsequent civil proceeding." *Emich Motors Corp. v. General Motors*

*Corp.*, 340 U.S. 558, 568 (1951). The Supreme Court has similarly noticed that, "in the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment." *Id.* at 569.

This Circuit has been faced with the issue of a civil litigant seeking broad preclusive effect of a defendant's criminal conviction in a later civil case. For example, in *Columbia Plaza Corp. v. Security Nat. Bank*, 676 F.2d 780 (D.C. Cir. 1982), in a similarly "large case" with many defendants, the Plaintiffs sought to apply preclusive effect the prior convictions for violations of and conspiracy to violate the Travel Act, 18 U.S.C. § 1952. However, the Court found that, "general verdicts were rendered in the criminal cases," meaning that, "these verdicts did not themselves provide a basis for concluding that the alleged overt acts involving [Plaintiff corporation] – which were among a great number of alleged overt acts not involving the project – were proved in those cases." *Columbia Plaza Corp. v. Security Nat. Bank*, 676 F.2d 780, 790 (D.C. Cir. 1982). The *Columbia Plaza Corp.* Court relied upon the Supreme Court's test in *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558 (1951) to determine that it was simply, "not possible to determine for what reasons or upon what overt acts the jury in the criminal case convicted the defendants." *Columbia Plaza Corp.*, 676 F.2d at 790. Here, as with *Columbia Plaza Corp.*, it is simply impossible to know exactly what facts for which the jury found the Rhodes Defendants guilty of a conspiracy to violate 18 U.S.C. § 372. Further complicating the matter for the Plaintiffs is just how narrow the conspiracy that was proven at the criminal trial for the Rhodes Defendants was. The government conceded in the criminal trials that the government did not need to prove that any advance conspiracy to stop the electoral college vote certification had occurred at all, had been hatched once the results of the 2020 Presidential Election were announced, or even when the event occurring on January 6, 2021 was announced. The government needed only prove, and to

convict the jury needed only to find, that once the Rhodes Defendants reached the steps of the United States Capitol and entered that building, that the Rhodes Defendants did so with the purpose of stopping the electoral college certification. *See e.g. United States v. Rhodes*, 1:22-cr-00015-APM (D.D.C), Trial Tr., at 9974:17-20 ("Ms. Rakoczy: As the Judge instructed you, the government's proof in this case does not need to establish that the conspiracy began or ended at a particular date."), 9975:4-12 ("Ms. Rakoczy: It's also important to think about what the Judge instructed you yesterday, that the defendants each don't have to have joined the conspiracy at the very outset of the conspiracy. Defendants can join a conspiracy at different times.") (Nov. 18, 2022). That conspiracy supporting the convictions of the Rhodes Defendants were significantly narrower than the one as alleged by the Plaintiffs here. The Court therefore should use the tenets dictated in *Columbia Plaza Corp.* to deny Plaintiffs' consolidated motion for partial summary judgment.

The facts alleged in the respective operative complaints were not essential to the conviction of any defendants, and frankly none of the facts alleged in either operative complaint specific to these Plaintiffs were remotely identical to what was proven in any of the convictions that the Plaintiffs now seek to give broad preclusive effect. Defendants respectfully ask the Court to deny Plaintiffs' motion on the basis that these matters were not "actually litigated" in the many criminal prosecutions for which these defendants were convicted.

### ii.   The District of Columbia's Improper Extrapolation

The District of Columbia explicitly seek to preclude the Rhodes Defendants from arguing against an allegation that they joined a conspiracy to commit assault, battery, and intentional infliction of emotional distress against the officers identified in that Complaint. *See* Plaintiffs' Consolidated Motion, at 2 ("The District thus moves for partial summary judgment as to all District

Page 26 of 38

Convicted Defendants on Counts III, IV, and V of its Amended Complaint for assault, battery, and intentional infliction of emotional distress, on the basis that Counts III-V were the foreseeable result and consequence of the same conspiracy for which the District Convicted Defendants have been criminally convicted."). Such an attempt to extrapolate any element of a new claim from unrelated convictions through the use of offensive collateral estoppel is explicitly against the common application of offensive collateral estoppel in this Circuit. For example, in *King v. Barbour*, 2019 U.S. Dist. 141534 (D.D.C. Aug. 21, 2019), Judge Colleen Kollar-Kotelly denied a similar use of offensive collateral estoppel. In *King v. Barbour*, the Plaintiff sought to use the Defendant's criminal conviction of assault and battery to establish the elements of assault, battery, and intentional infliction of emotion distress in a civil suit arising out of the same incident that led to the Defendant's conviction. *King v. Barbour*, 2019 U.S. Dist. 141534, at \*14 (D.D.C. Aug. 21, 2019). Judge Kollar-Kotelly partially granted summary judgment based on collateral estoppel for the elements of assault and battery, but explicitly refused to do so for intentional infliction of emotional distress. *Id.* at \*26. Judge Kollar-Kotelly noted that the conviction did not require the judge to find that the defendant had intended to cause the Plaintiff to suffer emotional distress, and therefore that issue was not actually litigated, actually determined by the judge, or essential to the criminal conviction in the prior case. *Id.* at \*29. Judge Kollar-Kotelly noted that, "[i]t is not an appropriate use of offensive collateral estoppel to extrapolate an intent to cause severe emotional distress from the judge's prior finding that Defendant intended to use physical force or violence against Plaintiff. Plaintiff cites no case in which collateral estoppel has been used in such a way." *Id.* at \*28-29. The District of Columbia explicitly seeks this Court to extrapolate from an unrelated conviction element specific to claims of assault, battery, and intentional infliction of emotional

distress. As such extrapolation is inappropriate for attempts at claim preclusion, the Court should deny the District of Columbia's portion of the motion on that basis alone.

> ### iii. The Plaintiffs' Motion Create Issues of Fairness Warranting Denial of the Motion

One of the core concerns that Courts have elucidated over the years when considering offensive issue preclusion is ensuring fairness to the party seeking to be hamstrung by the application of offensive collateral estoppel. *See e.g. Athridge v. Iglesias*, 2000 U.S. Dist. LEXIS, at *12-13 (D.D.C. Nov. 14, 2000) ("[I]t must be remembered that, while the principles of issue preclusion are motivated at least in party by the necessity of conserving judicial resources, the conserving of such resources can never be at the expense of fairness. Fairness is, after all, said to be the overarching determinant in the application of offensive issue preclusion.") (citing *Jack Faucett Associates, Inc. v. American Telephone and Telegraph Co.*, 744 F.2d 118, 125 (D.C. Cir. 1984) ("Fairness to the defendant' thus is a critical finding necessary for the application of offensive estoppel.") (also citing *Carr v. District of Columbia*, 646 F.2d 599, 605 (D.C. Cir. 1980) ("Trial courts should take into account a variety of considerations, all relevant to the ultimate question: Would application of offensive estoppel be unfair to the defendant.")).

The fairness concerns created by Plaintiffs' consolidated motion is simple: Defendants could not have reasonably expected that, by being convicted based upon the facts proven at criminal trial, they would also be estopped from arguing about all facts that occurred at the same general locations, date, and times as the conduct for which they were convicted but that they otherwise had no involvement in.

That is exactly the situation the defendants now find themselves in, facing a lawsuit for damages from people that they are not even alleged to have encountered themselves on January 6, 2021. The Plaintiffs seek to use many unrelated convictions to relieve themselves of their burdens

to prove that each named defendant caused the specific injuries which the Defendants are alleged to be the perpetrators of.[5] Fairness dictates that such use offensive collateral estoppel is inappropriate, as the defendants could not have anticipated these remote claims against them simply by being convicted for their actions on January 6, 2021.

#### 1.  The Plaintiffs' Reliance on Findings Made at Sentencing

A fairness concern is also created in the heavy reliance that the Plaintiffs' place upon facts elucidated at sentencing hearings to support their claim that collateral estoppel applies in their favor, highlighting such findings as the "foundation for the conspiracy" which they seek the Court to apply preclusive effect to. *See e.g.* Plaintiffs' Consolidated Motion, at 9 ("Defendant Rhodes purchased firearms on his way to Washington, D.C., to challenge the Government of the United States and to create an arsenal in order to do so. . . (Tr. of Rhodes Sentencing Proceedings, Rhodes Criminal Case, ECF No. 817 at 20:7–8))" (internal quotation marks omitted); *id.* ("[Rhodes] gave a cache of weapons to a co-conspirator and told him to distribute upon his instruction and to be prepared for violence in the event of Civil War. . . (Tr. of Rhodes Sentencing Proceedings at 20:12–14). . . (Tr. of K. Meggs Sentencing Proceedings, Rhodes Criminal Case, ECF No. 818 at 6:24–7:10)[.]") (internal quotation marks omitted). *See also* Plaintiffs' Consolidated Motion Statement of Material Facts in Support of Plaintiffs' Motion for Partial Summary Judgment, ¶ 5 ("At sentencing, the Court found the early communications [between K. Meggs and co-conspirators] starting after the election established a foundation for the conspiracy. . . and that those statements

---

[5] *See e.g. Conrad Smith et al v. Donald J. Trump et al*, Amended Complaint, ¶¶ 157-165 (Dec. 3, 2021) (ECF No. 089) (alleging specific injuries for each Plaintiff before alleging, "Defendants and their co-conspirators caused Plaintiffs' injuries by causing the mass attack on the Capitol."). *See also District of Columbia v. Proud Boys International, LLC, et al.*, Amended Complaint, ¶¶ 441-459 (Apr. 1, 2022) (ECF No. 094) (alleging specific injuries for Police Officers employed by Plaintiff District of Columbia and specific damage to property owned by Plaintiff District of Columbia).

and early communications laid the groundwork and foundation for the ultimate object of the conspiracy, which was to interfere with the transfer of power through and resisting the authority of the government by force and, as [the Court found], through a preponderance of the evidence, to prevent the execution of the laws by force.") (internal quotation marks omitted).

The significant reliance upon sentencing findings is potentially a fatal flaw to Plaintiffs' Consolidated Motion. This Court has found, relying upon precedent from the Second Circuit, that there is a strong presumption against, "precluding relitigating on the basis of sentencing findings[.]" *Miller v. Holzman*, 2006 U.S. Dist. LEXIS 9165, at *38-39 (D.D.C. Mar. 9, 2006) (quoting *United States v. U.S. Currency in the Amount of $119,984*, 304 F.3d 165, 172 (2d Cir. 2002)).

The *Miller* Court notes that, as of 2006, the Second Circuit was the only Circuit to have weighed in on giving preclusive effects to findings during sentencing proceedings, and noted that the Second Circuit's refusal to apply preclusive effects to findings during sentencing proceedings was done, "in broad and emphatic terms[.]" *See Miller*, 2006 U.S. Dist. LEXIS 9165, at *38 n.15 ("Oddly, this appears to be the only Circuit that has considered this question. *See* W. Ackerman, Precluding Defendants from Relitigating Sentencing Findings in Subsequent Civil Suits, 101 COLUM. L. REV. 128, 138 (2001) (noting how few courts have been compelled to resolve such questions and suggesting reasons)."). The Second Circuit has positively cited the case upon which the *Miller* Court relies, and noted that while the presumption against use of sentencing findings can be overcome, the movant must show such use is, "clearly fair and efficient[.]" *SEC v. Afriyie*, 788 Fed. Appx. 59, 60 (2d Cir. 2019). At least one other Circuit has explicitly echoed the concern provided the Second Circuit in finding that the use of sentencing findings for purposes of collateral estoppel is improper and explicitly refused to resolve the issue definitively. *See United States v.*

Page 30 of 38

*Clark*, 906 F.3d 667, 670-72 (7th Cir. 2018) ("It is unclear how the doctrine of issue preclusion applies in criminal sentencing. . . [The Second Circuit] caution[s] that it should be applied only in those circumstances where it is clearly fair and efficient to do so. . . Here, we again decline to take it on[.]" (internal citations and quotation marks omitted) (quoting *United States v. Ellis*, 622 F.3d 784, 797 n.5 (7th Cir. 2010)) (also quoting *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 306 (2d Cir. 1999))), *cert. denied*, 139 S. Ct. 852 (2019).[6]

The Plaintiffs here have failed to establish why their use of sentencing materials is not barred by the broad assumption against using sentencing findings to establish collateral estoppel. For this reason alone, Plaintiffs' motion should be denied.

Respectfully submitted this _____ day of August, 2024.

*[signatures to appear on following page]*

---

[6] While the Second and Seventh Circuits have essentially rejected the use of offensive collateral estoppel to apply sentencing findings in a later civil case, and one judge in the District Court for the District of Columbia has followed that approach and echoed the Second Circuit's major concern on this issue, the Rhodes Defendants would be remiss without acknowledging that at least one commentator has argued that Courts can and should grant sentencing findings preclusive effect in later cases. *See* Wystan M. Ackerman, *Note: Precluding Defendants from Relitigating Sentencing Findings in Subsequent Civil Suits*, 101 Colum. L. Rev. 128 (Jan. 2001). The crux of Ackerman's argument is that parties have a "full and fair opportunity" to litigate issues at sentencing, noting, "[i]f sentencing findings are good enough to have a substantial impact on the defendant's sentence, and thus on her liberty, they ought to be good enough to be accepted in a civil suit." *See id.*, at 153-54. However, this fails on a practical level: if a jury makes a general finding during the trial, parties have little incentive to argue about the specifics of that general finding at sentencing. For example, the counsel for the Rhodes Defendants did not argue specific facts about the nature of the conspiracy that the jury generally found existed when convicting the Rhodes Defendants.

**KICKLIGHTER LAW, P.C.**

*/s/ Claude M. Kicklighter, Jr.*
**CLAUDE M. KICKLIGHTER, JR.**
USDC District of Columbia
BAR ID GA0035
*Attorney for Defendant Brian Ulrich*
412 North Laurel Street
Springfield, Georgia 31329
Tel: (912) 754-6003
Fax: (912) 754-6336
Email: Mickey@kick-law.com

**BRENNWALD & ROBERTSON, LLP**

*/s/ Stephen F. Brennwald*
USDC District of Columbia
BAR ID 398319
*Attorney for Defendants Bennie Parker and Sandra Parker*
922 Pennsylvania Avenue, SE
Washington, DC 20003
Tel: 301-928-7727
Fax: 202-544-7626
sfbrennwald@cs.com
**DAVID MOERSCHEL**

*/s/ David Moerschel*, *Pro Se Defendant*
117 Angol Street
Punta Gunta, FL 33983
770-356-5476

**JOHN PIERCE LAW, P.C.**

*/s/ John M. Pierce*
John M. Pierce
USDC District of Columbia
BAR ID _____
*Attorney for Defendants Elmer Stewart Rhodes, III, Roberto A. Minuta, and Edward Vallejo*
21550 Oxnard Street
Suite 3rd Floor OMB #172
Woodland Hills, CA 91367
213-400-0725
jpierce@johnpiercelaw.com

**BRAND WOODWARD LAW, LP**

*/s/ Stanley Edmund Woodward, Jr.*
USDC District of Columbia
BAR ID 997320
*Attorney for Defendant Connie Meggs*
400 Fifth Street, Northwest
Washington, DC 20001
Tel: 202-996-7447
Fax: 202-996-0113
Email: stanley@brandwoodwardlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2024, a copy of the foregoing was sent, by ECF, to all counsel of record and registered parties.

This _____ day of August, 2024.

**KICKLIGHTER LAW, P.C.**

*/s/ Claude M. Kicklighter, Jr.*
**CLAUDE M. KICKLIGHTER, JR.**
USDC District of Columbia
Bar ID GA0035
*Attorney for Defendant Brian Ulrich*
412 North Laurel Street
Springfield, Georgia 31329
Tel: (912) 754-6003
Fax: (912) 754-6336
Email: Mickey@kick-law.com